# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES RANDALL, and GRACIE WHITE f/k/a GRACIE DORNEUS Individually and on behalf of persons similarly situated | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-30143-MGM |
| ALLY FINANCIAL INC., | § § | |
| Defendant. | § § § | |

# ALLY FINANCIAL INC.'S MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO <u>STRIKE CLASS ALLEGATIONS</u>

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    SUMMARY OF ALLEGATIONS ........................................................................2

III.   STANDARD........................................................................................................4

IV.   ARGUMENT ......................................................................................................4

       A.     Because the Pre-*Williams* Notice Complied With The MCC, The Court Should Dismiss Randall's Claim And Strike The Pre-*Williams* Class Allegations. ...............................................................................................5

             1.     Massachusetts Courts Can Elect to Apply Case Law Prospectively...................................................................................6

             2.     This Court Should Not Depart From Other Precedent Holding That *Williams* Applies Only Prospectively.........................................7

             3.     Applying *Williams* Retroactively Would Violate Due Process ..........8

       B.     Randall's Claim Should Be Dismissed Because The MCC Compels Application Of Vermont Law to His Claim ...................................................10

       C.     Randall Also Cannot State A Claim Under The MCC Because The Vehicle Was Never Sold .............................................................................13

V.     CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*,
468 Mass. 109 (2014) ................................................................................................. 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 4

*Barrett v. Avco Fin. Servs. Mgmt. Co.*,
292 B.R. 1 (D. Mass. 2003) .................................................................................... 4, 10

*Bastain v. Community Credit Union of Lynn*,
No. 19-0719 (Mass. Suffolk Superior Court) ......................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 4

*Bremer Bank Nat. Ass'n v. Matejcek*,
916 N.W.2d 688 (Minn. App. 2018) ................................................................... 13, 14

*Brockbank v. Best Capital Corp.*,
534 S.E.2d 688 (S.C. 2000) ..................................................................................... 14

*Caterpillar Fin. Servs. Corp. v. Wells*,
651 A.2d 507 (N.J. Super. Law Div. 1994) .......................................................... 13

*Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*,
228 F.3d 24 (1st Cir. 2000) ....................................................................................... 3

*Connecticut Nat. Bank of Hartford v. Kommit*,
577 N.E.2d 639 (Mass. App. 1991) ........................................................................ 10

*Coxall v. Clover Comm. Corp.*,
781 N.Y.S.2d 567 (N.Y. Civ. 2004) ........................................................................ 14

*U.S. ex rel. Crennen v. Dell Mktg. L.P.*,
711 F. Supp. 2d 157 (D. Mass. 2010) ....................................................................... 4

*Dellorusso v. PNC Bank*,
Case No. 1877-cv-01475, Mass. Super. Ct. (May 3, 2019) .............................*passim*

*Eaton v. FNMA*,
462 Mass. 569 (2012) ........................................................................................ 6, 7, 8

*Evans v. Harry Robinson Pontiac-Buick, Inc.*,
983 S.W.2d 946 (Ark. 1999) ................................................................................... 12

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)...................................................................................................8

*Fed. Deposit Ins. Corp. v. Farrar*,
    231 N.W.2d 602 (Iowa 1975) ...................................................................................14

*Hartwell v. Americredit Fin. Servs*., *Inc.*,
    No. 1:18 cv 11895 (D. Mass.)...................................................................................5

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)......................................................................................................9

*Jiang v. Auto Equity*,
    No. 1882CV00924 (Mass. Norfolk Superior Court) ................................................5

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)................................................................................................10

*Maldonado v. Fontane*s,
    568 F.3d 263 (1st Cir. 2009)....................................................................................4

*Manning v. Boston Medical Center Corp*.,
    725 F.3d 34 (1st Cir. 2013) .....................................................................................4

*McGrath v. Safe Harbor Funding LLC*,
    No. 19-1809 (Mass. Suffolk Superior Court) ..........................................................5

*Monteferrante v. Williams-Sonoma, Inc.*,
    241 F. Supp. 3d 264 (D. Mass. 2017) ..................................................................4, 9

