UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| JAMES RANDALL, and GRACIE | ) | |
| WHITE f/k/a GRACIE DORNEUS, | ) | |
| Individually and on behalf of a class of | ) | C.A. No. 3:18-CV-30143-MGM |
| persons similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLY FINANCIAL INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................................... 1

II.  BACKGROUND ....................................................................................................... 3

III.  STANDARD OF REVIEW ...................................................................................... 3

IV.  ARGUMENT ........................................................................................................... 4

    A.  A Post-Repossession Notice Must Inform The Consumer That Her Potential
        Deficiency Liability Is The Difference Between Her Loan Balance And The
        *Fair Market Value Of Her Car*; Ally's Plainly Did Not........................................ 4

    B.  The *Williams* Decision, And RISA, Applies To Mr. Randall's Notice ................. 5

        1.  Because The *Williams* Decision Rests On Statutory Interpretation, It
            Is Retroactive By Default........................................................................... 5

        2.  The SJC Already Signaled That Its Decision In *Williams* Applies
            Retroactively ............................................................................................. 8

        3.  Even If A Further Retroactivity Analysis Were Necessary, The
            *Williams* Decision Would Apply Retroactively....................................... 9

            a.  The Williams Decision Did Not Announce A "New Rule,"
                The Decision Was Entirely Foreseeable, And In Fact It Was
                Foreseen ...................................................................................... 9

            b.  Retroactive Application Of The *Williams* Decision Will
                Further The Statutory Purposes .................................................. 12

            c.  No Inequities Would Result From Retroactive Application Of
                The Holding ................................................................................ 12

    C.  Ally's Due Process Rights Are Not Implicated, As The UCC Is Not
        Unconstitutionally Vague ..................................................................................... 14

    D.  The Massachusetts Uniform Commercial Code Governs Randall's Claim.......... 15

        1.  The Choice of Law Provision In Randall's Contract Does Not
            Preclude His UCC Claim ......................................................................... 15

    E.  Ally Was Required To Send A Post-Repossession Notice To Mr. Randall ......... 19

V.  CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*,
  468 Mass. 109 (2014) ...............................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................3

*Bremer Bank Nat. Ass'n v. Matejcek*,
  916 N.W.2d 688 (Minn. App. 2018).........................................................................19

*Carey v. Gatehouse Media Massachusetts I, Inc.*,
  92 Mass. App. Ct. 801 (2018)....................................................................................6

*Caterpillar Fin. Servs. Corp. v. Wells*,
  651 A.2d 507 (N.J. Super. Law Div. 1994) .............................................................19

*Com. v. Dagley*,
  442 Mass. 713 (2004) ................................................................................................7

*Com. v. Ennis*,
  398 Mass. 170 (1986) ............................................................................................9, 10

*Computer Sales Int'l, Inc. v. Lycos, Inc.*,
  No. 05–10017–RWZ, 2006 WL 1896192 (D. Mass. July 11, 2006)......................16

*Dellorusso v. PNC Bank,*
  Case No. 1877-cv-01475, Mass. Super. Ct. (May 3, 2019)......................................8

*Dever v. Ward*,
  92 Mass. App. Ct. 175 (2017)..............................................................................8, 9

*Eaton v. FNMA*,
  462 Mass. 569 (2012) .................................................................................... *passim*

*Family Endowment Partners, L.P. v Sutow*,
  No. SUCV201501411BLS1, 2015 WL 9591316 (Mass. Sup. Ct. Nov. 16,
  2015) ........................................................................................................................16

*Hodas v. Morin*,
  442 Mass. 544 (2004) ..............................................................................................18

*Jacobson v. Mailboxes Etc. U.S.A., Inc.*,
  646 N.E.2d 741 (Mass. 1995)..................................................................................16

*Kitner v. CTW Transport, Inc.*,
  53 Mass. App. Ct. 741762 (2002) ........................................................................15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ...........................................................................................15

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ...........................................................................................14

*McDonald v. Wells Fargo Bank, N.A.*,
  338 F. Supp. 3d 458 (W.D. Pa. 2018) ................................................................16

*In re McIntire*,
  458 Mass. 257 (2010) ..........................................................................5, 6, 7, 10

*Melia v. Zenhire, Inc.*,
  462 Mass. 164 (2012) .........................................................................................16

*Mouradian v. General Elec. Co.*,
  23 Mass. App. Ct. 538 (1987) ..............................................................................6

*Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*,
  986 F.2d 607 (1st Cir. 1993) ..............................................................................17

*New England Tel. & Tel. Co. v. Gourdeau Const. Co., Inc.*,
  419 Mass. 658 (1995) .........................................................................................15

*Rose v. Locke*,
  423 U.S. 48 (1975) ..............................................................................................14

*Schrottman v. Barnicle*,
  386 Mass. 627 (1982) ...........................................................................................9

*Shawmut Worcester County Bank v. Miller*,
  398 Mass. 273 (1986) ...........................................................................................6

*Sodexo Operations, LLC. v. Abbe*,
  No. 19-11015-RWZ, 2019 WL 2330464 (D. Mass. May 31, 2019) .....................18

*State Mut. Life Assur. Co. of Am. v. Lumbermens Mut. Cas. Co.*,
  874 F. Supp. 451 (D. Mass. 1995) .....................................................................2, 9

*Tamerlane Corp. v. Warwick Ins. Co.*,
  412 Mass. 486 (1992) ...........................................................................................9

