**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JAMES RANDALL, and GRACIE WHITE f/k/a GRACIE DORNEUS Individually and on behalf of persons similarly situated | § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-30143-MGM |
| | § | |
| ALLY FINANCIAL INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**ALLY FINANCIAL INC.'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO STRIKE
<u>CLASS ALLEGATIONS</u>**

# TABLE OF CONTENTS

**Page**

I.   Introduction...............................................................................................................1

II.  Argument ..................................................................................................................2

    A.   Because the Pre-*Williams* Notice Complied With The MCC, The Court
    Should Dismiss Randall's Claim And Strike The Pre-*Williams* Class
    Allegations .......................................................................................................2

        1.   *Dellorusso* Correctly Found That *Williams* Should Apply Only
        Prospectively.............................................................................3

        2.   The SJC Has Not "Signaled" That *Williams* Applies Retroactively...........6

        3.   Applying *Williams* Retroactively Would Violate Due Process ..................6

    B.   Randall's Claim Should Be Dismissed Because The MCC Compels
    Application Of Vermont Law To His Claim .........................................................7

    C.   Randall Cannot State A Claim Under The MCC Because The Vehicle Was
    Not Sold .........................................................................................................9

III. Conclusion ..............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG,*
   468 Mass. 109 (2014) ............................................................................2

*Bremer Bank Nat. Ass'n v. Matejcek,*
   916 N.W.2d 688 (Minn. App. 2018)................................................9, 10

*Chulsky v. First Niagara Bank,*
   No. MID-L-0107700-14 (N.J. Super. Feb. 23, 2016) ............................10

*Com v. Dagley,*
   442 Mass. 713 (2004) ............................................................................2

*Dellorusso v. PNC Bank,*
   No. 1877-cv-01475 (Mass. Super. May 3, 2019) ........................ *passim*

*Easthampton Sav. Bank v. City of Springfield,*
   736 F.3d 46 (1st Cir. 2013)....................................................................3

*Eaton v. Fed Nat'l Mortg. Ass'n,*
   462 Mass. 569 (2012) ............................................................................2

*Kittner v. CTW Transp., Inc. ,*
   762 N.E.2d 867 (Mass. App. 2002) ......................................................7

*Scott v. Vanderbilt Mortg. & Fin., Inc.,*
   2007 WL 2343681, No. 3:07-cv-0512-RLE (M.D. Tenn. Aug. 13, 2007)................................8

*U.S. v. Zhen Zhou Wu,*
   711 F.3d 1 (1st Cir. 2013)......................................................................6

*Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.,*
   41 F. Supp. 2d 93 (D. Mass. 1999) ......................................................8

*Wallace v. Pinnacle Bank-Wyo.,*
   275 P.3d 1250 (Wyo. 2012)....................................................................9

*Williams v. Amer. Honda Fin. Corp.,*
   No. 1:14-cv-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016).........................3

*Williams v. Amer. Honda Fin. Corp.,*
   858 F.3d 700 (1st Cir. 2017)..................................................................3

*Williams v. Amer. Honda Fin. Corp.,*
  479 Mass. 656 (2018) ...........................................................................................3

*Williams v. Amer. Honda Fin. Corp.,*
  907 F.3d 83 (1st Cir. 2018)...................................................................................3

## Statutes

M.G.L. ch. 106, § 1-301(a) ...........................................................................................7

M.G.L. ch. 106, § 9-614(3)...........................................................................................5

## I.      INTRODUCTION

The Court should strike Plaintiffs' class allegations relating to conduct before June 5, 2018 (the day *Williams v. American Honda Finance Corporation* was decided by the SJC).   As the Massachusetts Superior Court has already held in *Dellorusso*, *Williams* applies only prospectively. While Plaintiffs attempt to undermine *Dellorusso*, they fail to articulate any persuasive basis for this Court to reach a different result here.   Ally's notice directly quoted the MCC's safe harbor language which, until *Williams*, expressly protected lenders from liability.   *Williams* created new law and rewrote the safe harbor.   To apply that decision retroactively would be manifestly unjust to lenders, like Ally, who relied in good faith on the prior statutory language.   Plaintiffs essentially argue that a new statutory interpretation must always be given retroactive effect, but that is not the law, and *Dellorusso* correctly found that prospective-only application of *Williams* is appropriate.

