```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2                         WESTERN SECTION

 3

 4
       James Randall, et al     )
 5                              )              18cv30143-MGM
            vs                  )
 6                              )         September 25, 2019
       Ally Financial Inc.      )
 7     _____)

 8

 9             Motion to Dismiss Hearing Held Before

10              The Honorable Mark G. Mastroianni

11                United States District Judge.

12

13

14     APPEARANCES:

15

       On behalf of the plaintiff:  Elizabeth A. Ryan
16     Bailey & Glasser LLP, Suite 304, 99 High Street, Boston,
       MA 02110.

17

18     Nicholas F. Ortiz, Law Office of Nicholas F. Ortiz, P.C.,
       99 High Street, Suite 304, Boston, MA 02110.
19
       On behalf of the defendant: Nellie E. Hestin, McGuireWoods
20     LLP, Tower Two-Sixty, 260 Forbes Avenue, Suite 1800,
       Pittsburgh, PA 15222.
21
                        Alice Moran, CSR, RPR, RMR
22                      Official Federal Court Reporter
                        United States Courthouse
23                      300 State Street, Room 303D
                        Springfield, MA 01105
24                      (413)731-0086
                        alice.moran@verizon.net
25
```

1      **(Hearing commenced at 10:25.)**

2              THE CLERK:  Civil Action 18-30143, James Randall

3      versus Ally Financial, Inc.

4          Court is now in session.  You may be seated.  Would

5      counsel please identify themselves for the court and the

6      for the record?

7              MS. RYAN:  Good morning, Your Honor.  Elizabeth

8      Ryan on behalf of the plaintiffs.

9              MR. ORTIZ:  Good morning, Your Honor.  Nicholas

10     Ortiz also on behalf of the plaintiffs.

11             MS. HESTIN:  Good morning, Your Honor.  Nellie

12     Hestin for the defendant.

13             THE COURT:  Hestin?

14             MS. HESTIN:  Hestin, yes, Your Honor.

15             THE COURT:  Okay.  All right.  Attorney Hestin,

16     I'll hear from you in support of partial motion to

17     dismiss.

18             MS. HESTIN:  Yes, Your Honor.

19         Just to set the stage here, plaintiffs have brought a

20     class action against Ally arising out of post-repossession

21     resale notices that Ally sends to its auto borrowers.

22     There's a single claim just under the Commercial Code

23     here.

24         We are, as noted, moving to dismiss one of the

25     plaintiffs' claims.  We've moved on three grounds.  First,

1     that plaintiffs' claim is founded on a decision by the SJC

2     in *Williams* that changed the standard Commercial Code Safe

3     Harbor language to include in a presale notice.  A

4     superior court has already found that decision only

5     applies prospectively and so we moved on that ground.

6              THE COURT:  So talk about that.

7              MS. HESTIN:  Sure.

8              THE COURT:  So your position is that *Williams* --

9     how did you just phrase it? -- that kind of states a new

10    law or a new proposition?

11             MS. HESTIN:  It replaces the Safe Harbor

12    language in the Uniform Commercial Code statute.  So it's

13    akin to a statutory interpretation, but beyond that

14    really, because it's changed the language that the statute

15    is safe, that insulate lenders from liability when sending

16    these presale notices.

17             THE COURT:  But does it really change it?  RISA

18    -- it seems that the *Williams* case includes some language

19    that said here's what RISA says and it's different from

20    UCC and RISA has always said that.

21        It's always been different what from the UCC said and

22    so therefore anybody looking at these just has to

23    recognize the inconsistencies and read them together.  It

24    doesn't seem like they announced anything new that we have

25    to talk about deciding whether or not it's going to apply

1    retroactively, or at least that's an argument that I'd

2    like to hear what your response is.

3             MS. HESTIN:  Sure, Your Honor.

4        So I think it's more than just harmonizing those two

5    statutes.  That was certainly part of it, but the court

6    went beyond that to look at the actual text of the UCC and

7    the text of the Safe Harbor language and to say this text

8    should not be used.  Here's new text that should be used

9    instead, and so it's more than just harmonizing.  It's

10   recrafting language.

11       I think that's evident in the fact that the First

12   Circuit certified the questions to the SJC.  You know,

13   couldn't just harmonize it by itself, and that when the

14   SJC then sent its decision on the certified questions back

15   to the First Circuit, the First Circuit talked about it in

16   terms of what the SJC had now done, had now opined, had

17   now put into effect, and so even the First Circuit was

18   recognizing that there was a change here.

19       If you look at this in terms of what lenders like

20   Ally would have been looking at the time that they sent

21   the notice, the Randall notice, at that point the only

22   decisional law on this was that of the lower court in

23   *Williams* saying the language in this Safe Harbor and the

24   UCC statute is good.  You can use that and so that's what

25   the lenders were relying on at that time, and so *Williams*

1    and the SJC changed that and said, no, you can't rely on

2    that.

3              THE COURT:  Now, I think plaintiff talks about

4    other lenders having looked at this situation and crafting

5    their notices and the paperwork that they send out under

6    these circumstances as including and recognizing the

7    inconsistencies and as you said harmonizing the

8    differences.

9        So if other lenders are looking and recognizing

10   differences and making it work -- again back to the same

11   question -- how is this some announcement of a new

12   position that we have to decide whether or not it

13   retroactively applies?

14             MS. HESTIN:  So at best, Your Honor, I'd say

15   that it was unclear then because while plaintiffs have

16   cited a few lenders that they say were doing it

17   differently, plaintiffs' counsel has also sued about half

18   a dozen lenders, Ally included, who were using the Safe

19   Harbor language under the UCC and so at best I'd say it

20   was unclear.

21       I don't think, you know--  at best you're talking

22   about a situation where parties were clearly interpreting

23   it differently, and again the only decisional law on it

24   was the lower court in *Williams* at the time of the Randall

25   notice.

1          THE COURT:  Okay.  Go right ahead.

2          MS. HESTIN:  So the court in *Dellorusso* -- the

3     superior court in *Dellorusso* has already ruled on this and

4     found that *Williams* should only be applied prospectively.

