UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES RANDALL, and GRACIE WHITE f/k/a GRACIE DORNEUS, Individually and on behalf of a class of persons similarly situated, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 18-30143-MGM |
| ALLY FINANCIAL INC., | * * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 34)

April 13, 2020

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Plaintiff, James Randall, brought this putative class action against Defendant, Ally Financial Inc., in Massachusetts state court. Defendant subsequently removed the case and this court denied Randall's Motion to Remand. A second individual plaintiff, Gracie White, joined this litigation with the filing of the Amended Complaint. Randall and White allege they and the other members of the putative class (together "Plaintiffs") are Massachusetts residents who purchased motor vehicles financed with loans from Defendant. Each later fell behind on their payments and Defendant repossessed their vehicles. After the repossession, and within the four years prior to the filing of this action, Plaintiffs each received a notice from Defendant related to the repossession of their vehicle ("Repossession Notices"). It is undisputed that the Repossession Notices they received stated the

sale price of the vehicle, not its fair market value, would be deducted from their outstanding loan balances after the sale. The parties disagree about the significance of that language.

Plaintiffs assert the Repossession Notices violated Massachusetts law because they did not state that loan balances would be reduced by the fair market value of the repossessed vehicle. Defendant disagrees with respect to notices sent prior to June 5, 2018 and has moved to dismiss claims based on notices filed prior to that date, including Randall's personal claim. Alternatively, Defendant seeks dismissal of Randall's personal claims for two other reasons. First, Defendant argues Massachusetts law does not apply to the financing relationship between Randall and Defendant because he purchased his motor vehicle in Vermont. Second, Defendant argues the provisions of Massachusetts law cited by Plaintiffs do not apply to Randall because Defendant has not disposed of the vehicle. For the reasons discussed below, this court will deny in part and grant in part Defendant's motion to dismiss.

II.  BACKGROUND

In March of 2017, Randall obtained a loan from Defendant to finance the purchase of a Jeep Grand Cherokee from Bennington Subaru, a dealer located in Vermont. Randall signed a consumer credit contract (the "Contract") prepared by Defendant. (Contract, Dkt. No. 1-2.) The Contract included a choice of law section stating Vermont law would "apply to the [C]ontract." (*Id.* § 7.) It also provided that if the financed vehicle were repossessed and sold, the sale price of the vehicle, not its fair market value, would be used to reduce Randall's indebtedness. (*Id.* § 3.f.) The sale was completed on March 16, 2017 and the vehicle was repossessed on October 26, 2017. Defendant sent Randall a Repossession Notice dated April 19, 2018. The language in the notice did not specify that his indebtedness would be reduced by the fair market value of the repossessed vehicle. Instead, the Repossession Notice stated Randall's indebtedness would be reduced by the proceeds from sale of

the vehicle. Randall does not allege Defendant actually sold the vehicle following the repossession and Defendant asserts no sale has occurred.

### III.   LEGAL STANDARD

"As a general proposition, a complaint must contain no more than 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Fed. R. Civ. P. 8(a)(2)). When assessing whether a complaint makes a sufficient showing , the court accepts as true Plaintiff's factual allegations contained in the complaint—those setting out who did or said what, to whom, and when—and draws all reasonable inferences based on those factual allegations. *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). The court then considers whether the complaint contains "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted).

### IV.   DISCUSSION

#### A.   Claims Arising from Notices Sent Prior to June 5, 2018

In Massachusetts, post-repossession notices sent by lenders with respect to loans used to purchase motor vehicles must comply with the Massachusetts Motor Vehicle Retail Installment Sale Act ("MVRISA"). MASS. GEN. LAWS ch. 255B. Pursuant to § 20B of MVRISA, after a repossession, the outstanding balance on a loan secured by a motor vehicle must be reduced by the fair market value of the vehicle, rather than the price at which the vehicle is sold. *Id.* § 20B(e). The Uniform Commercial Code ("UCC"), as adopted in Massachusetts, also addresses the requirements for post-repossession notices in consumer

goods transactions. The UCC provides form language lenders can use to comply with UCC notice requirements. MASS. GEN. LAWS ch. 106 § 9-614. Lenders who elect to use the form language are granted a "safe harbor" with respect to UCC notice requirements. *Id.* § 9-614, cmt. 3. Unlike the language used in MVRISA, the safe harbor language in the UCC describes the loan amount being reduced by the sale price of collateral following repossession, rather than the fair market value of the collateral. *Id.* § 9-614(3).

The conflict between the safe harbor language in the UCC and the requirements of MVRISA was resolved by the Massachusetts Supreme Judicial Court ("SJC") on June 5, 2018. *Williams v. American Honda Finance Corp.*, 98 N.E.3d 169, 179-80 (Mass. 2018). In *Williams*, the SJC answered three questions certified by the First Circuit. Most of the opinion was devoted to answering the first question, which asked how to calculate fair market value for purposes of § 20B of the MVRISA. *Id.* at 173-78. The SJC needed far fewer words to resolve questions two and three, which each asked whether a notice required by the UCC is sufficient in transactions governed by the MVRISA, "even if [the UCC language] does not describe the debtor's deficiency as the difference between the outstanding balance and the fair market value of the collateral." *Id.* at 178. After quoting the two related questions set out by the First Circuit, the SJC "conclude[ed] that the notice that is required by the [UCC] is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." *Id.* at 179.

