UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

)
GRACIE WHITE f/k/a                                    )
GRACIE DORNEUS, individually and              )
on behalf of a class of persons similarly         )
situated,                                                    )            C.A. No. 3:18-CV-30143-MGM
                                                              )
            Plaintiff,                                        )
                                                              )
v.                                                             )
                                                              )
ALLY FINANCIAL INC.,                              )
                                                              )
            Defendant.                                     )

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.        INTRODUCTION

The Plaintiff, Gracie White, moves to certify a class of consumers who received form notices from Ally Financial Inc. (hereinafter, "Ally") after it repossessed their cars. The facts of this case are straightforward. The post-repossession notice Ally sent to putative[1] class members misstated critical information required by Massachusetts law, information that allows borrowers to protect their rights and keeps creditors honest in accounting for repossessed property. Violation of these statutory mandates entitles class members to statutory damages.

Article 9 of the Massachusetts Commercial Code (the "UCC") and the Massachusetts Motor Vehicle Retail Installment Sales Act ("RISA") contain specific requirements regarding what lenders must include in post-repossession notices. G.L. c. 106, § 9–601 *et seq.*; G.L. c. 255B, § 1, *et seq.* Article 9 and RISA work in concert to establish basic obligations for lenders to ensure the consumer has sufficient information to understand the extent of his debt, the potential

---

[1] For brevity Ms. White simply refers to "class members" throughout the remainder of this brief, that they are putative is implicit in the nature of her motion to certify the class.

liability for deficiency, and determine how to proceed. Courts strictly construe Article 9's notice requirements in exchange for granting creditors the right to seize the property of others without a court order. *See, e.g.*, *Osborne v. Minnesota Recovery Bureau, Inc.*, No. 04–1167(JRT/FLN), 2006 WL 1314420, at *2 (D. Minn. May 12, 2006) (applying strict construction of UCC provision because "self-help repossession is a harsh remedy" and "strict application of the law is necessary to prevent abuse and to discourage illegal conduct").[2]

After a creditor repossesses a vehicle, it must send a notice that informs consumers, among other things, that, if the vehicle is sold the creditor will use the *fair market value* of the vehicle (rather than just the sale proceeds) to reduce the amount the consumer owes.[3] Ally violated the UCC by failing to include this information in its post-repossession notices, erroneously informing consumers that the usually much lower *proceeds of the sale*, instead of the fair market value of the vehicle, would apply to their loans.

This case is ideally suited to class resolution. The claims all arise from the use of a form notice that failed to comply with applicable law, not from particular or individual treatment of any consumer. The law is uniform as to all class members, and the defective form notices injured the Plaintiff and similarly-situated consumers in the same manner: by failing to include the information required by law, Ally deprived Ms. White and other class members of information they were entitled to by law. These claims give rise to uniform statutory damages based on a straightforward formula under the UCC.

Accordingly, and for the reasons set forth below, Ms. White requests that this Court

---

[2] Notably, the Supreme Judicial Court has indicated that "authority from other jurisdictions is especially relevant in the context of the UCC which seeks to make uniform the law among the various jurisdictions." *See Reading Co-op Bank v. Suffolk Construction Co., Inc.,* 464 Mass. 543, 550 n. 7 (2013) (internal quotations and citation omitted).
[3] G.L. c. 106, § 9-614(1)(b); G.L. c. 255B, § 20B(e)(1). *See also Williams v. Am. Honda Fin. Corp.*, 479 Mass. 656, 668 (2018).

certify a class consisting of all Massachusetts consumers to whom Ally sent a notice substantially similar to the form notice attached as <u>Exhibit A</u> after the repossession of their vehicle on or after July 16, 2014, except for individuals whose vehicle sales contracts contain choice-of-law provisions selecting the law of a state other than Massachusetts. Ms. White further requests that the Court appoint her as class representative, and appoint the Law Office of Nicholas F. Ortiz, P.C. and Baily & Glasser LLP as class counsel.

## II.     Facts: Ally Sent Ms. White A Form Post-Repossession Notice That Contained The Same Infirmities As Similar Notices It Sent To At Least 1,500 Massachusetts Consumers

On or about May 13, 2016, Plaintiff Gracie White entered into a loan agreement with Ally for the purchase of an automobile. *See* Dkt. No. 33, Second Amended Complaint ("Compl.") ¶ 13. On or about October 31, 2018, Ally repossessed Ms. White's vehicle. Compl. at ¶ 17. Following the repossession, Ally sent White a standard-form notice advising her of its intent to sell her vehicle. *See* <u>Exh. A</u> (hereinafter, the "Notice"). The Notice states, in relevant part:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

*Id*. Ally sold Ms. White's car on December 3, 2018.  *See* <u>Exhibit B</u>.

