**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GRACIE WHITE
f/k/a GRACIE DORNEUS,
individually and on behalf of persons
similarly situated,

Plaintiff,

v.

ALLY FINANCIAL INC.,

Defendant.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 3:18-CV-30143-MGM

**DEFENDANT ALLY FINANCIAL INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................................ 1

II. Factual Background ..................................................................................................... 2

    A. Plaintiff White's Ally Loan and Default ................................................................. 2

    B. Plaintiff White's Claim ......................................................................................... 3

III. Legal Standard ........................................................................................................... 4

IV. Argument ................................................................................................................... 5

    A. Plaintiff White Cannot Satisfy Rule 23(b)(3) Because Individual Questions Predominate Over Those Common to the Class ...................................................... 5

        1. Putative Class Members Agreed to Arbitration Provisions and Class Action Waiver Clauses in their RISCs, Raising Individual Questions That Cannot Be Adjudicated Class-Wide ................................................................ 6

        2. Individual Issues Relating to Putative Class Members' Bankruptcies Predominate ................................................................................................ 8

        3. Deficiencies of Some Putative Class Members Have Been Adjudicated, Raising Individual Issues of Res Judicata That Predominate ............................................................................................. 10

        4. Ally Will Assert Counterclaims for the Deficiencies Owed by Putative Class Members, Swamping Any Common Issues .................................... 12

        5. Some Putative Class Members Are Subject to Unique Defenses Because Their Vehicles Were Not Sold at All, or Were Not Sold After the Allegedly Offending Notice ............................................................. 14

        6. Limitations Issues Bearing on a Portion of the Putative Class Further Undercut the Predominance of Common Questions ................................. 15

    B. A Class Action is not Superior to Individual Litigation ......................................... 16

    C. White's Claims and Defenses are Not Typical of the Class and White is Not an Adequate Class Representative ......................................................................... 18

    D. The Class is Not Readily Ascertainable ................................................................ 19

V. Conclusion ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abla v. Brinker Rest. Grp.,*
279 F.R.D. 51 (D. Mass. 2011)........................................................................................16

*Alicea v. Com.,*
993 N.E.2d 725 (2013)............................................................................................11, 12

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)......................................................................................................17

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011)........................................................................................................7

*BankBoston, N.A. v. Nanton,*
239 B.R. 419 (D. Mass. 1999) ........................................................................................9

*Barry v. Moran,*
No. CIV. A. 05-10528-RCL, 2008 WL 7526753 (D. Mass. May 7, 2008)...........................18

*Bremer Bank Nat. Ass'n v. Matejcek,*
916 N.W.2d 688 (Minn. Ct. App. 2018) ........................................................................15

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)..........................................................................................................4

*Conde v. Sensa,*
No. 14-CV-51, 2018 WL 4297056 (S.D. Cal. Sept. 10, 2018)........................................7

*Crosby v. Social Sec. Admin. of U.S.,*
796 F.2d 576 (1st Cir. 1986)..........................................................................................20

*DeRosa v. Mass. Bay Commuter Rail Co.,*
694 F. Supp. 2d 87 (D. Mass. 2010) ....................................................................4, 18, 19

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
177 F.R.D. 54 (D. Mass. 1997)........................................................................................6

*Eon Labs., Inc. v. Smithkline Beecham Corp.,*
298 F. Supp. 2d 175 (D. Mass. 2003) ............................................................................13

*Fletcher v. Cape Cod Gas Co.,*
394 Mass. 595 (1985) ....................................................................................................13

ii

*Guay v. Burack,*
   677 F.3d 10 (1st Cir. 2012) .........................................................................................10

*Heaven v. Tr. Co. Bank,*
   118 F.3d 735 (11th Cir. 1997) .................................................................................14, 17

*In re Asacol Antitrust Litig.,*
   907 F.3d 42 (1st Cir. 2018) ......................................................................................5, 15

*In re Celexa and Lexapro Mktg. & Sales Practices Litig.,*
   325 F.R.D. 529 (D. Mass. 2017) ................................................................................17

*In re Elscint, Ltd. Sec. Litig.,*
   674 F. Supp. 374 (D. Mass. 1987) .............................................................................16

*In re Latanowich,*
   207 B.R. 326 (Bankr. D. Mass. 1997) .........................................................................9

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
   522 F.3d 6 (1st Cir. 2008) ............................................................................................4

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
   235 F.R.D. 127 (D. Me. 2006) .................................................................................5, 6

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   230 F.R.D. 61 (D. Mass. 2005) ...................................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   252 F.R.D. 83 (D. Mass. 2008) ...................................................................................6

*Johnson v. BLC Lexington, SNF, LLC,*
   No. CV 5:19-064, 2020 WL 3578342 (E.D. Ky. July 1, 2020) ..................................7

*Latin Am. Music Co. v. Media Power Group, Inc.,*
   705 F.3d 34 (1st Cir. 2013) ........................................................................................12

*Marti v. Schreiber/Cohen, LLC,*
   No. CV 4:18-40164-TSH, 2020 WL 30421 (D. Mass. Jan. 2, 2020) ....................7, 8

*Mattoon v. City of Pittsfield,*
   128 F.R.D. 17 (D. Mass. 1989) ...............................................................................5, 17

*Moelis v. Berkshire Life Ins. Co.,*
   451 Mass. 483 (2008) .................................................................................................13

*Mosca v. Brookline Bank,*
   No. 07-0771-G, 2008 WL 6549061 (Mass. Super. July 18, 2008) ......................13, 14

*Orloff v. Syndicated Office Sys., Inc.*,
　　No. CIV.A.00-CV-5355, 2004 WL 870691 (E.D. Pa. Apr. 22, 2004) ....................................6

*Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*,
　　989 F.2d 570 (1st Cir.1993)..........................................................................................10

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
　　721 F.3d 95 (2d Cir. 2013)...........................................................................................16

*Reutov v. Future Motion, Inc.*,
　　No. CV 19-10502-MPK, 2020 WL 58431 (D. Mass. Jan. 6, 2020) ....................................10

*RFF Family P'ship, LP v. Ross*,
　　814 F.3d 520 (1st Cir. 2016).........................................................................................11

*Salvati v. Fireman's Fund Ins. Co.*,
　　368 F. Supp. 3d 85 (D. Mass. 2019) .............................................................................12

*Schonton v. MPA Granada Highlands LLC*,
　　No. 16-cv-12151-DJB, 2019 WL 1455197 (D. Mass. Apr. 2, 2019) ....................................16

*Shanley v. Cadle*,
　　277 F.R.D. 63 (D. Mass. 2011).....................................................................................20

*Spotswood v. Hertz Corp.*,
　　No. CV RDB-16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019).............................5, 7, 8, 18

*State ex rel. Gen. Acceptance Credit Co., LLC v. Vincent*,
　　570 S.W.3d 42 (Mo. banc 2019)................................................................................10, 11

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011).....................................................................................................4

*Wallace v. Pinnacle Bank-Wyo.*,
　　275 P.3d 1250 (Wyo. 2012)..........................................................................................14

*Wang Yan v. ReWalk Robotics Ltd.*,
　　391 F. Supp. 3d 150 (D. Mass. 2019) ...........................................................................16

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
　　208 F.3d 288 (1st Cir. 2000)..........................................................................................6

*Yan v. ReWalk Robotics Ltd.*,
　　973 F.3d 22 (1st Cir. 2020)..........................................................................................16

**Rules**

　　Fed. R. Civ. P. 13(a) ...................................................................................................13

Fed. R. Civ. P. 23(b)(3).................................................................................................5

**Statutes**

11 U.S.C. § 524(a)(2)..................................................................................................9

11 U.S.C.A. § 727(b)..................................................................................................9

11 U.S.C.A. § 1328(a)................................................................................................9

M.G.L. c. 106 § 9-611(b)..........................................................................................15

## I.    INTRODUCTION

Plaintiff Gracie White cannot meet her burden under Federal Rule of Civil Procedure 23, and the Court should deny her motion for class certification (the "Motion").

White seeks certification of a Massachusetts class for her claim that Ally Financial Inc. ("Ally") violated Article 9 of the Massachusetts Uniform Commercial Code (the "UCC"). Ally's purported violation of the UCC relates to White's purchase of a motor vehicle financed through Ally, and Ally's subsequent sale of that vehicle after White defaulted under her retail installment sales contract ("RISC") and surrendered the vehicle.

White claims the notice Ally sent prior to selling her vehicle violated the UCC, and the Massachusetts Vehicle Retail Installment Sales Act by incorporation. White's claim is based upon an omission by Ally of the words "fair market value" in that pre-sale notice. White claims that Ally's violation occurred when Ally stated it would deduct "[t]he money [Ally] get[s] from the sale" of the vehicle, rather than its "fair market value," from her outstanding account balance. In fact, Ally *did* deduct both the sale amount and a fair market value credit from White's balance, as is its practice for all Massachusetts customers. White seeks to represent all Massachusetts consumers who, in the four years prior to this lawsuit, received a substantially similar notice from Ally after defaulting under their RISCs.

White's claims are not appropriate for class adjudication because the putative class members, their RISCs, and the details surrounding the disposition of their vehicles are not homogenous. White cannot show that common questions predominate over individual questions because the class is riddled with individual issues that will devolve into mini-trials. These include the presence and enforceability of arbitration and class-action-waiver provisions, the effect and scope of prior bankruptcy discharges, deficiency judgments, and settlements, the intersection of

1

disposition and non-disposition of vehicles alongside the notices received, and limitations issues. Further, should the Court certify a class, Ally would have counterclaims against the class members who still owe a deficiency balance for breach of their RISCs. These counterclaims will raise individual issues and compel putative class members to assert individual defenses for the Court to resolve. Additionally, some class members' deficiency balances exceed the maximum alleged statutory damages Plaintiff is pursuing, subjecting them to potentially owing money *to* Ally as a result of this action. As such, class treatment is not the superior method for adjudicating each class member's interests. For the same reasons, White is not an adequate or typical class representative. Finally, the class is not ascertainable because Plaintiffs' class definition depends on choice-of-law provisions in class member RISCs, the existence, scope and effect of which can only be discerned through contract-by-contract review.

## II. FACTUAL BACKGROUND

### A. <u>Plaintiff White's Ally Loan and Default.</u>

On or about May 13, 2016, White entered into a RISC with Village Motors Group, Inc. for the purchase of a 2009 Mercedes C300 (the "Vehicle"), which was assigned to Ally. (Ex. A, Declaration of James Charles ("Charles Decl.") ¶ 4.) White defaulted under her RISC multiple times by failing to make required payments. (*Id.* ¶¶ 5-7.) She defaulted for the first time only a few months after purchasing the Vehicle in 2016, and through a series of subsequent defaults and partial payments in the latter half of 2016 and through 2017, White avoided repossession. (*Id.*) By April 2018, White had defaulted once again, and was not able to cure the default. (*Id.* ¶ 8.) Ally repossessed the Vehicle on April 9, 2018, and sent White a pre-sale notice informing her that she could redeem the Vehicle by paying the past due amount owed to Ally, as well as late charges and expenses. (*Id.* ¶¶ 8-9.) White redeemed the Vehicle on or about May 2, 2018. (*Id.* ¶ 10.)

