# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GRACIE WHITE | § | |
| f/k/a GRACIE DORNEUS | § | |
| Individually and on behalf of persons | § | |
| similarly situated | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-30143-MGM |
| | § | |
| ALLY FINANCIAL INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DECLARATION OF JAMES D. CHARLES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

I, James D. Charles, declare:

1.    I am a member of the Consumer Systems Team at Ally Financial Inc. ("Ally").  In this position, I have access to Ally's business records and information.  The facts set forth in this declaration are based on my own personal knowledge and/or my review of Ally's business records as they are maintained in the ordinary course of business.  If called upon as a witness, I could and would competently testify to the facts set forth in this declaration.  I am over 18 years of age.

2.    The business records of Ally referred to in this declaration were prepared and maintained in the ordinary course of Ally's business.  The entries made in such business records were made at or near the time of the occurrence of the events recorded in such records.  In addition, the business records are in all instances kept in a safe and secure location.

3.     Among other aspects of its business, Ally finances the sale of vehicles.  When a customer purchases a vehicle financed through Ally (or other bank or vehicle finance entity), the

customer enters into a retail installment sales contract (a "RISC"), which sets forth the financing and other contractual terms for the vehicle purchase.

**Plaintiff White's Relationship with Ally**

4.      Plaintiff Gracie White f/k/a Gracie Dorneus ("White") entered into a RISC (the "White RISC") with Village Motors Group, Inc. dba Honda Village, a Massachusetts dealership, for the purchase of a 2009 Mercedes C300 (the "Vehicle").  *See* **Ex. A (White RISC).**  The White RISC was assigned to Ally.  *Id.* at p.1.

5.      White defaulted on the White RISC multiple times.  White's first default occurred on or around December 11, 2016.  White cured her first default on or before January 3, 2017.

6.      White defaulted on the RISC a second time on or around March 13, 2017.  White cured her second default on or before April 5, 2017.

7.      White defaulted on the RISC a third time on or around May 11, 2017.  White cured her third default on or before June 3, 2017.

8.      White defaulted on the RISC a fourth time in or around April 2018.  As with White's other defaults, she was given an opportunity to cure her past due payments prior to Ally repossessing the Vehicle, but she did not do so.  Accordingly, the Vehicle was repossessed on or about April 9, 2018.

9.      On April 12, 2018, White was sent a Notice of Our Plan to Sell Property.

10.     White redeemed the Vehicle on or about May 2, 2018.

11.     On or around June 26, 2018, White defaulted under the RISC once again.  After failing to cure her default, White voluntarily surrendered the Vehicle to Ally on October 31, 2018.

12.     On November 1, 2018, after White's voluntary surrender of the Vehicle, Ally sent her another Notice of Our Plan to Sell Property. *See* **Ex. B (Notice of Our Plan to Sell Property 11/1/18).**

13.     On December 3, 2018, Ally sold the Vehicle for $6,700. When calculating White's deficiency after the sale, Ally applied the sale amount of $6,700 as well as a fair market value credit of $4,350 towards the amount White owed under the RISC, which left White with a deficiency balance of $6,878.65.  White was informed the Vehicle was sold and of her deficiency balance (including the application of the fair market value credit) via letter on December 11, 2018. *See* **Ex. C (How We Calculated Your Surplus or Deficiency).**

14.     As of the date of this declaration, a deficiency balance remains on White's account of $6,928.65.

15.     As was the case when White's Vehicle was sold and her deficiency was calculated, it has been Ally's practice since before July 2014 to apply a fair market value credit to Massachusetts customers' accounts when calculating a surplus or deficiency post-sale after repossession, in instances where the fair market value exceeds the sale price (crediting the account balance up to a deficiency balance of zero).

**RISCs Applicable to Massachusetts Customers**

16.     While all customers who finance the purchase of their vehicle through Ally (or any bank or auto finance entity), enter into a RISC, the RISCs held by Ally are not uniform.

17.     Each RISC may include a choice of law provision, but the presence, contents, and legal effect of such a provision cannot be determined without analyzing each RISC.

18.     Some forms of the RISC contain an arbitration provision or a separate arbitration section requiring execution, which state that either Ally or the customer may choose to have any

claim resolved through arbitration and, when either party makes the election to arbitrate, it is mandatory.  These provisions are not uniform.

19.     Based on a review of a selection of Ally's files, there are members of the putative class whose RISCs contain such arbitration provisions.

20.     Several versions of RISCs with arbitration provisions held with members of the putative class contain a separate arbitration section within the RISC, which asks the customer to sign that section in acknowledgement in addition to signing at the end of the RISC.  Based on a review of a selection of Ally's files, these provisions are not uniformly executed across members of the putative class.  *Compare* **Ex. D** *with* **Ex. E**.

21.     The arbitration provisions in these RISCs broadly provide that either Ally or the customer may choose to resolve "[a]ny claim or dispute, whether in contract, tort, statute, or otherwise" by arbitration.  *See* **Ex. D** at p. 5; **Ex. E** at p. 2.

22.     Other versions of RISCs containing arbitration provisions held with members of the putative class merely require the customer to acknowledge the arbitration provision when signing the RISC as a whole at the end of the document.  *See, e.g.,* **Ex. F** at p.1; **Ex. G** at p.4.

