## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**GRACIE WHITE f/k/a GRACIE DORNEUS**, individually and on behalf of persons similarly situated,

        Plaintiffs,

    v.

**ALLY FINANCIAL, INC.**,

        Defendant.

**Case No. 3:18-cv-30143-MGM**

**Plaintiff's Reply In Further Support Of Motion For Class Certification**

# TABLE OF CONTENTS

**Page**

I.      Introduction .................................................................................................. 1

II.     Argument ...................................................................................................... 1

    A.      Predominance Is Satisfied: Common Liability Issues Predominate ...................... 1

        1.      As a Threshold Matter, Ally Should Be Barred From Making Arguments About Individual Defenses As It Refused To Produce This Information In Discovery, And Has Not Provided It With Its Briefing ..... 2

        2.      Individual Defenses Rarely Defeat Predominance, And Ally Has Not Provided Evidence Demonstrating Its Defenses Overwhelm Common Issues ................................................................................................ 4

        3.      Courts Make Clear That An Unknown Number Of Alleged Arbitration Agreements, Bankruptcies, Releases, And Deficiency Judgments Applicable To Putative Class Members Do Not Undermine Predominance .............................................................. 6

            a)      The Existence Of Some Arbitration Agreements Is Not Predominance-Ending .................................................... 6

            b)      The Possibility Of Bankruptcies Is Not An Obstacle To Predominance .................................................................. 8

            c)      Ally's Alleged Deficiency Judgments And Release Defenses Do Not Defeat Predominance ......................... 9

        4.      There Are No Individual Limitations Issues; Ms. White's Claims Relate Back Under Massachusetts' Law .................................... 10

        5.      Ally's Counterclaim-Threat Defense Has No Bearing On Predominance And Has Been Rejected By Nearly Every Court To Consider It .................................................................................. 13

            a)      Rule 13 Does Not Apply To Absent Class Members Because They Are Not Opposing Parties ............................... 14

    B.      A Class Action is Superior to Thousands of Individual Claims Raising the Exact Same Challenge to Ally's Notice ............................................. 16

    C.      Ms. White's Claims Are Typical And She Is An Adequate Class Representative ............................................................................... 18

    D.      The Class is Ascertainable ................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003) .........................................................14

*Baker v. Gold Seal Liquors, Inc.*,
  417 U.S. 467 (1974).........................................................................16

*Bastian v. Cmty. Credit Union of Lynn*,
  No. 1982CV00719 (Mass. Super. Nov. 24, 2020)...........................15, 17

*In re Biery*,
  543 B.R. 267 (Bkrtcy. E.D. Ky. 2015) ..................................................9

*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) ...............................................................9

*Blanco v. Key Bank USA, N.A.*,
  No. 1:04CV230, 2008 WL 11381847 (N.D. Ohio June 30, 2008) ........13

*Bond v. Fleet Bank (RI), N.A.*,
  No. Civ.A. 01–177 L, 2002 WL 31500393 (D.R.I. Oct. 10, 2002) .........6

*Buford v. H & R Block, Inc.*,
  168 F.R.D. 340 (S.D. Ga. 1996) .........................................................14

*Carr v. Flowers Foods, Inc.*,
  Nos. 15-6391, and 16-2581, 2019 WL 2027299 (E.D. Pa. May 7, 2019) ..............................20

*Conde v. Sensa*,
  No. 14-CV-51, 2018 WL 4297056 (S.D. Cal. Sept. 10, 2018)............6, 7

*Conneely v. Butterworth Jetting Sys., Inc.*,
  219 F.R.D. 25 (D. Mass. 2003)...........................................................11

*Coroa v. First Citizens' Fed. Credit Union*,
  No. 16-CV-558 (Mass. Super. Sept. 4, 2017)..........................2, 15, 17

*Covel v. Safetech, Inc.*,
  90 F.R.D. 427 (D. Mass. 1981)...........................................................11

*Dahl v. Bain Capital Partners, LLC*,
  760 F. Supp. 2d 196 (D. Mass. 2011) ..................................................12

*DeRosa v. Massachusetts Bay Commuter Rail Co.*,
    694 F. Supp. 2d 87 (D. Mass. 2010) ...................................................18

*Donson Stores, Inc. v. American Bakeries Co.*,
    58 F.R.D. 485 (S.D.N.Y.1973) ........................................................15

*In re Elscint, Ltd. Sec. Litig.*,
    674 F. Supp. 374 (D. Mass. 1987) ...................................................12

*Eon Labs., Inc. v. Smithkline Beecham Corp.*,
    298 F. Supp. 2d 175 (D. Mass. 2003) ...............................................16

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 1:06-cv-00627-DFH-JMS, 2013 WL 12224042 (S.D.N.Y. 2013) ....................4

*Flomo v. Bridgestone Americas Holding, Inc.*,
    1:06-cv-00627-DFH-JMS, 2009 WL 10688034 (S.D. Ind. June 16, 2009) ...........3

*Fuller v. Becker & Poliakoff, P.A.*,
    197 F.R.D. 697 (M.D. Fla. 2000) ....................................................2

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*,
    No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ....................5

*Gammella v. P.F. Chang's China Bistro, Inc.*,
    482 Mass. 1 (2019) ..................................................................4

*State ex rel. Gen. Credit Acceptance Co., LLC v. Vincent*,
    570 S.W.3d 42 (Mo. 2019) ........................................................8, 9

*Gilkey v. Cent. Clearing Co.*,
    202 F.R.D. 515 (E.D. Mich. 2001) ..................................................13

*Granite Telecommunications, LLC v. Contino*,
    No. 14-00699, 2018 WL 10014265 (Mass. Super. Feb. 26, 2018).....................15

*Hallmark v. Cohen & Slamowitz LLP*,
    No. 11–CV–842S, 2014 WL 51322 (W.D.N.Y. Jan. 8, 2014) .......................5, 6

