*EXHIBIT F*

| CLERK'S NOTICE | DOCKET NUMBER  1982CV00719 | Trial Court of Massachusetts  The Superior Court |
|---|---|---|
| **CASE NAME:**  Nathan Bastian Individually and on behalf of a class of persons similarly situated vs. Community Credit Union of Lynn | | Walter F. Timilty, Clerk of Courts |
| **TO:**  Raven Moeslinger, Esq.  Law Office of Nicholas F. Ortiz, P.C.  50 Congress St  Suite 540  Boston, MA 02109 | | **COURT NAME & ADDRESS**  Norfolk County Superior Court  650 High Street  Dedham, MA 02026 |

You are hereby notified that on 11/24/2020 the following entry was made on the above referenced docket:

Endorsement on Motion for class certifiction (#22.0): ALLOWED
in Part After hearing and Review and Denied in Part. See Memorandum of Decision and Order (Kirpalani, J) (dated;11/24/20) ns pl

Judge: Kirpalani, Hon. Maynard

| DATE ISSUED | ASSOCIATE JUSTICE/ ASSISTANT CLERK | | SESSION PHONE# |
|---|---|---|---|
| 11/24/2020 | **Hon. Maynard Kirpalani** | | |

| CLERK'S NOTICE | DOCKET NUMBER 1982CV00719 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Nathan Bastian Individually and on behalf of a class of persons similarly situated vs. Community Credit Union of Lynn | | Walter F. Timilty, Clerk of Courts |
| TO: Raven Moeslinger, Esq.<br>Law Office of Nicholas F. Ortiz, P.C.<br>50 Congress St<br>Suite 540<br>Boston, MA 02109 | | COURT NAME & ADDRESS<br>Norfolk County Superior Court<br>650 High Street<br>Dedham, MA 02026 |

You are hereby notified that on 11/24/2020 the following entry was made on the above referenced docket:

MEMORANDUM & ORDER:

of Decision on Plaintiff's Motion for Class Certification (Kirpalani, J)(dated; 11/24/2020) certified copy sent pl

Judge: Kirpalani, Hon. Maynard

| DATE ISSUED | ASSOCIATE JUSTICE/ ASSISTANT CLERK | SESSION PHONE# |
|---|---|---|
| 11/24/2020 | **Hon. Maynard Kirpalani** | |

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

SUPERIOR COURT
CIVIL ACTION
No. 1982CV00719

**NATHAN BASTIAN, individually and on behalf of persons similarly situated**

**vs.**

**COMMUNITY CREDIT UNION OF LYNN**

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

The plaintiff, Nathan Bastian, filed this putative class action against the defendant, Community Credit Union of Lynn (CCU), alleging that CCU engaged in unlawful debt collection and car repossession practices in violation of Article 9 of the Massachusetts Uniform Commercial Code, G. L. c. 106, § 9-101 et seq. This matter is now before the Court on Bastian's Motion for Class Certification. After hearing and review of the parties' written submissions, and for the reasons stated below, Bastian's motion is **ALLOWED** in part and **DENIED** in part.

### BACKGROUND

On May 17, 2018, Bastian entered into a loan agreement with CCU for the purchase of a 2018 Honda Pilot (the "Honda"). The loan agreement provided for a security interest in the Honda in favor of CCU. At the time Bastian entered into the loan agreement, he was working as a security manager at a museum and had not owned a car for many years. Bastian testified that he purchased the Honda in order to commute to Wilmington for a new job that he was scheduled to start in June 2018 selling life insurance.

In November 2018, Bastian resigned from his job at the life insurance company and began working as an Uber driver while seeking new full-time employment. Before Bastian was able to secure new full-time employment, he defaulted on his obligations under the loan agreement. As a result, CCU repossessed the Honda on May 6, 2019, by which time Bastian had already driven it approximately 18,000 miles.

On May 7, 2019, CCU sent Bastian a notice advising him of the repossession and CCU's intent to sell the Honda ("Pre-Sale Notice"). The Pre-Sale Notice stated that if Bastian did not redeem the Honda by May 29, 2019, it would be "disposed of by private sale without further notice to [him]" and that the proceeds of the Honda's sale would "be applied, to the extent permitted by law, first to the costs of the sale, second, to the cost of retaking, storing and attorney's fees, if any; and third, to the unpaid balance and accrued charges." CCU sold the Honda at auction on November 14, 2019.