*Payton v. Abbott Labs*,
    386 Mass. 540 (1982) ..............................................................................................8

*Reid v. Santander*,
    No. 1884CV03159 (Mass. Suffolk Superior Court)................................................5

*Thompson v. Eastern Bank*,
    No. 1884CV02667 (Mass. Suffolk Superior Court)................................................5

*United States v. Zhen Zhou Wu*,
    711 F.3d 1 (1st Cir. 2013)........................................................................................9

*URI Student Senate v. Town of Narragansett*,
    631 F.3d 1 (1st Cir. 2011)........................................................................................9

*Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*,
    41 F. Supp. 2d 93 (D. Mass. 1999) ...........................................................10, 11, 12

*Wallace v. Pinnacle Bank-Wyoming*,
    275 P.3d 1250 (Wyo. 2012)...............................................................................13, 14

*Williams v. American Honda Finance Corp.*,
   98 N.E.3d 169 (Mass. June 5, 2018).................................................................*passim*

*Williams v. American Honda Finance Corp.*,
   No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016) ............................................ 8

**Statutes**

M.G.L. c. 106 § 9-101 *et seq.* ................................................................................. 3

M.G.L. c. 255B, § 20B(e) ........................................................................................ 7

Mass. Gen. Laws ch. 106, § 1-301(a) ...................................................................... 10, 12

Mass. Gen. Laws ch. 106, § 9-611(b) ...................................................................... 13

Mass. Gen. Laws ch. 106, § 9-614(3) ...................................................................... 5, 9

Wyo. Stat. Ann. § 34.1–9–611(b) ............................................................................ 13

**Other**

William J. Woodward, Jr., *Contractual Choice of Law: Legislative Choice in an Era
   of Party Autonomy,* 54 SMU L. Rev. 697 (2001) ....................................................... 11

# I. INTRODUCTION

Ally Financial Inc. ("Ally") respectfully asks the Court to dismiss the claims of Plaintiff James Randall ("Randall") in their entirety and to strike the remaining class allegations in the Second Amended Complaint ("SAC") to the extent they relate to Ally's conduct before June 5, 2018. Plaintiffs assert a single claim against Ally under the Massachusetts Commercial Code ("MCC") alleging that the pre-sale notice Ally sent them after repossessing their vehicles failed to properly describe the appropriate method for calculating any remaining deficiency they might owe after their vehicles were sold at auction. Plaintiffs seek to represent a putative class of all Massachusetts consumers who received similar notices in the last four years. But Randall's individual claims must be dismissed and the class allegations should be stricken to the extent they seek to implicate conduct before June 5, 2018.

*First*, Plaintiffs' claims are predicated on a Massachusetts Supreme Judicial Court decision that was issued on June 5, 2018, and which substantially altered the standards governing pre-sale notices like the ones at issue here. The MCC provides "safe harbor" language that insulates lenders from liability if included in the pre-sale notice, and Ally's Notice indisputably included that language. In *Williams v. American Honda Finance Corp.*, 98 N.E.3d 169 (Mass. June 5, 2018), the Supreme Judicial Court announced a new standard and held for the first time that the term "fair market value" should be imported into the MCC safe harbor language. The new standard announced in *Williams* applies only prospectively to notices that were sent ***after*** the decision was rendered (*i.e.*, after June 5, 2018). *See Dellorusso v. PNC Bank*, Case No. 1877-cv-01475, Mass. Super. Ct. (May 3, 2019), attached hereto as Exhibit A. Because the notice about which Randall complains was sent before *Williams*, and because it indisputably included the MCC safe harbor language in effect at that time, his claim fails as a matter of law and must be dismissed. Similarly,

Plaintiffs' proposed class definition must be stricken to the extent it implicates pre-sale notices before June 5, 2018.