*United States v. Lachman*,
  387 F.3d 42 (1st Cir. 2004) .................................................................................14

*Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*,
    390 F. App'x 1 (1st Cir. 2010) ...................................................................................16, 17

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ...........................................................................................................14

*Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*,
    41 F. Supp. 2d 93 (D. Mass. 1999) ...............................................................................17

*Wallace v. Pinnacle Bank-Wyoming*,
    275 P.3d 1250 (Wyo. 2012) ............................................................................................20

*Williams v. Am. Honda Fin. Corp.*,
    479 Mass. 656 (2018) .............................................................................................. *passim*

*Williams v. Am. Honda Fin. Corp.*,
    907 F.3d 83 (1st Cir. 2018) ..........................................................................................1, 2

**Statutes**

M.G.L. c. 93A ...........................................................................................................15, 16, 17

RISA, M.G.L. c. 255B, § 20A ................................................................................................4

RISA, M.G.L. c. 255B, § 20B ................................................................................................4

RISA, M.G.L. c. 255B, § 20B(e)(1) ......................................................................................4

UCC, M.G.L. c. 106, § 1-301 ...............................................................................................15

UCC, M.G.L. c. 106, § 1-301(a) ...........................................................................................18

UCC, M.G.L. c. 106, § 9-610 ...............................................................................................19

UCC, M.G.L. c. 106, § 9-611 ...............................................................................................19

UCC, M.G.L. c. 106, § 9-613 ...............................................................................................19

UCC, M.G.L. c. 106, § 9-614 ..........................................................................................4, 10, 12, 19

UCC, M.G.L. c. 106, § 9-614(1) ............................................................................................4

UCC, M.G.L. c. 106, § 9-615 .................................................................................................4

**Rules**

Fed. R. Civ. P. 8(a) .................................................................................................................3

Fed. R. Civ. P. 12 .....................................................................................................................7

**Treatises**

Herbert Lemelman, Massachusetts Practice Series: Manual on Uniform
Commercial Code, 25A Mass. Prac. § 9:136 (3d ed.) ............................................................12

## I.      INTRODUCTION

Ally sent the Plaintiffs and other putative class members post-repossession notices that violate Massachusetts law in the exact same way that Honda's did in *Williams v. American Honda Finance Corp*. The notices misstate the borrower's deficiency liability because, contrary to Massachusetts law, they tell borrowers that their liability will be based on the car's sale proceeds rather than its fair market value. According to the SJC and First Circuit, post-repossession notices like Honda's (and Ally's) are "never sufficient" because they "plainly do not provide the necessary express description" of how the deficiency is calculated. *Williams v. Am. Honda Fin. Corp.*, 479 Mass. 656, 668 (2018), *Williams v. Am. Honda Fin. Corp.*, 907 F.3d 83, 87 (1st Cir. 2018).

*Williams* is based on the plain language of the relevant statutes. It did not overrule earlier precedent or conflict with other authority or established practice. Other creditors large and small have for years used notices that comply with *Williams'* reading of the statute's plain language. Ally did not It now asks this Court to excuse its non-compliance, claiming that the law should not apply equally to it, because *Williams* announced new law that should not be applied "retroactively." The Court should reject Ally's argument for multiple reasons.

First, under well-settled Massachusetts law, statutory interpretations like *Williams* are automatically applied both retroactively and prospectively. As the SJC has emphasized, an interpretation of a statutory provision reflects the meaning of the statute since its enactment. Because the *Williams* decision rested on statutory interpretation, no further retroactivity analysis is necessary in this case.

Second, the SJC already signaled that *Williams* applies retroactively. After the SJC issued its decision, Honda sought re-hearing on the issue of retroactivity, asking that the SJC apply its decision *only* prospectively. The SJC denied the re-hearing request. Moreover, '[w]hen the SJC

wishes to make a new common law rule merely prospective in effect, it says so." *State Mut. Life Assur. Co. of Am. v. Lumbermens Mut. Cas. Co.*, 874 F. Supp. 451, 459 (D. Mass. 1995). The fact that it did not do so in *Williams* confirms that its decision applies retroactively.

Third, even under the three-part retroactivity analysis applied to actual changes in the *common law*, the decision should be retroactive. The SJC's decision is not a "new rule," but is a plain text reading of a long-existing statute that other lenders properly understood and applied in their post-repossession notices; applying the ruling retroactively furthers the consumer protection goals of the statute; and Ally has failed to identify any tangible inequities or hardships flowing from application of *Williams* retroactively.

Similarly unavailing is Ally's claim that retroactive application of *Williams* would violate its due process rights because the UCC is, it argues, unconstitutionally vague.[1] But, a void-for-vagueness attack on a non-criminal statute requires demonstrating that the statute is so vague that a person must guess at its meaning. Under First Circuit precedent, if the statute is susceptible of the construction given by a court, it cannot fail under a void-for-vagueness analysis. Ally cannot credibly claim that the statute was unconstitutionally vague when other lenders were sending compliant notices well before *Williams*.

Finally, Ally seeks dismissal of Mr. Randall's, but not Ms. White's, UCC claim on two additional grounds. First, it claims that a choice-of-law provision in his sales agreement requires application of Vermont law. But that provision, which applies only to "the contract," is too narrow under relevant case law to encompass statutory claims. Second, Ally argues that under the UCC, it was not required to send a pre-sale notice because it did not sell yet Mr. Randall's

---

[1] American Honda made this same argument. The First Circuit rejected it as waived. *Williams*, 907 F.3d at 87.

vehicle. But, that argument is foreclosed by the SJC's decision in *Williams* and the text of the UCC, which require said notices *before* the disposition of collateral.