Randall's MCC claim also must be dismissed because he agreed that Vermont—not Massachusetts—law would govern his transaction with Ally.   And the MCC expressly provides that it does not apply to transactions in which the parties select the law of another state.   Plaintiffs cite inapposite cases dealing with non-MCC claims and applying a non-MCC choice of law analysis.   None of these authorities are availing, and none counsel against applying the parties' choice of law to preclude Randall's claim.

Finally, Randall's claim necessarily fails because the MCC notice provisions he seeks to enforce apply only when collateral is actually sold.   Randall's vehicle was never sold.   Plaintiffs do not contest the fact that Randall's vehicle was not sold, nor do they identify a single case, from any jurisdiction, in which a court allowed a UCC notice claim where the collateral was not sold. Plaintiffs' arguments consequently fail.

Accordingly, Ally respectfully requests that the Court dismiss Randall's individual claim with prejudice and strike the class allegations to the extent they relate to pre-*Williams* conduct.

## II.      <u>ARGUMENT</u>

**A.      Because The Pre-*Williams* Notice Complied With The MCC, The Court Should Dismiss Randall's Claim And Strike The Pre-*Williams* Class Allegations.**

Ally argued that Randall's claim should be dismissed because the pre-sale notice Randall received (the "Notice") *did* comply with the MCC when it was sent, because it included the "safe harbor" language that the MCC states is "sufficient" as a matter of law.  Plaintiffs do not contest that the Notice contained the "safe harbor" language.  Rather, as predicted, they argue that the *Williams* decision, which was rendered months after Ally sent the Notice and which radically changed the standards governing post-repossession notices, should be applied retroactively.

Ally explained that the general rule of retroactivity should not apply to *Williams*, because the well-recognized conditions for departing from that rule are present.  The Massachusetts Superior Court recently reached this conclusion in a nearly identical case.  *See Dellorusso v. PNC Bank,* No. 1877-cv-01475 (Mass. Super. May 3, 2019) (attached as Ex. A to Mot. to Dismiss, ECF No. 35-1).  In response, Plaintiffs devote much of their Opposition to simply summarizing many of the cases that *Dellorusso* concluded were inapplicable, and suggest that there are no conditions under which a new interpretation of a statute can apply only prospectively.  That is not correct.  As the SJC repeatedly has recognized, when a decision announces "a new interpretation of a State statute … we are free to determine whether it should be applied only prospectively."  *Com. v. Dagley*, 442 Mass. 713, 721 n.10 (2004); *Eaton v. Fed Nat'l Mortg. Ass'n*, 462 Mass. 569 (2012); *Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*, 468 Mass. 109 (2014).

Thus, there is no real question that courts may determine that new statutory interpretations should not apply retroactively.  The only question is whether retroactive application of *Williams* is appropriate here.  While Plaintiffs seek to minimize and distinguish *Dellorusso*'s holding that *Williams* should apply only prospectively, that decision is on point and its reasoning is sound.

2

###### 1.    *Dellorusso Correctly Found That Williams Should Apply Only Prospectively.*

The test for whether retroactive application of a new statutory interpretation is appropriate considers the following factors:  (1) whether the decision creates a "novel rule"; (2) whether retroactive application will serve the purposes of that rule; and (3) whether hardship or inequity would result from retroactive application.  *See Dellorusso* Op. at 6.  *Dellorusso* examined each of these factors and concluded that they all favor only prospective application of *Williams*.

**As to the first factor,** the court concluded that *Williams* "clearly created new law" because prior to that decision "there was ambiguity about how to reconcile the RISA's provisions with the UCC."  *Dellorusso* Op. at 7.  Indeed, that the First Circuit found it necessary to certify the matter to the SJC "exemplifies this ambiguity."  *Id.*  And the court noted that "[o]nly after the decision in *Williams* did the SJC make it clear that the language contained within the Safe Harbor Provision … was not sufficient notice under the RISA."  *Id.*