5          Now I do expect my sister to get up and tell you that

6     *Dellorusso* is on appeal.  That appeal is in its mason

7     stages.  My understanding is no briefs have been filed

8     yet, but *Dellorusso* was rightly decided.

9          *Dellorusso* set out some governing principles, correct

10    governing principles here that, yes, retroactivity is

11    default but it's not -- it's not exclusive; that a court

12    can decide whether a statutory interpretation should apply

13    only prospectively.

14         *Dellorusso* set out the three-part test for that, the

15    first being whether the rule is novel -- which we've just

16    talked about; whether retroactive application serves the

17    purpose of the rule; and, third, whether hardship or

18    inequity would apply from using the rule retroactively.

19         So I'll make just one more point on the newness of

20    the rule.  I've alluded to the fact that plaintiffs have

21    filed many, many cases against several different lenders

22    in the wake of *Williams*.  So it stands to reason that if

23    *Williams* was not announcing new law, that those cases

24    could have been filed before *Williams*, but even plaintiffs

25    waited until after *Williams* came down to bring their

1    claims.

2         As to whether retroactive application would serve the

3    purposes of the rule, the *Dellorusso* court aptly noted

4    that the decision that a borrower is making in response to

5    a presale notice is likely based mostly on whether the

6    borrower can afford to redeem their vehicle.  Not looking

7    forward to when this gets sold, is it the retail value or

8    the sale value or the fair market value that's getting

9    applied and therefore what will my deficiency be and

10   therefore should I redeem?

11        The *Dellorusso* Court noted that that's really

12   unlikely to impact the redemption decision and therefore

13   found that retroactive application wouldn't serve the

14   purposes of the rule.

15        I'll add to that if the First Circuit needed to

16   certify to the SJC the difference between sale price and

17   fair market value, it's tough to say that the difference

18   between those terms would have meant a lot to the average

19   borrower too.

20        Then on the third point of hardship and inequity,

21   *Dellorusso* observed that at the time these notices were

22   sent pre-SJC and *Williams*, it was prudent for creditors to

23   follow the statute, the UCC statute.  And again the lower

24   court decision in *Williams* was the only decision on that

25   topic at that time.

1    As *Dellorusso* also noted in property and contract

2    context, the SJC is more apt to find that a case applies

3    only prospectively to protect the expectation of the

4    parties like here.

5    I'll add an atmospheric point on this issue of

6    *Williams* and its interpretation.  Plaintiffs noted in

7    their opposition that *Honda* and the *Williams* case asked

8    the SJC, after it answered the certified questions, to

9    decide this issue of prospectively or retroactively.

10   Plaintiffs said the SJC didn't and that *Dellorusso* ignored

11   that.  That's wrong on two scores.

12   First of all, *Dellorusso* did note this in a footnote

13   in *Dellorusso*.  So *Dellorusso* knew exactly what had gone

14   on, but what had happened was the SJC made its decision,

15   answered the three certified questions and was done with

16   it.  And *Honda* came back and said, well, wait, wait,

17   answer this other question for us and the SJC just very

18   summarily said we're not going to do that.  And so it

19   doesn't really tell us how the SJC would rule, just that

20   it wasn't before the SJC.

21   THE COURT:  All right.  What do you want to say

22   about choice of law?

23   MS. HESTIN:  So on choice of law, the

24   Massachusetts Commercial Code has its own built-in choice

25   of law statutory provision that gives us the framework for

1    assessing choice of law issues under the UCC, and so

2    that's the framework that we should be applying.

3         Under that framework we're looking to answer the

4    question of whether the parties had a choice of law

5    provision.  They did.  In the Ally and Randall contract it

6    chooses Vermont allow.  Then, second, whether there's a

7    reasonable relation to that forum, and that's a low bar.

8    Here the vehicle, the dealer and the sale all occurred in

9    Vermont and so I don't think anyone is disputing the

10   reasonable relation piece.

11        I think my brother will likely argue that the text of

12   the provision in the Randall-Ally contract isn't broad

13   enough to encompass the UCC claim, but respectfully I

14   think that's applying the wrong standard.

15        All of the cases that plaintiffs are applying are

16   under a generic choice of law analysis, but we don't need

17   to apply a generic choice of law analysis.  We have a UCC

18   choice of law analysis.

19        If you look at the cases applying the UCC statute,

20   the UCC choice of law statute, they find that UCC claims

21   fall within even narrow choice of law provisions; that UCC

22   claims sound in the contract and are therefore within the

23   ambit of these choice of law provisions.

24        So cases like *Vision Graphics* or the *Scott* decision

25   that we cited in our reply brief out of Tennessee, the

1    *Scott* decision in particular, the UCC violation there was

2    a claim for a presale notice violation, exactly the claim

3    here and the court said that claim sounds in contract.

4    The contract talks about the remedies in event of a

5    default, including repossession, and this claim arising

6    out of that.  It's within the ambit of the contract.

7            THE COURT:  You're saying the UCC language is

8    supportive or consistent with the choice of law language,

9    even though it's brief, that's included in the contract?

10           MS. HESTIN:  Yes, Your Honor.

11           THE COURT:  What about the Massachusetts law?

12   What about the motor vehicle retail or RISA, what does

13   that say about choice of law?

14           MS. HESTIN:  So RISA doesn't -- RISA doesn't

15   include its own choice of law provision and plaintiffs

16   aren't not suing under RISA.  Plaintiffs are suing under

17   the Massachusetts Commercial Code, and the statute that

18   I'm talking about, the choice of law statute, is within

19   the Massachusetts Commercial Code.

20       It says, "When a transaction bears a reasonable

21   relation to the Commonwealth and also to another state or

22   nation, the parties may agree that the law of either the

23   Commonwealth or of such other state or nation shall govern

24   the rights and duties under the transaction.  Failing to

25   reach such an agreement, this chapter applies."