After announcing the ruling, the SJC explained that the second and third certified questions inquired about UCC provisions that "generally govern defaults in secured transactions" and require lenders to send certain notices informing debtors how their deficiencies will be recalculated following the sale of repossessed collateral. *Id.* Those UCC provisions state that deficiencies will be reduced by the sale price of the collateral, rather than

its fair market value, as required by MVRISA. The SJC then observed that § 20B(d) of MVRISA provides that the UCC applies to transactions covered by MVRISA only if the UCC is not "'displaced by the provisions of [§ 20B] and [§ 20A].'" *Id.* (quoting MASS. GEN. LAWS ch. 255B, § 20B) (alterations in original). Since the UCC safe harbor language calculates post-sale deficiencies differently than MVRISA, the SJC concluded MVRISA displaced that portion of the UCC with respect to transactions governed by MVRISA. *Id.* The SJC's succinct explanation considers no other construction, nor does it identify any statutory or case law that would support the opposite construction.

Turning back to this case, Defendant does not dispute that the notices it sent to Randall and other putative class members used the safe harbor language from the UCC that was found insufficient in *Williams*. Instead, Defendant argues this court should apply that interpretation prospectively only and dismiss all claims arising from notices sent prior to June 5, 2018, the date *Williams* was decided. "[I]n very limited circumstances," a court may determine that a decision construing a Massachusetts statute should be given only prospective effect, but the default rule gives retroactive effect to decisions construing Massachusetts statutes. *Eaton v. Fed. Nat. Mort. Ass'n*, 969 N.E.2d 1118, 1132-33 (Mass. 2012). As the SJC has explained, when interpreting a statute, a court will generally not even need to "engage in an analysis whether that interpretation is given retroactive or prospective effect," because the interpretation of the statute "usually reflects the court's view of its meaning since the statute's enactment." *Id.* at 1132. The absence of a prospective/retrospective analysis in *Williams* is consistent with this general approach. *But see, Am. Int'l Ins. Co. v. Robert Seuffer GMBH & Co. KG*, 9 N.E.3d 289, 298 (Mass. 2014) (announcing holding and considering arguments for prospective application in same decision); *Shirley Wayside Ltd. P'ship v. Bd. of Appeals of Shirley*, 961 N.E.2d 1055, 1064-65 (Mass. 2012) (same); *Eaton*, 969 N.E.2d at 1132 (same); *Papadopoulos v. Target Corp.*, 930 N.E.2d 142, 155 (Mass. 2010) (same). While the SJC's silence in *Williams* suggests that

retroactive application is appropriate, it is not determinative and this court will, therefore, give further consideration to Defendant's arguments.

Courts asked to apply a statutory interpretation only prospectively consider "the extent to which a decision creates a novel rule, whether retroactive application will serve the purposes of that rule, and whether hardship or inequity would result from retroactive application." *Am. Int'l Ins. Co.*, 9 N.E.3d at 298. Defendant argues the SJC's announcement that the fair market value language in MVRISA supersedes the UCC's safe harbor language set forth a sufficiently new rule to warrant prospective application. Additionally, Defendant asserts the purposes behind that new rule do not require retroactive application and, in fact, retroactive application harms companies, like Defendant, who used the UCC safe harbor language in good faith.

Defendant urges the court to adopt the reasoning in *Dellorusso v. PNC Bank*, a Massachusetts Superior Court decision finding *Williams* should only apply prospectively. (*Dellorusso v. PNC Bank, N.A.*, No. 1877CV-01475-C, Mass. Super. Ct. (May 3, 2019) (unpublished), Dkt. No. 35-1). In *Dellorusso*, the court ruled that the scope of the prior ambiguity, as exemplified by the First Circuit's decision to certify questions to the SJC rather than simply construe the statute itself, was so significant that the SJC's decision created a new rule. *Id.* at 7. The court also gave significant weight to the potential harm to businesses who acted in good faith when they used the UCC safe harbor language rather than MVRISA's fair market value language and disregarded as unlikely the potential harm to consumers. *Id.* at 7-8.

Considering the same arguments, this court reaches the opposite conclusion. The SJC has consistently stated that its constructions of Massachusetts statutes will apply retroactively except in "very limited circumstances." *Eaton*, 969 N.E.2d at 1133. The existence of a statutory ambiguity is a common denominator in all statutory interpretation cases that reach the SJC, whether by direct appeal or through a question certified by the First Circuit. In *Williams*, the SJC did not deviate from

past precedent or find it necessary to consider multiple ways the statutes at issue could be construed. The SJC simply read the language of the UCC and MVRISA then concluded that, as written, the fair market value language required by MVRISA "displaced" the inconsistent UCC safe harbor provision. *Williams*, 98 N.E. 3d at 179. If this type of statutory interpretation were considered so novel as to warrant only prospective application, it is hard to imagine any case in which retroactive application would be appropriate.