After this case was filed on July 14, 2018, Ally conducted an investigation which showed that, since July 2014, it sent substantially similar Notices to at least 1,500 other Massachusetts consumers. *See* Dkt. No. 1–3, Declaration Of Robert Preston in Support of Removal, at ¶ 4; Dkt. No. 1, ¶ 11. Mr. Preston, Ally's Senior Business Analyst, attests that it is Ally's standard practice to send Massachusetts consumers post-repossession notices like the one sent to Ms. White. According to Ally, the class as alleged in the Complaint, contains in excess of at least 1,500 consumers. Dkt. No. 1, ¶ 11; Dkt. No. 1-3, ¶ 4.

In denying Plaintiff's Motion To Remand, this Court found that "[t]he declarations offered by Defendant establish that in the four years prior to the filing of this suit, Defendant repossessed vehicles associated with approximately 1,500 accounts held by Massachusetts customers; Defendant's standard practice is to send post-repossession notices after all repossessions, and that none of the post-repossession notices Defendant sent during the relevant period included a statement about 'fair market value,' which Plaintiff contends was required." *See* Dkt. No. 12, Order Denying Plaintiff's Motion To Remand.

As noted by this Court, and as detailed below, Plaintiff contends that Ally's Notices violate the UCC and RISA with respect to all class members in precisely the same way — by failing to accurately describe their potential deficiencies as the difference between their loan balances and the fair market value of their vehicles. Given that Ms. White and all other class members' claims rise or fall on the legality of Ally's form Notices, this case is well-suited for class certification.

### III.    Applicable Law: RISA Requires That The Fair Market Value Of The Vehicle Be Used To Describe, And Calculate, Any Deficiency Liability

The UCC "generally govern[s] defaults in secured transactions." *Williams*, 479 Mass. at 668. Under the UCC, after the repossession of collateral but before its sale, a lender must send the consumer a written notice containing critical information regarding the process, including a "description of any liability for a deficiency of the person to which the notification is sent." UCC § 9-614(1). Under the UCC, deficiencies are generally calculated using the proceeds of a "commercially reasonable" sale. UCC § 9-615.

But transactions governed by RISA have a higher standard. RISA contains a deficiency formula that requires the creditor to apply the *fair market value* of the vehicle, providing additional protections for Massachusetts consumers whose cars are repossessed. Specifically,

4

RISA § 20B(e)(1) provides:

> "[i]f the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section."

RISA also explains how these two standards are to be read: it "provides that the Uniform Commercial Code applies 'unless displaced by the provisions of [§ 20B] and [§ 20A].'" *Williams*, 479 Mass. at 668, citing G.L. c. 255B, § 20B. Because RISA's consumer-friendly deficiency calculation displaces the superseded UCC formula, this text makes clear that the creditor must follow RISA's dictates. And so, a notice sent under UCC § 9-614 must inform the consumer that any loan deficiency will be calculated based on the fair market value of the vehicle — and not the sale proceeds formula that Ally used.

The Supreme Judicial Court's decision in *Williams* recognized that the RISA deficiency calculation displaces the UCC's method for calculating deficiencies and therefore held that "[t]he notice that is required by G.L. c. 106, § 9–614, and G.L. c. 106, § 9–616, must describe the deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance because this is what is required by § 20B." *Id.* at 668. And "the notice that is required by the Uniform Commercial Code is ***never sufficient*** where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." *Id.* (emphasis added).

Here, the post-repossession Notices Ally sent to the Plaintiff and other class members were deficient due to Ally's failure to include any mention that the fair market value of the vehicle would be used to calculate any remaining deficiency on their loans. *See* Exh. A. Accordingly, Ally violated the UCC with respect to Ms. White and all class members, giving rise

to statutory damages under the UCC. *See* G.L. c. 106, § 9-625(c).

**IV.     Fed. R. Civ. P. 23's Requirements For Class Certification Are Easily Satisfied**

Under Fed. R. Civ. P. 23, the plaintiff must show that (1) the class is so numerous that joinder of all members is impractical (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See* Fed. R. Civ. P. 23(a).

In addition to the Rule 23(a) requirements, the plaintiff must meet the requirements of either Rule 23(b)(1), (2), or (3). Under Rule 23(b)(3), a class can be maintained if: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance), and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority). *See* Fed. R. Civ. P. 23(b)(3).

On a motion for class certification, "[t]he Plaintiffs bear the burden of an initial showing that the proposed class satisfies the Rule 23 requirements … [b]ut need not make that showing to a degree to of absolute certainty." *In re. Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) (internal citations and quotations omitted). All of the foregoing requirements are met here.

In fact, given their confluence of form documents and uniform statutory damages, cases involving defective repossession notices, like this one, are routinely certified. *See, e.g.*, *Walczak v. Onyx Acceptance Corp.,* 850 N.E.2d 357, 366-372 (Ill. App. 2d Dist. 2006) (class of buyers who received defective repossession notice certified); *Middleton v. Sunstar Acceptance Corp.,* No. 98-CP-07-1131, 2000 WL 33385388, *3-*8 (S.C. Com. Pl. Jan. 13, 2000) (certifying class in action alleging that finance company's repossession form violated the UCC); *Chisolm v. Transouth Fin. Corp.,* 194 F.R.D. 538, 557-569 (E.D. Va. 2000) (certifying class against

financing company for violations of UCC notice requirements); *Car Now Acceptance Co. v. Block*, No. 427973, 2002 WL 32001272 (Ohio Com. Pl. Nov. 25, 2002) (class certified in defective repossession notice case), *aff'd, N. Shore Auto Fin., Inc., v. Block,* 2003 WL 21714583, (8th Dist. July 24, 2003), *appeal not allowed,* 800 N.E.2d 47 (Ohio 2003); *Moye v. CAC*, 2001 Conn. Super LEXIS 1342 (May 15, 2001); *Mortera v. Ford Motor Credit*, 2003 Calif. Super LEXIS 4433117 (June 23, 2003). In general cases involving the use of form documents are particularly appropriate for class treatment. *Orloff v. Syndicated Office Sys., Inc.*, No. 00-cv-5355, 2004 WL 870691 at *3-4 (E.D. Pa. Apr. 22, 2004); *Cooley v. F.N.B. Corp.*, No. 10010 of 2003, C.A., Order of Court (Lawrence Cty., PA Nov. 13, 2008) (certifying class of borrowers who received similar defective repossession notices).

## A.    1,500 Class Members Is Sufficiently Numerous

To satisfy the numerosity requirement, the plaintiffs must show that joinder is impracticable, not impossible. *See, e.g.*, *Gorsey v. I.M. Simon & Co.,* 121 F.R.D. 135, 138 (D. Mass. 1988) (800 - 900 member class made joinder impracticable). The numerosity requirement is a relatively "low threshold," which does not impose a precise numerical requirement. *Garcia–Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir. 2009). The issue is not merely the numerical size of the class but, as explicitly stated in Rule 23(a)(l), that joinder is impracticable.

While numerosity is not simply a numbers game, courts routinely find joinder impracticable where the class consists of at least 40 members. *See, e.g.*, *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011) ("Generally, classes of forty or more are considered sufficiently numerous under Rule 23(a)(1)."); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003) ("forty individuals [are] generally found to establish numerosity"); *see also Garcia v. E.J. Amusements of New Hampshire, Inc*., 98 F.Supp.3d 277, 285 (D. Mass. 2015) (certifying class of 160).

Here, between July 2014 and the present, Ally sent substantially similar Notices to at least 1,500 other consumers. *See* Dkt. No. 1-3, ¶ 4 (acknowledging Ally's practice of sending consumers post-repossession notices and that, since July 2014, "in excess of 1500 accounts fit this criteria [the class criteria in the Complaint]"); Dkt No. 12, Order Denying Plaintiff's Motion To Remand (noting same, and that "none of the post-repossession notices Defendant sent during the relevant period included a statement about 'fair market value,' which Plaintiff contends was required").

**B.    The Legality Of Ally's Form Post-Repossession Notice Is The Epitome Of A Common Question**

An additional prerequisite to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, "the class claims must depend upon a 'common contention' that is 'capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Garcia v. E.J. Amusements*, 98 F.Supp.3d at 285, citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). *See also Donovan v. Philip Morris USA, Inc*., No. 06-12234, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012) ("Commonality requirement is met where the 'questions that go to the heart of the elements of the cause of action' will 'each be answered either 'yes' or 'no' for the entire class' and 'the answers will not vary by individual class member.'").

Claims arising from form notices routinely and easily satisfy the commonality requirement, as a question common to all class members is whether the notice is lawful. *Gordon v. Corporate Receivables*, No. C.A. No. 09-230S, 2010 WL 376386, at *2 (D.R.I. Jan. 27, 2010) (holding that commonality is "easily met" when the "[p]laintiff's claim is that a standardized, form, debt collection letter on its face violates [a consumer protection law]"); *LaRocque ex rel.*

*Spang v. TRS Recovery Servs., Inc.*, 285 F.R.D. 139, 146 (D. Me. 2012) (finding that the defendants' use of a form letter and the "standard and uniform procedures for sending it out … presents a common issue" as to the "legality of the letter's contents and its use"); *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) ("[c]ommon nuclei of fact are typically manifest where … the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents").

Ally sent form Notices to Ms. White and all class members, which were all identical or substantially similar. Dkt. No. 1, ¶ 11. Whether the Notice violates the UCC, and RISA, are questions common to all class members.

**C.     Ms. White's Claims Are Identical To Those Of Class Members — Not Merely Typical — All Got The Same Notice, And Have The Same Rights And Remedies**

Rule 23(a)(3) also requires that the "claims … of the representative parties are typical of the claims … of the class." The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *Barry v. Moran,* No. 05-10528, 2008 WL 7526753, at *11 (D. Mass. Apr. 7, 2008). Plaintiffs' claims need not be identical to those of absent class members. *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). "Typicality is "not highly demanding because the claims only need to share the same essential characteristics, and need not be identical." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003) (internal quotation marks and citation omitted).

In this case, Ms. White's and other class member's claims are the same — Ally sent them virtually identical post-repossession notices that all violate the UCC in the same way. Ms. White's claims and requests for relief are identical to those of class members, as they arise from the same, standardized course of conduct. Where, as here, the plaintiff attacks the legality of a

form letter and seeks the same remedies, courts routinely find typicality. *See e.g., Keele v. Wexler*, 149 F. 3d at 595 ("By mailing the form letters seeking the $12.50 collection fee, the [defendants] engaged in the same course of conduct towards [plaintiff] and the members of classes A and B. These individuals are now suing the [defendants] under the FDCPA and CFDCPA, alleging violations of the same statutory sections under the same legal theory. We are confident that [the plaintiff] has met Rule 23's typicality requirement"); *LaRocque ex rel. Spang*, *supra*, at 148 (typicality met where plaintiff challenged legality of form letter sent to class); *Piper v. Portnoff Law Associates*, 215 F.R.D. 495, 502 (E.D. Pa. 2003) (typicality met where "form letters [sent to class members] are similar to the letters defendants mailed to the named plaintiff").

**D.     Ms. White Has No Conflicts With Class Members, And Her Counsel Are Adequate To The Task Of Representing The Class**

Rule 23(a) requires that the representative parties will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In addressing the requirement, the Court must determine "first, whether any potential conflicts exist between the named plaintiffs and the prospective class members, and, second, whether the named plaintiffs and their counsel will prosecute the case vigorously." *Vargas v. Spirit Delivery & Distrib. Servs.*, 245 F. Supp. 3d 268, 288 (D. Mass. 2017).

Here, undersigned counsel are active practitioners whose experience in consumer law and class action litigation is demonstrated by their attached affidavits. *See* Exh. C and D, Affidavits of Plaintiff's Counsel. And Ms. White has no conflict or antagonism with other class members. Ms. White's claims and her remedies are the same as those of the class, and she is ready and willing to serve as a class representative.  Exh. E, Affidavit Of Gracie White.

**E.   The Common Questions Are Whether Ally's Notice Violates The Law And If So, What Damages May Class Members Recover — These Questions Predominate Over Any Individual Questions, To The Extent Any Exist**

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." Predominance "does *not* require a plaintiff seeking class certification to prove each element of her claim is susceptible to class-wide proof." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (internal citations and quotations omitted) (emphasis in original). "Rather, the question is whether there is 'reason to think that [individualized] questions will *overwhelm* common ones and render class certification inappropriate.'" *In re Nexium Antitrust Litig.*, 777 F.3d at 21, quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014).

Courts have routinely found predominance of common questions where the claims relate to a common course of conduct. *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime v. John Handcock Mut. Life Ins. Co.*, 177 F.R.D. 54, 64 (D. Mass. 1997) (holding the predominance requirement is "readily met in cases alleging consumer … fraud" where claim alleges single course of conduct), *quoting Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Ally owes the same legal duty to all class members, and it sent them the same, or substantially the same, form letters. Just as it was "a common legal ruling that AstraZeneca's AWPs are not the actual average wholesale prices …" so too, will the ruling Ally's letters don't comply with the UCC, and so "common questions of fact and of law easily predominate." *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 103 (D. Mass. 2008).

And the predominance requirement is easily met when class-wide liability turns on the legality of form notices. *See*, *e.g.*, *LaRocque ex rel. Spang*, *supra*, at 153 (finding predominance met, reasoning that "[t]he legality of the RECR3 letter—whether it was 'misleading and unlawful' in saying what [defendant] would and could do and in its reference to 'any applicable tax' — predominates over any questions affecting only individual class members"); *Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388, 395 (D. Neb. 2004) (predominance met where "plaintiffs ha[d] shown an essential link among all putative class members-the receipt of certain letters which violate the FDCPA"); *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11cv78, 2011 WL 5325674, at *3 (E.D. Va. Nov. 3, 2011) ("Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case").

In this case, there is one core question: whether the form Notice that Ally sent to Ms. White and class members violates the UCC. There are no other liability-related questions. Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) (internal quotations omitted).

Even if individual inquiries are ultimately necessary to determine damages, class certification is still appropriate. Indeed, "[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Moreover, here, the statutory damages formula is the same for all class members. The formula is a question of simple math. From Ally's records, and the face of the retail installment sales agreements, one would only need the

finance charge and principal balance on each of the installment agreements in the class to calculate statutory damages. Minor variations in damages do not impair typicality or certification. *Smilow,* 323 F.3d at 40, *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.")

Furthermore, "[t]he class certification prerequisites should be construed in light of the underlying objectives of class actions," and a finding of predominance is consistent with "[t]he core purpose of Rule 23(b)(3) [which] is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *Id.* at 41.

**F.      A Class Action Is Superior To Individual Suits Over The Legality Of Ally's Notice**

Rule 23(b) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action is the superior method of resolving claims that affect a large number of individuals if it will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc. v. Windsor*, 521 U.S. at 615. As such, superiority is generally met where "the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues … would be an inefficient allocation of limited court resources." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 273 (D. Mass. 2005).

Superiority is also met where the class action device allows individuals "to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("[a] significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation … by allocating such costs

among all members of the class who benefit from any recovery"). Here, the aggregate claims of the class are significant, but each class member's individual claim would be uneconomical to litigate, and therefore unlikely that individuals will do so. *Grace v. Perception Tech., Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988).

A class action is the superior method of adjudicating the sole claim raised — that the form Notices Ally sent to Ms. White and the class violated the UCC. Judicial economy is served by resolving this claim in one proceeding, rather than in thousands of individual cases. It would be highly inefficient to require each individual who received Ally's form Notice to bring a separate lawsuit challenging the same notice. Multiple cases would also raise the prospect of conflicting outcomes which could result in inconsistent determinations for individuals who received effectively the same notice.

Individual cases would also risk most consumers choosing not to bring claims at all because each individual's potential recovery may be too small to justify bringing an individual lawsuit. The class action mechanism is designed precisely for consumer protection cases like this — where small recoveries dissuade consumers from instituting individual actions but class litigation ensures the effective and fair vindication of their rights. *See Amchem*, *supra*, at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's … labor.") (internal quotations and citations omitted); *Smilow*, *supra*, at 41 ("core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation").

## V.    CONCLUSION

For the foregoing reasons, this case is appropriate for class certification. Accordingly, Ms. White respectfully requests that the Court allow her motion in its entirety, and authorize her to issue class notice.

Respectfully submitted,

GRACIE WHITE,
By her attorneys,

*/s/ Raven Moeslinger*
Raven Moeslinger (BBO# 687956)
Nicholas F. Ortiz (BBO# 655135)
Law Office of Nicholas F. Ortiz, P.C.
50 Congress Street, Suite 540
Boston, MA 02110
(617) 338-9400
rm@mass-legal.com
nfo@mass-legal.com

Elizabeth Ryan (BBO No. 549632)
John Roddy (BBO No. 424240)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
eryan@baileyglasser.com
jroddy@baileyglasser.com

Dated: May 11, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Raven Moeslinger, hereby certify that today I caused to be served the within on counsel for the defendant via ECF service.

*/s/ Raven Moeslinger*