The next month, in June 2018, White defaulted under her RISC a final time. (*Id.* ¶ 11.)

White voluntarily surrendered the Vehicle to Ally on October 31, 2018. (*Id.*) Ally then sent White another pre-sale notice (the "Pre-Sale Notice") informing her that Ally was going to sell the Vehicle and would apply the money from the sale to reduce her balance. (*Id.* ¶ 12.) On December 3, 2018, Ally sold the Vehicle for $6,700. (*Id.* ¶ 13.) When calculating White's deficiency balance, Ally applied the sale price of $6,700 as well as a fair market value credit of $4,350 towards the amount White owed under the RISC, which left White with a deficiency balance of $6,878.65. (*Id.*) Ally informed White of the Vehicle's sale and her deficiency balance via letter on December 11, 2018. (*Id.*) White presently owes Ally a deficiency balance of $6,928.65. (*Id.* ¶ 14.)

### B. **Plaintiff White's Claim.**

On or about May 22, 2019, now-dismissed Plaintiff James Randall[1] ("Randall") filed a Second Amended Complaint (the "SAC") adding White as a named Plaintiff. (DE 33 ¶ 2.) White alleges the Pre-Sale Notice sent after she voluntarily surrendered her Vehicle violated the UCC by stating that Ally would apply "the money that [Ally received] from the sale" to White's deficiency balance, rather than the Vehicle's fair market value.[2] (DE 33 ¶ 19.)

The SAC seeks to certify a class of all Massachusetts consumers who, in the four years prior to the "commencement of this action,"[3] received a Pre-Sale Notice from Ally "substantially similar" to the Pre-Sale Notices received by Randall and White. (DE 33 ¶ 22.) White's Motion enlarges this definition to include any Massachusetts consumer who has received a similar Pre-Sale Notice to White from July 16, 2014 through the present. (Mot. at 3.) The class definition in

---

[1] The Court dismissed Randall's claim because his RISC specifies that Vermont law governs his relationship with Ally, and therefore he cannot assert a claim under the Massachusetts UCC. (*See* DE 41.)
[2] In fact, it has been Ally's practice since before the start of the alleged class period to apply a fair market value credit to each customer's deficiency balance where the fair market value exceeds sale price. (Charles Decl. ¶ 15.) White received such a credit. (*Id.* ¶ 13.)
[3] White did not receive the Pre-Sale Notice that preceded the sale of her Vehicle, and which forms the basis for her claim, until November 2018—*after* the suit commenced in July 2018. (Charles Decl. ¶ 12.)

the Motion also excludes any individual who, like Randall, has a RISC containing a choice-of-law provision selecting the law of a state other than Massachusetts. (Mot. at 3.) White, on behalf of herself and the putative class, seeks statutory damages under M.G.L. c. 106 § 9-625(c)(2) and a declaration that any deficiency loan balances are unenforceable and uncollectable. (DE 33 at 7.)

White contends the putative class satisfies Rule 23 because there are only two issues before the Court—whether Ally's Pre-Sale Notice violates the law and the amount of damages. (Mot. at 9-11.) White's characterization of her claims and defenses as well as those of the putative class is oversimplified, and fails to account for numerous individual issues inherent in the proposed class, which are inappropriate for class treatment.

## III. LEGAL STANDARD

A court considering class certification must probe beyond the pleadings to assess whether the plaintiff has met the requirements of Federal Rule of Civil Procedure 23. *See DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 95 (D. Mass. 2010) (citing *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008)). The plaintiff bears the burden of establishing these requirements are satisfied. *Id.* Moreover, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact," typicality of claims or defenses, and adequacy of representation under Rule 23(a). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A court may only grant class certification if it is "is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51.

In addition to the requirements of Rule 23(a), the plaintiff must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *See Comcast Corp. v. Behrend*, 569

U.S. 27, 33 (2013). White seeks to certify a class under Rule 23(b)(3). (Mot. at 6.) As such, she must prove that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because White cannot establish these elements, the Court should decline to certify a class.

## IV. ARGUMENT

### A. Plaintiff White Cannot Satisfy Rule 23(b)(3) Because Individual Questions Predominate Over Those Common to the Class.

While Ally disputes that White can satisfy the majority of the elements of Rules 23(a) and 23(b), most critically, she cannot prove predominance. The predominance inquiry "test[s] whether any dissimilarity among the claims of class members can be dealt with in a manner that is not inefficient or unfair." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018). "Inefficiency" arises when the claims and defenses are such that, in essence, there will be a line of class members "waiting their turn to offer testimony and evidence on individual issues." *Id*. "Unfairness," meanwhile, can be "pictured as an attempt to eliminate inefficiency by presuming to do away with the rights a party would customarily have to raise plausible individual challenges on those issues," that is, glossing over the defendant's ability to raise individual defenses. *Id.* at 51-52.

In this Circuit, "affirmative defenses are to be taken into account at the certification stage," and, when the effect of such affirmative defenses cannot be determined on a class wide basis, those individual issues weigh against predominance. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 235 F.R.D. 127, 139 (D. Me. 2006) (citation omitted). Indeed, when adjudicating a proposed class action will "degenerate into a series of mini-trials" and require the Court to engage in a class-member-by-class-member inquiry, common questions do not predominate. *Mattoon v. City of Pittsfield*, 128 F.R.D. 17, 21 (D. Mass. 1989)*; see also Spotswood v. Hertz Corp.*, No. CV

RDB-16-1200, 2019 WL 498822, at *13 (D. Md. Feb. 7, 2019) (finding no predominance of common questions where individual issues would "collapse into a series of mini-trials" and cause the court to engage in a "class-member-by-class-member and contract-by-contract inquiry").

Part of the predominance inquiry requires taking a "close look" at the difficulties the court is likely to meet when adjudicating the class action. *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 77 (D. Mass. 2005). To do so, the court must "formulate some prediction as to how specific issues will play out in order to determine whether common issues or individual issues will predominate in a given case." *In re New Motor Vehicles*, 235 F.R.D. at 131 n.10. Here, the variations in the claims and defenses of the putative class present a host of individual issues that predominate over those subject to class-wide proof, and therefore class treatment is improper.[4]

    **1.**     **Putative Class Members Agreed to Arbitration Provisions and Class-Action-Waiver Clauses in their RISCs, Raising Individual Questions That Cannot Be Adjudicated Class-Wide.**

White's putative class should not be certified because the presence of arbitration agreements and class-action-waiver clauses in class members' RISCs, and the questions of whether they have been properly executed and are enforceable, will require the Court to make individualized factual determinations that White cannot address with common proof.

---

[4] White's argument that common questions predominate because her class claims involve a "common course of conduct" and a "form notice" relies on inapposite authority, as the cases she cites did not present the numerous individual issues inherent in the putative class here. *See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (affirming predominance of common issues because court only had to resolve single affirmative defense after finding other defenses unlikely to survive summary judgment or waived); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 64 (D. Mass. 1997) (in context of multi-state class settlement rather than on opposed motion for certification, finding predominance despite potential variance in state laws). Indeed, one of the cases relied upon by White refused to certify a number of portions of the proposed classes because certifying them as-is would have required individual fact-finding. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83 (D. Mass. 2008). Equally unavailing are White's support for the broad proposition that "cases involving the use of form documents are particularly appropriate for class treatment." (Mot. at 6.) Of the two cases she cites, both out of circuit, one was an unpublished opinion from a Pennsylvania state trial court, and in the other, the court made its findings in the context of the approval of a class settlement. *See Orloff v. Syndicated Office Sys., Inc.*, No. CIV.A.00-CV-5355, 2004 WL 870691, at *5 (E.D. Pa. Apr. 22, 2004).

It is a "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, courts must enforce arbitration agreements "according to their terms." *Id.* In situations where a court will be required to conduct mini-trials into the existence and enforceability of arbitration clauses and class action waivers, courts within this district and elsewhere have found that such individual questions predominate over any common to the class. *See, e.g., Marti v. Schreiber/Cohen, LLC*, No. CV 4:18-40164-TSH, 2020 WL 30421, at *3 (D. Mass. Jan. 2, 2020) (predominance not met where credit agreements included arbitration clauses because it would require court to "assess" agreements and "determine which members may participate" in class); *Johnson v. BLC Lexington, SNF, LLC*, No. CV 5:19-064, 2020 WL 3578342, at *6 (E.D. Ky. July 1, 2020) (finding individual "threshold" question of whether class members are subject to arbitration defeated commonality, typicality, and predominance); *Spotswood*, 2019 WL 498822, at *13 (variations in class's rental records, including inconsistent inclusion of arbitration clauses and class action waivers, would "collapse into a series of mini-trials," defeating predominance); *Conde v. Sensa*, No. 14-CV-51, 2018 WL 4297056, at *11 (S.D. Cal. Sept. 10, 2018) (finding no predominance where court would have to determine which class members may be subject to arbitration as well as analyze enforceability of arbitration clauses).

Here, some putative class members' RISCs include an arbitration agreement under which Ally may choose to arbitrate claims arising out of those customers' financing of their vehicles, including the claims presently before the Court. (Charles Decl. ¶¶ 19-23.) Some of the RISCs containing arbitration clauses only require the customer to acknowledge the arbitration provision when signing the RISC at the end of the document. (*Id.* ¶ 22.) Other RISCs contain a separate arbitration section, which asks the customer to sign that section in acknowledgment in addition to signing at the end of the RISC. (*Id.* ¶ 20.) Customers within the putative class have inconsistently

executed the separate arbitration provisions requiring acknowledgement in this latter type of RISC. (*Id*.)  Further, some RISCs also include class action waivers, which preclude customers from participating in a class action either in court or through arbitration.  (*Id.* ¶ 24.)

The existence of these arbitration agreements and class action waivers preclude predominance because, in each instance where a putative class member's RISC contains an arbitration clause or class action waiver, Ally will seek to arbitrate the claims on an individual basis.  (*Id.* ¶ 27.)  The Court's inquiry will not be limited merely to which class members' RISCs contain arbitration clauses, but also whether that class member properly executed the arbitration clause depending on the format of the RISC in question.  Additionally, while Ally will seek to enforce putative class members' arbitration or class-action-waiver clauses in this lawsuit, to the extent any of those class members do not concede their claims' arbitrability and/or their inability to participate in a class action, Ally will be required to move the Court to compel arbitration.  This will necessitate the Court's analysis, based on the language of each RISC, of which questions as to arbitrability have been delegated to a court versus an arbitrator, as well as the same for the class action waivers.  For example, in one sample RISC, the enforceability of the class action waiver is expressly delineated for a court to decide, while the arbitrability of a claim is left to an arbitrator. (*Id.* ¶ 25.)  Further, a number of these arbitration provisions provide that they are nullified to the extent a class action waiver is unenforceable, which would require resolution of the class action waiver's enforceability prior to addressing arbitration.  (*Id*. ¶ 26.)  The resolution of these individual issues alone would undoubtedly "collapse into a series of mini-trials" inappropriate for class adjudication.  *Spotswood*, 2019 WL 498822, at *13; *Marti*, 2020 WL 30421, at *3.

### 2. Individual Issues Relating to Putative Class Members' Bankruptcies Predominate.

The existence of customers in the putative class who entered into bankruptcy proceedings

likewise raises individual, predominance-defeating factual questions relating to discharge of their deficiency and the continuing viability of any claims against Ally.

In Chapter 7 bankruptcies, a discharge "discharges the debtor from all debts that arose before the date of the order for relief," 11 U.S.C.A. § 727(b), while in Chapter 13 bankruptcies, a discharge discharges "all debts provided for by the [debtor's] plan[.]" 11 U.S.C.A. § 1328(a). For class members who owed a deficiency to Ally following the repossession and disposition of their vehicle, and whose deficiency balance existed at the time of their bankruptcy discharge, or whose deficiency balance was included in their bankruptcy plan, those deficiency balances are now extinguished. *See In re Latanowich*, 207 B.R. 326, 334 (Bankr. D. Mass. 1997). Nonetheless, in some instances, putative class members may have reaffirmed their debt with Ally under section 524(c) of the Bankruptcy Code. *See* 11 U.S.C. § 524(a)(2). "A reaffirmation agreement . . . is a contract between the debtor and a creditor under which the debtor, after a bankruptcy petition has been filed, agrees to pay a dischargeable debt." *BankBoston, N.A. v. Nanton*, 239 B.R. 419, 422 (D. Mass. 1999). Before these agreements can go into effect, they must be filed with the court, which has an independent duty to review and approve them. *See id.* at 425. Thus, for each class member who filed for bankruptcy and entered into a reaffirmation agreement to repay Ally, she has already represented to a court that such debt exists and is enforceable, *id.* at 422, and cannot take a contrary position now. To determine whether a putative class member is entitled to part of the relief sought—a declaration that his or her deficiency balance is unenforceable—the Court would need to determine which class members previously filed for bankruptcy and ultimately received a bankruptcy discharge including their debt to Ally, and which class members may be subject to reaffirmation agreements.

Further, under the Bankruptcy Code, "a debtor is required to disclose all assets to the

bankruptcy court, in the form of a schedule, and amend his schedule if circumstances change during the bankruptcy proceedings." *Reutov v. Future Motion, Inc.*, No. CV 19-10502-MPK, 2020 WL 58431, at *3 (D. Mass. Jan. 6, 2020) (citation omitted), *aff'd,* No. 20-1147, 2020 WL 4813730 (1st Cir. June 11, 2020). In this context, assets include "legal claims and potential claims or potential lawsuits that the debtor should know about." *Id.* It is well established in the First Circuit that "a failure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel, barring the debtor from pursuing the claim in a later proceeding." *Guay v. Burack*, 677 F.3d 10, 17 (1st Cir. 2012); *see also Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir.1993) ("[H]aving obtained judicial [bankruptcy] relief on the representation that no claims existed, [plaintiff] cannot now resurrect them and obtain relief on the opposite basis.").

The putative class includes individuals that have filed for Chapter 7 and Chapter 13 bankruptcy and received a discharge in bankruptcy extinguishing their debt to Ally, but who did not identify their UCC claims against Ally in those bankruptcies. (Charles Decl. ¶ 34.) These class members are judicially estopped from now representing that such "claims exist[]" and cannot recover in this lawsuit. *Payless*, 989 F.2d at 571. Determining whether a particular class member filed for bankruptcy and included their present claims against Ally will create individual questions that cannot be determined without reviewing each applicable class member's bankruptcy filings. *See, e.g.*, *State ex rel. Gen. Acceptance Credit Co., LLC v. Vincent*, 570 S.W.3d 42 (Mo. banc 2019) (finding class overbroad because it included individual claims estopped for failure to disclose those claims in prior bankruptcy proceedings).

### 3. Deficiencies of Some Putative Class Members Have Been Adjudicated, Raising Individual Issues of Res Judicata That Predominate.

Compounding the individual issues the Court would have to resolve, Ally has obtained

deficiency judgments against putative class members that raise individual questions of res judicata.

In Massachusetts, "res judicata" incorporates both claim and issue preclusion. *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 532 n.7 (1st Cir. 2016). Claim preclusion makes a "valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the [previous] action." *Id.* at 531-32. Issue preclusion, on the other hand, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Alicea v. Com.*, 993 N.E.2d 725, 731 (2013) (citation omitted). Where individual issues related to res judicata arise in class actions and the class seeks relief that amounts to a collateral attack on prior deficiency judgments, such individual issues weigh against certification. *See Vincent*, 570 S.W.2d at 49 ("The class action, while not instituted for the express purpose of annulling the judgment, has precisely that effect because the requested relief seeks to nullify and undermine the deficiency judgments previously entered against class members.").

Here, the putative class includes customers against whom Ally has already obtained a deficiency judgment.[5] (Charles Decl. ¶ 30.) With respect to these class members, the Court will have to assess the applicability of issue or claim preclusion, or both. Claim preclusion will apply to the extent a putative class member raised in the prior deficiency action a counterclaim similar to the claim made by White here, or did not raise such a counterclaim despite the opportunity to do so. *Salvati v. Fireman's Fund Ins. Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019) ("Claim preclusion bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made.") (citation omitted). To determine whether to preclude a

---

[5] Additionally, the putative class may contain customers with whom Ally entered into a settlement agreement in resolution of their deficiency. (Charles Decl. ¶ 31.) Such agreements may contain releases impacting the viability of the class members' claims here, but file-by-file review would be necessary to determine the existence and import of such agreements. (*Id.*)

putative class member's claim on this ground, the Court will have to determine that (1) the earlier suit resulted in a final judgment on the merits; (2) the causes of action are sufficiently identical and related; and (3) the parties in the two suits are the same. *Id*. While the last of these factors may easily be established, the first two will require a class-member-by-class-member review of the filings and arguments made in those prior actions, as well as of the judgments themselves.

Putative class members against whom Ally has sought a deficiency judgment will also force the Court to weigh whether their present claims seeking to "bar and declare unenforceable any deficiency loan balances" are a collateral attack on issues previously adjudicated. (*See* DE 33 at p. 7 (Prayer for Relief).) In seeking this relief, White takes the position that Ally's alleged failure to comply with the UCC precludes its recovery of a deficiency judgment. (*See id.*) Setting aside the propriety of this position generally, which the Court will also need to resolve, the issues raised by this argument may have been adjudicated already in prior deficiency actions, which would preclude those class members from taking a contrary position here. To make this determination, the Court will need to weigh for each of these putative class members whether "(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." *Alicea*, 993 N.E.2d at 731 (quoting *Latin Am. Music Co. v. Media Power Group, Inc.*, 705 F.3d 34, 42 (1st Cir. 2013)). As with claim preclusion, this will necessitate a class-member-by-class-member review.

### 4. Ally Will Assert Counterclaims for the Deficiencies Owed by Putative Class Members, Swamping Any Common Issues.

Ally has a valid counterclaim against any putative class member who owes a deficiency balance, including White, for breach of their RISCs. Should the Court certify the putative class, these counterclaims will become compulsory because they arise out of the same transaction as the

class's claims.[6]  Counterclaims of this nature against a large portion of a class create "individual differences [that] are significant and do not 'lend themselves to adjudication on a representative basis.'"  *Mosca v. Brookline Bank*, No. 07-0771-G, 2008 WL 6549061 (Mass. Super. July 18, 2008) (quoting *Moelis v. Berkshire Life Ins. Co.*, 451 Mass. 483, 490 (2008)).

In *Mosca*, for example, the plaintiff alleged the defendant-bank's pre-sale notice violated the Massachusetts UCC by failing to include a phone number, and sought to represent a putative class of any Massachusetts consumers who received such a notice from the defendant over four years.  2008 WL 6549061.  The court denied class certification under Massachusetts' equivalent to Rule 23(b)(3), finding that the defendant's "potential counterclaims for deficiency judgments" against the putative class "trump[ed] the commonality of issues that the putative class assert[ed] against the [defendant]."  *Id.*  (citing *Fletcher v. Cape Cod Gas Co.,* 394 Mass. 595, 602 (1985)).  While the defendant had previously forgone pursuing deficiency judgments against all in the putative class prior to the class action, the court found it "perfectly reasonable and not against public policy considerations for the [defendant] to seek from the plaintiffs all the money to which it may be entitled as an offset against any recovery under section 9-625."  *Id.*  Per the court, [n]othing in the statute preclude[d]" the counterclaims and "[d]etermining who owes what to

---

[6] For a counterclaim to be compulsory, one of the following must be true: (1) issues of fact and law raised by the claim and counterclaim are largely the same; (2) res judicata would bar a subsequent suit on the defendant's claim; (3) substantially the same evidence would support or refute the plaintiff's claim as well as defendant's counterclaim; or (4) there is a logical relation between the claim and the counterclaim.  *See Eon Labs., Inc. v. Smithkline Beecham Corp.*, 298 F. Supp. 2d 175, 179 (D. Mass. 2003) (citing Fed. R. Civ. P. 13(a)).  Here, a deficiency suit brought by Ally after this action would be barred by res judicata in the same way any putative class members' present claims against Ally are barred to the extent they were not raised in a prior deficiency suit.  Further, as is clear from Randall's dismissal due to the choice-of-law provision in his RISC, a counterclaim for breach of a customer's RISC is logically related to the claims of the putative class.  *See id.* (explaining "logical relationship" test is met if "aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant").  Finally, White has conceded that there is overlap in the evidence needed for the counterclaims and class claims by seeking deficiency balance waivers as relief in this action (DE 33 at p. 7) and testifying at her deposition that her damages calculation is derived from the RISC Ally claims she breached.  (Ex. B, Deposition of G. White at 121:5-18.)

whom among a class of approximately 1,200 people would require the type of 'individualized proof'" that overwhelmed "the common issue of whether the [defendant's] notice was defective." *Id.; see also Heaven v. Tr. Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997) (affirming denial of class certification because compulsory counterclaims alleging breach of vehicle lease agreements would compel counterclaim defendants to assert individual defenses, requiring court to "engage in multiple separate factual determinations" inappropriate for class adjudication).

The same is true here. To resolve Ally's counterclaims, the Court will need to determine in each instance whether the customer defaulted under their RISC, the amount of each customer's deficiency, and how those deficiencies may set-off any damages that may be awarded to the class. Additionally, the Court will have to resolve any individual defenses asserted by these class members to Ally's allegations of default as well as to the calculation of the class member's deficiency. As anticipated in *Mosca* and *Heaven*, this will create mini-trials within the class that the Court can only resolve by individualized proof, and which are inappropriate for class treatment.

> **5.** **Some Putative Class Members Are Subject to Unique Defenses Because Their Vehicles Were Not Sold at All, or Were Not Sold After the Allegedly Offending Notice.**

In addition to the individual issues raised above, many putative class members have no claim at all because Ally never disposed of their vehicles.[7] (Charles Decl. ¶ 28.) In instances where a secured party does not sell the vehicle, there is no UCC notice violation. *See, e.g.*, *Wallace v. Pinnacle Bank-Wyo.*, 275 P.3d 1250, 1256 (Wyo. 2012) (UCC notice provision applies only when property is disposed of after default); *Bremer Bank Nat. Ass'n v. Matejcek*, 916 N.W.2d 688, 697 (Minn. Ct. App. 2018) (rejecting pre-sale notice claim "because there was no sale of collateral by a secured party giving rise to the UCC's requirements for notice"). This is because the UCC's

---

[7] The parties briefed this issue on Ally's motion to dismiss the SAC because Randall's vehicle was never sold, but the Court did not need to reach it in its opinion dismissing Randall. (*See* DE 41.)

pre-sale notice requirements apply only to a "secured party *that disposes of the collateral* under section 9-610[.]" M.G.L. c. 106 § 9-611(b) (emphasis added). Accordingly, to determine the threshold issue of which class members have standing to bring a UCC claim, the Court must determine which class members' vehicles have actually been sold as required under Article 9. Where such individualized issues exist as to threshold questions of liability or an essential element thereof, class certification is improper. *See Asacol*, 907 F.3d at 55.

Conversely, there are also members of the putative class who received an allegedly offending pre-sale notice, but whose vehicles Ally sold later and only after those customers received a notice using "fair market value" language. (Charles Decl. ¶ 29.) As such, and as above, these vehicles were not sold in response to a purportedly defective notice so there was no alleged UCC violation. Rather, prior to the "disposition" of their vehicles, these class members received a pre-sale notice that described their deficiency balances using the language White advances, and therefore did not violate the law as White alleges. Determining which class members received a second notice and may be subject to these additional defenses will require an analysis of each customer's circumstances, creating additional individual issues unsusceptible to class-wide proof.

**6.    Limitations Issues Bearing on a Portion of the Putative Class Further Undercut the Predominance of Common Questions.**

The grounds on which the Court dismissed Randall from the case also create unique limitations defenses applicable to a subset of the putative class. White seeks to represent a class dating back four years from the date Randall filed the initial Complaint, July 16, 2018. (Mot. at 3.) However, the SAC, through which White was added as a plaintiff, does not relate back to that date. Randall was dismissed from this action because he does not have the right to sue Ally under the Massachusetts UCC in light of the choice-of-law provision in his RISC. (*See* DE 41.) Where an initial named plaintiff is "wholly inadequate to represent the asserted class," the case does not

"relate back" to that representative's complaint when a new named plaintiff is sought to be added. *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987) ("[I]t would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the asserted class to have the effect of tolling limitation to permit otherwise untimely intervention of proper class representatives."); *see also Wang Yan v. ReWalk Robotics Ltd.*, 391 F. Supp. 3d 150, 158 (D. Mass. 2019), *aff'd sub nom. Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22 (1st Cir. 2020) (citing *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013) (holding proposed intervenors could not use "relation back" to assert claims previously raised by lead plaintiffs dismissed for lack of standing)). Applied here, because Randall never had a valid claim before the Court for White's claim to "relate back" to, the claims of any members of the putative class who received a pre-sale notice more than four years prior to the SAC's filing on May 22, 2019, are time-barred. This is yet another individual defense applicable to a subset of the class that will require the Court's analysis and assessment.

**B.**     **A Class Action Is Not Superior to Individual Litigation.**

Under Rule 23(b)(3), "a class action must be superior, not just as good as, other available methods" of adjudicating the class's interests. *Abla v. Brinker Rest. Grp.*, 279 F.R.D. 51, 58 (D. Mass. 2011). A class action is only the superior method if it "will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Schonton v. MPA Granada Highlands LLC*, No. 16-cv-12151-DJB, 2019 WL 1455197, at *10 (D. Mass. Apr. 2, 2019) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). Where a class action would "present serious issues of manageability," the court should require individual litigation. *In re Celexa and Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. 529, 541 (D. Mass. 2017); *see*

*also Mattoon*, 128 F.R.D. at 21 (putative class actions that are likely to "'splinter into individual trials' are not appropriate as class actions").  Here, White's class claims are plagued with individual issues, such as the existence of arbitration clauses, bankruptcy discharges, deficiency judgments, settlement agreements, unsold collateral, subsequent pre-sale notices stating "fair market value," limitations issues, and counterclaims for defaults of putative class members' RISCs, which the court will need to consider and resolve on a class-member-by-class-member basis.  In light of these individual issues, a class action is not superior to individual adjudication.

Additionally, class treatment is not superior because "the interests of some individual class members in controlling their own case" will be "compromised" by virtue of their exposure under Ally's counterclaims, which "could well exceed the amount they might recover for statutory penalties as class members."  *Heaven*, 118 F.3d at 738.  In *Heaven*, for example, the plaintiff brought a class action asserting a violation of the Consumer Leasing Act ("CLA") governing vehicle leases, alleging the defendant failed to comply with the CLA's "strict disclosure requirements."  *Id.* at 736-37.  After determining that the defendant's compulsory counterclaims for breach of class members' leases might result in judgments against class members exceeding what they could recover in statutory damages, the district court denied class certification, concluding that the "statutory claims asserted by the class would be against the interests of these individual class members," and the Eleventh Circuit affirmed.  *Id.* at 738.

Similar to *Heaven*, White's claim is against the interest of certain putative class members.  Plaintiff alleges the putative class is entitled to the sum of each customer's amount financed and 10% of the principal amount of the obligation, as stated in their RISCs.  (DE 33 ¶ 37.)  Some putative class members' deficiencies exceed this calculation, which means that, even if White prevails on the class claim, some class members will be left with outstanding deficiency actions

against them Ally may have otherwise never pursued.  (Charles Decl. ¶ 32.)  Because certification

would compromise the interests of these class members, Plaintiff's Motion should be denied.

### C. White's Claims and Defenses Are Not Typical of the Class, and White Is Not an Adequate Class Representative.

White's claims and defenses are not typical of or "identical" to those of the putative class,

and she is not an adequate class representative.  To establish typicality under Rule 23(a)(3), the

named plaintiff must show that her claims and defenses "have the same essential characteristics"

as those of the class.  *Barry v. Moran*, No. CIV. A. 05-10528-RCL, 2008 WL 7526753, at *11 (D.

Mass. May 7, 2008).  The typicality inquiry is "designed to align the interests of the class and the

class representative so that the latter will work to benefit the entire class through the pursuit of

their own goals."  *DeRosa*, 694 F. Supp. 2d at 100.  "Typicality may be defeated . . . if factual

differences predominate to the extent where the court must make highly fact-specific or

individualized determinations in order to establish a defendant's liability to each class member."

*Barry*, 2008 WL 7526853, at *11.  Similarly, to show adequacy under Rule 23(a)(4), the plaintiff's

interests must not conflict with the interests of the putative class.  *DeRosa*, 694 F. Supp. 2d at 100.

White's claims are not "identical" to the putative class, nor do they "arise from the same

standardized course of conduct."  (Mot. at 9.)  Ally does not enter into the same RISC with each

class member, and some RISCs contain arbitration clauses and class action waivers.  (Charles

Decl. ¶¶ 19, 24.)  Because White's RISC does not contain an arbitration provision or class action

waiver, her claims and defenses will not advance the claims of those who do and may want to

contest their arbitrability or the enforceability of the class action waiver.  *See, e.g.*, *Spotswood*,

2019 WL 498822, at *11 ("[W]here certain members of a class are subject to contracts containing

arbitration clauses, while other members are not, those differences in contractual relationships

destroy[] commonality and typicality of the class.") (citation omitted).  Likewise, Ally's conduct

as to each class member after repossession is not "identical" to its conduct as to White.  In some instances, Ally did not dispose of class members' vehicles after repossession or, it only disposed of the vehicles after sending a pre-sale notice with "fair market value" language.  (Charles Decl. ¶¶ 28, 29.)  In other instances, Ally has already pursued a deficiency judgment, or entered into an agreement settling the class member's debt, or an agreement reaffirming it after he or she filed for bankruptcy.  (*Id.* ¶¶ 30, 34.)  Ally's conduct as to White's vehicle does not share many key characteristics of its conduct as to the vehicles of others she seeks to represent, so the pursuit of White's goals will not "work to benefit the entire class." *DeRosa*, 694 F. Supp. 2d at 100.

Further, for the same reasons a class action is not a superior method of adjudication, White is not an adequate representative.  If the Court certifies the class, Ally will have compulsory counterclaims against each class member with an outstanding deficiency balance.  Some of the class members' deficiency balances exceed the amount they can recover in statutory damages, which will likely result in an outstanding judgment against them Ally may have otherwise never pursued.  (Charles Decl. ¶ 32.)  While Ally has a counterclaim against White, she does not fall within those members of the class whose deficiencies exceed their potential statutory damages award,[8] and therefore her interests are not aligned with theirs.  Because White's interests conflict with members of the class, she cannot adequately represent them. *DeRosa*, 694 F. Supp. 2d at 100.

### D.    The Class Is Not Readily Ascertainable.

Rule 23 also requires the Court to resolve "whether the proposed class satisfies the implicit requirement of Rule 23 that determining whether a particular individual is a member of the class is administratively feasible." *Shanley v. Cadle*, 277 F.R.D. 63, 67 (D. Mass. 2011).  Where class members are "impossible to identify prior to individualized fact-finding and litigation, the class

---

[8] White seeks $12,630.86 in statutory damages (Ex. C, White Resp. to Interrog. No. 4.), while her outstanding deficiency to Ally is $6,928.65.  (Charles Decl. ¶ 14.)

fails to satisfy one of the basic requirements for a class action under Rule 23." *Id.* (quoting *Crosby v. Social Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986)).

White seeks to represent a Massachusetts class for a claim arising under Massachusetts law. (DE 33 ¶¶ 31-37.) Ally has confirmed that there are members of the putative class subject to RISCs containing choice-of-law provisions, and this may be true for each member of the class. (Charles Decl. ¶ 17.) To the extent these RISCs' choice-of-law provisions provide that the laws of any state other than Massachusetts apply, those particular customers cannot be members of White's proposed class despite that they may otherwise be considered "Massachusetts consumers." Indeed, this very scenario led to Randall's dismissal from this case. (*See* DE 41.) White tries to remedy this issue in her Motion by excluding from the class all "individuals whose vehicle sales contracts contain choice-of-law provisions selecting the law of a state other than Massachusetts," but the presence of choice-of-law provisions, as well as their contents and legal effect, cannot be determined without a RISC-by-RISC review. (*Id.*) These necessary inquiries make the class as defined in Plaintiff's Motion "impossible to identify" without individualized fact-finding, and therefore the class is not readily ascertainable. *Cadle*, 277 F.R.D. at 67-68.

## V.   CONCLUSION

For the foregoing reasons, Ally respectfully requests that the Court deny White's Motion, as she has not fulfilled her burden under Federal Rule of Civil Procedure 23.

Dated: January 4, 2020                    Respectfully submitted,

*/s/ Nellie E. Hestin*

Nellie E. Hestin (BBO #676886)
Jared M. DeBona (*pro hac* pending)
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000
(412) 667-6050 (Fax)
nhestin@mcguirewoods.com
jdebona@mcguirewoods.com

*Counsel for Defendant Ally Financial Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 4, 2020.

*/s/ Nellie E. Hestin*
Nellie E. Hestin