23.     The arbitration clauses contained in some of these type of RISCs likewise broadly provide that either Ally or the customer may choose to resolve ""[a]ny claim or dispute, whether in contract, tort, statute, or otherwise" by arbitration.  *See, e.g.,* **Ex. F** at p.2.  Other RISCs of this type define a claim subject to arbitration as "any claim, dispute, or controversy between [the customer] and [Ally] that in any way arises from or relates to this consumer credit sale, the purchase [the customer is] financing by way of the [RISC], the Vehicle and related goods and services that are the subject of the purchase and [the RISC], or the collection or servicing of this Contract[.]"  *See, e.g.,* **Ex. G** at p.3.

24.     The arbitration provisions in these agreements also contain various "class action waivers," which prohibit parties from pursuing class-wide consideration of their disputes.  *See*, *e.g.,* **Ex. E** at p. 2 ("If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any rights to class arbitration or any consolidation of individual arbitrations."); **Ex. G** at p.3 ("You give up your right to participate in a class action.  This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.").

25.     The arbitration provisions in some putative class members' RISCs provide that the arbitrator shall resolve any disputes regarding the interpretation and scope of the provision as well as the arbitrability of any claim or dispute, while the question of the enforceability of the class action waiver remains with a court. *See, e.g.*, **Ex. G**.

26.     Further, a number of RISCs with an arbitration provision and class action waiver provide that the arbitration provision shall be deemed null and void to the extent the class action waiver is  unenforceable.  *See*, *e.g.,* **Ex. D**; **Ex. G**.

27.     In each instance where a putative class member's RISC contains an arbitration clause and class action waiver, Ally will seek to arbitrate his or her claims asserted in this lawsuit on an individual basis.

**<u>Circumstances Applicable to Individual Massachusetts Customers</u>**

28.     The putative class contains consumers who received a pre-sale notice, but Ally never sold their vehicle.

29.     Based on a review of a selection of Ally's files, the putative class also contains consumers who received a pre-sale notice during the alleged class period, but, because of some

intervening event (for instance, redemption or reinstatement) and then a new default, received another pre-sale notice, the latter of which used the term "fair market value" in describing the calculation of their loan balance post-sale.

30.     Based on a review of a selection of Ally's files, the putative class contains consumers against whom Ally has already pursued litigation and received a deficiency judgment in connection with their loan.  The specifics of such litigation and judgments can only be determined through individual review of the court filings for each consumer.

31.     Further, to the extent that Ally resolved the deficiencies owed by customers via settlement agreement, the existence and contents of such agreements cannot readily be ascertained without conducting a file-by-file review.

32.     In addition, should the Court certify the putative class, for each member of the class with an outstanding deficiency balance, Ally will seek to recover that deficiency as a counterclaim in this action for default of those customers' RISCs.  But-for the class claims, Ally otherwise would not take legal action against many in the putative class because Ally's decision on whether and when to pursue a deficiency action is dependent on a number of individual considerations, including the amount of the deficiency balance, customer hardships and any other unique individual circumstances.

33.     Based on a review of a selection of Ally's files, the putative class contains consumers whose deficiency balances are greater than the sum of their finance charge plus 10% of the principal balance listed in their RISC.

34.     Further, based on a review of a selection of Ally's files as well as publicly available records, the putative class contains individuals that have filed for Chapter 7 and Chapter 13 bankruptcy and received a discharge in bankruptcy.  By virtue of their discharges in

bankruptcy, which included their liabilities owed to Ally, these putative class members' deficiencies are extinguished. Further, a sample of putative class members' bankruptcy filings indicate that there are customers in the class who did not include their present claims against Ally for violation of the Massachusetts Uniform Commercial Code in their bankruptcy petitions. The details of a putative class member's filings can only be determined through a customer-by-customer review of public records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 4, 2021, at Jacksonville, Florida.

/s/ *James D. Charles*
JAMES CHARLES

Exhibit A

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| ROBERT A MORRIS<br>EVERETT MA 02149 | N/A | VILLAGE MOTORS GROUP INC<br>DBA HONDA VILLAGE<br>371 WASHINGTON STREET<br>NEWTON MA 02458<br>MIDDLESEX |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2009 | MERCEDES C300 4MA | | Personal, family, or household unless otherwise indicated below.<br>☐ business ☐ N/A<br>☐ agricultural |

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $4,334. |
|---|---|---|---|---|
| 18.65% | $10512.71 | $21181.51 | $31694.22 | $33578.56 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 54 | 586.93 | Monthly beginning 06/28/2016 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $5 if you bought the vehicle primarily for personal, family, or household use.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price (including $ 935.28 sales tax) | | $ 20029.35 (1) |
| 2 Total Downpayment = | | |
| Trade-in 2006 MERCEDES LIGHT R-CLASS | | |
| (Year) (Make) (Model) | | |
| Gross Trade-in Allowance | $ 4500.00 | |
| Less Pay Off Made By Seller | $ 3115.66 | |
| Equals Net Trade In | $ 1384.34 | |
| + Cash | $ 500.00 | |
| + Other | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4I below) | | $ 1884.34 (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 18145.01 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | |
| (Seller may keep part of these amounts): | | |
| A Cost of Optional Credit Insurance | | |
| Paid to Insurance Company or Companies | | |
| Life | $ N/A | |
| Accident and Health | $ N/A | |
| Involuntary Unemployment Insurance | $ N/A | $ N/A |
| B Vendor's Single Interest Insurance | | |
| Paid to Insurance Company | | $ N/A |
| C Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A |
| D Optional Gap Contract | | $ N/A |
| E Official Fees Paid to Government Agencies | | |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| F Government Taxes Not Included in Cash Price | | $ N/A |
| G Government License and/or Registration Fees | | |
| INSP FEE/REG FEE | | $ 92.50 |
| H Government Certificate of Title Fees | | $ 75.00 |
| I Other Charges (Seller must identify who is paid and describe purpose) | | |
| to N/A for Prior Credit or Lease Balance | | $ N/A |
| to VILLAGE MOTORS GRO for DOC FEE | | $ 369.00 |
| to N/A for SERVICE CONTRACT | | $ 2500.00 |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 3036.50 (4) |
| 5 Amount Financed (3 + 4) | | $ 21181.51 (5) |

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A. ☐ SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Max. N/A Name of Gap Contract N/A

I want to buy a gap contract.
Buyer Signs X N/A

### Insurance (right column)

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Accident and Health ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Involuntary Unemployment Insurance:
☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
Credit Life $ N/A
Credit Accident and Health $ N/A
Credit Involuntary Unemployment Insurance $ N/A
Insurance Company Name N/A
Home Office Address N/A

Credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit accident and health insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

**Other Optional Insurance**
☐ N/A Type of Insurance N/A Term N/A
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

☐ N/A Type of Insurance N/A Term N/A
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A _____ N/A
Buyer Signature Date

X N/A _____ N/A
Co-Buyer Signature Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

Returned Check Charge: You agree to pay a charge of $ 10 if any check you give to us is dishonored.

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See back for other important agreements.**

**NOTICE TO THE BUYER: 1.** Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. **2.** You are entitled to an exact copy of the contract you sign. Under the law, you have the following rights, among others: -- (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _____ Date 05/13/16 Co-Buyer Signs X N/A Date N/A
Buyers and Other Owners -- An other owner is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X _____ Date 05/13/16 X _____ Title N/A

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned without recourse ☐ Assigned with limited recourse
Seller VILLAGE MOTORS GROUP INC DBA HONDA VILLAGE By _____ Title MGR

ILAW FORM NO. 553-MA 10/14

**ORIGINAL LIENHOLDER**

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default) and the default is material, we may demand that you pay all you owe at once after we give you any notice and opportunity to cure the default the law requires. Default means:
- You pay any payment more than 15 days late or not at all; or
- You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information on a credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they substantially impair the value of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows.

**d. We may take the vehicle from you.** If you default and the default is material, we may take (repossess) the vehicle from you after we give you any notice and opportunity to cure the default the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family or household use; and (ii) the balance you owed on this contract was $2,000 or less at the time you defaulted or surrendered the vehicle. If both of these things are true, you will not owe the rest. If either of these things is not true you will owe us the rest as the law allows. If you owe the rest and do not pay it when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does **not** apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

## 5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. APPLICABLE LAW

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-MA 10/14

Exhibit B



P.O. Box 380901
Bloomington, MN 55438
800-675-9375

November 1, 2018

Gracie D Dorneus

███████████████████

Medford, MA  02155-4647

## NOTICE OF OUR PLAN TO SELL PROPERTY

Subject:  Account Number  ████████████

We have your vehicle (a 2009 Mercedes Benz C-Class with VIN
████████████████████ because you broke promises in our agreement.

We will sell your vehicle at private sale sometime after November 21, 2018.  A sale
could include a lease.

The money that we get from the sale (after paying our costs) will reduce the amount you
owe.  If we get less money than you owe, you will still owe us the difference.  If we get
more money than you owe, you will get the extra money, unless we must pay it to
someone else.

You can get the property back at any time before we sell it by paying us the full amount
you owe (not just the past due payments), including our expenses.  To learn the exact
amount you must pay, call us at the telephone number at the top of this letter.

If you want us to explain to you in writing how we have figured the amount that you owe
us, you may call us at the telephone number at the top of this letter or write us at the
address at the top of this letter and request a written explanation.

If you need more information about the sale, call us at the telephone number at the top
of this letter, or write us at the address at the top of this letter.

We are sending this notice to the following other people who have an interest in your
vehicle or who owe money under your agreement:

None

STREP09|g594bffp(MXT )

Gracie D Dorneus



-2-

November 1, 2018

## Additional information:

As of the date of this letter, you can get your vehicle back by paying the total amount indicated below. The amount of finance charges you owe will increase each day you pay after the date of this letter.

| | | |
|---|---|---|
| Unpaid balance | $ | 16,148.93 |
| Earned and unpaid finance charge | + | 1,254.22 |
| Unearned insurance premium* | - | 0.00 |
| Other credits | - | 0.00 |
| Late charges | + | 15.00 |
| Expenses ( Retaking and Holding the Vehicle $400.00 ) | + | 400.00 |
| TOTAL | $ | 17,818.15 |

The longer you wait, the more you may have to pay to get your vehicle back. Only reasonable expenses may be charged. They must be the direct result of taking, storing, and selling the vehicle. We may also charge you the costs of getting it ready for sale and reasonable attorney fees, as the law permits.

You must pay the amount required by cashier's check sent to Ally Financial at the address at the top of this letter by mail or use the services of Western Union or MoneyGram.

Your vehicle and personal property, if any will be at The Ahlquist Agency Inc, 1670 Main Street S, Weymouth, MA, 02190. They will retain the personal property for at least 60 days after the date the vehicle was repossessed and may then discard it. We may however, move the vehicle to an alternate location of Adesa - Boston, 63 Western Ave., Framingham, MA, 01702 for storage and/or in preparation for sale. You must call us to confirm the vehicle location and to obtain authorization for admittance to either of these locations if you want to see the vehicle or to retrieve it if you do what is required to get it back.

We must send you any extra money owed to you from the sale of your vehicle within a reasonable time. If you do not get the money, you may have the right to sue for it plus any penalties fixed by law.

If you do not do what is required to get your vehicle back, by November 21, 2018, we will cancel any optional insurance, maintenance, service or other contract/policy that is part of your contract. Make sure any other coverage you no longer want is canceled, by calling the insurance company or the dealer to do this. You have a right to credit for any refunds.

Gracie D Dorneus



November 1, 2018

Contact us at the telephone number at the top of this letter for more information about getting back the vehicle or for more information about any personal property that you think might have been in the vehicle, if any.

Sincerely,
Ally Financial

* The insurance premium rebate is for credit insurance if it was part of your contract. It is also for any limited physical damage insurance.

Exhibit C



P.O. Box 380901
Bloomington, MN 55438-0902
800-241-0172



December 11, 2018

Gracie D Dorneus
███████████████

Medford, MA  02155-4647

## How We Calculated Your Surplus or Deficiency

Subject:  Account Number ███████████

Your 2009 Mercedes Benz C-class, VIN ████████████ , was sold on
December 3, 2018.  As of the date of this letter, the amount you still owe us under the
terms of your contract is $ 6,878.65.  This amount was calculated as follows:

| | | | |
|---|---|---:|---:|
| Unpaid balance before subtracting money from sale | | | $ 17,418.15 |
| This amount was calculated as of September 28, 2018 | | | |
| Money from sale | | - | 6,700.00 |
| Unpaid balance minus money from sale | | $ | 10,718.15 |
| Known expenses of taking vehicle, attorney fees, and other legal expenses: | | | |
| Repossessing & transporting | $  510.50 | | |
| Storage | 0.00 | | |
| Selling expenses | 0.00 | | |
| Attorney fees and legal expenses the law permits | 0.00 | | |
| Total expenses | | + | 510.50 |
| Known credits: | | | |
| Rebate of unearned insurance premiums | $  0.00 | | |
| Extended service contract refunds | 0.00 | | |
| Insurance and service contract claims | 0.00 | | |
| Estimated retail value adjustment | 4,350.00 | | |
| Total credits | | - | 4,350.00 |
| Deficiency/(surplus) | | $ | 6,878.65 |

The amount of any deficiency/surplus shown above may change because of future additional credits, rebates, or charges. Any deficiency shown above may also change because of additional interest accruing after the date of this letter.

For more information about this transaction or to make payment arrangements, you may call us at the telephone number at the top of this letter or write us at the address at the top of this letter.

Sincerely,
Ally Financial

Exhibit D

# ℒLAW° 553-MA-ARB-e 10/14

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

Dealer Number 0000089263 _____ Contract Number ▮▮▮▮▮▮▮

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| ▮▮▮▮▮▮ BRIDGEWATER, PLYMOUTH, MA 02324 | ▮▮▮▮▮▮ BRIDGEWATER, PLYMOUTH, MA 02324 | MASTRIA SUBARU OF RAYNHAM, INC 1255 New State Hgwy Raynham, MA 02767 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| Used | 2012 | HONDA CIVIC-4 CYL. | ▮▮▮▮▮▮ | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☒ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 15.40 % | $ 10,137.66 | $ 18,499.62 | $ 28,637.28 | $ 28,637.28 |

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 397.74 | Monthly beginning 10/31/2015 |
| One Final Payment Of $ N/A | | On N/A |
| Or As Follows: | | |

**Late Charge.** If payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $5 if you bought the vehicle primarily for personal, family, or household use.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

☐ **VENDOR'S SINGLE INTEREST INSURANCE** (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** N/A _____ and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

Returned Check Charge: You agree to pay a charge of $ 10 if any check you give to us is dishonored.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X ▮▮▮▮▮▮▮▮▮      Co-Buyer Signs X ▮▮▮▮▮▮▮▮▮

This is not the Authentic Copy.

**ALLY-White-0000001**

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Price (including $ _862.62_ sales tax) ........ $ _15,862.62_ (1)

2. Total Downpayment =

   Trade-in _2001_ _FORD_ _MUSTANG_
       (Year)    (Make)    (Model)

   Gross Trade-In Allowance .................... $ _1,587.00_

   Less Pay Off Made By Seller ................. $ _4,200.00_

   Equals Net Trade In ......................... $ _- 2,613.00_

   + Cash ...................................... $ _500.00_

   + Other _N/A_ ............................... $ _N/A_

   (If total downpayment is negative, enter "0" and see 4I below) ........ $ _0.00_ (2)

3. Unpaid Balance of Cash Price (1 minus 2) ........ $ _15,862.62_ (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):

   A. Cost of Optional Credit Insurance
      Paid to Insurance Company or Companies.

      Life _$ N/A_

      Accident and Health _$ N/A_

      Involuntary Unemployment Insurance _$ N/A_ ........ $ _N/A_

   B. Vendor's Single Interest Insurance
      Paid to Insurance Company ........ $ _N/A_

   C. Other Optional Insurance Paid to Insurance Company or Companies ........ $ _N/A_

   D. Optional Gap Contract ........ $ _N/A_

   E. Official Fees Paid to Government Agencies:

      to _N/A_ for _N/A_ ........ $ _N/A_

      to _N/A_ for _N/A_ ........ $ _N/A_

      to _N/A_ for _N/A_ ........ $ _N/A_

   F. Government Taxes Not Included in Cash Price ........ $ _N/A_

   G. Government License and/or Registration Fees
      STATE OF MA ........ $ _60.00_

   H. Government Certificate of Title Fees ........ $ _75.00_

   I. Other Charges (Seller must identify who is paid and describe purpose.)

      to _WELLS FARGO_ for _Prior Credit or Lease Balance_ ........ $ _2,113.00_

      to _N/A_ for _EXT. WARR/SERV._ ........ $ _N/A_

      to _N/A_ for _MAINTENANCE_ ........ $ _N/A_

      to _MASTRIA SUBARU INC_ for _DOC FEE_ ........ $ _389.00_

      to _N/A_ for _N/A_ ........ $ _N/A_

      to _N/A_ for _N/A_ ........ $ _N/A_

      to _N/A_ for _N/A_ ........ $ _N/A_

      to _N/A_ for _N/A_ ........ $ _N/A_

      to _N/A_ for _N/A_ ........ $ _N/A_

      Total Other Charges and Amounts Paid to Others on Your Behalf ........ $ _2,637.00_ (4)

5. Amount Financed (3 + 4) ........ $ _18,499.62_ (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _N/A_ , Year _N/A_ . SELLER'S INITIALS _N/A_

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _N/A_ Mos. _N/A_

                                   Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

**NO COOLING OFF PERIOD**

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

This is not the Authoritative Copy.

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked on page 1 of this contract.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Accident and Health: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Involuntary Unemployment Insurance:

    ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ _N/A_

Credit Accident and Health $ _N/A_

Credit Involuntary Unemployment Insurance $ _N/A_

Insurance Company Name

_N/A_

Home Office Address

_N/A_

Credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit accident and health insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

**Other Optional Insurance**

☐ _N/A_ _N/A_
    Type of Insurance    Term

Premium $ _N/A_

Insurance Company Name

_N/A_

Home Office Address

_N/A_

☐ _N/A_ _N/A_
    Type of Insurance    Term

Premium $ _N/A_

Insurance Company Name

_N/A_

Home Office Address

_N/A_

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____

Buyer Signature           Date

X _____

Co-Buyer Signature         Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**ALLY-White-0000002**

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

### 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest.

If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default) and the default is material, we may demand that you pay all you owe at once after we give you any notice and opportunity to cure the default the law requires. Default means:
- You pay any payment more than 15 days late or not at all; or
- You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information on a credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they substantially impair the value of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows.

**d. We may take the vehicle from you.** If you default and the default is material, we may take (repossess) the vehicle from you after we give you any notice and opportunity to cure the default the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

This is not the Authoritative Copy.

**ALLY-White-0000003**

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family or household use; and (ii) the balance you owed on this contract was $2,000 or less at the time you defaulted or surrendered the vehicle. If both of these things are true, you will not owe the rest. If either of these things is not true you will owe us the rest as the law allows. If you owe the rest and do not pay it when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does **not** apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**5. SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**6. APPLICABLE LAW**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

This is not the Authoritative Copy.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X████ Co-Buyer Signs X████
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

**NOTICE TO THE BUYER: 1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: -- (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X████ Date 09/16/2015 Co-Buyer Signs X████ Date 09/16/2015

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X_____ Address N/A

Seller signs MASTRIA SUBARU OF RAYNHAM, INC Date 09/16/2015 By X David Siqui Title FIN MGR

ALLY-White-0000004

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

This is not the Authoritative Copy.



 **FORM NO. 553-MA-ARB-e** (REV. 10/14)  U.S. PATENT NO. D460,782
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM CONSULT YOUR OWN LEGAL COUNSEL.

*LAW 553-MA-ARB-e 10/14 v1*    Page 5 of 5

**ALLY-White-0000005**

Exhibit E

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

93, Stock #40323/NHBI11   Dealer Number HERTZCS-MA   Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| DORCHESTER, MA 02122 SUFFOLK | N/A | THE HERTZ CORPORATION<br>592-596 LYNNWAY<br>LYNN, MA 01905 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2013 | DODGE AVENGER | | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 3500.00 |
|---|---|---|---|---|
| 13.30 % | $ 5365.55 | $ 11548.69 | $ 16914.24 | $ 20414.24 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 234.92 | Monthly beginning<br>06/02/2015 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $5 if you bought the vehicle primarily for personal, family or household use.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1 | Cash Price (including $ 747.69 sales tax) | | $ 12710.69 (1) |
| 2 | Total Downpayment = | | |
| | Trade-in | | |
| | (Year) (Make) (Model) | | N/A |
| | Less Pay Off Made By Seller | $ | N/A |
| | Equals Net Trade In | $ | 3500.00 |
| | + Cash | $ | 3500.00 |
| | + Other | $ | N/A |
| | (If total downpayment is negative, enter "0" and see 4I below) | | $ 3500.00 (2) |
| 3 | Unpaid Balance of Cash Price (1 minus 2) | | $ 9210.69 (3) |
| 4 | Other Charges Including Amounts Paid to Others on Your Behalf | | |
| | (Seller may keep part of these amounts): | | |
| A | Cost of Optional Credit Insurance | | |
| | Paid to Insurance Company or Companies. | | |
| | Life | $ N/A | |
| | Accident and Health | $ N/A | |
| | Involuntary Unemployment Insurance | $ N/A | |
| B | Vendor's Single Interest Insurance | | |
| | Paid to Insurance Company | $ | N/A |
| C | Other Optional Insurance Paid to Insurance Company or Companies | $ | N/A |
| D | Optional Gap Contract | $ | N/A |
| E | Official Fees Paid to Government Agencies | $ | N/A |
| F | Government Taxes Not Included in Cash Price | $ | N/A |
| G | Government License and Registration Fees | | |
| | STATE TITLE & REGISTRATION FEES | $ | 135.00 |
| H | Government Certificate of Title Fees | $ | N/A |
| I | Other Charges (Seller must identify who is paid and describe purpose) | | |
| | to _____ for Prior Credit or Lease Balance | $ | N/A |
| | to DEALER for DOC FEE | $ | 279.00 |
| | to FIDELITY WARRAN for SERVICE CONTRACT | $ | 1924.00 |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 2338.00 (4) |
| 5 | Amount Financed (3 + 4) | | $ 11548.69 (5) |

**OPTION:** ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before _____ Year _____. SELLER'S INITIALS _____

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A _____ Mos. _____ Name of Gap Contract _____

I want to buy a gap contract.
Buyer Signs X _____

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Buyer Signs X _____

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Accident and Health: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Involuntary Unemployment Insurance: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
Credit Life $ N/A
Credit Accident and Health $ N/A
Credit Involuntary Unemployment Insurance $ N/A
Insurance Company Name N/A
Home Office Address N/A

Credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit accident and health insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

### Other Optional Insurance

☐ _____ Type of Insurance _____ Term _____
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

☐ _____ Type of Insurance _____ Term _____
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A _____ N/A
Buyer Signature _____ Date

X N/A _____ N/A
Co-Buyer Signature _____ Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Returned Check Charge:** You agree to pay a charge of $ 10 if any check you give to us is dishonored.

---

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____   Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See back for other important agreements.**

**NOTICE TO THE BUYER: 1.** Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. **2.** You are entitled to an exact copy of the contract you signed. **3.** Under the law, you have the following rights, among others: – (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

| Buyer Signs X _____ | Date 04/18/15 | Co-Buyer Signs X N/A | Date N/A |
|---|---|---|---|

Co-Buyers and Other Owners – An other owner is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Address _____
Seller signs THE HERTZ CORPORATION   Date 04/18/15   By X _____   Title _____

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☐ XX Assigned without recourse   ☐ Assigned with limited recourse

Seller THE HERTZ CORPORATION   By X _____   Title _____

LAW   FORM NO. 553-MA-ARB 10/14  (v)   ©2014 The Reynolds and Reynolds Company. TO ORDER: www.reyrein.com · 1-800-344-0996, fax 1-800-531-9055 THIS PRINTER SANS AN WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. PRINTED FOR EXPRESS OR IMPLIED LEGAL CONSULT YOUR OWN LEGAL COUNSEL.

ORIGINAL LIENHOLDER

ALLY-White-0000006

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**

You give us a security interest in:

- The vehicle and all parts or goods put in it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default) and the default is material, we may demand that you pay all you owe at once after we give you any notice and opportunity to cure the default the law requires. Default means:

- You pay any payment more than 15 days late or not at all; or
- You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information on a credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they substantially impair the value of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows.

**d. We may take the vehicle from you.** If you default and the default is material, we may take (repossess) the vehicle from you after we give you any notice and opportunity to cure the default the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family or household use; and (ii) the balance you owed on this contract was $2,000 or less at the time you defaulted or surrendered the vehicle. If both of these things are true, you will not owe the rest. If either of these things is not true you will owe us the rest as the law allows. If you owe the rest and do not pay it when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does **not** apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. SERVICING AND COLLECTION CONTACTS**

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. APPLICABLE LAW**

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

ALLY-White-0000007

Exhibit F

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| SPRINGFIELD MA 01105 | SPRINGFIELD MA 01105 | CENTRAL CHEVROLET, INC. PO BOX 479 WEST SPRINGFIELD MA 01090- HAMPDE |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2007 | CHEVROLET MALIBU | | ☒ personal, family or household ☐ business ☐ agricultural |

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $3000.00 |
|---|---|---|---|---|
| 7.44. % | $ 3103.55 | $ 12784.69 | $ 15888.24 | $ 18888.24 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 220.67 | Monthly beginning 12/15/2011 |
| Or As Follows: | | |

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions

Check this insurance you want and sign below:
**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Accident and Health (Buyer Only)

Premium:
Credit Life $ N/A
Credit Accident and Health $ N/A
Insurance Company Name _____
Home Office Address $ N/A

YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.

Late Charge. If payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $5 if you bought the vehicle primarily for personal, family, or household use.
Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price (including $ ___ 624.69 ___ sales tax) | $ | 12619.69 (1) |
| 2 Total Downpayment = | | |
| Trade-in 2002 CHEVROLET PRIZM | | |
| (Year) (Make) (Model) | | |
| Gross Trade-in Allowance | $ 2000.00 | |
| Less Pay Off Made By Seller | $ 2000.00 | |
| Equals Net Trade in | $ 1000.00 | |
| + Cash | $ 1000.00 | |
| + Other | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4I below) | $ 3000.00 (2) | |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 9619.69 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | |
| (Seller may keep part of these amounts) | | |
| A Cost of Optional Credit Insurance | | |
| Paid to Insurance Company or Companies. | | |
| Life $ N/A | $ N/A | |
| Accident and Health $ N/A | | |
| B Vendor's Single Interest Insurance | | |
| Paid to Insurance Company | $ N/A | |
| C Other Optional Insurance Paid to Insurance Company or Companies | $ N/A | |
| D Optional Gap Contract | $ 750.00 | |
| E Official Fees Paid to Government Agencies | | |
| to: N/A for N/A | $ N/A | |
| to: N/A for N/A | $ N/A | |
| to: N/A for N/A | $ N/A | |
| F Government Taxes Not Included in Cash Price | $ N/A | |
| G Government License and/or Registration Fees | $ N/A | |
| REG FEE | $ 50.00 | |
| H Government Certificate of Title Fees | $ 75.00 | |
| I Other Charges (Seller must identify who is paid and describe purpose) | | |
| to: N/A for Prior Credit or Lease Balance | $ N/A | |
| to: GMPP for SERVICE CONT | $ 1995.00 | |
| to: CENTRAL CHEVROLE for DOC FEE | $ 295.00 | |
| to: N/A for N/A | $ N/A | |
| to: N/A for N/A | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ 3165.00 (4) | |
| 5 Amount Financed (3 + 4) | | $ 12784.69 (5) |

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 72 Mos. ☐ GAP CARE ADVANTAGE
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

### Other Optional Insurance

| ☐ N/A | N/A |
|---|---|
| Type of Insurance | Term |
| Premium $ N/A | |
| Insurance Company Name N/A | |
| Home Office Address N/A | |

| ☐ N/A | N/A |
|---|---|
| Type of Insurance | Term |
| Premium $ N/A | |
| Insurance Company Name N/A | |
| Home Office Address N/A | |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above

X _____
Buyer Signature Date

X _____
Co-Buyer Signature Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance). If the preceding box is checked, the Creditor requires VSI Insurance for the initial term of this contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

Returned Check Charge: You agree to pay a charge of $ 10 if any check you give to us is dishonored.

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

NOTICE TO THE BUYER: 1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: — (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 1/15/11 Co-Buyer Signs X _____ Date 1/15/11
Co-Buyer and Other Owner — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs X _____ Address _____

Seller signs CENTRAL CHEVROLET, INC. by X _____ Date 11/15/11 Title MANAGER

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse
CENTRAL CHEVROLET, INC. By X _____ Title MANAGER
Seller

LAW FORM NO. 553-MA-ARB 4/08
© 2008 The Reynolds and Reynolds Company

ORIGINAL LIENHOLDER

ALLY-White-0000008

**OTHER IMPORTANT AGREEMENTS**

## 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these charges before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

b. **You may have to pay all you owe at once.** If you break your promises (default) and the default is material, we may demand that you pay all you owe at once after we give you any notice and opportunity to cure the default the law requires. Default means:

- You pay any payment more than 15 days late or not at all; or
- You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information on a credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they substantially impair the value of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fees and court costs, as the law allows.

d. **We may take the vehicle from you.** If you default and the default is material, we may take (repossess) the vehicle from you after we give you any notice and opportunity to cure the default the law requires. We may only take the vehicle if we do so peacefully and the law allows. If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family or household use; and (ii) the balance you owed on this contract was $2,000 or less at the time you defaulted or surrendered the vehicle. If both of these things are true, you will not owe the rest. If either of these things is not true you will owe us the rest as the law allows. If you owe the rest and do not pay it when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does not apply at all if you bought the vehicle primarily for personal, family or household use.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

## 5. Used Car Buyers Guide.
The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. Applicable Law
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use For Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

**ARBITRATION CLAUSE**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the applicable arbitration organization's rules. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

Form No. 553-MA-ARB 4/08

Exhibit G

# CARMAX®

## RETAIL INSTALLMENT CONTRACT

### Consumer Credit Sale

**Contract Number** _____
**Contract Date** _____

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

| | Name | | | | Zip Code |
|---|---|---|---|---|---|
| Seller | CarMax Auto Superstores, Inc. | | 1320 BOSTON PROVIDENCE TURNPIKE, NORWOOD, MA | | 02062 |
| Buyer | ███████ | | ███████ BOSTON, MA | | 02124 |
| | Name | | Address | | Zip Code |
| Co-Buyer | | | | | |
| | Name | | Address | | Zip Code |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2,000.00 |
|---|---|---|---|---|
| 10.89 % | $ 5,516.85 e* | $ 17,961.75 | $ 23,478.60 | $ 25,478.60 e* |

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payments | *e means an estimate When Payments are Due |
|---|---|---|
| 60 | $ 391.31 | Monthly, beginning 02/21/2017 |

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 15 days after it is due, you will pay a late charge that is the lesser of $5 or 5% of the unpaid installment.

**Prepayment.** If you pay amounts owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in Item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____ N/A _____ (in months)

I want the optional GAP contract.

Buyer Signs: N/A

You agree to buy and we agree to sell you the following Vehicle:

Year _____ SAN ALTIMA
VIN ███████
New _____ Used _____ X

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household _____ X
Business or Commercial _____ Agricultural _____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":

Year/Make/Model N/A
VIN N/A

Year/Make/Model N/A
VIN N/A

#### YOUR PROMISE TO PAY

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| **A. CASH PRICE** | | |
| 1. Cash Price of Vehicle | $ | 16,998.00 |
| 2. Cash Price of CarMax Accessories | $ | 449.00 |
| 3. CarMax Processing Fee | $ | 0.00 |
| 4. Sales / Excise Tax | $ | 1,090.75 |
| 5. Other: Electronic Title Service Fee | $ | 5.00 |
| 6. Other: N/A | $ | 0.00 |
| 7. Total Cash Price [1 through 6] | $ | 18,542.75 |
| **B. DOWNPAYMENT** | | |
| 1. Cash Downpayment | $ | 2,000.00 |
| 2. Manufacturer's Rebate | $ | 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | | |
|    a. Value of "Trade-In" | $ | 0.00 |
|    b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
|    c. Pay-Off of "Trade-In" | $ | 0.00 |
|    d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ | 0.00 |
| 4. Other: N/A | $ | 0.00 |
| 5. Total Downpayment [1 through 4] | $ | 2,000.00 |
| **C. UNPAID BALANCE OF CASH PRICE [A minus B]** | $ | 16,542.75 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | | |
| 1. Optional GAP Waiver Agreement | $ | 0.00 |
| 2. To Public Officials | | |
|    a. Registration Fee | $ | 55.00 |
|    b. Title Fee | $ | 75.00 |
|    c. Transfer Plate Fee | $ | 0.00 |
|    d. Other Official Fees: N/A | $ | 0.00 |
|    e. Other Official Fees: N/A | $ | 0.00 |
|    f. Other Official Fees: N/A | $ | 0.00 |
| 3. To Consumer Program Administrators, Inc. For Optional Extended Service Contract | $ | 1,289.00 |
| 4. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 5. Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 4] | $ | 1,419.00 |
| **E. AMOUNT FINANCED [C plus D]** | $ | 17,961.75 |

*Seller may retain a portion of this amount.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you h____ d and agree to all provisions on all pages.

Buyer's Initials ████        Co-Buyer's Initials _____

Business ID RIC9021        DMS Tracking #: 142504        Reprint #: 0        **carmax.com**        MIS ID 7262008
Order # 40586                                                                              Legal - EH
Revision Date 07/16

ALLY-White-0000010

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Massachusetts apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** You will pay a service charge of $10 for any payment made by check, draft, or other written order that your financial institution refuses to pay because of insufficient funds, the lack of an account, or incorrect or insufficient signature.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. If you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you, you will also be in default if these events substantially impair the value of the Vehicle. If you default, subject to any right to notice or cure you may have, we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** If you default and the default is material, we may take (repossess) the Vehicle from you after providing any required notice or right to cure, as long as we do so peacefully. If the Vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the Vehicle unless you consent at that time or a court decides we may repossess the Vehicle. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle and holding and storing it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance, unless you bought the Vehicle primarily for personal, family or household use and the balance you owed on this Contract was $2000 or less at the time you defaulted or surrendered the Vehicle.

**Collection Costs.** You agree to pay our reasonable attorney's fees, plus court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you ___ e ___ ad and agree to all provisions on all pages.

Buyer's Initials _____   Co-Buyer's Initials _____

Business ID RIC9021
Revision Date 07/16

ALLY-White-0000011

# RETAIL INSTALLMENT CONTRACT
**Other Important Agreements**

## ARBITRATION PROVISION



DMS Tracking #: 142505
01/07/2017 11:14 am 1 of 1

Reprint #: 0

MIS ID 7262009

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding: you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver.** You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.**

| | |
|---|---|
| Buyer's Initials ████ | Co-Buyer's Initials _____ |

# NO LIABILITY INSURANCE INCLUDED
**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

**PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.**

**YOUR INSURANCE INFORMATION**

LIENHOLDER/LOSS-PAYEE Ally                          INSURED'S NAME ▮▮▮▮

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00          COLLISION $ 500.00

INSURANCE COMPANY GEICO

POLICY NUMBER ▮▮▮▮          EFFECTIVE DATE 01/07/2017    EXPIRATION DATE 07/17/2017

INSURANCE AGENT NAME GEICO          TELEPHONE NUMBER (866) 955 - 3146

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

**USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**VEHICLE RETURN POLICY**

You may return the Vehicle to CarMax for a refund within 5 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

**ENTIRE AGREEMENT**

This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.**

**NOTICE TO THE BUYER: 1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: (a) To pay off in advance the full amount due and obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.**

Buyer's Signature ▮▮▮▮          Co-Buyer's Signature _____

Seller CarMax Auto Superstores, Inc.          By _____

## ASSIGNMENT

Seller hereby sells, assigns and transfers to Ally _____ (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor _____

Date 1/7/2017          Title BSA

Business ID RIC9021
Revision Date 07/16

ALLY-White-0000013