*Heaven v. Tr. Co. Bank*,
    118 F.3d 735 (11th Cir. 1997) ........................................14, 16, 17, 18

*Herrera v. LCS Fin. Servs. Corp.*,
    274 F.R.D. 666 (N.D. Cal. 2011)....................................................6, 9

*Hi-Co Enterprises, Inc. v. ConAgra, Inc.*,
    75 F.R.D. 628 (S.D. Ga. 1976) .....................................................15

*Johnson v. BLC Lexington, SNF, LLC*,
   No. 5: 19-064-DCR, 2020 WL 3578342 (E.D. Ky. July 1, 2020) ........................7, 8

*Leonard v. Parry*,
   219 F.3d 25 (1st Cir. 2000) ................................................................................12

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002) ...............................................................................4

*Macarz v. Transworld Sys., Inc.*,
   193 F.R.D. 46 (D. Conn. 2000) ...........................................................................2

*Madden v. Midland Funding, LLC*,
   237 F. Supp. 3d 130 (S.D.N.Y. 2017) .................................................................20

*Marshall v. Mulrenin*,
   508 F.2d 39 (1st Cir. 1974) ................................................................................11

*Marti v. Schreiber/Cohen, LLC*,
   No. CV 4:18-40164-TSH, 2020 WL 30421 (D. Mass. Jan. 2, 2020) ........................6

*Martino v. McDonald's Sys., Inc.*,
   86 F.R.D. 145 (N.D. Ill. 1980) ...........................................................................19

*Matamoros v. Starbucks Corp.*,
   699 F.3d 129 (1st Cir. 2012) ..............................................................................19

*Mosca v. Brookline Bank*,
   No. 07-0771-G, 2008 WL 6549061 (Mass. Super. July 18, 2008) ........................15

*Neeley v. Portfolio Recovery Assocs., LLC*,
   268 F. Supp. 3d 978 (S.D. Ind. 2017) ..................................................................2

*Owner Operator Indep. Drivers Assoc. Inc. v. Arctic Express Inc.*,
   No. 2:97–CV–750, 2001 WL 34366624 (S.D. Ohio Sept. 4, 2001) ........................14

*Pessotti v. Eagle Mfg. Co.*,
   946 F.2d 974 (1st Cir. 1991) ..............................................................................12

*Rental Car of New Hampshire, Inc. v. Westinghouse Elec. Corp.*,
   496 F. Supp. 373 (D. Mass. 1980) ......................................................................15

*Roper v. Consurve, Inc.*,
   578 F.2d 1106 (5th Cir.1978) ........................................................................14, 17

*Roundtree v. Bush Ross, P.A.*,
   304 F.R.D. 644 (M.D. Fla. 2015) ........................................................................9

*Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*,
    202 F.R.D. 484 (S.D. Tex. 2001) ....................................................................15

*Shanley v. Cadle*,
    277 F.R.D. 63 (D. Mass. 2011) ......................................................................20

*Sigros v. Walt Disney World Co.*,
    190 F. Supp. 2d 165 (D. Mass. 2002) ............................................................11

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ........................................................................4, 18

*Spotswood v. Hertz Corp.*,
    No. CVRDB-16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019) ......................7

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005) ....................................................................16

*Torres v. S.G.E. Mgmt., L.L.C.*,
    838 F.3d 629 (5th Cir. 2016) .......................................................................5, 7

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ....................................................................................9

*Victorino v. FCA US LLC*,
    No.: 16cv1617-GPC(JLB), 2020 WL 2306609 (S.D. Cal. May 8, 2020) .......10

*Wang Yan v. ReWalk Robotics Ltd.*,
    391 F. Supp. 3d 150 (D. Mass. 2019) ......................................................12, 13

*Winslow v. Forster & Garbus, LLP*,
    CV 15-2996, 2017 WL 6375744 (E.D.N.Y., Dec. 13, 2017) ............................3

**Statutes**

M.G.L. c. 106, § 1-103 .........................................................................................16

M.G.L. c. 231, § 51 ..............................................................................................12

M.G.L. c. 260, § 5A ..............................................................................................11

**Rules**

Fed. R. Civ. P. 13 .......................................................................................14, 15, 16

Fed. R. Civ. P. 15 ............................................................................................10, 11

Fed. R. Civ. P. 15(c) .............................................................................................12

Fed. R. Civ. P. 15(c)(1) ............................................................................11

Fed. R. Civ. P. 15(c)(1)(A) .......................................................................11

Fed. R. Civ. P. 23(b)(3) ........................................................................4, 5, 9

Fed. R. Civ. P. 26(a) .................................................................................2

Fed. R. Civ. P. 26(e) .................................................................................2

Fed. R. Civ. P. 37(c) ..............................................................................2, 3

Fed. Rule 15(c)(1) ...................................................................................11

Mass. R. Civ. P. 15(c) ........................................................................11, 12

## Other Authorities

Newberg on Class Actions (5th ed.) ................................................ *passim*

## I.    Introduction

This is a quintessential class action. The claims are based on form notices subject to strict statutory requirements, which if not met, entitle consumers to uniform damages based on a mathematical formula. And Ally's notices do not meet the statutory requirements. So the proposed class is made up of Massachusetts borrowers to whom Ally sent a post-repossession notice that inflated their deficiency liability. Not only does the statutory scheme create liability on these dispositive facts alone, but both the SJC and First Circuit have already determined that a notice just like Ally's is defective as a matter of law. No material individual issues as to liability exist. Ally's subjective intent, or its actions after the fact, or whether a borrower was behind in their payments, are all irrelevant to its liability to class members.

Ally's Opposition, ECF # 76 (Opp.), does not challenge the uniformity of its notices or the class claims. Instead, it raises the *possibility* that there are individual defenses that might affect whether some number of individuals can participate in the class action. But courts are clear that speculation about individual defenses is never enough to defeat class certification. Indeed, likely every class of borrowers challenging post-default lending practices contains *some number* of borrowers who filed bankruptcy, or signed a release, or have a judgment against them. The relevant question for certification is not whether such issues exist, but whether they overwhelm common issues.

Ally's alleged issues are irrelevant to the common issues of whether its notices are defective, and have no potential to overwhelm the litigation. To the extent they do arise, they can be easily addressed by simply refining the class definition.

## II.    Argument

### A.    Predominance Is Satisfied: Common Liability Issues Predominate

Predominance is "easily met" where, as here, "[a]ll class members' claims arise from …

a common document." *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 54 (D. Conn. 2000); *see also Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. 2017) (predominance met where same letter was sent to all class members, and whether letter violated the FDCPA was common issue).[1] This is why courts have readily certified cases alleging defective repossession notice claims; the claims all arise from a common form document. *See e.g., Coroa v. First Citizens' Fed. Credit Union*, No. 16-CV-558 (Mass. Super. Sept. 4, 2017); and cases cited in Plaintiff's Memorandum in Support of Class Certification, ECF # 53 at 6-7, certifying virtually identical claims.

None of the alleged individual issues raised by Ally affect predominance. Each is addressed in turn below.

> **1.      As a Threshold Matter, Ally Should Be Barred From Making Arguments About Individual Defenses As It Refused To Produce This Information In Discovery, And Has Not Provided It With Its Briefing**

Fed. R. Civ. P. 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." And Rule 26(e) provides that litigants must supplement interrogatory answers and requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete."

Here, Ms. White has sought the very information Ally relies on to oppose class certification. Her interrogatories and document requests ask for information and documents related to the alleged arbitration agreements, bankruptcies, and deficiency judgments referenced

---

[1] *See also Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700-701 (M.D. Fla. 2000) (predominance met where "common factual link" between all of prospective class members is the letters sent by defendants and claim is based on the language and content of the letters).

in Ally's opposition. Exhibits A and B. But Ally refused to provide this information or related documents, on the grounds that Ms. White was not entitled to it *prior to* class certification, producing only documents from Ms. White's account. *See* Interrogatory Answers, No. 2, 3, 8, and General Objection No. 3, Exhibit A; Document Reponses Nos. 5, 7-14, 17-18, 21-25, and General Objection No. 3, Exhibit B. In other words, Ally is claiming Ms. White can't certify a class based on information she can't get until a class is certified.

Ally similarly never produced the "selection of Ally's files" referred to by James Charles in his declaration in support of the Opposition (the "Charles Declaration") (ECF # 76-1). Yet, Ally uses Mr. Charles' review of the unproduced files to attack class certification based on the purported existence of putative class members who are subject to these defenses. *See* Charles Declaration, ¶¶ 19, 30-31, 34.

But Ally cannot use discovery as both sword and shield, opposing class certification based on information it has objected to producing in discovery, has not identified in its initial disclosures, and has not produced with its opposition. For this reason, in deciding this motion, the Court should not consider the Charles Declaration's references to the putative class's alleged arbitration agreements, deficiency judgments, and bankruptcies (*id.* ¶¶ 18-26, 30-31, 33-34) and related exhibits. *See* Fed. R. Civ. P 37(c); *see also Winslow v. Forster & Garbus, LLP*, CV 15-2996 (AYS), 2017 WL 6375744, at *15 (E.D.N.Y., Dec. 13, 2017) (refusing to consider declaration where information in the declaration was not provided to plaintiff prior to the filing); *Flomo v. Bridgestone Americas Holding, Inc.*, 1:06-cv-00627-DFH-JMS, 2009 WL 10688034, at *4 (S.D. Ind. June 16, 2009) (courts "routinely refuse to let litigants selectively disclose information only when, and to the extent, that disclosure suits their present purpose," reasoning that "sword-and-shield litigation tactics are anathema to the Federal Rules' discovery

provisions").[2]

## 2. Individual Defenses Rarely Defeat Predominance, And Ally Has Not Provided Evidence Demonstrating Its Defenses Overwhelm Common Issues

In challenging predominance, Ally raises a flurry of purported defenses it may assert against some putative class members, including defenses related to arbitration agreements, bankruptcies, deficiency judgments, the absence of a sale of the vehicle, and sending both compliant and non-compliant notices, as well as potential counterclaims. Opp. at 11-22. But, Ally's argument suffers from two fundamental problems.

The first is a legal one: "counterclaims and affirmative defenses […] rarely defeat a finding of predominance" because "they do not invariably break down into individualized determinations" and "they speak to the right of a class member to *recover*, in contrast to underlying common issues of the defendant's liability." Newberg on Class Actions § 4:53 (5th ed.).[3] Indeed, where common issues otherwise predominate courts traditionally "have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003).

The second flaw in Ally's argument is an evidentiary one: Ally has presented virtually *no* evidence of the prevalence of its purported defenses amongst putative class members. This

---

[2] *See also Fleisher v. Phoenix Life Ins. Co.*, No. 1:06-cv-00627-DFH-JMS, 2013 WL 12224042, at *8 (S.D.N.Y. 2013) ("defendant cannot shield itself from discovery and then use the undisclosed information as a sword to defeat a motion"); *Gammella v. P.F. Chang's China Bistro, Inc.*, 482 Mass. 1, 20 (2019) (certification "should not be thwarted where the defendant's opposition is based on information in the defendant's possession that the defendant itself asserted plaintiff did not need and then used strategically against the plaintiff").

[3] *See, e.g., In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("Challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." (quoting Newberg on Class Actions)).

dooms its argument because without knowing the scope of the alleged individual issue, there is no way for the Court to know if it *predominates* over common issues. In analyzing predominance, "[a] court must first *characterize* the issues in the case as common or individual and then *weigh* which predominate." Newberg on Class Actions § 4:50 (5th ed.) (emphasis in original). Here, on one side of the scale is an elephant of a common issue: a form post-repossession notice sent to thousands of consumers and whether that notice violates the UCC and RISA.[4] On the other side of the scale is Ally's statement that "some" putative class members "may" be subject to various individual defenses, leaving unsaid, and unquantified, the extent of the presence of these defenses.

Without such evidence, there is no way for the Court to conclude that these alleged defenses against some hypothetical number of class members will predominate over the common issues of Ally's liability. *See, e.g., Torres v. S.G.E. Mgmt., L.L.C.,* 838 F.3d 629, 644 (5th Cir. 2016) (predominance would not be defeated even if a few class members were subject to an individual defense); *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *6 (N.D. Ill. Feb. 25, 2010) (defendant's "vague assertions about potential individual issues of consent … do not overcome the predominance of common questions of law and fact" in TCPA case); *Hallmark v. Cohen & Slamowitz LLP*, No. 11–CV–842S, 2014 WL 51322, at *2 (W.D.N.Y. Jan. 8, 2014) ("[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3).").

If at some point, it does become evident that a significant number of putative class

---

[4] Even a "single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." Newberg on Class Actions § 4:51 (5th ed.).

members are subject to individual defenses, the Court can utilize one of a number of procedural tools at its disposal to manage them, such as narrowing the class definition to exclude certain class members or placing certain class members in subclasses. *See Hallmark v. Cohen & Slamowitz, supra,* at *2 (if it becomes clear that individual defenses will predominate, court "has adequate procedural mechanisms," it can exclude them from the class or create a subclass).

### 3. Courts Make Clear That An Unknown Number Of Alleged Arbitration Agreements, Bankruptcies, Releases, And Deficiency Judgments Applicable To Putative Class Members Do Not Undermine Predominance

#### a) The Existence Of Some Arbitration Agreements Is Not Predominance-Ending

The fact "that some members may be subject to a valid arbitration agreement does not preclude [a] court from certifying a class. *Bond v. Fleet Bank (RI), N.A.*, No. Civ.A. 01–177 L, 2002 WL 31500393, at *7 (D.R.I. Oct. 10, 2002). It may be "that at some later juncture, the arbitration agreement may call for the creation of subclasses, or the eliminating some members of the class, but it does not defeat the merits of certification." *Id.; see also Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) (same).

In support of its argument on this score, Ally cites a host of non-analogous cases where there was evidence that the *majority* of the class was subject to arbitration. For example, in *Marti v. Schreiber/Cohen, LLC,* No. CV 4:18-40164-TSH, 2020 WL 30421, at *3 (D. Mass. Jan. 2, 2020), Judge Hillman raised a potential predominance issue because "more than half" of the putative class — over 10,000 individuals — were subject to arbitration agreements. But the court ultimately certified the class by amending the class definition to exclude those individuals, *id.*, which the Court could do here if necessary.[5] Similarly, in *Conde v. Sensa,* No. 14-CV-51, 2018

---

[5] In fact, contracts attached to the Charles Declaration even bear form numbers that reflect the existence of an arbitration agreement. E.g., Charles Declaration Exhibit F, (Form No.553-MA-ARB). ███████████████████████████████████████████████████. In any

WL 4297056, at *10 - 11(S.D. Cal. Sept. 10, 2018), the court found predominance was not met because 84% of the nationwide class of purchasers were subject to arbitration agreements that contained choice of law clauses applying the law of the purchaser's home state. Given that the court would need to analyze large numbers of arbitration agreements based on various states' laws and that, "[i]n the end, it [wa]s possible that approximately 84% of the class members would not be able to participate in the class action," the court found predominance lacking. *Id*.

This is far from the case here. Ally has not presented *any* evidence that arbitration agreements are widespread within the class, let alone that they affect the majority. And a few arbitration agreements, with borrowers all in one state, does not defeat predominance. *See Torres v. S.G.E. Mgmt., L.L.C., supra* at 644 (predominance not defeated by a few class members subject to an individual defense).

The other cases Ally relies on are even less relevant. *Johnson v. BLC Lexington, SNF, LLC*, No. 5: 19-064-DCR, 2020 WL 3578342, at *5-6, 8 (E.D. Ky. July 1, 2020), found a lack of predominance where the case involved both allegations of individual fraud, and the fact that all class members were subject to arbitration agreements, with the exception of the plaintiff who claimed her husband signed her admission form without her authority. Here there are no individual fraud issues, and no prevalence of arbitration agreements.

Likewise, in *Spotswood v. Hertz Corp.*, the plaintiff alleged Hertz charged rental contract fees that were "unreasonable in relation to the actual costs suffered by [the company]." No. CVRDB-16-1200, 2019 WL 498822, at *9 (D. Md. Feb. 7, 2019). The court found predominance lacking due to a "host of thorny issues" as to reasonableness, and because a

---

event the agreement is prominently displayed. ECF # 76-1 at ¶¶ 10-11, Exhibits A, D-G. Identification of such class members is feasible.

significant portion of the class, namely every class member who signed a rental agreement beginning two months after plaintiff did, was subject to arbitration agreements and class waivers. *Id*. at *9-11. Again, that is not the situation here.

**b) The Possibility Of Bankruptcies Is Not An Obstacle To Predominance**

Next Ally argues that the possibility that putative class members with reaffirmation agreements or Chapter 7 and 13 discharges gives rise to trouble determining which members are entitled to relief, and the defense of estoppel, thus defeating predominance. Opp. at 8-10. This argument fails for two reasons.

First, with respect to class members' recoveries, Ally misapplies the law— predominance turns on common issues of liability, not whether a particular class member can ultimately recover. Newberg on Class Actions § 4:53 (5th ed.) (affirmative defenses generally do not defeat predominance because "they speak to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability").

Second, Ally's argument that there is no predominance because it may have an estoppel defense if a claim was not identified in bankruptcy, is equally unavailing. *State ex rel. Gen. Credit Acceptance Co., LLC v. Vincent*, 570 S.W.3d 42 (Mo. 2019), on which Ally relies, is not analogous. There, the court found that the plaintiff's class definition was overbroad "[b]ecause approximately 87 percent of individual class members' claims are either precluded by deficiency judgments or have been extinguished in bankruptcy," meaning that "the vast majority of individual class members ha[d] no unresolved claim against [the defendant]." *Id*. at 50. But, Ally has not demonstrated that even 1% of the putative class is subject to a bankruptcy-related defense, much less a "vast majority." Charles Declaration at ¶ 34 (stating vaguely that "individuals" in the class have filed for bankruptcy). A smattering of bankruptcy discharges and

reaffirmation agreements cannot defeat predominance.[6] If necessary, they can be removed from the class and ████████████████████████████████████████████. Excerpt from Bates-stamped ALLY-White-0000340, attached as Exhibit C.

### c) Ally's Alleged Deficiency Judgments And Release Defenses Do Not Defeat Predominance

Ally also contends that it has secured deficiency judgments against or releases from a secret number of putative class members, giving rise to individual, predominance—killing *res judicata* defenses. As is the theme, Ally fails to identify the number of class members who are purportedly impacted. Charles Declaration at ¶¶ 30, 31. But, as with its other alleged defenses, even if there are some individuals who are subject to *res judicata*, neither defeats predominance. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b) (3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members"); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (that some members had signed liability release forms did not justify denying class certification); *Herrera*, 274 F.R.D. 666 at 681 ("[t]he fact that some members of a putative

---

[6] *See, e.g., Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 652–53 (M.D. Fla. 2015) (affirmative defenses, including bankruptcy, did not defeat predominance because "[w]hile some of these affirmative defenses may create individual issues for some class members, the common issues of whether [defendant] is subject to the FDCPA and whether its actions violated the FDCPA predominate"); *In re Biery*, 543 B.R. 267, 300 (Bkrtcy. E.D. Ky. 2015) (finding common questions easily predominate over individual ones, where "sole individual issues that remain" are extremely manageable individual defenses, such as bankruptcy or reaffirmation, which are matters of record); *see also Vincent*, *supra*, at 50 (overbroad class definition can be remedied by modifying it).

class may have […] released claims against a defendant does not bar class certification").[7] These claims can be addressed at the damages stage if necessary, or the Court could narrow the class definition.

Finally, Ally raises the defense that some putative class members' vehicles were not sold or that it later sent a compliant notice to a class member. Charles Declaration, ¶¶ 28-29. Ally identifies exactly one person who is subject to this defense — Mr. Randall, whose claims have been dismissed. In other words, Ally has not identified a single putative class member who would be subject to either defense. Even if it had, as with its other hypothetical defenses, this one can easily be managed by the Court through procedural mechanisms, including altering the class definition.[8]

### 4. There Are No Individual Limitations Issues; Ms. White's Claims Relate Back Under Massachusetts' Law

Ally next challenges predominance on the grounds that the class definition includes a segment of borrowers whose cars were repossessed four years before *Mr. Randall* filed his complaint (on July 16, 2018) but more than four years before *Ms. White* became a named plaintiff through the Amended Complaint ten months later (on May 22, 2019). This segment of borrowers' claims, it argues, are not timely, because it contends Ms. White's claims do not relate back to the original complaint, alleging a lack of standing. Opp. at 22.[9] Ally's analysis is incorrect, as it ignores governing law under Fed. R. Civ. P. 15, requiring the Court to apply

---

[7] *See also Victorino v. FCA US LLC*, No.: 16cv1617-GPC(JLB), 2020 WL 2306609, at *4-5 (S.D. Cal. May 8, 2020) (denying motion to decertify based on "defenses of res judicata, collateral estoppel, accord and satisfaction, and settlement and release" because affirmative defenses relate[d] to a claims administration issue and not a class certification concern").

[8] Whether Ally did obtain a judgment is a matter of record, ███████████████████ ███████████ Excerpt from Bates-stamped ALLY-White-0000078, attached as Exhibit D, row 1248.

[9] Mr. Randall's individual claims were dismissed on April 13, 2020 based on a choice of Vermont law provision in his contract that was found to govern his repossession.

Massachusetts automatic relation back rules.

Fed. R. Civ. P. 15(c)(1), which governs whether an amended complaint relates back provides that an amendment: "relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Here, Massachusetts law provides the applicable limitations and it allows relation back. *See* M.G.L. c. 260, § 5A (statute of limitations for consumer protection actions), and Mass. R. Civ. P. 15(c) (relation-back of amendment). *See also Marshall v. Mulrenin,* 508 F.2d 39, 45 (1st Cir. 1974) (relation-back is controlled by the Massachusetts rule rather than the federal when the claim arises under state law); *Sigros v. Walt Disney World Co*., 190 F. Supp. 2d 165, 168 (D. Mass. 2002) (under Fed. Rule 15(c)(1), court must apply Massachusetts relation-back rules because it provides the statute of limitations).

The Massachusetts relation-back rule is substantially more liberal than the federal rule. *Sigros v. Walt Disney World Co*., 190 F. Supp. 2d at 168; *Covel v. Safetech*, *Inc.*, 90 F.R.D. 427, 429 (D. Mass. 1981) ("Massachusetts has long had an unusually liberal relation-back rule," allowing for example, amendments to add new defendants even after the statute of limitations has run); *Conneely v. Butterworth Jetting Sys., Inc.,* 219 F.R.D. 25, 26 (D. Mass. 2003) (same). Massachusetts' rule is comprised of just one sentence which provides:

> (c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (*including an amendment changing a party*) relates back to the original pleading.

Mass. R. Civ. P. 15(c).[10] Here, Ms. White's and Mr. Randall's claims do not just arise out the same conduct, they are identical.

---

[10] The corresponding provision of Fed. R. Civ. P. 15 provides multiple restrictive requirements for relation-back, particularly as to those amendments adding a party.

Moreover, in Massachusetts "relation back *is automatic* upon the allowance of an amended complaint." *Pessotti v. Eagle Mfg. Co*., 946 F.2d 974, 980 (1st Cir. 1991); *Leonard v. Parry*, 219 F.3d 25, 30 (1st Cir. 2000) ("as long as the requirements of [Mass.] Rule 15(c) are met, relation back is automatic"). *See also* M.G.L. c. 231, § 51("Any amendment allowed pursuant to this section or pursuant to the Massachusetts Rules of Civil Procedure *shall relate* to the original pleading.").

Because relation back is automatic in Massachusetts, "the factors which would counsel against relation back [such as delay, or prejudice] must be considered by the trial court *in deciding whether to allow the amendment*." *Pessotti*, 946 F.2d at 980. Once it is allowed, as it was here, relation back is a given. Ally did not object to either the amendment, or to it relating back, when the motion to amend was filed. ECF # 28.[11]

Ally's reliance on *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987) and *Wang Yan v. ReWalk Robotics Ltd.*, 391 F. Supp. 3d 150, 158 (D. Mass. 2019), is misplaced. *Elscint* did not involve an amendment at all, but a motion to intervene after the statute of limitations had run, and an issue of tolling, neither of which are present here. Nor did the Massachusetts relation back rules apply in *Elscint* because the claims were brought under federal securities laws. *Id.* In *Wang Yan v. ReWalk Robotics Ltd.*, 391 F. Supp. 3d 150, 158 (D. Mass. 2019), also a federal securities fraud case, the issue before the court was whether a plaintiff already found not to have standing and whose claims were already dismissed can nonetheless

---

[11] Even if the federal rule, Fed. R. Civ. P. 15(c), were applied, relation back would be appropriate under 15(c)(1)(B), which allows relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *See Dahl v. Bain Capital Partners, LLC*, 760 F. Supp. 2d 196, 198–99 (D. Mass. 2011) (amendment to add new class representative relates back where new plaintiff was member of the class and claims arise out of the same conduct, transaction or occurrence).

move to amend to add a new plaintiff. *Id.* Again, the situation here is not analogous. This is not a motion to amend; the amended complaint was already allowed, before Mr. Randall's claims were dismissed. ECF # 31. *Wang Yan* is irrelevant.

### 5.    Ally's Counterclaim-Threat Defense Has No Bearing On Predominance And Has Been Rejected By Nearly Every Court To Consider It

Ally next warns that if the Court certifies a class, it will in turn assert counterclaims against any class member whose deficiency exceeds their statutory damages, arguing that these counterclaims are compulsory and will "swamp" common issues. Ally is mistaken.

As with all of its arguments, Ally does not even attempt to estimate for the Court how many class members may have alleged deficiencies that exceed their statutory damages, except to suggest "some" do. Opp. at 25. Instead, its Computer Systems Team witness, James Charles, states in his declaration that he has reviewed a "selection" of Ally's files, and based on this review, that the putative class "contains consumers whose deficiency exceeds their statutory damages". Charles Declaration at ¶¶ 32-33. Ally does not attach the "selection" of files, or state how many were in the selection or how many are subject to counterclaims. Instead, it leaves the Court and the Plaintiff guessing as to the scope of this alleged certification–defeating obstacle, even though the information is entirely within its control, and has already been reviewed.

Courts routinely reject this type of speculative threat as a basis to challenge predominance. *See Gilkey v. Cent. Clearing Co.,* 202 F.R.D. 515, 529–30 (E.D. Mich. 2001) (rejecting similar argument where defendants "failed to do anything more than raise the potential for compulsory counterclaims. While it is certainly likely that some class members have defaulted, Defendants do not provide any basis for the Court to estimate how many."); *Blanco v. Key Bank USA, N.A.*, No. 1:04CV230, 2008 WL 11381847, at *15 (N.D. Ohio June 30, 2008) (refusing to deny certification based on possibility that defendants will attempt to assert

collection-related counterclaims against some class members); *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1116 (5th Cir.1978) (denial of class certification based on speculation regarding potential assertion of counterclaims was abuse of discretion). Even the *Heaven v. Trust Co. Bank,* which Ally cites, suggested that a decision to deny class certification based on speculative counterclaims would be an abuse of discretion. 118 F.3d at 738.

But even if Ally had provided evidence of the scope of its alleged predominance–defeating counterclaims, they are not a bar to certification, for the following additional reasons.

### a) Rule 13 Does Not Apply To Absent Class Members Because They Are Not Opposing Parties

Fed. R. Civ. P. 13 permits counterclaims only against an "opposing party." Even after certification, absent class members are not "opposing parties" under Rule 13. As such, the rule has no application in the federal class action context. *See Owner Operator Indep. Drivers Assoc. Inc. v. Arctic Express Inc.*, No. 2:97–CV–750, 2001 WL 34366624 (S.D. Ohio Sept. 4, 2001) (granting class certification, rejecting argument that counterclaims against class members defeat predominance), citing 1 Newburg On Class Actions § 4.34, at 4–146 to 4–147 (3d ed. 1992).

Indeed, nearly every federal court to have considered this issue has ruled that "counterclaims against absent class members—even those arising out of the same transaction and occurrence—are not authorized by Rule 13 because absent class members are not an 'opposing party.'" 3 Newberg on Class Actions § 9:24 (5th ed.); *see Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259 n.14 (11th Cir. 2003) (Rule 13 inapplicable in class action, because "absent class members are not opposing or litigating adversaries for purposes of Rule 13"), citing *Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,* 238 F. Supp. 2d 963, 967 (S.D. Ohio 2003) (same); *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 363 (S.D. Ga. 1996), *aff'd*, 117 F.3d 1433 (11th Cir. 1997) (rejecting defendant's "dire warnings" that large number of

potential counterclaims against class members will make class unmanageable; Rule 13 is not applicable in a class action, counterclaims are not compulsory); *Rental Car of New Hampshire, Inc. v. Westinghouse Elec. Corp.*, 496 F. Supp. 373, 381 (D. Mass. 1980) (presence of debt collection counterclaims, which may be prosecuted separately, does not preclude class certification).[12]

If absent class members *were* subject to compulsory counterclaims, lender defendants like Ally could easily defeat certification in almost every case, by merely raising the prospect of filing them. Most consumer credit class actions would be impossible to certify as, by definition, all class members could owe the defendant money. *See* 3 Newberg § 9:24 (5th ed.).

*Mosca v. Brookline Bank*, No. 07-0771-G, 2008 WL 6549061 (Mass. Super. July 18, 2008), on which Ally largely relies, is a state trial court decision, and a decidedly minority opinion that has not been followed even by other, more recent Superior Court decisions addressing the same claim, reaching the opposite conclusion. *See Coroa v. First Citizens' Fed. Credit Union*, No. 16-CV-558 (Mass. Super. Sept. 4, 2017) (granting certification in repossession notice case, rejecting argument that counterclaims were certification-defeating because "absent class members are not 'opposing parties' subject to counterclaims under Mass. R. Civ. P. 13"), attached as Exhibit E; *Bastian v. Cmty. Credit Union of Lynn,* No. 1982CV00719 (Mass. Super. Nov. 24, 2020) (granting certification in repossession notice case, rejecting threatened counterclaims argument), attached as Exhibit F; *see also Granite*

---

[12] *See also Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.,* 202 F.R.D. 484, 502 (S.D. Tex. 2001), rev'd on other grounds, 54 Fed. R. Serv. 3d 1278 (5th Cir. 2003) (absent class members are not parties subject to compulsory counterclaims"); *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485, 489 (S.D.N.Y.1973) (same); *See also Hi-Co Enterprises, Inc. v. ConAgra, Inc.,* 75 F.R.D. 628, 632 (S.D. Ga. 1976) (putative existence of counterclaims, which may be disposed of in separate proceedings, does not destroy predominance).

*Telecommunications, LLC v. Contino*, No. 14-00699, 2018 WL 10014265, at *1 (Mass. Super. Feb. 26, 2018).[13]

Because class member counterclaims are not compulsory, they are not subject to *res judicata*, contrary to Ally's argument. Only compulsory counterclaims are barred if not brought. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1974) ("counterclaim which is compulsory but is not brought is thereafter barred"). *Eon Labs., Inc. v. Smithkline Beecham Corp.*, 298 F. Supp. 2d 175, 179 (D. Mass. 2003)*,* on which Ally relies for its *res judicata* argument, was not a class case, so the counterclaims at issue there *were* subject to Rule 13, unlike here.

To the extent Ally has valid counterclaims, it can file them in small claims court, as it does in the normal course.[14] It need not do so here.

**B.      A Class Action is Superior to Thousands of Individual Claims Raising the Exact Same Challenge to Ally's Notice**

Ally's challenge to superiority is largely a rehash of its predominance arguments. Its alleged individual issues — bankruptcy, judgments, arbitration, cars not sold, and counterclaims — do not defeat predominance *or* superiority. The alternative of "piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues" is not superior, or efficient. *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 273 (D. Mass. 2005).

Ally also speculates that a class action may not benefit the undisclosed number of class members who may be subject to a counterclaim for their deficiency. But, for the reasons above,

---

[13] *Heaven v. Tr. Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997), which Ally cites, is also inapposite. There, the plaintiff agreed that the lessor's counterclaims in a Consumer Leasing Act case were compulsory, and the court held that under the law in the 11th Cir. debt counterclaims to CLA and TILA claims were compulsory counterclaims. That's not the case in this Circuit.

[14] Ms. White does not concede that such counterclaims are valid, or that they should be brought. One of the forms of relief Ms. White seeks is a determination that any alleged deficiencies are not owed. And as discussed in her Opposition to Ally's Motion to Amend, ECF # 75, Ally's breach of contract counterclaim is preempted by the UCC and RISA. M.G.L. c. 106, § 1-103.

Ally cannot assert those counterclaims in a class action. Moreover, as with its other arguments, it is impossible to evaluate what impact, if any, the alleged counterclaims would have on the "efficient adjudication of the controversy" because Ally has not quantified how many class members are affected. *See Roper v. Consurve, Inc.,* 578 F.2d 1106, 1116 (5th Cir. 1978) (potential assertion of counterclaims against a few members of the class should not defeat class certification). Even so, all class members are theoretically subject to deficiency actions anyway, and if this class action is successful, it will substantially change the economic landscape for all class members currently facing an alleged deficiency, by either eliminating the deficiency entirely or drastically reducing it.

Other courts readily find class actions raising similar claims easily meet the superiority requirement, even if counterclaims are threatened. *Bastian, supra,* addressed certification of the exact claim raised here, and the court summarized why a class action was superior even though the defendant raised the same danger of counterclaims:

> Each class member has an identical interest in proving whether the Pre-Sale Notices they received from CCU violated the same section of Article 9. In that connection, the interest of each class member in controlling the litigation is minimal. Additionally, the size of the class makes joinder impracticable and maintaining separate causes of action for every possible plaintiff would be unnecessarily costly. Many class members' claims may be too small to warrant those members from litigating on their own behalf, and therefore, denial of class certification would effectively bar these individuals from asserting their rights.

*Id.* at 14; *see also Coroa v. First Citizens' Fed. Credit Union*, No. 16-CV-558 (Mass. Super. Sept. 4, 2017) (granting certification over objection that class members are subject to counterclaims); and cases cited in Plaintiff's opening Memorandum, ECF # 53 at 6-7.

*Heaven v. Trust Co. Bank,* 118 F.3d 735, 737-38 (11th Cir.1997), on which Ally primarily relies is inapplicable for multiple reasons. First, as the court noted and the plaintiffs conceded, debt counterclaims *are* compulsory counterclaims in the 11th Circuit, *id.,* unlike here. Second, the bank's counterclaims against class members were actually filed and before the court

so their effect on certification could actually be assessed. Third, the filed counterclaims alleged class members made false statements in their lease applications. *Id.* at 737. The nature of these counterclaims required class members to come forward with individual evidence in their defense, which the court would have to individually adjudicate, making a class action not superior. *Id.* Not so here. Finally, the Eleventh Circuit was careful to limit its holding in *Heaven,* to the specific counterclaims raised there, cautioning that "if this panel had faced the class certification issue ... we may well have found it appropriate to certify the class." *Id.* at 739, n.7.

Because no counterclaims have yet been asserted here, and no evidence has been offered as to how many class members Ally may seek to assert counterclaims against, and the counterclaims are not compulsory, the Court should not deny certification on the mere chance that Ally might someday attempt to assert counterclaims against "some" class members.

### C.    Ms. White's Claims Are Typical And She Is An Adequate Class Representative

Ally's attack on typicality and adequacy are based on the same arguments it raised against predominance. These arguments fail in this context as well.

Because Ms. White's and the class's claims are based on uniform standardized practices, this case is readily distinguishable from *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 92 (D. Mass. 2010), on which Ally also relies, which involved a wide variety of differing employment discrimination claims, for which the court found *no common question* existed. *Id.* That is not remotely the case here. And the existence of a possible counterclaim goes only to the amount of damages, not the existence of a claim, and therefore does not defeat typicality or adequacy. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d at 40 (individual damage issues do not prevent class certification).

**D.      The Class is Ascertainable**

A class is ascertainable if it is defined by objective criteria. *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012). Ally does not meaningfully contest that the class here is not objectively defined.

Instead, its final challenge to certification is just more speculation. It claims that it is impossible to identify the class because "[e]ach RISC *may* include a choice of law provision, but the presence, contents, and legal effect of such a provision cannot be determined without analyzing each RISC," Charles Declaration at ¶ 17 (emphasis added), Opp. at 26. Ally never explains what "analysis" must be conducted, or how many class members' contracts would have to be subjected to such analysis, or how such analysis is routinely performed.

Instead, Ally's own documents, or the few it has produced, show that its ██████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ███████████████████████████. No further analysis is needed. Ally has offered no evidence that any contracts exist that contain a choice of law provision selecting a state *other than* the contract state. In fact, every loan agreement produced by Ally so far contains the same choice of law–the law of the state of the lender's address on the contract. *See* Charles Declaration, Exhibits A, D-G. To the extent Ally speculates that some foreign state law-choosing contracts *may* exist, that's not enough. *See Martino v. McDonald's Sys., Inc.*, 86 F.R.D. 145 (N.D. Ill. 1980) (speculation about need to examine circumstances of each transaction no basis for denying class certification).

The only example Ally relies on this score is Mr. Randall. But his contract fits the same mold: Vermont law applied to it because it was entered into in Vermont, its "contract state." ECF # 46, at 8-9. No other fact finding was required.

Ascertainability is easily met where, like here, class membership can be determined by reviewing form contracts. *See, e.g., Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 158 (S.D.N.Y. 2017) (ascertainability met where class is defined by objective criteria of class member's residence, choice of law clause on the face of contract, date of letter, and interest rate) *Carr v. Flowers Foods, Inc.*, Nos. 15-6391, and 16-2581, 2019 WL 2027299, at *10 (E.D. Pa. May 7, 2019) (ascertainability met where class membership apparent from face of the contract).

The ministerial electronic search needed to determine an individual's objective "contract state" is not even remotely comparable to the situation in *Shanley v. Cadle*, 277 F.R.D. 63, 67 (D. Mass. 2011), on which Ally relies. There, the court found that to determine who was in the class, the court would have to make a finding as to each class member on: the type of debt, the particular circumstances of each debt, the collection actions undertaken by the defendants, whether those efforts were undertaken when the debt was in default, or whether they were undertaken by an attorney, or during the time when the defendant was licensed. *Id.* at 68. Each of these issues would require "individualized fact-finding and litigation," making the class not ascertainable. *Id.* Here, a borrower's contract state is an objective criterion requiring nothing more than checking Ally's electronic records and/or the face of the retail installment contract. To the extent there is any concern about other class members with this issue, the class definition could be revised to include only "individuals whose contracts were entered into in Massachusetts" rather than exclude "individuals whose vehicle sales contracts contain choice-of-law provisions selecting the law of a state other than Massachusetts." But, in either event, the class is readily ascertainable.

### III. Conclusion

For the foregoing reasons, and those contained in Plaintiff's opening Memorandum, the motion to certify the class should be granted.

Dated: February 10, 2021

Respectfully submitted,
Gracie White,
By her attorneys:

*/s/ Elizabeth Ryan*
Elizabeth Ryan, BBO # 549632
eryan@baileyglasser.com
John Roddy, BBO # 424240
jroddy@baileyglasser.com
**BAILEY & GLASSER LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (fax)

Raven Moeslinger, BBO # 687956
rm@mass-legal.com
Nicholas F. Ortiz, BBO # 655135
nfo@mass-legal.com
**LAW OFFICE OF NICHOLAS F. ORTIZ, P.C.**
50 Congress Street, Suite 540
Boston, MA 02109
(617) 338-9400
(617) 507-3456 (fax)

*Attorneys for Plaintiff and the Putative Class*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on February 10, 2021.

*/s/ Elizabeth Ryan*
Elizabeth Ryan