On June 3, 2019, Bastian commenced the present action, asserting on behalf of himself and others similarly situated that CCU's Pre-Sale Notice did not comply with Article 9 of the Massachusetts Uniform Commercial Code (UCC), G. L. c. 106, § 9-101 et seq. More specifically, Bastian alleged that the Pre-Sale Notice failed to comply with the requirements of G. L. c. 106, § 9-614, insofar as it failed to inform him of his right to an accounting and state that the Honda's fair market value, as opposed to the sales price, would be deducted from the amount he owed on the loan after the Honda's sale.[1] Through discovery, Bastian learned that CCU sent

---

[1] See G. L. c. 106, § 9-613(1)(D) (notification of disposition of collateral must "state[] that the debtor is entitled to an accounting of the unpaid indebtedness and state[] the charge, if any, for an accounting") and G. L. c. 106, § 9-614(1)(A) (notification before disposition of collateral in a consumer goods transaction must include the information specified in Section 9-613(1)); *Williams* v. *American Honda Finance Corporation*, 479 Mass. 656, 669 (2018) ("The notice that is required by G. L. c. 106, § 9-614, and G. L. c. 106, § 9-616, must describe the deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance . . . .").

107 other consumers a substantially similar or identical Pre-Sale Notice between May 30, 2015 and the present.

On July 23, 2020, Bastian served CCU a Motion to Amend the Complaint. In addition to his claim that the Pre-Sale Notice failed to comply with the UCC (Count I), Bastian's Motion to Amend sought to add a claim alleging that CCU had also violated the UCC insofar as it failed to send Bastian and approximately 107 other consumers a Post-Sale Notice identifying any surplus or deficiency owed to CCU (Count II),[2] a request for an order enjoining CCU from collecting purportedly improperly-calculated deficiencies against the putative class members (Count III), and a declaration that CCU's conduct as to Post-Sale Notice class members violates the law and/or that class members are entitled to a recalculation of any deficiency balances due to CCU (Count IV).[3]

The day after Bastian served his Motion to Amend, CCU sent him a Post-Sale Notice that explained the deficiency balance on his loan. The Court (Hallal, J.) nonetheless allowed Bastian's Motion to Amend on August 19, 2020.

On October 19, 2020, the Court (Kirpalani, J.) allowed CCU to file a Second Amended Answer, pursuant to which CCU seeks a deficiency judgment and asserts several counterclaims against Bastian, including a claim for misrepresentation. In support of its misrepresentation claim, CCU alleges that Bastian misrepresented the "true purpose" of the loan by failing to disclose that he would be leaving his job at the museum and intended to use the Honda "primarily, if not solely, for business purposes."

---

[2] See G. L. c. 106, § 9-616 (requiring lender to send notice identifying any surplus or to debtor or deficiency owed to creditor and explaining how surplus or deficiency was calculated).

[3] Bastian's proposed Amended Complaint additionally provided notice of Bastian's intent to assert a claim under G. L. c. 93A at a later date.

## DISCUSSION

### I. Class Certification Standard

To certify a class of plaintiffs, Bastian must satisfy Mass. R. Civ. P. 23. To do so, he must demonstrate (1) that the class is sufficiently numerous to make joinder of all parties impracticable (numerosity), (2) that there are common questions of law and fact (commonality), (3) that his claims or defenses are typical of the claims or defenses of the class (typicality), and (4) that he and his counsel will fairly and adequately protect the interests of the class (adequacy of representation). See Mass. R. Civ. P. 23(a). Bastian must also show that common questions of law and fact predominate over individualized questions (predominance) and that a class action is superior to other available methods for fair and efficient adjudication of the controversy (superiority). See Mass. R. Civ. P. 23(b). "[A] party moving for class certification need only provide 'information sufficient to enable the motion judge to form a reasonable judgment' that certification requirements are met." *Aspinall* v. *Philip Morris Cos., Inc.*, 442 Mass. 381, 391-392 (2004), quoting *Weld* v. *Glaxo Wellcome, Inc.*, 434 Mass. 81, 87 (2001).

### II. Bastian's Motion for Class Certification

Bastian seeks to certify two classes pursuant to Mass. R. Civ. P. 23: (1) a Pre-Sale Notice class consisting of all Massachusetts consumers to whom CCU sent a Pre-Sale Notice between May 30, 2015 and the present that was identical or substantially similar to the Pre-Sale Notice that Bastian received, and (2) a Post-Sale Notice Class consisting of Massachusetts consumers who owned a vehicle that was repossessed and sold by CCU between May 15, 2015 and the present, and to whom CCU did not send a Post-Sale Notice regarding any surplus or deficiency.

4

For the reasons set forth below, Bastian's motion will be allowed as to the proposed Pre-Sale Notice class and denied as to the proposed Post-Sale Notice class.

### A. Pre-Sale Notice Class

#### i. *Numerosity*

Rule 23(a)(1) requires Bastian to establish that the proposed Pre-Sale Notice class is "so numerous that joinder of all members is impracticable." "[T]he word impracticable in the context of rule 23 has been interpreted to mean impractical, unwise or imprudent rather than impossible or incapable of being performed." *Brophy* v. *School Comm. of Worcester*, 6 Mass. App. Ct. 731, 735 (1978). Bastian has submitted evidence that the proposed Pre-Sale Notice class consists of at least 107 consumers who received Pre-Sale Notices between May 30, 2015 and the present.

The proposed Pre-Sale Notice class claims rely, in part, on the holding in *Williams* v. *American Honda Fin. Corp.*, 479 Mass. 656 (2018). In that case, the SJC held that an automobile reposition notice sent pursuant to the UCC was required, consistent with the Massachusetts Motor Vehicle Retail Installment Sales Act, G. L. c. 255B, to state that the consumer's deficiency debt will be calculated based on the difference between the unpaid balance and the car's fair market value. See *id.* at 680. CCU argues the numerosity requirement has not been satisfied because this decision must be applied prospectively, which would reduce the potential class to only twenty to thirty consumers who received Pre-Sale Notices after June 5, 2018. This argument is without merit. Although *Williams* did not expressly state whether its holding should be given retroactive or prospective effect, the Appeals Court has held that *Williams* should be applied retroactively. *Dellorusso* v. *PNC Bank, N.A.*, 98 Mass. App. Ct. 84, 87-88 (2020). The Court also notes that CCU's argument ignores the fact that Bastian alleges

that the notices were also defective because failed to inform class members of their right to an accounting.

The Court finds that Bastian has provided information sufficient to establish that the proposed Pre-Sale Notice class has approximately 107 members, and that 107 class members is sufficiently large as to make joinder impracticable. See *Brophy*, 6 Mass. App. Ct. at 736 (no abuse of discretion in determining class of 70 teachers was too numerous to require joinder). Bastian has therefore satisfied the numerosity requirement as to the proposed Pre-Sale Notice class.

    ii.   *Commonality*

Bastian is also required to show that there are common questions of law and fact. The commonality requirement is satisfied where all of the persons the plaintiff seeks to represent "have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants." *Godfrey v. Massachusetts Medical Service*, 359 Mass. 610, 620 (1971), quoting *Spear v. H.V. Greene Co.*, 246 Mass. 259, 266 (1923). "It is not essential that the interest of each member of the class be identical in all aspects with that of the plaintiffs[,]" *Spear*, 246 Mass. at 266, but rather that the plaintiff and the class members "have suffered the same injury," dependent on a common contention that is "of such a nature that it is capable of classwide resolution . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The class members' common contention is capable of classwide resolution where a "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, the proposed Pre-Sale Notice class's claims rest on the allegation that CCU sent each class member an identical or substantially similar Pre-Sale Notice that violated the UCC

because it : (1) failed to inform class members of their right to an accounting and (2) failed to provide explicit notice that the fair market value of the class members' repossessed vehicles would be deducted from the amount owed on their loans. Bastian and the putative class members would be entitled to the same relief for this alleged misconduct, i.e., statutory damages pursuant to G. L. c. 106, § 9-625(c)(2), should Bastian succeed in this lawsuit.[4] Therefore, all of the potential class members have allegedly suffered the same wrong to which redress would provide a common relief that is beneficial to all. See *Keele* v. *Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents."); *Pettway* v. *Harmon Law Offices, P.C.*, 2005 U.S. Dist. LEXIS 21341 at *29-*30 (D. Mass. 2005) (commonality requirement met where proposed class sought to challenge propriety of automated letter). Accordingly, the Court concludes that Bastian has satisfied Rule 23's commonality requirement as to the proposed Pre-Sale Notice class.

iii. *Typicality*

"Typicality is established when there is 'a sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" *Weld*, 434 Mass. at 87, quoting 1 H. Newberg, Class Actions § 3.13 at 3-76 (3d ed. 1992). "This alignment of claims and legal theories ensures that the named plaintiff, in 'pursuing his or her own self-interest will advance the interests of the class members.'" *Id.* "A plaintiff representative normally satisfies the typicality requirement with 'an allegation that the defendant acted consistently toward the

---

[4] General Laws c. 106, § 9-625(c)(2) permits debtors to recover up to the credit service charge plus 10 percent of the principal amount of the obligation from secured parties that violate Article 9.

7

representative and the members of a putative class.'" *Id.*, quoting *Fletcher v. Cape Cod Gas Co.*, 394 Mass. 595, 606 (1985).

Here, after CCU repossessed vehicles owned by Bastian and the other putative class members, it sent them identical or substantially similar Pre-Sale Notices, each of which purportedly violated the UCC in the same way. Accordingly, Bastian has satisfied the typicality requirement.

CCU nonetheless argues that Bastian cannot satisfy the requirement because "he is subject to atypical fact-specific defenses." CCU Opposition at 8. Specifically, CCU contends that unlike the putative Pre-Sale Notice class members, Bastian concealed the fact that his transaction with CCU was for a commercial, rather than a consumer purpose, and that therefore Bastian cannot recover under the same legal theory as the putative class members since the notice requirements of G. L. c. 106, § 9-614 (the statute Bastian has alleged that the Pre-Sale Notice failed to comply with) only apply to consumer-goods transactions.[5] CCU additionally argues that Bastian's alleged misrepresentation may render him uniquely liable pursuant to its counterclaims. These arguments are unpersuasive.

Although affirmative defenses, such as CCU's defense that Bastian fraudulently obtained the loan, "should be considered in making class certification decisions," *Moelis v. Bershire Life Ins. Co.*, 451 Mass. 483, 490 (2008), courts are generally reluctant to deny class certification merely because an opposing party has raised an affirmative defense against the class representative or individual class members. Cf. *Smilow v. Southwestern Bell Mobile Sys., Inc.*,

---

[5] See G. L. c. 106, § 9-102(a)(24) (defining a "consumer-goods transaction" as "a consumer transaction in which: (A) an individual incurs an obligation primarily for personal, family, or household purposes; and (B) a security interest in consumer goods secures the obligation."); U.C.C. § 9-102 cmt. 7 (2020) (noting that "'mixed' business and personal transactions" may be characterized as consumer-goods transactions).

8

323 F.3d 32, 39 (1st Cir. 2003) ("Courts traditionally have been reluctant to deny class action status . . . simply because affirmative defenses may be available against individual members."). Moreover, a motion for class certification should not turn on the Court's evaluation of the merits of the parties' legal or factual claims. See *Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 361 (2008). If CCU later produces evidence that establishes its fraud defense will completely bar Bastian's claim and/or render his claims atypical, the Court has a variety of procedural mechanisms available to address that development, including decertifying the class altogether. Cf. *Smilow*, 323 F.3d at 39-40 ("If . . . evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms[.]") At this stage, however, CCU's defenses do not preclude Bastian from satisfying the typicality requirement.

Bastian's potential liability on CCU's counterclaims likewise fail to preclude him from satisfying the typicality requirement. A counterclaim, in and of itself, "simply does not create the kind of conflict" that would defeat typicality. *International Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981). Indeed, denial of class certification is particularly inappropriate based on the "[m]ere speculation" of the defendant that its counterclaims will result in "conflict that might develop at the remedy stage." See *id.* at 1269; see also *Salvas*, 452 Mass. at 361.

### iv. *Adequacy of Representation*

Bastian must establish that his interests "will not conflict with the interests of any of the class members" and that his counsel "is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). See Mass. R. Civ. P. 23(a)(4). Here, there is no evidence to suggest that either Bastian or his

counsel will not adequately protect the interests of the class as a whole. As set forth above, Bastian's claim and legal theory is the same as the claim and legal theory that could be asserted by other potential class members. Additionally, Bastian's counsel has submitted an affidavit that demonstrates extensive experience litigating class action suits. Bastian has therefore provided sufficient evidence that he and his counsel will fairly and adequately protect the interests of the class in this litigation.

Even so, CCU argues that Bastian is not an adequate representative of the putative Pre-Sale Notice class because a trial of its counterclaims would require fact finding as to whether Bastian's loan was a consumer loan and whether he misrepresented material facts when he entered into the loan agreement. CCU additionally argues that the court cannot deem *any* person adequate to represent the putative class because the Pre-Sale Notice fully complied with the law and there is no valid claim for the proposed Pre-Sale Notice class to pursue. By way of these arguments, CCU once again argues that its defenses and counterclaims are sufficient to defeat class certification. The Court does not agree.

If the "mere existence of a counterclaim" precluded class certification "every motion for class certification would be defeated simply by the vehicle of filing a counterclaim against the named plaintiffs." *Ballard* v. *Equifax Check Services*, 186 F.R.D. 589, 595-596 (E.D. Cal. 1999), quoting *Heartland Communications, Inc.* v. *Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995). "It is only where a counterclaim raises a conflict between the interests of the named plaintiff and the absent class members that causes adequacy of representation to be lacking." *Id.* In this case, CCU has not identified what conflict is created between the interests of the proposed Pre-Sale Notice class and Bastian as a result of its counterclaims.

As set forth above, a motion for class certification should not turn on the Court's evaluation of the merits of the parties' legal or factual claims. See *Salvas*, 452 Mass. at 361. Here, Bastian has asserted that he purchased the Honda for personal purposes—viz., to commute to work—and based on his intent to use it for that purpose, the purchase was a consumer-goods transaction. "[N]either the possibility that [Bastian] will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule." *Salvas*, 452 Mass. at 363, quoting *Weld*, 434 Mass. at 87. Accordingly, whether CCU will ultimately succeed on its defenses or counterclaims is irrelevant to the Court's analysis.

CCU further argues that Bastian and his counsel do not fairly or adequately represent the proposed class because, simply by bringing this action, they have acted contrary to the interests of proposed class members. CCU contends that if a class is certified, it will file counterclaims against each class member seeking the deficiencies they owe to CCU. Therefore, according to CCU, each class member will face liability for deficiencies that CCU would not otherwise have collected and the amount of the proposed class members' deficiencies will likely exceed the amount of any recovery. This argument fails to persuade.

Whether a plaintiff is an adequate representative requires the court to only consider whether the plaintiff's interests conflict with the interests of the proposed class members in connection with the claims asserted and *not* whether litigation is a wise decision more generally. Moreover, the Court is troubled by CCU's attempt to render Bastian, or any other class member, an inadequate representative to pursue what appear to be colorable claims by threatening future litigation. Lastly, although CCU has submitted an affidavit attesting that "[f]or many deficiencies after 2015 . . . [CCU] did not pursue a deficiency judgment" and wrote off those

losses instead, there is no evidence that "but for" the instant class action, CCU would *never* attempt to pursue any deficiencies owed to it by the proposed Pre-Sale Notice class members.[6] For these reasons, the Court finds that CCU's threatened counterclaims against the proposed class members do not preclude Bastian and his counsel from satisfying the adequacy requirement.

### v. *Predominance*

"The predominance test expressly directs the court to make a comparison between the common and individual questions involved," in order to reach a determination as to whether the common questions outweigh the individual. *Salvas*, 452 Mass. at 363, quoting 4 Alba Conte & Herbert Newberg, Class Actions § 4.24 at 154 (4th ed. 2002). The inquiry does not require that common questions dispose of the entire litigation. *Id.* at 364. See *Fletcher v. Cape Cod Gas. Co.*, 394 Mass. 595, 603 (1985) ("Although common questions need not be dispositive of the entire class action . . . their resolution should at least provide a definite signal of the beginning of the end."). Here, CCU argues that common questions of law and fact do not predominate because separate trials will be needed to resolve CCU's threatened counterclaims and determine whether the amount of the deficiency exceeds any damages owed to each class member. This argument is unpersuasive.

Assuming, *arguendo*, the Court permits CCU to assert counterclaims against each member of the proposed Pre-Sale Notice class, the necessity of an individualized inquiry to determine each class members' damages does not preclude class certification.[7] See *Weld*, 434

---

[6] CCU has also argued that Bastian cannot fairly and adequately represent the proposed class because it previously made a settlement offer that was not communicated to Bastian. However, Bastian's counsel is adamant that it never received a settlement offer. In any event, it is unclear how Bastian's rejection of a settlement offer relates to Rule 23's adequacy requirement.

[7] As Bastian points out in his reply brief, the prevailing authorities suggest that counterclaims against absent class members are inconsistent with due process and that absent class members are not parties for purposes of Rule 13.

12

Mass. at 92 ("Even if . . . an individualized inquiry is necessary to determine damages . . . for each [class member], . . . such a necessity at the damages stage does not preclude class certification where all other requirements are met."). In other words, the individual questions that may arise from CCU's counterclaims will not predominate over the issues that are common to the entire class. See *Smilow*, 323 F.3d at 40 ("The individuation of damages in consumer class actions is rarely determinative under [Rule 23]. Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.").

As stated, Bastian's claim and alleged injuries are the same as those experienced by other class members, and the legal theory upon which this claim rests is the same. Thus, "liability may be established without reference to the precise content of each [Pre-Sale Notice] or precise reaction of each [Pre-Sale Notice] recipient." *Weld*, 434 Mass. at 92. At this stage, the common question is whether the Pre-Sale Notice violated G. L. c. 106, § 9-614. This common question outweighs any individual questions regarding the extent to which each individual class member was injured. The Court thus concludes that Bastian has met the predominance requirement set forth in Rule 23(b) with respect to the proposed Pre-Sale Notice class.

vi. *Superiority*

Last, Bastian must establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Mass. R. Civ. P. 23(b)(3). "[W]hen common issues predominate, 'judicial economy and consistency of result dictate class

---

See Conte and Newberg, *Newberg on Class Actions* § 4:34 (4th Ed. 2007) (counterclaims against absent class members are not compulsory under Rule 13 and are contrary to the basic policies underlying representative class litigation); see also *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) (absent class members "are almost never subject to counterclaims or cross-claims, or liability for fees or costs").

13

treatment.'" *Weld*, 434 Mass. at 93, quoting Wilton, Massachusetts State Court Class Actions, 72 Mass. L. Rev. 10, 16 (1987).

In this case, a class action is the best method for efficiently adjudicating this controversy. Each class member has an identical interest in proving whether the Pre-Sale Notices they received from CCU violated the same section of Article 9. In that connection, the interest of each class member in controlling the litigation is minimal. Additionally, the size of the class makes joinder impracticable and maintaining separate causes of action for every possible plaintiff would be unnecessarily costly. Many class members' claims may be too small to warrant those members from litigating on their own behalf, and therefore, denial of class certification would effectively bar these individuals from asserting their rights. For these reasons, a class action is superior to other methods of adjudication not only because of the common legal and factual questions, but also for purposes of efficiency. *Brophy*, 6 Mass. App. Ct. at 735 ("A judge has broad discretion under rule 23 in determining whether an action may be maintained as a class action.").

### B. <u>Post-Sale Notice Class</u>

During oral argument on October 19, 2020, Bastian's counsel conceded that Bastian cannot adequately represent the Post-Sale Notice class because he had received a Post-Sale Notice. See Mass. R. Civ. P. 23(a) (named plaintiff must fairly and adequately represent the interests of the class). Bastian's motion is therefore denied, without prejudice, as to the proposed Post-Sale Notice class.

## ORDER

For the foregoing reasons, Bastian's Motion for Class Certification is **ALLOWED** as to the proposed Pre-Sale Notice class and **DENIED**, without prejudice, to the proposed Post-Sale Notice class.

SO ORDERED.

Maynard M. Kirpalani
Justice of the Superior Court

November 24, 2020

I ATTEST THAT THIS DOCUMENT IS A CERTIFIED PY OF AN ORIGINAL ON FILE
Deputy Assistant Clerk 11/27/2020