*Second*, Randall's claim must be dismissed for the additional reason that his relationship with Ally, including the claim he brings in this action, is governed by the law of Vermont, not Massachusetts. The same retail installment sales contract that sets forth the parties' rights and responsibilities in the event of a repossession contains a Vermont choice-of-law provision that Randall contractually agreed would bind the parties. The choice of law rules set forth in the MCC itself require that the parties' selection of Vermont law be given effect. Randall, therefore, has not stated and cannot state a claim under the MCC as a matter of law.

*Third*, Randall fails to allege facts sufficient to show that Ally had any obligation under the MCC notice provisions in the circumstances Randall alleges. The MCC imposes requirements for pre-sale notifications only in the event that the lender actually disposes of (*i.e.*, sells) the collateral for the loan. Randall has not alleged that his vehicle was actually sold (and, in fact it was not). Thus, Ally had no obligation to Randall under the notice provisions of the MCC and cannot be held liable for an alleged violation of those provisions.

For these reasons, Ally respectfully requests that the Court dismiss Randall's individual claim with prejudice and strike the class allegations to the extent they relate to pre-*Williams* conduct.

## II.    SUMMARY OF ALLEGATIONS

Randall alleges that he entered into a loan agreement with Ally for the purchase of a Jeep Grand Cherokee (the "Vehicle") on March 16, 2017. SAC ¶ 6. Specifically, Randall entered into a Retail Installment Sales Contract ("RISC") with Bennington Subaru, which was assigned to Ally.

*See* ECF 1-2.[1] The RISC expressly provides that "[f]ederal law and the law of the state of [the seller-creditor's] address shown on the front of this contract apply to this contract." *See* ECF 1-2, p. 2, Section 7. In turn, the seller-creditor's address on the front page of the RISC is in Bennington, Vermont. *See* ECF 1-2, p. 1.

Randall acknowledges that he defaulted on his payment obligations and alleges that Ally repossessed the Vehicle on October 26, 2017. SAC ¶ 10. He claims that Ally sent him the Notice attached as Exhibit A to the Second Amended Complaint on April 19, 2018. *Id.* ¶ 11. Randall makes no allegations about the disposition of the Vehicle following repossession. *See generally id.*[2]

Based on these allegations, Plaintiffs assert a single cause of action for an alleged violation of the MCC. Mass. Gen. L. c. 106 § 9-101 *et seq.*; SAC ¶¶ 31-37. Plaintiffs claim the Notices they received violated the MCC because the Notices advised them that the amount of any post-sale deficiency owed on their accounts would be calculated based on the sale price of their vehicles at auction rather than the "fair market value" of the vehicles. *Id.* ¶¶ 12, 19, 31-37. Plaintiffs seek to certify a putative class of "all persons to whom Ally sent a notice identical and/or substantially similar to the Repossession Notice attached as Exhibit A [to the Complaint] at any time during the four-year period prior to the commencement of this action." *Id.* ¶ 14.

---

[1] Although not attached to the Complaint, the Court properly may consider the RISC in ruling on a Rule 12(b)(6) motion because it is integral to and explicitly relied on in the Complaint. *See, e.g., Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000), (holding that, in ruling on a Rule 12(b)(6) motion, a district court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint'" (internal quotation omitted).

[2] Plaintiff Gracie White asserts similar allegations. However, because she allegedly received a pre-sale notice after *Williams* was decided, Ally is not seeking to dismiss her individual claims on the basis of the allegations in the Complaint.

## III.    STANDARD

To state a claim upon which relief can be granted, a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). In other words, the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. When assessing whether the complaint satisfies this standard, courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Neither "legal conclusions" nor "naked assertion[s] devoid of further factual enhancement" are accepted as true for purposes of a motion to dismiss. *Maldonado v. Fontane*s, 568 F.3d 263, 266 (1st Cir. 2009); *see also U.S. ex rel. Crennen v. Dell Mktg. L.P.*, 711 F. Supp. 2d 157, 160-61 (D. Mass. 2010).

Two Federal Rules of Civil Procedure authorize the Court to strike a class allegation at the pleading stage. First, "[D]istrict courts may use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 268 (D. Mass. 2017) (citing *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)). In addition, Rule 23(d)(1)(D) authorizes the court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the allegation proceed accordingly." Fed. R. Civ. Proc. 23(d)(1)(D); *see also Monteferrante*, 241 F. Supp. 3d at 274 (striking class allegations where class definition "encompasses individuals" who lack a cognizable claim); *Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 11 (D. Mass. 2003) (striking nationwide class allegations and ordering plaintiff to amend with narrower class definition).

## IV.    ARGUMENT

This Court should find that *Williams* only applies prospectively to pre-sale notices issued after June 5, 2018. Retroactive application of *Williams* would be inappropriate, would unfairly

punish creditors who complied with the statutory scheme's express safe harbor provision, and would violate due process. The Massachusetts Superior Court reached this conclusion just last month, in a nearly identical case. *See Dellorusso v. PNC Bank,* Case No. 1877-cv-01475. Applying the reasoning and holding of *Dellorusso*, this Court should dismiss Randall's claim in full and strike any class allegations that reference notices sent before June 5, 2018.

In addition, Randall's claim should be dismissed because Vermont law applies to his relationship with Ally and forecloses his sole claim under Massachusetts law. Finally, Randall's MCC claim fails as a matter of law because Ally never sold or disposed of the collateral, and the pre-sale notification requirements that Randall seeks to enforce apply only where the collateral was actually sold.

### A. Because The Pre-*Williams* Notice Complied With The MCC, The Court Should Dismiss Randall's Claim And Strike The Pre-*Williams* Class Allegations.

Dismissal of Randall's claim is warranted because the Notice **did** comply with the MCC when it was sent. While not referenced directly in the Second Amended Complaint, the impetus for this case and a number of other recent class actions brought by Plaintiffs' counsel asserting similar claims against other lenders[3] is a recent decision by the Massachusetts Supreme Judicial Court that set forth new standards governing the content of pre-sale notices. *See Williams v. American Honda Finance Corp.*, 98 N.E.3d 169 (Mass. June 5, 2018).

The MCC contains an express safe harbor for pre-sale notices that include certain form language. Mass. Gen. Laws ch. 106, § 9-614(3) ("The following form of notification, when

---

[3] *See, e.g., Jiang v. Auto Equity*, No. 1882CV00924 (Mass. Norfolk Superior Court); *Hartwell v. Americredit Fin. Servs., Inc.*, No. 1:18 cv 11895 (D. Mass.); *Thompson v. Eastern Bank*, No. 1884CV02667 (Mass. Suffolk Superior Court); *Reid v. Santander*, No. 1884CV03159 (Mass. Suffolk Superior Court); *McGrath v. Safe Harbor Funding LLC*, No. 19-1809 (Mass. Suffolk Superior Court); *Bastain v. Community Credit Union of Lynn*, No. 19-0719 (Mass. Suffolk Superior Court).

completed, provides sufficient information…").  There can be no dispute that the Notice Randall received follows the form language of that statute.  *Compare id*. *with* Compl., Ex. A.  Ally's inclusion of the safe harbor language was, as a matter of law, "sufficient" to satisfy the requirements of the MCC.

In *Williams*, the Supreme Judicial Court held, for the first time and notwithstanding the safe harbor language in the MCC to the contrary, that a pre-sale notice must state that a deficiency will be calculated based on the "fair market value" of the vehicle, rather than upon its sale price. That holding, which effects a fundamental change in the requirements for collateral disposition under the MCC, can only apply *prospectively* to notices issued after the date on which the Supreme Judicial Court issued its ruling.  Thus, this Court must dismiss Randall's claim and strike any class allegations concerning notices sent prior to *Williams*.

1. *Massachusetts Courts Can Elect to Apply Case Law Prospectively.*

As a threshold matter, Massachusetts courts can apply decisions only prospectively in certain circumstances.  *Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*, 468 Mass. 109, 120 (2014) ("It is sometimes necessary to depart from the general rule of retroactivity, in order to protect the reasonable expectations of parties.").

When deciding whether to apply a decision only prospectively, courts consider whether a new principle was established in the case; whether retroactive application would further the new rule; and whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity.  *See id.*, 468 Mass. at 120-21.  Under Massachusetts law, prospective application is particularly warranted where, as here, the ruling "announces a new interpretation of a State statute." *Id.* (internal quotes and ellipsis omitted).  Massachusetts courts are especially hesitant to apply a novel ruling retroactively where it affects contract or property law.  *See Eaton v. FNMA*, 462 Mass. 569, 587-88 (2012).

2.   *This Court Should Not Depart From Other Precedent Holding That Williams Applies Only Prospectively.*

The Massachusetts Superior Court recently considered the question of whether *Williams'* holding applies retroactively, and answered with a resounding "no."  The court considered each of the factors described above and determined that each supported applying *Williams* only prospectively.  There is no reason for this Court to depart from that conclusion.

First, "*Williams* clearly created new law."  *Dellorusso* Op. at p. 7.  Prior to *Williams*, there was ambiguity about whether the safe harbor language itself was sufficient, or whether a pre-sale notice needed to reference the "fair market value" of the vehicle, as set forth in Mass. Gen. L. c. 255B, § 20B(e).  Indeed, as the Court recognized in *Dellorusso,* the fact that the First Circuit certified this question "exemplifies th[e] ambiguity" prior to *Williams*.  *Dellorusso* Op. at p. 7.  The first factor therefore weighs in favor of applying *Williams* only prospectively.

Second, creditors like Ally have "relied in good faith on an interpretation" of the statutory framework.  *Dellorusso* Op. at p. 7.  As described above, before *Williams*, "it was not clear" that the safe harbor provision was itself "insufficient" and it "would not have been prudent or advisable for a creditor to craft a pre-sale notice that strayed from, or did not conform to, this statutorily approved language."  *Id.*  Indeed, prior to *Williams*, any variation from the pre-sale safe harbor language expressly endorsed by the MCC might have exposed creditors to potential liability.

Third, Massachusetts courts have recognized that where case law affects property rights, interpretive decisions should be applied "prospectively out of concern for litigants and others who have relied on existing precedents."  *Dellorusso* Op. at p. 7 (quoting *Eaton*, 462 Mass. at 588) (further citations omitted).  Because the new rule involves property rights, it is be subject to the higher standard.  *See id.* at 7-8 (explaining the similarities between the real estate at issue in *Eaton* and the personal property at issue here).  Prospective application of the new rule announced in

*Williams* is warranted, therefore, to ensure fairness to parties, like Ally, that have "relied on existing precedents" to insulate themselves from liability. *Eaton*, 462 Mass. at 588 (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 565 (1982)). Indeed, when Ally issued the Notice to Randall, the only precedent on this issue was the lower court's opinion in *Williams*, which stated that a creditor holding a security interest in a motor vehicle could rely on § 9-614(3)'s safe harbor verbiage when preparing a pre-sale notice to protect itself from potential liability. *Williams v. American Honda Finance Corp.*, No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016), *aff'd in part, vacated in part, rev'd in part*, 907 F.3d 83 (1st Cir. 2018). Applying the new rule to parties like Ally will cause undue "harm and inequity." *Dellorusso* Op. at p. 8.

Fourth, applying *Williams* prospectively will not harm Massachusetts consumers. As explained by the *Dellorusso* court, because "the decision to redeem a vehicle likely concerns whether a consumer can afford to do so and not how much a consumer's account will be credited post-sale, a mistake in the pre-sale notice about how a consumer's account will be credited, *i.e.*, based on sale price or 'fair market value,' is unlikely to change a defaulting consumer's decision about whether to redeem." *Dellorusso* Op. at p. 8. Accordingly, there is no risk that prospective application of the new rule would result in any actual harm to Massachusetts consumers.

For these reasons, this Court should not depart from *Dellorusso*'s holding "that the rule announced in *Williams* should be given prospective effect only." *Id.* at p. 7.

### 3. *Applying Williams Retroactively Would Violate Due Process.*

Applying the new rule announced in *Williams* retroactively to notices issued before the Court's opinion (like the Randall Notice at issue here) also would violate lenders' due process rights under the Fifth and Fourteenth Amendments. As the Supreme Court has observed, "[a] fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567

U.S. 239, 253 (2012). "To comport with the strictures of due process, a law must define an offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement. The void-for-vagueness doctrine embraces these requirements." *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 13-14 (1st Cir. 2011) (internal quotations omitted).

The due process question before this Court is a limited one: "'whether a statute is vague as applied to the particular facts at issue.'" *United States v. Zhen Zhou Wu*, 711 F.3d 1, 15 (1st Cir. 2013) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010)). The question is whether Ally "in fact had fair notice that the statute and regulations proscribed [its] conduct," *i.e.,* at the time Ally sent the Notice to Randall. *Zhen Zhou Wu*, 711 F.3d at 15 (quotations omitted).

Ally's Notice to Randall used form language that the MCC expressly states is "sufficient" to provide "safe harbor" to a creditor. *See* Mass. Gen. Laws ch. 106, § 9-614(3). The Supreme Judicial Court in *Williams* issued a new pronouncement about language that "should" be used to "replace" the MCC safe harbor language. *Williams*, 98 N.E.3d at 179. It would be manifestly unjust to allow a claim against Ally to proceed where the language in its pre-sale notice complied with the MCC, but did not use the replacement safe harbor language.

For the foregoing reasons, this Court should decline to apply *Williams* retroactively. Absent retroactive application of *Williams*, Plaintiffs cannot possibly state an MCC claim on behalf of Randall or any putative class member to whom a pre-sale notice was sent before *Williams*. Thus, this Court should dismiss Randall's claim and strike all class allegations that seek recovery for notices sent before June 5, 2018, when *Williams* was decided. *See Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 274 (D. Mass. 2017) (granting motion to strike class allegations where class definition "encompasses individuals" who lack a cognizable claim);

*Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 11 (D. Mass. 2003) (striking nationwide class allegations and ordering plaintiff to amend with narrower class definition).

B.     **Randall's Claim Should Be Dismissed Because The MCC Compels Application Of Vermont Law To His Claim.**

Randall's sole claim (under Massachusetts law) must be dismissed because Vermont law applies to the parties' relationship. The parties' contract confirms that they agreed that Vermont law would govern their relationship, including any repossession of the Vehicle. The provisions of the MCC, under which Randall sues, require that the parties' agreement be enforced.

In a diversity case in Massachusetts federal court, conflict of law issues must be determined by the law of Massachusetts. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The MCC contains its own choice of law standards explicitly providing that parties may agree upon the law that is to govern their rights and duties—and by doing so, the parties may thereby make the MCC *inapplicable to their transaction*. Mass. Gen. Laws ch. 106, § 1-301(a) ("[W]hen a transaction bears a reasonable relation to the commonwealth and also to another state or nation, the parties may agree that the law of either the commonwealth or of such other state or nation shall govern the rights and duties under the transaction. *Failing to reach such an agreement, this chapter applies* to transactions bearing an appropriate relation to the commonwealth.") (emphasis added). Courts applying Massachusetts law regularly enforce choice of law provisions in contracts, including contracts governed by the MCC, *see, e.g., Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*, 41 F. Supp. 2d 93, 97 (D. Mass. 1999), and consumer contracts generally, *see, e.g., Connecticut Nat. Bank of Hartford v. Kommit*, 577 N.E.2d 639, 641 (Mass. App. 1991) (enforcing Connecticut choice of law provision in credit card contract).

Notably, the choice of law analysis for claims subject to the MCC is different from choice of law principles that may apply generally to other types of claims. For example, courts and

commentators have recognized that the UCC choice-of-law provision (which Massachusetts adopted) does not include the same public policy prong that may apply in a generic conflict of laws analysis. *See, e.g.*, William J. Woodward, Jr., *Contractual Choice of Law: Legislative Choice in an Era of Party Autonomy*, 54 SMU L. Rev. 697 (2001) (recognizing that there is "no similar statement" to the Restatement's public policy analysis in the UCC and collecting cases). The only inquiries under the MCC approach are which forum was selected by the parties and whether the transaction has a reasonable relationship to that forum.

This Court's decision in *Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*, 41 F. Supp. 2d 93 (D. Mass. 1999), illustrates this distinction. In that case, the court "applied a Delaware choice of law provision to the plaintiff's breach of contract claims and other contract-related claims," while applying Massachusetts law to the plaintiff's consumer protection claim. The "contract-related claims" to which this Court applied Delaware (not Massachusetts) law included claims brought under the UCC. *Vision Graphics* thus illustrates that a choice of law provision in a contract will apply both to contract claims *and* to claims brought under separate terms of the UCC.

Here, both requirements under the MCC choice of law test are met and require application of Vermont law. Randall and Ally's contract explicitly provides that their agreement will be governed by Vermont, not Massachusetts, law. Section 7 of the RISC states that "Federal law and the law of the state of [the seller-creditor's] address shown on the front of this contract apply to this contract." ECF 1-2, p. 2, § 7. The seller-creditor's address on the front page of the RISC is in Vermont. *Id.* Accordingly, Randall agreed that the RISC would be governed by Vermont, not Massachusetts, law. This includes Ally's notice and conduct post-repossession, which the RISC addresses in express and clear terms: "If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less

allowed expenses, to the amount you owe…. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us." *Id*. at p. 2, § 3.f.

Nor can there be any question that the transaction at issue bears a reasonable relation to Vermont, such that application of Vermont law is warranted. The reasonable relation test is not an onerous one. Indeed, this Court has held that the mere fact that a party to the contract is incorporated in a particular state satisfies that test and requires enforcement of a choice of law provision selecting that state's law. *See Vision Graphics*, 41 F. Supp. 2d at 97 ("The fact that defendant is a Delaware corporation, and that plaintiff freely agreed to the applicability of Delaware law through the execution of several related contracts, is sufficient in this case to establish a reasonable relation between the transactions at issue here and the laws of Delaware."). And under similar circumstances, courts routinely enforce choice of law provisions in many contexts, including where a vehicle retail installment sales contract contains a choice of law provision. *See, e.g., Evans v. Harry Robinson Pontiac-Buick, Inc*., 983 S.W.2d 946, 947 (Ark. 1999) (enforcing Texas choice of law provision in vehicle retail installment sales contract and dismissing plaintiff's consumer protection claims under Arkansas law).

Moreover, Randall and Ally did not select Vermont law arbitrarily. The dealership that was a party to the contract was located in Vermont; the Vehicle that Randall purchased was located in Vermont; and the sale was completed in Vermont. *See* ECF 1-2. These facts, which are evident from the face of the contract, are more than sufficient to establish a reasonable relation between the transaction at issue and the State of Vermont. Under these circumstances, the parties' agreement that Vermont law would apply to their relationship must be given full effect.

Because the parties agreed that Vermont law would govern their relationship, and because the transaction bore a reasonable relation to Vermont, Randall's sole claim under Massachusetts law cannot stand and must be dismissed. *See* Mass. Gen. Laws ch. 106, § 1-301(a) (MCC only applies

to transaction if parties have *not* "reach[ed] an agreement" selecting application of another state's law).

### C. Randall Also Cannot State A Claim Under The MCC Because The Vehicle Was Never Sold.

Dismissal of Randall's MCC claim is further warranted because he fails to allege that his Vehicle was actually disposed of at auction. The pre-sale notice requirements under the MCC apply only to "a secured party ***that disposes of collateral*** under section 9-610." Mass. Gen. Laws ch. 106, § 9-611(b) (emphasis added). The MCC contains no explicit requirement that a party send a pre-sale notification or adhere to the requirements for such a notification if the secured party never actually disposes of the collateral. And courts have consistently recognized that there can be no violation of the UCC notice provisions unless the collateral is actually disposed of after a default. *See, e.g.*, *Wallace v. Pinnacle Bank-Wyoming*, 275 P.3d 1250, 1256 (Wyo. 2012) ("The U.C.C. notice provision relied on by the [plaintiff] [Wyo. Stat. Ann. § 34.1–9–611(b)] ***applies only when property is disposed of after a default***.") (emphasis added);[4] *Bremer Bank Nat. Ass'n v. Matejcek*, 916 N.W.2d 688, 697 (Minn. App. 2018) (rejecting claim that creditor failed to give appropriate pre-sale notice "because there was no sale of collateral by a secured party giving rise to the UCC's requirements for notice and a commercially reasonable disposition").

This limited application of the pre-sale notification requirements makes sense, because, as a multitude of courts have recognized, the purpose of the disposition notice is to protect the debtor's interests by ensuring a fair price for the collateral—an interest that is only relevant if the debtor plans to participate in or challenge the reasonableness of the final disposition. *See Caterpillar Fin. Servs. Corp. v. Wells*, 651 A.2d 507, 520 (N.J. Super. Law Div. 1994) (primary

---

[4] The MCC contains identical language to the corresponding UCC provision at issue in *Wallace*. *Compare* Mass. Gen. Laws ch. 106, § 9-611(b) *with* Wyo. Stat. Ann. § 34.1–9–611(b).

purpose of the obligation to provide notice of a sale "is to allow the debtor sufficient time to take appropriate steps to protect his interests before the final disposition" and to prevent a sale of the collateral "at less than its true value"); *Coxall v. Clover Comm. Corp.*, 781 N.Y.S.2d 567, 572 (N.Y. Civ. 2004) ("The purpose of the notice requirement is to give the debtor an opportunity to protect his interest in the collateral by exercising any right of redemption or by bidding at the sale, to challenge any aspect of the disposition before it is made, or to interest potential purchasers in the sale, all to the end that the merchandise not be sacrificed by a sale at less than the true value.") (citation omitted); *Brockbank v. Best Capital Corp.*, 534 S.E.2d 688, 695 (S.C. 2000) ("The purpose of the [Article 9] notice is to allow the debtor to discharge the debt and redeem the collateral, produce another purchaser, or see that the sale is conducted in a commercially reasonable manner."); *Fed. Deposit Ins. Corp. v. Farrar*, 231 N.W.2d 602, 605 (Iowa 1975) ("The purpose of notice under [the UCC] is to permit the debtor to bid at the sale or to protect himself from an inadequate sale price.").

Here, Randall alleges only that he received a pre-sale notice. But he does not allege that Ally actually disposed of the collateral after default (and, in fact, Ally did not dispose of the Vehicle). *See generally* SAC. Absent any such allegation, Randall cannot state a claim for violation of the pre-sale notification requirements of the MCC. *See Wallace,* 275 P.3d at 1250; *see also Bremer Bank*, 916 N.W. at 696 ("Bremer Bank did not dispose of the [collateral]; therefore, the bank did not need to comply with UCC requirements for a secured party's disposition of collateral."). Moreover, Randall cannot cure this defect through amendment, because his Vehicle was not, in fact, disposed of after default. For this additional reason, dismissal with prejudice is warranted.

## V.    CONCLUSION

For the foregoing reasons, Defendant Ally Financial Inc. respectfully requests that this Court grant its motion and dismiss Plaintiff James Randall's claim, and strike all class allegations purporting to include in the putative class consumers who received pre-sale notices from Ally prior to June 5, 2018.

Dated: June 21, 2019                    Respectfully submitted,

*/s/ Nellie E. Hestin*

Nellie E. Hestin (BBO #676886)
McGuireWoods LLP
Tower Two-Sixty 260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000
(412) 667-6050 (Fax)
nhestin@mcguirewoods.com

*Counsel for Defendant Ally Financial Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 21, 2019.

*/s/ Nellie E. Hestin*
Nellie E. Hestin