Ally's partial Motion To Dismiss and to strike class allegations should be denied in its entirety.

## II.     BACKGROUND

On March 16, 2017, Mr. Randall entered into a retail installment sales agreement (the "Agreement") with Bennington Subaru for the purchase of a motor vehicle (the "Randall Vehicle"). *See* ECF # 18-1, Randall Retail Installment Agreement. On the same day, Bennington Subaru assigned the Agreement to Ally. *Id.* at p. 1. On October 26, 2017, Ally repossessed the Randall Vehicle. Second Amended Complaint, ECF # 33 ("Compl."), ¶ 9. Shortly thereafter, on October 30, 2017, Ally sent Mr. Randall a notice (the "Randall Repossession Notice" and together with the White Repossession Notice, the "Repossession Notices") advising him of the repossession and of its intent to sell the vehicle. *See* Compl., Exhibit A, Repossession Notice.

On May 13, 2016, Ms. White entered into a loan agreement with Ally for the purchase of a motor vehicle (the "White Vehicle"). Compl., ¶ 13. Ally repossessed the White Vehicle on or around October 31, 2018. In November 2018, Ally sent Ms. White a notice (the "White Repossession Notice") advising her of the repossession and of its intent to sell the vehicle. Compl., Exhibit B, the Repossession Notice. White's Vehicle was sold on December 11, 2018.

## III.    STANDARD OF REVIEW

Fed. R. Civ. P. 8(a) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss should be denied if a plaintiff has shown a "plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery

will reveal evidence of [a cause of action]." *Id*. at 556.

## IV.   ARGUMENT

### A.   A Post-Repossession Notice Must Inform The Consumer That Her Potential Deficiency Liability Is The Difference Between Her Loan Balance And The *Fair Market Value Of Her Car*; Ally's Plainly Did Not

The UCC "generally govern[s] defaults in secured transactions." *Williams*, 479 Mass. at 668. After the repossession of collateral but before its sale, a lender must send the consumer a written notice containing critical information regarding the process, including a "description of any liability for a deficiency of the person to which the notification is sent." UCC § 9-614(1). Under the standard UCC provision, deficiencies are generally calculated using the proceeds of a "commercially reasonable" sale. UCC § 9-615.

But transactions governed by the Retail Installment Sales Act, like these here, are governed by a different standard. With respect to repossessed cars, M.G.L. c. 255B, §§ 20B, 20A (hereinafter, "RISA") requires creditors to apply the *fair market value* of the vehicle when calculating a deficiency, providing an additional protection for Massachusetts consumers. RISA § 20B(e)(1) (creditor entitled to deficiency, if any, "resulting from deducting the fair market value of the collateral from the unpaid balance due").

RISA also makes clear how these two laws are to be read together: it "provides that the Uniform Commercial Code applies 'unless displaced by the provisions of [§ 20B] and [§ 20A].'" *Williams*, 479 Mass. at 668, M.G.L. c. 255B, § 20B. RISA's deficiency formula for auto loans displaces the more general UCC formula. Auto lenders thus must use the fair market value when calculating a deficiency after repossession; they cannot use the UCC sale proceeds. And in turn, a notice sent under UCC, M.G.L. c. 106, § 9-614 must inform the debtor that any loan deficiency will be based on the *fair market value of the vehicle*, and not just the amount that the creditor receives from a sale. *Williams*, 479 Mass. at 668 (UCC notice must explain fair market value will

be used to calculate deficiency).

*Williams* confirmed that the words in RISA mean what they say: "We conclude that the notice that is required by the Uniform Commercial Code is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." *Id*.

Ally's notices are "plainly insufficient," because, like Honda's, they described the deficiency as based on the sale proceeds, not the fair market value. *See* Compl., Exhs. A, B. The notices do not reflect any attempt to comply with RISA's key protection against unfairly low post-repossession credits, which has existed for decades. Instead they simply ignore it.

**B.     The *Williams* Decision, And RISA, Applies To Mr. Randall's Notice**

**1.     Because The *Williams* Decision Rests On Statutory Interpretation, It Is Retroactive By Default**

Under a long line of SJC authority, generally "changes in the *common law* brought about by judicial decisions are given retroactive effect." *In re McIntire*, 458 Mass. 257, 260 (2010) (citation omitted) (emphasis added). But, "[w]here a decision does not announce new common-law rules or rights but rather *construes a statute*, no analysis of retroactive or prospective effect is required because at issue is the meaning of the statute since its enactment." *Id*. at 261 (emphasis added).

For example, in *In re McIntire*, the court considered whether to apply its decision in *Johnstone*, 453 Mass. 544 (2009), retroactively. *Id*. at 260. In *Johnstone* the SJC held that in discharge proceedings for sexually dangerous persons, the Commonwealth could not meet its burden of proof if the two examiners required by the statute concluded that the petitioner was no longer sexually dangerous, even though there was no such explicit requirement in the statute. The SJC noted that "[t]he question in *Johnstone* was purely one of statutory interpretation" and

"represent[ed] the first time [the SJC] considered [the question] directly and resolved it." *Id*. at 261-62. But, "[t]he fact that the question had not been answered before […] does not mean that it represented a 'new' interpretation." Instead, the law "had the same meaning since the effective date of the statute[]." *Id*. at 262. (citation omitted). Accordingly, the *McIntire* court refused to limit *Johnstone's* interpretation of the statute to only prospective application. *Id*.

Similarly, in *Shawmut Worcester County Bank v. Miller*, 398 Mass. 273, 281 (1986), the bank brought suit against guarantors to recover a deficiency after the sale of collateral. *Id*. at 274. The SJC considered whether guarantors were "debtors" under the UCC and therefore had the same rights to challenge the commercial reasonableness of the sale. *Id*. at 277. The court held that they were. *Id*. The bank objected to retroactive application of a ruling in favor of the guarantors, because of feared "disruptions in established commercial practice." *Id*. at 281.

The SJC disagreed, reasoning that: "There is nothing in the record to show any such established commercial practice. More importantly, although this court has not previously dealt with the issues raised here, we are not announcing common law rules but rather are construing certain statutory provisions. Those provisions have had the same meaning since the effective date of the statutes." *Id*. (citations omitted, emphasis added). The SJC refused to limit its interpretation as it did in *Miller*.[2]

---

[2] S*ee also Mouradian v. General Elec. Co.*, 23 Mass. App. Ct. 538, 542 n.3 (1987) ( "retroactivity analysis [wa]s unnecessary" because basis of holding was a statutory interpretation because" [i]f an interpretative rule is merely an interpretation of a statute, and if the meaning of the statute has been there from the time of its original enactment, then no problem of a retroactive interpretive rule can arise, for either the interpretative rule expresses the true meaning of the statute or it does not; if it does, then that is what the statute has always meant and the rule has not changed the law....") (quoting 1 Davis, Administrative Law Treatise § 5.09 (1958)); *Carey v. Gatehouse Media Massachusetts I, Inc.*, 92 Mass. App. Ct. 801, 812–13 (2018) (rejecting request for relief from judgment due to purported change in governing law, reasoning that "[t]he FAAAA has had the same meaning since the moment of its enactment in

As in each of these cases, *Williams* construed the meaning of statutory provisions that have had the same meaning since their enactment; it did not announce new common law rules. As such it applies retroactively.[3]

Ally's motion largely sidesteps this binding authority. Yet even the cases it primarily relies upon do not support limiting *Williams*.

For example, in *Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*, 468 Mass. 109, 120 (2014), the court allowed retroactive application of an interpretation of Rule 12 that a party who raises a lack of personal jurisdiction in an answer and then fails to pursue the defense may be found to have waived it. Even though the decision would result in a possible waiver of a case-altering defense, the court concluded that there was no reason to disturb the "presumptively retroactive application of the interpretation" of the Rule. *Id.* at 298.

*Eaton v. FNMA*, 462 Mass. 569 (2012), is similarly unhelpful. It involved a new interpretation of the term "mortgagee" under the foreclosure statute. *Id.* at 588. The ruling represented a change that threatened to "wreak havoc with the operation and integrity of the title

---

1994, even if that meaning was not declared in a binding manner for First Circuit and Massachusetts purposes until the *Schwann*, *Massachusetts Delivery Assn.*, and *Chambers* decisions in 2016").

[3] Ally refers to language quoted in *Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*, 468 Mass. 109, 120 (2014) from a footnote in *Com. v. Dagley*, 442 Mass. 713, 721, n. 10 (2004), that said :"When announcing a new common-law rule, *a new interpretation of a State statute*, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively." *See* Ally's Memo., 6. But, as the SJC explained in *In re*: *McIntire*: "The language at issue in the *Dagley* case was making the point that, depending on whether a new rule announced in a case is constitutionally required, principles of retroactivity operate differently, and the footnote sought to offer some illustrations of instances where new rules are not constitutionally based. The *Dagley* case itself did not deal with a statute; we take the reference to a 'new interpretation of a State statute' as an illustration of a point, and nothing more." 458 Mass. 257, at 262 n.7. Thus, the general rule remains unchanged: an interpretation of a statute applies retroactively.

recording and registration systems by calling into question the validity of any title that has a foreclosure sale in the title chain." *Id.* at 586. These "exceptional circumstances" justified departing from the general rule that decisions apply retroactively. *Dever v. Ward*, 92 Mass. App. Ct. 175 (2017). No such circumstances are even remotely suggested here, a case in which no chains of title are implicated.

*Dellorusso v. PNC Bank,* Case No. 1877-cv-01475, Mass. Super. Ct. (May 3, 2019) which Ally relies on extensively is a non-precedential, unreported trial court ruling. In addition, *Dellorusso* did not apply the above-cited SJC precedent regarding the retroactivity of statutory interpretations; instead it applied the inapposite retroactivity test applicable to new *common law* rules.[4]

### 2.    The SJC Already Signaled That Its Decision In *Williams* Applies Retroactively

Following the SJC's decision, in a petition for rehearing, the defendant in *Williams* requested that the SJC do precisely what Ally now asks the Court to do: apply its ruling only prospectively. *See* Exhibit A, Petition For Rehearing. Specifically, like Ally, Honda argued that: (i) the rule is an "unquestionably novel" new rule, (ii) that retroactive application of the rule would not further it, and (iii) that retroactive application would cause hardships and inequities due to its reliance on the "safe harbor" provision of the UCC. *Id.*

Faced with arguments that mirror Ally's exactly, the SJC declined to limit its *Williams* holding to prospective application. Exhibit B, Order Denying Petition For Rehearing. By denying the Petition For Rehearing, the SJC signaled that its decision applied retroactively.[5]

Moreover, the *Williams* decision itself signifies the SJC's intention that its decision apply

---

[4] The plaintiff in *Dellorusso* is appealing the decision.
[5] The *Dellorusso* court appears not to have considered this key point in reaching its decision, another reason it should not be followed.

retroactively. "When the SJC wishes to make a new common law rule merely prospective in effect, it says so." *State Mut. Life Assur. Co. of Am. v. Lumbermens Mut. Cas. Co.*, 874 F. Supp. 451, 459 (D. Mass. 1995), citing *Johnson Controls, Inc. v. Bowes,* 381 Mass. 278, 282–83 & n. 4 (1980) (announcing that ruling only applied prospectively); *Tamerlane Corp. v. Warwick Ins. Co.*, 412 Mass. 486, 489 (1992) (same). Here, the SJC did not announce that *Williams* should be applied as Ally suggests.

### 3. Even If A Further Retroactivity Analysis Were Necessary, The *Williams* Decision Would Apply Retroactively

"Decisional law is generally applied 'retroactively' to past events." *Schrottman v. Barnicle,* 386 Mass. 627, 631 (1982) (citation omitted). The "retroactive application of decisional law provides the necessary incentive to those aggrieved to press for change and improvement in law, and is consistent with the institutional duty of courts to resolve disputes brought before them." *Id.*

But, "in **exceptional circumstances**, when determining whether a new rule arising from decisional law should apply [only] prospectively, [courts] look at three factors: (1) whether a new principle has been established whose resolution was not clearly foreshadowed; (2) whether retroactive application will further the rule; and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity." *Dever v. Ward*, *supra* (citation and internal quotations omitted) (emphasis added). Even were that test applicable here, all three factors militate in favor of retroactive application.

### a. The Williams Decision Did Not Announce A "New Rule," The Decision Was Entirely Foreseeable, And In Fact It Was Foreseen

The threshold retroactivity question is "whether the opinion announced a 'new rule.'" *Com. v. Ennis*, 398 Mass. 170, 173 (1986). To be considered "new," a rule "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ...

or by deciding an issue of first impression whose resolution was not clearly foreshadowed...." *Id*. (citations omitted). "For a decision to be applied only prospectively, it must represent 'a clear break with the past' and a question of nonretroactive application of a decision is not presented unless it 'constitute[s] a sharp break in the line of earlier authority or an avulsive change which causes the current of the law thereafter to flow between new banks.'" *Id*. (citation omitted).

Here, *Williams* did not establish a "new" rule. Prior to the SJC's decision, there was only one decision that addressed the precise question before the SJC – the *Williams* lower court decision, which was immediately appealed (before Mr. White's notice was sent). There were no Superior Court or Appeals Court decisions addressing the issue before the SJC did so. And, simply because the SJC addressed the issue for the first time does not make the ruling in *Williams* "new." *See In re McIntire*, *supra*, at 262 ("[t]he fact that the question had not been answered before […] does not mean that it represented a 'new' interpretation").

There was no body of decisional law or other authority on which Ally could have relied to its detriment. Ally's suggestion that the "safe harbor" form notice authorized it to ignore Massachusetts law and send notices that misstated borrowers' rights is misplaced. Official Comment 3 to UCC § 9-614 provides that a "safe-harbor" form notice is sufficient only if it is "properly completed." Ally's was not. And RISA's express provisions explain to Ally and others how the UCC and RISA must work together. Simply ignoring an entire statute is not "follow[ing] in good faith a different interpretation." *Eaton,* 462 Mass. at 588.

Nor can Ally claim that it could not have anticipated the ruling. The *Williams* decision is not complex: it is the logical result of comparing RISA's plain text (which displaces all contrary provisions in the UCC) and the UCC's express pre-sale notice requirements (which contain provisions that are contrary to RISA). The SJC dispensed with the entire question in a few

paragraphs. Ally—one of the nation's largest auto lenders with no doubt a strong team of experienced legal counsel—cannot credibly contend that it was blindsided. And it offers no evidence to support such a claim.

Moreover, numerous other lenders read the UCC the same way as *Williams*, as they used compliant post-repossession or post-sale notices before the SJC's June 2018 decision with accurate deficiency calculations. This included other major lenders like JP Morgan Chase, WFS Financial and Exeter Finance and smaller lenders like Rockland Federal Credit Union. See Exhibit C, JP Morgan Chase, Repossession Notice, June 9, 2017 ("[s]tate law requires we apply the greater of actual sales proceeds and the Vehicle's fair market value to reduce (or cancel in some cases) your obligation"); Exhibit D, Rockland Federal Credit Union, Repossession Notice, Feb. 6, 2018 ("should the collateral be sold by the Rockland Federal Credit Union, you may be held liable for the payment of any unpaid balance plus repossession and storage costs (after applying the fair market value of the collateral to your loan balance"); see also Exhibit E, Exeter Finance, Post-Sale Notice, Jan. 27, 2017 (deficiency calculated by subtracting the "[h]igher of (a) gross proceeds from the sale of the Vehicle or (b) fair market value of Vehicle" from net balance due); Exhibit F, WFS Financial, Repossession Notice, Feb. 13, 2007 ("we may proceed against you for any deficiency balance that may exist after applying the fair market value of the vehicle"); Exhibit G, Wells Fargo, Repossession Notice, Oct. 26, 2016 (same); see also Exhibit H, Brookline Bank, Post-Sale Notice, Feb. 4, 2010 (applying fair market value in calculating deficiency).

Given that the SJC did not announce a "new" rule, any retroactivity analysis ends there. But, even if it did, the rule was foreseeable, as evidenced by other lenders' compliance.

**b.      Retroactive Application Of The *Williams* Decision Will Further The Statutory Purposes**

"[Sections] 9-614 and 9-616 continue the expansion of consumer oriented rules in the Code. [...] The thrust of these uniform provisions is to advance the notion of communications to the debtor, which are informative and helpful, as well as consumer friendly, in consumer dispositions." *See* Herbert Lemelman, Massachusetts Practice Series: Manual on Uniform Commercial Code, 25A Mass. Prac. § 9:136 (3d ed.).

The upshot of *Williams* is a confirmation that a lender's notice sent under UCC § 9-614 must inform the debtor that the deficiency will be calculated based on the fair market value of the vehicle and not what a lender may fetch for it at a dealer auction or other sale. Contrary to the *Dellorusso* court's unsupported suggestion that this information is not important, this is vital information for a debtor weighing her options after a repossession, as gauging the size of the potential amount of post-repossession debt is key for deciding whether to redeem or surrender a vehicle. Therefore, applying the *Williams* decision retroactively and holding lenders accountable furthers the consumer protections contained in the UCC.

**c.      No Inequities Would Result From Retroactive Application Of The Holding**

In its motion, Ally fails to identify a single, tangible inequity or hardship that would flow from applying *Williams* to its notices. Instead, Ally claims that it would be inequitable to apply *Williams* retroactively because, at the time it sent the Plaintiffs their notices, Ally was "rel[ying] on existing precedent to insulate [itself] from liability." Ally Memo., 7-8. Specifically, Ally identifies the *Williams'* trial court's February 2016 decision as the "only precedent available" when it issued the Plaintiffs' notices. *Id*. But at the time it sent Randall's notice, *Williams* was on appeal and questions had been certified to the SJC. At the time it sent White's notice, *Williams* had been decided by the SJC.

Next, Ally claims that *Williams* should not apply retroactively because it "affects property rights." Ally Memo., 7-8. This argument, which relies on *Eaton v. FNMA*, 462 Mass. 569 discussed above, is factually and legally wrong. In *Eaton*, the SJC's change to the interpretation of the term "mortgagee" under a Massachusetts statute meant that a mortgagee must hold both the mortgage <u>and</u> the note in order to effectuate a foreclosure. *Id*. at 588. Prior to its decision, lenders and attorneys had relied on an interpretation of "mortgagee" that instead "require[d] the mortgagee to hold only the mortgage, and not the note, in order to effect a valid foreclosure by sale." *Id.* at 588. The SJC was warned that, if applied retroactively, the decision would "wreak havoc" on the title recording and registration systems. *Id*. at 586.

The SJC noted in *Eaton* that "when [it] construe[s] a statute, [it] do[es] not engage in an analysis whether that interpretation is given retroactive or prospective effect; the interpretation [it] give[s] the statute usually reflects the court's view of its meaning since the statute's enactment." *Id*. at 587. But, acknowledging that retroactive application would upend the Commonwealth's entire property recording system, the SJC decided to apply its decision <u>only</u> prospectively, citing the "significant difficulties in ascertaining the validity of a particular title if the interpretation of 'mortgagee' that we adopt here is not limited to prospective operation, because of the fact that our recording system has never required mortgage notes to be recorded." *Id.*

The holding and reasoning from *Eaton* is not applicable here. Applying *Williams* retroactively would not upend the entire auto-loan market by calling into question the validity of any prior repossessions. Nor would it affect any dispositions of, or ownership interests in, any vehicles. Instead, retroactive application of *Williams* would only further the purpose of the statute by holding lenders accountable for misleading consumers on how the deficiency on their

loan would be calculated. *Eaton* represents an extraordinary exception to the general rule that statutory interpretations apply retroactively.

### C.    Ally's Due Process Rights Are Not Implicated, As the UCC Is Not Unconstitutionally Vague

Ally contends that the retroactive application of *Williams* would violate Ally's due process rights, because it argues the UCC is unconstitutionally vague. Ally is incorrect.

Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). But, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.*

Moreover, "[t]he mere fact that a statute or regulation requires interpretation does not render it unconstitutionally vague." *United States v. Lachman*, 387 F.3d 42, 56–57 (1st Cir. 2004). Many statutes require some interpretation. *Rose v. Locke*, 423 U.S. 48, 49–50 (1975). Where a non-criminal statute is "reasonably susceptible to the construction" a court adopts, it is not void for vagueness. *Id.* at 57.

Here, there is no question that the UCC was "reasonably susceptible" to the construction the SJC adopted in *Williams*. As detailed above, the *Williams* decision rests on a relatively simple comparison between the RISA and the UCC. *See, supra*, pgs. 4-6. Moreover, other lenders sent compliant notices <u>before</u> *Williams* was decided in June 2018. In short, given that the

14

UCC was "reasonably susceptible to the construction" adopted by the SJC in *Williams*, its

application to this case does not violate Ally's due process rights.

### D.     The Massachusetts Uniform Commercial Code Governs Randall's Claim

#### 1.     The Choice of Law Provision In Randall's Contract Does Not Preclude His UCC Claim

Ally seeks dismissal of Plaintiff Randall's claim on grounds that the Vermont choice of

law provision contained in his loan agreement applies to his UCC statutory claim. This argument

fails because the choice of law provision is too narrow to encompass statutory claims.

In diversity cases, courts determine conflict of law issues by applying the law of the

forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941). "A court […]

will follow a statutory directive of its own state on choice of law." *New England Tel. & Tel. Co.*

*v. Gourdeau Const. Co., Inc.*, 419 Mass. 658, 663 (1995) (citation omitted).

The Massachusetts Appeals Court's decision in *Kitner v. CTW Transport, Inc.* forecloses

Ally's position.  In *Kitner*, the plaintiff brought suit for breach of a conditional sales and security

contract, misrepresentation, and violation of M.G.L. c. 93A.  53 Mass. App. Ct. 741762 (2002).

The parties' contract provided that North Dakota law "govern[ed] the identity, construction,

enforcement, and interpretation" of the contract. *Id*. at 745.  On appeal, the defendant contended

that the trial court erred in applying Massachusetts law to its conduct because, read together, the

parties' North Dakota choice-of-law provision and the UCC's choice-of-law rules at M.G.L. c.

106, § 1-301 required application of North Dakota law.  *Id*. at 745.

The Appeals Court disagreed, holding that "[t]he language in the [parties'] contract as to

choice of law [wa]s expressly self-limiting," and that "[t]he language d[id] not indicate that

North Dakota law would also cover tortious conduct or unfair acts inducing a breach of the

contract." *Id*. at 746.  Accordingly, because the plaintiff's statutory claim under M.G.L. c. 93A

did not sound in "entirely in contract," the trial court correctly applied Massachusetts law.  *Id*. at 746-47.

The *Kitner* decision is in accord with numerous decisions from the SJC, First Circuit, other Massachusetts courts, and other jurisdictions which have held that a narrow choice-of-law provision applying a particular state's laws to "the contract" or "the agreement" is not broad enough to encompass statutory claims.  *See Melia v. Zenhire, Inc.,* 462 Mass. 164, 175 (2012) (contract providing that "*this agreement shall be governed* and construed in accordance with the laws of the State of New York" did not encompass statutory claims because it "ma[de] no reference to statutory causes of action (emphasis added); *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 646 N.E.2d 741, 746 n.9 (Mass. 1995) (where a contract "[did] not state that the rights of the parties [we]re to be governed by California law but only that the agreement is to be governed and construed by California law," language did not encompass statutory claim under M.G.L. c. 93A); *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 390 F. App'x 1, 1-2 (1st Cir. 2010) (choice of law provision providing that "Massachusetts law exclusively shall govern all terms of this Agreement, including this paragraph" did not encompass statutory claims).[6]

---

[6] *See also Computer Sales Int'l, Inc. v. Lycos, Inc.*, No. 05–10017–RWZ, 2006 WL 1896192  (D. Mass. July 11, 2006) ("Massachusetts courts have tended to interpret contractual choice-of-law provisions more narrowly than other states' courts…"); *Family Endowment Partners, L.P. v  Sutow*, No. SUCV201501411BLS1, 2015 WL 9591316, at *4 (Mass. Sup. Ct. Nov. 16, 2015) (choice of law provision requiring application of Massachusetts law with respect to "construing and enforcing the terms of the Agreement" did not encompass Pennsylvania statutory claims, whereas broader language in arbitration clause that applied to "any dispute [or] claim" that was "related to" the Agreement did); *McDonald v. Wells Fargo Bank, N.A.*, 338 F. Supp. 3d 458, 465 (W.D. Pa. 2018) (where parties signed financing agreement providing "[f]ederal law and the law of the state of our address shown on the front of this contract [i.e., Ohio] apply to this contract," choice of law provision did not encompass the plaintiff's UCC claims because the provision was too narrow to reflect an intent by the parties to apply Ohio law to statutory claims").

Here, Ally contends that the choice-of-law provision in Randall's agreement—that "Federal law and the law of the state of [the seller's] address shown on the front of this contract [i.e., Vermont] apply to ***this contract***"[7]—means that Vermont law applies to his statutory claim. But, as *Kitner* and the other foregoing authority make clear, where a choice of law provision applies to "this agreement" or "this contract," it does not cover statutory claims.

Ally's reliance on this Court's decision in *Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.* is misplaced. In *Vision Graphics*, the parties entered into agreements for the purchase and lease of various computer systems subject to a choice of law provision that indicated: "THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE." 41 F. Supp. 2d 93, 97 (D. Mass. 1999). Consistent with Massachusetts law, this Court applied Delaware law to all "contract-related" claims, including a claim under Delaware's UCC for breach of the implied warranty of merchantability. *Id.* at 97-100. That claim relied on an alleged breach of the seller's obligations under the parties' contract by delivering defective products, and a related disclaimer contained within the contract. *Id.* at 98.

Ally leaps from this decision to contend that a narrow choice of law provision can stretch to cover a statutory claim, and that the Court should do so here. Ally is half right – as the First Circuit has ruled, a choice of law provision that applies solely to contractual claims can encompass a statutory claim if the statutory claim is an "embroidered 'breach of contract' claim[]." *Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609 (1st Cir. 1993) (breach of implied covenant claims are breach of contract claims). But, that is an exception that applies only when "contract violations" are "essential elements" of the statutory

---

[7] ECF # 1-2, p. 2, § 7 (emphasis added).

claim. *Id*. Indeed, in *Vision Graphics*, after applying Delaware law to the contract-related claims, this Court applied Massachusetts law to the plaintiff's claim under Chapter 93A, as that claim did not depend on contract violations. 41 F. Supp. 2d at 101.

In this case, Mr. Randall's UCC claim is not an "embroidered" breach of contract claim, as it does not depend on any contractual term or breach. Instead, the claim arises exclusively under the UCC's post-repossession, pre-sale notice requirements. Thus, the choice of law provision does not apply.

Given the absence of a choice of law provision covering statutory claims, Massachusetts choice of law rules dictate that the Court apply "the law of the state with the most significant relationship to the transaction and the parties." *Sodexo Operations, LLC. v. Abbe*, No. 19-11015-RWZ, 2019 WL 2330464, at *2 (D. Mass. May 31, 2019) M.G.L. c. 106, § 1-301(a).[8] Here, the focal point of the lawsuit is the legality of a post-repossession notice Ally sent to Mr. Randall. Compl., ¶¶ 10-12. Massachusetts has a significant relationship to this dispute, as Mr. Randall is a resident of Massachusetts, the repossession that led to the post-repossession notice process took place in Massachusetts, and Ally sent the repossession notice to Randall's Massachusetts address. Compl., ¶ 1, Exh. A. On the other hand, Vermont's entire relationship to this dispute is Mr. Randall's purchase of a vehicle from a car dealer in its state, a dealer who is not a party and was not involved in the repossession. Mr. Randall's claim bears no relationship to the sale by that Vermont dealership – only to the post-repossession actions taken by Ally, which is headquartered in Detroit, Michigan. Therefore, because Massachusetts has a more substantial interest in the outcome of this dispute than does Vermont, Massachusetts law applies to

---

[8] Massachusetts "look[s] to [] established 'functional' choice of law principles and to the Restatement (Second) of Conflict of Laws, with which those principles generally are in accord." *Hodas v. Morin*, 442 Mass. 544, 549 (2004) (citation omitted).

Randall's statutory claim.

### E.     Ally Was Required To Send A Post-Repossession Notice To Mr. Randall

Ally asserts that post-repossession notices under UCC, § 9-614 are not required if the vehicle has not yet sold by the lender. This position makes little sense and is foreclosed both by the *Williams* decision and the plain text and purpose of the UCC's notice provision.

UCC, § 9-610 provides that, "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the [consumer's] collateral." In turn, UCC, § 9-611, entitled "Notification Before Disposition Of Collateral," requires "reasonable authenticated notification of disposition." UCC §§ 9-613 and 9-614 dictate the content of the pre-sale notice. Finally, as the SJC unequivocally held in *Williams*, "General Laws c. 106, § 9–614, requires that notice be given to a debtor **prior to the disposition** of repossessed collateral." 479 Mass. at 668 (emphasis added). Given the plain text of the statute and the SJC's binding ruling on this issue, that ends the inquiry.

The purpose of the notice provision "is to allow the debtor sufficient time to take appropriate steps to protect his interests *before* the final disposition" and to prevent a sale of the collateral "at less than its true value." *Caterpillar Fin. Servs. Corp. v. Wells*, 651 A.2d 507, 520 (N.J. Super. Law Div. 1994) (emphasis added). A consumer cannot protect her interest "before the final disposition" if she does not receive notice until *after* disposition.

In support of its argument, Ally cites two cases. But, in each, the respective court found that the lender had no responsibility to send a pre-sale notice because it released its lien before the property was disposed of by a third party, meaning the UCC did not apply to the party.[9]

---

[9] *See Bremer Bank Nat. Ass'n v. Matejcek*, 916 N.W.2d 688, 693, 696-97 (Minn. App. 2018) (under UCC "[a] debtor's rights include notice **before disposition** of collateral…" but defendant bank had no such obligations under because the debtor, not the bank, transferred her interest in

Contrary to Ally's contention, the UCC does not provide an exemption from sending a pre-sale notice if a sale has not yet taken place. That is because the entire purpose of the notice provision is to put the debtor on equal footing with the creditor with respect to understanding the value of the debtor's collateral, the effect of a disposition, and the calculation of any remaining deficiency on the original loan prior to any disposition. This is crucial information in order for a debtor to make an informed choice on whether to redeem or surrender his or her collateral. And, as the SJC indicated in *Williams*, a notice containing this information is required <u>before</u> disposition of the collateral.

## V.    CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss should be denied in its entirety.

Dated: July 29, 2019

<div style="margin-left:40%">

Respectfully submitted,

JAMES RANDALL,
GRACIE WHITE.
By their attorneys,

*/s/ Elizabeth Ryan*
Elizabeth Ryan (BBO No. 549632)
John Roddy (BBO No. 424240)
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
eryan@baileyglasser.com
jroddy@baileyglasser.com

</div>

---

the motorhome; defendant bank only released its lien, it had not engaged in the process of disposing of the collateral and thus the UCC's provisions did not apply) (emphasis added); *Wallace v. Pinnacle Bank-Wyoming*, 275 P.3d 1250, 1256 (Wyo. 2012) (UCC did not apply to bank because it released lien before the debtor defaulted on the loan and the collateral was sold).

Raven Moeslinger (BBO No. 687956)
Nicholas F. Ortiz (BBO No. 655135)
Law Office of Nicholas F. Ortiz, P.C.
99 High Street, Suite 304
Boston, MA 02110
(617) 338-9400
rm@mass-legal.com

## CERTIFICATE OF SERVICE

I, Elizabeth Ryan, hereby certify that today I caused to be served the within on counsel for the defendant via ECF service.

/s/ Elizabeth Ryan