Plaintiffs assert that *Dellorusso* was incorrect to conclude that *Williams* created new law, arguing that Ally should have foreseen the *Williams* decision, because it "is not complex."  Opp. (ECF No. 40) at 10.  The circuitous history of that case reflects otherwise, however, as *Williams* involved a district court decision assuring lenders that a notice employing the safe harbor language was sufficient, *Williams v. Amer. Honda Fin. Corp.*, No. 1:14-CV-12859, 2016 WL 11507789 (D. Mass. Feb. 11, 2016), an appeal before the First Circuit, 858 F.3d 700 (1st Cir. 2017), followed by multiple certified questions to the SJC, 479 Mass. 656 (2018), followed by yet another First Circuit opinion, 907 F.3d 83 (1st Cir. 2018).  To be clear, the First Circuit believed the questions presented were novel and "complex" enough to warrant a request for clarification to the SJC specifically to "reconcile the provision of a safe-harbor form notice under UCC section 9-614" with the Massachusetts Motor Vehicle Retail Sales Act, "concerning which the Massachusetts courts have not spoken."  *Williams*, 858 F.3d at 701, 703; *see also Easthampton Sav. Bank v. City of*

3

*Springfield*, 736 F.3d 46, 50 (1st Cir. 2013) (holding that certification under Mass S.J.C. R. 1:03 is only appropriate where it is unclear how the state court would rule).  And the fact that this Court reached a different conclusion from that ultimately reached by the SJC further confirms that the issues are not as straightforward as Plaintiffs suggest.

Plaintiffs' actions in this case further undermine Plaintiffs' argument.  Randall received the Notice in October 2017.  He did not file this action until eight months later, in July 2018, just a month after the decision in *Williams* was rendered.  And Plaintiffs' counsel filed a number of other class actions against other lenders asserting identical claims only after *Williams* was decided.[1]  If *Williams* did not create new law, then nothing should have prevented Plaintiffs (or their counsel) from bringing those actions **before** *Williams* was decided.

Finally, Plaintiffs argue that because certain other lenders included the fair market value language in their notices before *Williams*, there could not have been any doubt that such language was required.  Opp. at 11.  This is another rehash of an argument that Plaintiffs tried unsuccessfully in *Dellorusso.*  The fact that some lenders chose to abandon the statutorily-prescribed safe-harbor language does not show that, pre-*Williams*, Massachusetts law clearly and unambiguously required creditors to do so.  Many other creditors continued to rely on the safe harbor language.  *See* n. 1, *supra*.  The existence of these two different varieties of pre-sale notices shows, at most, that reasonable people could (and did) come to different conclusions on the issue.

**As to the second and third factors,** *Dellorusso* concluded that prospective application of *Williams* would prevent inequity among lenders and consumers.  *Dellorusso* Op. at 7-8.  As a foundational point, the court noted the general rule that judicial changes affecting property rights

---

[1] *See, e.g., Jiang v. Auto Equity*, No. 1882CV00924 (Mass. Norfolk Super.) (July 18, 2018); *Hartwell v. Americredit Fin. Servs.*, *Inc*., No. 1:18-cv-11895 (D. Mass.) (July 19, 2018); *Thompson v. Eastern Bank*, No. 1884CV02667 (Mass. Suffolk Super.) (August 24, 2018); *Reid v. Santander*, No. 1884CV03159 (Mass. Suffolk Super.) (Oct. 10, 2018).

4

are typically given only prospective effect out of concern for litigants and others who have relied on existing precedents.  *Id.*  Further, the court observed that "prospective application of *Williams* will cause little harm to Massachusetts consumers."  *Id.* at 8.  Plaintiffs argue that, contrary to the court's conclusion, the distinction between "fair market value" and sale price in the notice language "is vital information for a debtor weighing her options after a repossession, as gauging the size of a potential amount of post-repossession debt is key for deciding whether to redeem or surrender a vehicle."  Opp. at 12.  Respectfully, if the learned justices on the First Circuit were at a loss as to what the reference in the RISA to "fair market value" truly meant, such that they certified that question to the SJC for clarification, it is unlikely that the ordinary Massachusetts consumer's decision to redeem a vehicle or not rested on the distinction between "sale price" and "fair market value" in a post-repossession notice.  It is far more likely, as *Dellorusso* concluded, that "the decision to redeem a vehicle likely concerns whether a consumer can afford to do so or not and not how much a consumer's account will be credited post-sale."  *Dellorusso* Op. at 8.

On the other side of the balance, *Dellorusso* rightly observed that creditors like Ally had "relied in good faith" on the MCC's safe harbor language.  *Id*. at 7.  The court noted that "it was not clear" that the safe harbor provision was itself insufficient and "it would not have been prudent or advisable for a creditor to craft a pre-sale notice that strayed from, or did not conform to, this statutorily approved language."  *Id.*  Plaintiffs argue that Ally could not have relied on the safe harbor because the MCC only provides that a form notice is sufficient if it is "properly completed" and (Plaintiffs maintain) "Ally's was not."  Opp. at 10.  Presumably, Plaintiffs are referring to the fact that the Notice referenced the sale price instead of the collateral's fair market value.  But that is *exactly* what the safe harbor language instructed lenders to include in the notice to avoid liability.  *See* M.G.L. c. 106, § 9-614(3).  As Plaintiffs must concede, the Notice directly quoted the MCC's

5

safe harbor and therefore was hardly "improperly completed." *See Notice*, Ex. A to Second Am. Compl., ECF No. 33.

Thus, as *Dellorusso* rightly concluded, *Williams* should apply only prospectively.

### 2.    *The SJC Has Not "Signaled" That Williams Applies Retroactively.*

Plaintiffs argue that the SJC has "signaled that its decision in *Williams* applies retroactively," claiming as support the SJC's decision to decline rehearing in *Williams*. Plaintiffs also contend that the *Dellorusso* court "appears not to have considered this key point in reaching its decision, another reason it should not be followed." Opp. at 8 n.5. Plaintiffs are wrong on both counts. In *Dellorusso*, the court expressly considered and rejected this argument:

> The defendant in *Williams* petitioned the SJC to reconsider its ruling and to apply the new rule only prospectively. The SJC summarily denied this request. The court places little weight on this denial, as the SJC did not provide any explanation for the denial. And, as PNC points out, the denial may have had more to do with the procedural posture of the case, *i.e.*, the fact that the matter was before the SJC after the First Circuit certified specifically delineated questions, *see Difiore v. American Airlines*, 454 Mass. 486, 488, n.4 (2009) ("[w]e decline to address other questions … that have not been included in the certification order"), than with the SJC's opinion as to whether the rule it announced in *Williams* should apply retroactively or only prospectively.

*Dellorusso* Op. at 6 n.4. This Court should similarly place little weight on the fact that the SJC declined rehearing on a question that was not included in the certification order in *Williams*.

### 3.    *Applying Williams Retroactively Would Violate Due Process.*

Applying *Williams*' new rule retroactively to notices issued before the SJC's opinion also would violate lenders' due process rights under the Fifth and Fourteenth Amendments. The due process question here is limited:  whether Ally "had fair notice that the statute … proscribed [its] conduct" at the time it sent the Notice to Randall.  *U.S. v. Zhen Zhou Wu*, 711 F.3d 1, 15 (1st Cir. 2013).  The fact that the First Circuit certified this precise question to the SJC is strong evidence that Ally did not have prior notice that the MCC prohibited the very notice it endorsed in a safe

harbor provision.  In fact, the SJC's decision in *Williams* "replaced" and rewrote the MCC's safe harbor, such that the form notice previously "sufficient" as a matter of law was suddenly insufficient as a matter of law.  It is hard to fathom how a lender relying on statutory safe harbor language could have "fair notice" that using that language would, in fact, expose it to liability.

**B.      Randall's Claim Should Be Dismissed Because The MCC Compels Application Of Vermont Law To His Claim.**

In its Motion, Ally argued that the choice of law provision in Randall's contract requires application of Vermont law and precludes Randall's Massachusetts law claim.  Plaintiffs do not contest the existence of the choice of law provision.  Plaintiffs contend, rather, that the provision is "too narrow to encompass statutory claims."  Opp. at 15.  Plaintiffs miss the point.  By selecting the law of another forum, the parties exercised their right (recognized by the text of the MCC itself) to render the MCC *inapplicable to their transaction*.  M.G.L. ch. 106, § 1-301(a) ("[W]hen a transaction bears a reasonable relation to the commonwealth and also to another state or nation, the parties may agree that the law of either the commonwealth or of such other state or nation shall govern the rights and duties under the transaction.  Failing to reach such an agreement, this chapter applies to transactions bearing an appropriate relation to the commonwealth.").  As a threshold matter, therefore, the parties' agreement that their transaction would be governed by the law of another state precludes any application of MCC standards to that transaction.

Plaintiffs argue that Ally's position is foreclosed by *Kittner v. CTW Transp., Inc*., 762 N.E.2d 867 (Mass. App. 2002), but Plaintiffs' reliance on that case is misplaced.  In *Kittner*, the plaintiff did not assert any violations of the MCC (rather asserting claims for breach of contract, misrepresentation, and violation of Chapter 93A), so the court did not address the question presented here:  how to interpret a choice of law provision under the MCC.  Ally does not dispute that a choice of law provision in a contract may not apply to certain tort claims, but Plaintiffs do

not bring any such claims.  Where, as here, the plaintiff asserts a claim for violation of certain provisions of the MCC, that plaintiff cannot avoid the express choice of law provision of the MCC excepting the plaintiff's claims from the MCC's purview at the outset.  Notably, none of the cases Plaintiffs cite in support of their choice of law argument actually involved MCC claims, and so none of those cases involved the choice of law analysis relevant here.

Plaintiffs attempt to distinguish *Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*, 41 F. Supp. 2d 93 (D. Mass. 1999), where this Court concluded that a choice of law provision in a contract precluded plaintiff's claims under the MCC, by arguing that the MCC claims there "relied on an alleged breach of the seller's obligations under the parties' contract."  Opp. at 17.  And Plaintiffs assert that Ally "leaps from this decision to contend that a narrow choice of law provision can stretch to cover a statutory claim."  *Id.*  But Ally does not argue that the choice of law provision covers *all* statutory claims.  Ally merely contends that a claim under the MCC specifically—a statute that expressly states that it does not apply to transactions in which the parties selected another forum's law—cannot stand if the parties agreed that the law of another state would govern their transaction.[2]  Plaintiffs fail to cite a single case to the contrary.  *But see Scott v. Vanderbilt Mortg. & Fin., Inc.*, 2007 WL 2343681, at *3, No. 3:07-CV-0512-RLE (M.D. Tenn. Aug. 13, 2007) (finding "where the parties provided that South Carolina law 'will govern this transaction,' they intended that South Carolina law would govern any right of the consumer to claim statutory damages from the secured party for failure to give proper notice under the UCC").

Because the parties agreed that Vermont—not Massachusetts—law would govern their

---

[2] Plaintiffs also argue that Massachusetts law would govern under the "most significant relationship" test.  Opp. at 18.  That test only applies where there is no choice of law provision, so Plaintiffs' analysis under that standard is entirely irrelevant.  The MCC choice of law analysis requires only that the transaction bear a "reasonable relation" to the forum state, *see* Mot. to Dismiss (ECF No. 35) at 12, and Plaintiffs do not contest that such a relation exists here.

transaction, and because the MCC expressly states that it does not apply to such transactions, Randall's MCC claim should be dismissed.

## C.   Randall Cannot State A Claim Under The MCC Because The Vehicle Was Not Sold.

Ally explained in its Motion that Randall cannot assert a claim for violation of the pre-sale notification provisions of the MCC, because his collateral was never sold.  In support of this argument, Ally cited two cases that expressly held that no claim can lie for violation of the UCC notification requirements where no sale of collateral took place.  *See* Mot. to Dismiss (ECF No. 35) at 13 (citing *Wallace v. Pinnacle Bank-Wyo.*, 275 P.3d 1250, 1256 (Wyo. 2012); *Bremer Bank Nat. Ass'n v. Matejcek*, 916 N.W.2d 688, 697 (Minn. App. 2018)).  Plaintiffs cite no contrary case law—not a single case, in any jurisdiction, in which a court actually held that a secured party could be liable for violation of the UCC's notification provisions where the secured party never disposed of the collateral.  That is because no court has reached that conclusion.[3]

Absent any contradictory case law, Plaintiffs unsuccessfully attempt to distinguish Ally's cases by arguing that in those cases, the courts reached their holding because each secured party had "released its lien before the property was disposed of by a third party, meaning the UCC did not apply."  Opp. at 19.  That is not correct.  The Wyoming Supreme Court was unequivocal in *Wallace* that "[t]he U.C.C. notice provision relied on by the [appellants] applies *only when property is disposed of after a default*."  *Wallace*, 275 P.3d at 1256 (emphasis added).  The court

---

[3] Plaintiffs' counsel have acknowledged as much.  In support of a motion for class settlement in another case asserting identical claims, counsel advised this Court that MCC "Section 9-610 could be interpreted to mean that a secured creditor's responsibility for sending a sufficient post-repossession, pre-sale notice only arises if the creditor actually sells or otherwise disposes of the vehicle," cited three cases in support of that proposition, and advised the Court that after "a full day's research devoted to this singular topic, Plaintiff's counsel has not found a case which has been decided to the contrary."  *Hartwell v. Americredit Fin. Serv's, Inc*., No. 1:18-cv-11895-DJC, ECF No. 35 at 10-11.  Counsel then advised the Court that for individuals "whose vehicle were not sold … there is a substantial risk they would not prevail in a claim for damages based on the allegedly-faulty post-repossession notice."  *Id*. at 11 (emphasis in original).

9

in *Bremer* was equally clear that no claim for violation of the UCC notice provisions can lie where "there was no sale of collateral by a secured party." *Bremer*, 916 N.W.2d at 697.[4]

Nor are these courts alone in reaching this conclusion based on a plain reading of the UCC. *See Chulsky v. First Niagara Bank*, No. MID-L-0107700-14 (N.J. Super.), Tr. of Decision dated Feb. 23, 2016 (attached hereto for the Court's reference as Ex. A), p. 9 ("It is axiomatic that the plain meaning of words are to be accorded in statutory construction. Here 611(b) is clearly titled 'Notification Before Disposition of Collateral.' As the collateral was never disposed, even granting a liberal reading of the complaint in the context of this [motion to dismiss], Count I is palpably insufficient to support a claim upon which relief can be granted, and as such is dismissed."). Notably, *Chulsky* did not involve any release of lien on the collateral. The simple fact that the vehicle was never sold was the sole basis for the court's conclusion that the plaintiff's UCC notice violation claim must be dismissed.

Based on these uncontroverted decisions, because Mr. Randall's vehicle was never "disposed of," his MCC claim should be dismissed.

## III.   CONCLUSION

For these reasons, Defendant Ally Financial Inc. respectfully requests that this Court grant its motion and dismiss Plaintiff Randall's claim, and strike all allegations purporting to include in the putative class consumers who received pre-sale notices from Ally before June 5, 2018.

---

[4] Moreover, in *Bremer*, the bank did not "release its lien before the property was disposed of by a third party," as Plaintiffs contend. *See* Opp. at 19. Rather, as the court explained, "Bremer Bank released its lien on the motorhome *after* Kathryn transferred title and possession to the buyers and *after* Bremer Bank received the sale proceeds and applied them to the loan debt." *Bremer*, 916 N.W.2d at 695 (emphasis added). The court was express that its finding that no notice violation claim could lie was based solely on the fact that the secured party "did not 'dispose of' the motorhome." *Id.* The court discussed the lien release issue only to explain that a release of lien did not "transfer ownership or possession rights" in the collateral, and therefore "the bank did not dispose of the motorhome" within the meaning of the UCC. *Id.*

Dated: August 19, 2019                    Respectfully submitted,

                                          */s/ Nellie E. Hestin*
                                          Nellie E. Hestin (BBO #676886)
                                          McGuireWoods LLP
                                          Tower Two-Sixty 260 Forbes Avenue, Suite 1800
                                          Pittsburgh, PA 15222-3142
                                          (412) 667-6000
                                          (412) 667-6050 (Fax)
                                          nhestin@mcguirewoods.com

                                          *Counsel for Defendant Ally Financial Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 19, 2019.

*/s/ Nellie E. Hestin*
Nellie E. Hestin

12