1    So, in other words, if the parties agree to apply the
2    law of another state, the MCC bows out and that's what
3    happened here.  The parties agreed to apply Vermont law.
4    The MCC does not apply and therefore plaintiffs' claim
5    under the MCC can't stand.
6              THE COURT:  All right.  You had your third
7    argument.
8              MS. HESTIN:  Yes, Your Honor.  On the issue of
9    disposition, so under a plain language reading the
10   Commercial Code requirements on presale notices apply only
11   if the lender actually disposes of the vehicle and Mr.
12   Randall's vehicle was not disposed of.
13       We've cited several cases on this.  I won't go
14   through them for the court.  I point maybe to *Bremer* and
15   *Chulsky* as key cases on this, but plaintiffs haven't cited
16   any contrary authority.
17       In fact, in one of their parallel cases they've
18   actually admitted that the law favors the defendant on
19   this point saying "At least two courts have concluded that
20   where a secured creditor does not sell a consumer's
21   vehicle, the post-repossession presale notice requirements
22   under Sections 9-611 and 9-614 are not triggered, and that
23   after a full day's research devoted to this topic
24   plaintiffs' counsel has not found a case which has been
25   cited -- been decided to the contrary."

```
 1          The underpinnings of the notice requirements support
 2    this reading.  The notice requirement is really there to
 3    protect a borrower against an unfair sale.  If a sale
 4    doesn't happen, that protection isn't needed and that's
 5    why courts have found that these presale notice
 6    requirements don't apply in instances where there is no
 7    vehicle sale or other disposition.
 8              THE COURT:  All right.  Thank you.
 9              MS. HESTIN:  Thank you.
10              THE COURT:  Who will be arguing?
11              MS. RYAN:  Good morning, Your Honor.  Elizabeth
12    Ryan.
13              THE COURT:  Good morning.
14              MS. RYAN:  Just so for the court's information,
15    Mr. Ortiz and I have divided up the presentation.  I will
16    be addressing Ally's arguments regarding the *Williams* case
17    and Mr. Ortiz will be addressing the remaining
18    arguments.
19              THE COURT:  Okay.
20              MS. RYAN:  Your Honor, just as a preliminary
21    matter, our claims do not depend on *Williams*.  *Williams* is
22    not cited in our complaint.  Our claims are based on the
23    plain language of the two statutes that the court noted,
24    the UCC and RISA.
25          Those statutes say that under the UCC the creditor
```

1    has to give notice of a deficiency.  Under RISA the

2    statute says that deficiency has to be calculated using

3    the fair market value.  And RISA says if our provisions

4    are inconsistent, they displace UCC.  That's how those two

5    statutes are harmonized.  Ally didn't do that here.  They

6    basically displaced the RISA provisions with the UCC

7    provisions.  There's no precedent for doing that.  That

8    was the law in 2014 when *Williams* was filed.  That's the

9    law today.  That was the law in 1973 when RISA was

10   enacted.  *Williams* didn't change that.

11       It did not --

12            THE COURT:  So you're saying all this talk about

13   *Williams* is just this big scenic detour we don't need to

14   take?

15            MS. RYAN:  I mean, clearly *Williams* is helpful

16   in this case because it says, yes, the way you're reading

17   the statute -- the way other creditors have read the

18   statute is correct.  So we're not saying it's irrelevant,

19   but our claims don't rise and fall on *Williams*.  If

20   *Williams* didn't exist, we would still have our claims.

21            THE COURT:  Okay.

22            MS. RYAN:  Even if *Williams* was -- even if

23   *Williams* did represent a change in the law, when the SJC

24   or the appeals court announces a change in interpretation

25   of a statute, it's presumed to be retroactive.

1        In the rare cases --

2            THE COURT:  Just tell me under what facts or

3    what analysis would I be looking at this as _Williams_

4    announcing a change in the law?  That may not be your

5    argument.  That may be your opponent's argument, but tell

6    me what the strongest part of their argument is as you see

7    it.

8            MS. RYAN:  The strongest argument that _Williams_

9    did change the law?

10           THE COURT:  Yes.

11           MS. RYAN:  Well...

12           THE COURT:  I know it's an odd question, but I'm

13   just trying -- I want to know what you think about this.

14           MS. RYAN:  I think it's hard to imagine how it

15   could have changed the law when there was no previous

16   precedent.

17       There's nothing -- this isn't a new interpretation

18   because there was no case on the books that interpreted

19   these two statutes, nor was any needed necessarily.  The

20   SJC based its decision on the plain language of the two

21   statutes and so it's hard for me to imagine how this could

22   be considered new law.

23       It is a new decision and it interpreted the statutes

24   in a way that's consistent with what _Williams_ -- the

25   claims in _Williams_ and what other creditors were doing at

1    the time.

2             THE COURT:  I took what the defendant had to say

3    -- and maybe I didn't get it exactly right -- was that

4    plaintiff -- this theory became active right after

5    *Williams*.  This theory under which plaintiff is now suing

6    becomes active right after *Williams*.  So if this theory

7    became active right after *Williams*, that's an indicator

8    and factor that there had been a change of law.

9             MS. RYAN:  So we disagree with that proposition,

10   Your Honor.  First of all, my firm filed *Williams* --

11   obviously *Williams* SJC's decision wasn't on the books at

12   the time.  So this theory was active in 2014 when we filed

13   *Williams*.  We filed cases in 2010 raising this argument;

14   in 2012 raising this argument, and so from the plaintiffs'

15   perspective this is not new.

16       *Williams* confirmed that our interpretation was

17   correct and the interpretation of the other creditors was

18   correct, but it didn't become active with the SJC's

19   decision.

20             THE COURT:  When you say the interpretation of

21   our creditors, how widely interpreted by other creditors

22   was this?  Was it one or two creditors, or was there a big

23   list of creditors who interpreted this like you did?

24             MS. RYAN:  It's not one or two.  We don't have

25   access to everybody's notices, and there's certainly no

1    record here that there's like a widespread following of

2    the interpretation that Ally followed here.

3        So, for example, in the *Eaton* case, which I was going

4    to get to, there was a record demonstrating that for

5    decades title examiners and title certifiers had followed

6    a certain interpretation of the mortgage foreclosure law.

7    We don't have that here.

8        This is a motion to dismiss so we have -- we've

9    attached I'm not sure how many, five or six, notices from

10   other creditors that we just happened to have copies of.

11   We didn't do an exhaustive search.  I believe Ally has

12   attached one or two itself.

13        THE COURT:  Okay.  And my last two questions

14   about this theory all of a sudden picking up steam and

15   making a way for lawsuits after *Williams* comes out and

16   what other lenders think and what other lenders were

17   doing, neither point -- I'm not suggesting that either

18   point is determinative, but it's certainly an interesting

19   way to help look at this as a whole.

20        MS. RYAN:  Yes.  But, Your Honor, just to get

21   back to, for example, the *Eaton* case, that shows that when

22   the SJC makes a decision, it does announce a new rule, a

23   new interpretation, if they want that to have perspective

24   only effect, it announces that in the decision.  That's

25   what it did in *Eaton*.

1      It doesn't leave it to the trial courts to make a

2  decision, you know, on an ad hoc basis, well, as to Ally

3  the statute applies retroactive; as to a different

4  creditor who sued in a different court, it's not going to

5  apply retroactive.  That wouldn't be fair for one thing

6  for different litigants to be subject to different

7  statutory interpretations.

8      The SJC will announce in the decision and Ally hasn't

9  cited any trial court cases, other than *Dellorusso*, where

10  a trial court, including a district court, has made a

11  decision to limit the SJC ruling on statutory

12  interpretation to perspective only.  That's for the SJC to

13  decide, not for the trial court.

14          THE COURT:  And *Dellorusso*?

15          MS. RYAN:  *Dellorusso*, obviously we disagree

16  with the decision.  It's on appeal.  We think it's wrongly

17  decided.  As I said, there are no trial court decisions

18  other than that one where a trial court is limiting the

19  SJC's interpretation of the statute.

20      Just to get back to that point -- one last point on

21  that, as I said, the SJC will announce in a decision when

22  it's going to be prospective only.  Here obviously

23  *Williams* didn't do that and it had an opportunity to do it

24  in the decision.  It had an opportunity to do it in the

25  petition for rehearing which raised the exact same

1    arguments that Ally is making here, and the court said

2    we've considered the petition for rehearing and we deny

3    it.

4         Now obviously if it forgot to address retroactivity,

5    it certainly had the opportunity to do so in response to

6    the petition for rehearing and it didn't.

7         If the court has any other questions, I'm happy to

8    address those.  We do in our brief respond to the

9    arguments Ally makes about retroactivity analysis.  That's

10   typically used with a common law change which is not the

11   case here.  This is a statutory interpretation case.

12                    THE COURT:  Very good.

13                    MS. RYAN:   Thank you.

14                    THE COURT:  So choice of law.

15                    MR. ORTIZ:  Your Honor, I have three topics,

16   constitutional choice of law and I will start there and

17   then the disposal issue just to set up what I plan to

18   speak about.

19        Starting with the choice of law, the UCC in Section

20   1/301 sets out that language talking about the rights and

21   duties under the transaction and that the parties can

22   choose some law for that.  Okay.

23        The rights and duties under a transaction is a

24   different and a larger thing than this contract, which is

25   the language here in the Randall agreement.  This contract

1    is a much narrower thing than the general transaction and

2    the rights and duties that may flow from that.  That's one

3    point I'll make.

4         On this post-breach repo notice, post-repo presale

5    notice, it did not depend on there being really anything

6    having to do with the contract.  Even a valid breach, that

7    would be a separate matter.

8         The issue of what a debtor is entitled to receive in

9    a post-repo notice is something that flows from a statute.

10   It's a statutory claim and it's not dependent on the

11   contract.

12        Now it may be -- we may be talking differently if

13   they had written on their contract that this covers the

14   entire transaction, but it's a different matter.  That's

15   number one.  And you can highlight that by looking at some

16   of the cases that they cite, like *Vision Graphics* which

17   did have a UCC claim in there.  But what was the UCC

18   claim?  The UCC claim was an implied warranty claim.

19        Okay.  Now if that's something that is -- it makes

20   sense, that I'm going to pay X dollars for Y and I don't

21   get X -- I mean, I don't get Y, the thing you promised me,

22   that's essentially a contract matter.  And whether or not

23   it's an implied warranty issue, that's something that fits

24   within the contract so as that court noted embroidered, it

25   was embroidered with the contract claim.

1      This, this issue here is not embroidered with a

2   contractual claim.  In fact, a breach of contract claim

3   that would be connected to this issue of whether there was

4   a breach, a valid breach or not a valid breach, any of

5   those sorts of issues don't affect one iota what someone

6   is entitled to in terms of notice so they have a chance to

7   make a reasonable decision during a very shrinking time

8   window as to what they do about their car.  And it's not

9   embroidered and that is I guess what I would have to say

10  about that issue.  This is a much more narrow language in

11  the choice of law provision.

12      THE COURT:  The choice of law provision is

13  pretty short.  It's Section 7 on the document.  "Federal

14  law and the law of the state or address shown on the front

15  of this contract apply to this contract."

16      MR. ORTIZ:  That's correct, apply to this

17  contract.  That's right.

18      THE COURT:  And the contract talks about if you

19  pay late or break other promises; it talks about

20  defaulting; it talks about the car getting repossessed; it

21  talks about if you get the vehicle back or if you don't

22  get the vehicle back; if the defendant sells the vehicle.

23  It talks about all those things.  So why isn't this

24  scenario a part of what was envisioned or embroidered in

25  the contract as you say?

1        MR. ORTIZ:  Well, the issues having to do with

2    whether or not someone gets a car back or doesn't get the

3    car back, the issue of how the deficiency is calculated

4    and the notice that a debtor is entitled to regarding the

5    basis of that calculation in order to make that decision

6    about redemption or surrender in that redemptive period.

7        THE COURT:  Well, in the contract Section 3F

8    talks about in the event that we sell the vehicle or if

9    you do not get it back; if money is left after a sale, we

10    will pay it to you unless the law requires us to pay it to

11    someone else; if money from the sale is not enough to pay

12    the amount you owe, you must pay the rest to us.  If you

13    do not pay the amount when we ask, et cetera, et cetera,

14    et cetera.  I mean, there's other language that talks

15    generally and perhaps specifically about what's at issue

16    here.

17        MR. ORTIZ:  Well, then ultimately, Your Honor,

18    what that would do is render a waiver of the right to the

19    fair market value calculation and there's anti-waiver

20    language within both -- I believe both, it's within 255.

21        THE COURT:  Well, the defendant tells me the UCC

22    language is accepting and supportive of a choice of law

23    provision like this and that the Massachusetts law, which

24    was noted that you're not bringing the action under, the

25    RISA, doesn't talk about that.

1           MR. ORTIZ:  We're not bringing the action under

2      RISA.  But insofar as we're bringing the action under the

3      UCC, it incorporates a provision of RISA because 614 says

4      you have to describe the deficiency and other

5      Massachusetts law namely RISA.

6           THE COURT:  Even if it incorporates RISA, what

7      does RISA say about choice of law?

8           MR. ORTIZ:  Well, I don't believe it says

9      anything about choice of law, but it has anti-waiver

10     language.  You can't waive your rights under the -- those

11     rights.

12        I mean, it's not possible for a contract to exist in

13     Massachusetts.  It says we will apply not the fair market

14     value but we will apply the sale value, and so the issue I

15     think with respect to the other --

16           THE COURT:  The rights under RISA can't be

17     waived; can't be affected by a choice of law provision?

18           MR. ORTIZ:  Right.  It's essentially a backdoor

19     way of waiving the rights under RISA and in doing that via

20     a contractual waiver essentially.

21        It's just like in *Melia v. Zenhire*, the case from the

22     SJC that looked at whether or not -- it ultimately found

23     that the venue provision was okay and that the parties had

24     to go to New York to litigate that case.  But because it

25     affected a waiver of rights, statutory substantive rights,

1    then that was not okay.  We cite that in our brief.

2        That I -- to the extent that the court isn't

3    crediting the scope argument I was making based on

4    transaction and contract, and I understand the court's

5    point about pointing to some issues in the contract that

6    do address this precise issue, then what I would rest on

7    is the issue that is an effective waiver that's

8    impermissible.

9        I can move on to disposal or constitutional next.

10            THE COURT:  Go ahead.

11            MR. ORTIZ:  Disposal, that was me that she cited

12   there in that footnote in support of a motion for final

13   approval of a settlement in a district court in Boston,

14   and I said that and I still believe it.

15       I think that you -- there's significantly more

16   litigation risk for folks that haven't had their car

17   disposed, than -- there's litigation risk because there is

18   this possible defense if you read the statute that way.

19       There are no -- and I'm the one who went to the BU

20   Library and did all the research that day.  And so I know

21   that there's not -- that there's a couple smattering of

22   cases where that --

23            THE COURT:  You went old school and went back to

24   the library?

25            MR. ORTIZ:  That was my law school and I decided

to go old school.  I had never done it before and they
were really nice.  It kind of worked out really well.
Well, not from a research perspective because there were
only a couple of cases that looked at this, the Wyoming
one and the *Bremer* one I think it was New Jersey.

There was a couple of distinctions there I wanted to
point out about those cases, one of which is that *Bremer*
-- in the *Bremer* case, *Bremer* had released its lien.
Okay.  So it released its lien and the actual debtor
transferred title of the car.

So the finding was that *Bremer* -- because Bremer Bank
-- I'm quoting -- because Bremer Bank "did not transfer
ownership or possession rights in the motorhome, the bank
did not dispose of the motorhome."  Okay.  So that's the
issue we're confronted with.

I point out here that thinking about *Hartwell*, which
was a case I was involved with, we weren't dealing with a
factual situation like we're dealing with here.

The notice on this case was sent in October of 2017
saying that we will sell your vehicle at private sale
sometime after November 14, 2017.

I just wanted to confirm but I texted with the client
this morning and it's confirmed, as they say in their
brief, they're still holding the car now two years later
not to depose of it.  I'm not sure why but that's a

1    problem in our view because if a creditor is seeking to

2    escape the obligations under the statute by never

3    disposing of the car by holding it for two years, well,

4    that, number one, doesn't seem so fair.  I mean because

5    the debtor has the right to, you know, maybe try to bid

6    for it; never had that right.  Maybe there's a surplus.

7    That happens rarely but it happens.  It would have the

8    right to some surplus money if the car was disposed of.

9        The idea of saying, okay, well, the plain text says

10   that you don't have a claim until the car is disposed, so

11   now two years later we're still holding the car so you

12   don't have a claim, I'm not a hundred percent sure how to

13   conceptualize that in some pithy way.  But I think that it

14   underscores the fact that that just can't -- that just

15   seems to be some way of -- well, I don't know, it just

16   doesn't seem quite fair to me that they would hold it for

17   two years.

18       Then I would say also regarding the issue of a

19   disposal, there's a lot of, a lot of cases in

20   Massachusetts, including *Williams*, and including this case

21   that I'm not even sure that we cited, we probably did,

22   *Wells Fargo Business Credit v. Environamics,* 77 Mass.

23   Appeals, 812, 2010 that says, you know, "To afford the

24   possibility of redemption, a secured creditor that

25   disposes of collateral under 610 shall send to the

1    debtors, you know, a reasonable authenticated notification

2    of disposition as a predicate to the actual disposition."

3        That's what they told him that they were going to do.

4    They said that they were going to dispose of the vehicle

5    in this 2017 letter, and the whole idea of this is to give

6    folks like *Williams* said in the SJC there that before the

7    disposition takes place, it's not really that useful to --

8    there's another post-sale notice that goes out under 916,

9    but this one is supposed to go out before the sale.  And

10   the idea that it's not -- that you have no obligation to

11   send it until after the sale just flies in the face of

12   common sense I would say.

13       There's another Mass. Appeals Court case that says

14   basically the same thing.  It's a 128 decision, not

15   binding, *American Credit Corp. v. Burnback*, 67 Mass

16   Appeals Court 1118, 2006, talking about the advance notice

17   and the purpose of this, you know, before -- this is again

18   a quote -- "before the disposition of the collateral is to

19   take place."

20       So given -- even though the title within that section

21   says that notice required when the creditor disposes of

22   the collateral, it's almost a hyper-literal reading to say

23   that that only kicks in, you know, after the actual

24   disposal.  It flies in the face of common sense of what

25   the notice is for, and it just seems hyper-technical,

1   hyper --

2           THE COURT:  Okay.

3           MR. ORTIZ:  I've probably said enough about

4   that.

5       I'm going to move on to the constitutional bit.  As

6   the court is probably well aware, and I won't spend a lot

7   of time on it, there's a different standard in criminal

8   and civil context for the issue of due process.  I'll skip

9   over that standard, but it is in this type of economic

10  regulation it's what is reasonably susceptible to the

11  construction.

12      Well, you have the other repo notices.  The other

13  folks figured it out and there's an explicit

14  cross-reference within the statute that says, okay, you've

15  got to read two.  Displace this one with the -- RISA

16  displaces the UCC, and the UCC says you've got to describe

17  the basis of the deficiency.

18      Well, how can you do that accurately if you're using

19  the sale price when the other Massachusetts law says you

20  have to credit the fair market value?

21      And so staying within the realm of constitutional

22  issues with that, I would say that that is fair notice to

23  creditors that -- and we don't actually need fair notice

24  under the civil standard.  We just need reasonably

25  susceptible to the construction.  And given the fact that

1    others did it, others read the two statutes together

2    governing these transactions, and also, Your Honor, the

3    UCC governs all these secured transactions.  255B, the

4    RISA, governs a small subset having to do with consumer

5    transactions, automobiles.

6         So for someone in that business, especially a large

7    entity in that business, I would submit that that is quite

8    fair notice.  If there wasn't a cross-reference, we would

9    be perhaps talking a little different about this, but the

10   cross-reference is the critical component.

11              THE COURT:  Okay.

12              MR. ORTIZ:  And just one more constitutional

13   related issue, one more bit on that, I'll just mention

14   *Williams* is 15 pages long.  The amount of the decision --

15   the part of the decision dealing with this is about a

16   page.  So it didn't take the SJC a long time to run

17   through this and so that goes to reasonably susceptible.

18        One more constitutional point and I'm not sure it

19   does stray a little bit into the area that I promised not

20   to talk about.  If the court would like me to be silent on

21   that, I can sit down.  If I'm given permission to speak on

22   it --

23              THE COURT:  Speak quickly.

24              MR. ORTIZ:  Okay.  There was an essential --

25   when a court -- when a trial court especially but any

1     court -- there's no case, there's no case where a trial

2     court, besides *Dellorusso*, has made this decision.

3          When an appeals court issues a decision, they can

4     make this limitation in the statutory context but it needs

5     to be rare because there's a separation of powers issue

6     that goes to the heart of this and what a court is and

7     what a legislature is.

8          A statute -- I mean, when the First Circuit or any

9     other court certifies questions to the SJC, they're not

10    asking for policy judgments.  They're asking what a law

11    means and that's what the people through their legislature

12    enacted, and the concept that the court is going to draw

13    an arbitrary distinction there and start being a super

14    legislature in that sense with a statute, that I think

15    implicates some deep issues about what the role of the

16    court is in terms of determining a statute.  I won't say

17    anything else.  I hope that was brief.

18              THE COURT:  All right.  Thank you.

19          What do you say about holding on to the car for two

20    years?

21              MS. HESTIN:  Your Honor, I'm not exactly sure

22    what opposing counsel was talking about here because, at

23    least as to this particular notice, my understanding is

24    that the borrower redeemed within just a couple of days,

25    likely before the borrower even received the notice.

1        That's not something that we could raise on a motion

2    to dismiss because it's outside of the pleadings of

3    course.  But, I mean, I have questions as to whether the

4    borrower ever even saw this notice before redeeming the

5    vehicle back in 2017.

6            THE COURT:  So that argument -- tell me about

7    your argument now in light of that.

8            MR. ORTIZ:  My argument is that they have the

9    car.  He did not redeem.  That's my argument.  They've

10   been holding it for two years.  The way I get this is from

11   the brief that they filed and because that was my reading

12   of it and I checked with the client, he said that they

13   have the car.

14           THE COURT:  We're looking at the complaint.

15           MR. ORTIZ:  Right.

16           THE COURT:  So this is a little bit out of the

17   complaint, but both sides are making an argument on this

18   issue.

19           MR. ORTIZ:  Of?

20           THE COURT:  Where's the car?

21           MR. ORTIZ:  According to the client they have

22   it.  They have the Jeep.  That's what he wrote me.  He

23   never redeemed the Jeep.  I left him a message last night.

24   He texted me.  I have it in writing right here if you'd

25   like me to read his response to me.

1          In terms of the way we both, my colleague and I, read

2     their brief, it seems to me that that's what they were

3     saying.

4               THE COURT:  What are you saying, or why is that

5     not a fair reading of what you were saying?

6               MS. HESTIN:  So our reading of the complaint was

7     that plaintiffs did not allege that the vehicle was sold

8     because it wasn't.  Beyond -- obviously beyond that, we're

9     going beyond the complaint.

10              THE COURT:  We are.

11              MS. HESTIN:  But in the review that we did of

12    the file at the time of the presale notice, my

13    recollection is actually -- and I haven't looked at this

14    in a while -- that the borrower provided authorization for

15    his wife to come and redeem the vehicle something like the

16    next day and so the vehicle was redeemed.

17         You know, beyond that I think -- well, this is

18    probably not going to get further than that sitting here

19    in the courtroom today, but the pleadings do not -- I

20    would leave the court with this on that point.

21              THE COURT:  Tell me about the pleadings.

22              MS. HESTIN:  The pleadings do not allege that

23    the vehicle was sold, and in our view that is a necessary

24    precursor to state a claim involving a presale notice.

25              THE COURT:  Because the complaint doesn't allege

1    the vehicle was sold.

2         MS. HESTIN:  The complaint doesn't allege that

3    the vehicle was disposed of, and disposition is a

4    necessary piece of application of this statute and that's

5    what the courts found in *Bremer* and *Chulsky* and in

6    *Wallace*.

7         THE COURT:  But what about a plausible reading

8    of the complaint as a whole?

9         MS. HESTIN:  Well, Your Honor, I guess I would

10   say that the complaint doesn't say anything about what

11   happened to the vehicle after the repossession at all.  It

12   doesn't say he redeemed it; it doesn't say it was sold; it

13   doesn't say that Ally still has it.  It doesn't say

14   anything.  It's just absent on that score.

15        MR. ORTIZ:  I have to correct something.  I am

16   wrong.  They are right.  He redeemed the vehicle.  I

17   couldn't really understand what he said.  I just read it

18   again and I understand that he has the car.  They don't

19   have the car.  I apologize to the court for being wrong

20   about that.

21        So the only issue about --

22        THE COURT:  Thank you.  You don't need to

23   apologize.  Thank you for correcting that.

24        All right.  So kind of replay now and kind of plug

25   that information into the argument you were making.

1          MR. ORTIZ:  Sure.  Then what I would say then is

2     the first portion of my argument having to do with sort of

3     the general unfairness of holding the car, that we

4     obviously can discard that for two years.  And then fast

5     forward to the part where I was talking about the appeals

6     court and *Williams* talking about this notice is required

7     before the disposition takes place, before a disposition,

8     that portion of my argument is preserved.

9          THE COURT:  Well, how about the reading that the

10    defendant is suggesting that I make of the complaint,

11    reading the complaint really closely and looking at what

12    you say and you not alleging that the car was sold and

13    that being a necessary component for your claim?

14         MR. ORTIZ:  We disagree with that because we

15    believe that it's required before it's sold.

16         THE COURT:  Before.

17         MR. ORTIZ:  And the reason it's required before

18    it's sold is for the things I said before that I won't

19    repeat having to do figuring out if you want to redeem it.

20         That information, in our view, there's a reason why

21    that's important because a consumer can instead of

22    thinking that the car might be sold to the car lot next

23    door owned by the guy's brother-in-law for a dollar, they

24    don't necessarily know about commercial reasonableness.  I

25    mean, that's not mentioned anywhere about there has to be

1      a reasonable sale.  That's not mentioned.  It says what we

2      get from the sale is what they say.

3          So what we get from the sale, you think about a car

4      dealer and what they might get from a sale, you may be

5      more likely to say I'm going to be left with a big debt if

6      I get credited for the small amount that they end up

7      getting and so I'm going to have to make sure I get that

8      car back.

9          I have to make sure that given the shifting landscape

10     under my feet having to do with what happened to this

11     particular car, we do have a redemption here that did take

12     place.  And that decision to redeem can be influenced by

13     the fact that you just can't go on Google and try to

14     figure out, more or less, what your car is worth and then

15     subtract that from the debt balance and have, okay, that's

16     what I'm looking at.

17         So if I'm looking at that, what are my other options?

18     Maybe the car is under water and it doesn't make sense.

19     But I know that if I was in the position -- especially

20     maybe if you dial back before I went to law school and put

21     myself in the position of thinking about what I would do

22     if I thought that I was going to be credited for what they

23     get for this sale versus the fair market value, that would

24     perhaps have some changes to the way I think about things.

25              THE COURT:  All right.  Do you want to say

1    anything on that?

2             MS. HESTIN:  Not on that point, Your Honor, but

3    if I might make two other very brief points?

4             THE COURT:  Sure.

5             MS. HESTIN:  The first is on the issue of

6    *Williams* and announcing a new rule.  I think that the

7    court might find Commonwealth v Ennis helpful in

8    conceptualizing what it means to announce a new rule.

9    That case lays out several different formulations.  For

10   example, "deciding an issue of first impression whose

11   resolution was not clearly foreshadowed... or overturning

12   a longstanding and widespread practice to which a high

13   court has not spoken, but which a near-unanimous body of

14   lower court authority has expressly approved," and some

15   other formulations as well.  It's in the papers but it's

16   398 Mass. 170.  I think that goes to the court's question

17   as to whether this is really a new rule and what that

18   means.

19        The second point I wanted to make was just this idea

20   of non-waiver under the RISA.  The RISA doesn't speak to

21   presale notices.  The RISA speaks to the value that needs

22   to be applied when the vehicle is sold.  And so whatever

23   waiver or non-waiver issues there might be around the

24   RISA, that doesn't impact the issue of whether a notice

25   needs to be sent to a borrower and what that notice is --

1    the components that that notice is supposed to include.

2    That's what plaintiffs have sued under.  That's governed

3    by the UCC and the UCC very clearly says that parties can

4    agree not to apply that provision.

5        So the parties could agree that they would get --

6    that the borrower would get a UCC notice under Vermont

7    law.  Now that doesn't tell us what the car can or can't

8    be sold for or the deficiency that can or can't be

9    applied.  That's a RISA issue.  But the UCC and the UCC

10   choice of law provision govern the notice issue and that's

11   what plaintiffs have sued on.

12             MR. ORTIZ:  One thing, Your Honor, just briefly.

13   I just wanted to cite that provision, the provision, the

14   anti-waiver provision and the RISA is Chapter 255B Section

15   23, and there's only twelve words:  "Any waiver of the

16   provisions of this chapter shall be unenforceable and

17   void," end of section.

18       And so that is what is happening to the extent that

19   the Vermont choice of law provision is applied and they

20   can utilize both as a matter of practice in the sale but

21   also as a matter of the notice to say you get what we get

22   from the sale instead of the fair market value, which is

23   essentially incorporated into the UCC.

24             THE COURT:  Is that what you said?  I didn't

25   think that's what you said.

1          MS. HESTIN:  No, Your Honor.  That's not what I

2    said.  What I said was that the parties can agree that the

3    notice needs to comply with --

4          THE COURT:  The notice needs to comply.

5          MS. HESTIN:  The notice needs to comply with

6    Vermont law.

7          THE COURT:  But the ultimate sale might still be

8    governed by RISA?

9          MS. HESTIN:  Exactly, Your Honor.

10          THE COURT:  That's what I thought.  And you're

11    suing under the notice.

12          MR. ORTIZ:  Right.  But Section 614 of the UCC

13    says that you have to describe the deficiency and that

14    description of the deficiency incorporates RISA.  It has

15    to.  That's what *Williams* said.

16     It incorporates RISA because there's nothing about a

17    fair market value coming from the UCC, but you can't waive

18    that, the fair market value.  And so insofar as you're

19    trying to do right by 614 and describe the deficiency, to

20    the extent that they win on this point, they get to

21    describe it in a way that's completely inaccurate and

22    contrary to Massachusetts law and this is a backdoor

23    waiver that's impermissible under 255B Section 23.

24          MS. HESTIN:  Your Honor, respectfully I think

25    that's still not what I was saying.

1        If the plaintiffs want to bring the claim on behalf

2    of Mr. Randall under Vermont law and fight it out over

3    Vermont law, maybe they'll do so.  But, again, the notice

4    and what's in the notice is governed by one statute.  The

5    sale is governed by another.  Nobody is arguing that

6    they've waived the RISA when it comes to the sale issues.

7    What we're arguing is that the UCC notice is governed by

8    Vermont law.

9            MR. ORTIZ:  But how can they not be waiving RISA

10   if 614 of the UCC says you have to describe the

11   deficiency?

12           THE COURT:  It's hard to see how functionally --

13   you've made, Attorney Hestin, you've made the argument

14   very nicely, very well, but I'm having a hard time

15   conceptualizing how in the real world functioning that

16   would work.

17           MS. HESTIN:  I think we need to look at what the

18   UCC notice provision looks like in Vermont and then the

19   court would be tasked with analyzing how to harmonize that

20   with the RISA, but that's not the issue that's before the

21   court right now.

22           THE COURT:  You're saying the narrow issue

23   before the court is the notice?

24           MS. HESTIN:  Yes, Your Honor, that's the claim.

25   The claim is based on -- the claim is under the UCC based

1    on the notice.

2              THE COURT:  All right.  One more -- this is

3    going to be the last time we're going back and forth.

4    Okay.

5              MR. ORTIZ:  Well, let's say, Your Honor, that

6    this notice it's okay because Vermont law, when you're

7    doing 614, you don't need to use the fair market value.

8    Well, then this notice is okay if they can choose

9    Massachusetts law and then all the Massachusetts'

10   consumers get informed of this what we get from the sale

11   and that's okay in a notice.  But that can't be because

12   614 requires an accurate description of the basis of the

13   deficiency calculation.  So how can this be a good notice?

14             THE COURT:  So the notice requires the basis for

15   the calculation.  You're saying you can't do that unless

16   you're complying with RISA?

17             MR. ORTIZ:  The only reason they put this in

18   here, the money you will get from the sale after paying

19   our costs will reduce the amount you owe, is because

20   they're describing the basis of how they're going to

21   calculate the debt that arises after the car is sold or

22   disposed of, and that's how they're doing it right here.

23        The reason they have to do that at all is because of

24   614.  They have to describe the basis of the deficiency

25   and the 614 is under UCC and so this can't be right.  I

1   mean, this is actually wrong on its face because of the

2   way that the RISA in Massachusetts works with the UCC.

3   And those RISA requirements, I mean not only are they

4   pretty clear and the SJC just expounded on them, but

5   they're unwaivable and so this really affects a waiver and

6   it's also just wrong.

7       That's not the way that a Massachusetts consumer who

8   gets this, oh, you get what you get from the sale.  Well,

9   that's not what they're going to get, and so it can't be

10  compliant with 614 and that obligation to accurately

11  describe the basis of the deficiency.

12          MS. HESTIN:  Your Honor, I think we've gone

13  around and around in circles on this.

14          THE COURT:  It's really an interesting issue.

15          MS. HESTIN:  I think the point is that if

16  Vermont law applies to -- the parties have selected

17  Vermont law to apply to their transaction.  That means

18  that the notice needs to be analyzed under Vermont law.

19  How Vermont law would read this notice, we don't know.  We

20  haven't briefed it.  They haven't alleged it.  It's not

21  before the court.  That's not the issue.  The issue is

22  simply is the notice governed by Massachusetts law or not?

23  And under the contract, the contract says not.

24          THE COURT:  All right.

25          MS. RYAN:  Your Honor, if I could just briefly,

1   very briefly, address the issue that was just raised about

2   the standard for when a court decision announces a new

3   rule?

4        The case that was cited, *Commonwealth v. Ennis*,

5   that's obviously a criminal case which has a different --

6   there are different aspects to that issue when you're

7   dealing with a criminal case.  But even under that

8   standard when a decision decides an issue of first

9   impression that could not be foreseen, that's not the case

10  here because some creditors did foresee it and plaintiffs

11  who filed lawsuits alleging this claim did foresee it.

12       On the second standard, whether it's contrary to a

13  longstanding practice, again, there's no record here that

14  it's contrary to a longstanding practice in any sort of

15  widespread uniform way.

16       My last point I would just refer the court to the

17  *Shawmut Worcester County Bank* case that's cited in our

18  brief.  That's actually a UCC case, a SJC case, that

19  addressed an interpretation of the UCC provision under

20  Article 9 about whether or not a debtor can waive certain

21  rights under Article 9, and the court decided that the

22  statute says debtors cannot waive certain rights under

23  Article 9.

24       The SJC decided that debtor included guarantor, and

25  so that was actually an arguably new interpretation of

1    Article 9 of the UCC and the court decided in that case
2    that that interpretation would be applied retroactively
3    because, first of all, there was no record to show any
4    established contrary commercial practice.
5         The court also said that even though we haven't
6    previously dealt with this issue, we're not announcing
7    common law rules but rather construing certain statutory
8    provisions.  Those provisions have had the same meaning
9    since the effective date of the statute.  If it's a
10   statutory interpretation case under the UCC, it's very
11   analogous to this situation and the court said this
12   applies retroactively.  Thank you.
13              THE COURT:  Thank you all.
14              MR. ORTIZ:  Thank you.
15              MS. HESTIN:  Thank you, Your Honor.
16   **(Hearing commenced at 11:27.)**
17                   ---------------------
18
19
20
21
22
23
24
25

```
 1      (The certification of this transcript does not apply to
 2      any reproduction of this transcript, unless under the
 3      direct control and/or supervision of the certifying
 4      reporter.  I assume no responsibility for the accuracy of
 5      any reproduced copies not made under my control or
 6      direction.)
 7
 8                           CERTIFICATION
 9
10            I certify that the foregoing is a correct
11      transcript of the record of proceedings in the
12      above-entitled matter to the best of my skill and ability.
13
14
15
16      /s/ Alice Moran                    October 27, 2019
17      Alice Moran, RMR, RPR
18      Federal Official Court Reporter
19
20
21
22
23
24
25
```