Similarly, there is nothing unique about the type of harm Defendant will suffer if *Williams* is applied retroactively. Where, as here, there is statutory ambiguity and no case law or other government guidance suggesting a likely resolution, those governed by the statute are likely to split as to how the ambiguity will be resolved. In such a case, giving retroactive applicability to the court's statutory construction harms those who did not foresee the court's construction, but giving only prospective effect to the construction harms those who anticipated the court's decision. The risk of harm to each position flows directly from the existence of the ambiguity and a party taking either position would have been able to foresee the risk of each position. Such a predictable, and evenly distributed, risk of harm does not warrant deviation from the default position that judicial decisions construing Massachusetts statutes apply retroactively.

Defendant has also argued that retroactive application of *Williams* violates the Due Process Clause because Defendant did not have fair notice that the UCC's safe harbor language would not apply to the notices sent prior to June 5, 2018. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  At the same time, "[t]he mere fact that a statute or regulation requires interpretation does not render it unconstitutionally vague." *United States v. Lachman*, 387 F.3d 42, 56 (1st Cir. 2004). "It is well-established that '[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on

an as-applied basis.'" *Love v. Butler*, 952 F.2d 10, 13 (1st Cir. 1991) (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)) (alteration in original).

In this case, one provision of MVRISA requires that following a repossession, a borrower's indebtedness be reduced by the vehicle's fair market value, but the safe harbor language in the UCC states that the deficiency will be reduced by the vehicle's sale price. With such a straightforward conflict, either the UCC would be found to supersede MVRISA or the UCC safe harbor language would be found inapplicable to transactions covered by MVRISA. Since MVRISA includes a provision stating that the UCC applies "unless displaced" by sections of MVRISA, including the one setting out the method for calculating post-repossession deficiencies, it was foreseeable that the conflict would be resolved by a finding that the UCC safe harbor language was not sufficient in transactions governed by MVRISA. The court, therefore, concludes the statutes construed in *Williams* were not void for vagueness prior to that ruling.

B.      Randall's Personal Claims

Defendant also argues that Randall's individual claims should be dismissed. First, Defendant asserts notices sent to Randall related to the financing and repossession of his vehicle are governed by Vermont law, rather than MVRISA. Alternatively, Defendant argues MVRISA does not apply to notices sent to Randall because Defendant has not sold his repossessed vehicle. The court agrees that MVRISA is inapplicable to the notice sent to Randall and, therefore, does not reach Defendant's final argument.

Randall purchased the vehicle in Vermont and the Contract he signed provided Vermont law would "apply to the contract." (Contract § 7, Dkt. No. 1-2.) As a federal court sitting in diversity, this court is bound to apply Massachusetts law to resolve any conflict of law issues. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under the UCC, as

adopted in Massachusetts, "when a transaction bears a reasonable relation to the commonwealth and also to another state or nation, the parties may agree that the law of either the commonwealth or of such other state or nation shall govern the rights and duties under the transaction." MASS. GEN. LAWS ch. 106, § 1-301(a). Since the repossessed vehicle was purchased in Vermont, that state "bears a reasonable relation" to the transaction and the parties were permitted to agree that Vermont law, rather than Massachusetts law, would apply to their "rights and duties under the transaction." *Id.*

The court must next consider whether Randall's claims are covered by the choice of law provision in the Contract. Defendant asserts the Contract's choice of law provision governs the entire contractual relationship between the parties and Massachusetts law does not apply to any aspect of the parties' transaction, including the Repossession Notice. In response, Randall argues his claims are statutory claims not encompassed by the choice of law provision because it applies only "to the [C]ontract."

Randall's claims are statutory in the sense that they assert deficiencies in the Repossession Notice sent to Randall violated a statute, the UCC. However, the obligation to send the notices and the formula for calculating the post-repossession deficiency were both set out in the Contract. Unlike the case Plaintiff relies upon, *Kittner v. CTW Transp., Inc.*, this case does not include tort claims or any conduct beyond that required under the Contract. 762 N.E.2d 867, 871 (Mass. App. 2002). Additionally, the basis for Plaintiff's statutory claims is the UCC, the very statute that allowed the parties to elect to have Vermont law govern their transaction. For these reasons, the court concludes that Vermont law, rather than MVRISA, governed the content of notices sent to Randall in connection with the repossession of his vehicle. Randall's personal claims are therefore dismissed.

V.    Conclusion

For the reasons set forth above, the court grants in part and denies in part Defendant's Partial Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 34). The motion is granted as to Randall's personal claims and denied as to putative class members who received Repossession Notices from Defendant prior to June 5, 2018.

It is so Ordered.


 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge