EXHIBIT E

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

This CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE ("Agreement"), made on March 17, 2021 ("Execution Date"), subject to final approval by the Circuit Court of Jefferson County, Missouri ("Court"), is between (a) Alberta Haskins and David Duncan ("Class Representatives"), individually and as the representatives of the Classes, and (b) Ally Bank and Ally Financial Inc. The Class Representatives, Ally Bank, Ally Financial Inc., and the Classes are sometimes individually called a "Party" and collectively called the "Parties." Other capitalized terms are defined in Paragraph 2 or elsewhere in this Agreement.

WHEREAS, the Class Representatives are the named defendants and counterclaimants in the civil action pending before the Court, styled *Ally Financial Inc. v. Alberta Haskins and David Duncan*, Case No. 16JE-AC01713-01 (together with any and all actions that may be consolidated, the "Litigation"); and

WHEREAS, the Class Representatives are asserting claims and seeking relief against Ally for alleged violations of the Uniform Commercial Code as enacted in the various states, as well as Missouri Chapter 408 and Missouri Chapter 365, for themselves and two classes of Persons who had or have Covered Contracts; and

WHEREAS, the Court certified two counterclaimant classes in the Litigation by its Order entered May 9, 2018, and modified the definition of those classes by its Order and Order on Disputed Statutes of Limitation both entered November 25, 2019; and

WHEREAS, Class Counsel and Ally's Counsel have investigated the facts relating to the claims alleged and the events and transactions underlying the Litigation, through formal and informal discovery, and have made a thorough study of the legal principles applicable to the claims being asserted against Ally; and

- 1 -

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

WHEREAS, Ally denies each and all of the claims and allegations of liability or wrongdoing made by the Class Representatives in the Litigation, matters involving the certification of the Classes and the exercise of jurisdiction by the Court, and all other claims and allegations of liability or wrongdoing arising out of, relating to, or connected with any of the conduct, statements, acts, or omissions that have been or could be alleged by the Classes against Ally; and

WHEREAS, Class Members have disputed and continue to dispute the original amount and enforceability of the deficiency balances that Ally's records reflect as remaining under their Covered Contracts after disposition of the related Collateral; and

WHEREAS, the Parties and their respective counsel have engaged in substantial arm's-length negotiations, including multiple mediation sessions spanning many months, about the settlement of the Litigation; and

WHEREAS, the Parties have agreed, subject to final approval by the Court, to fully, finally, and forever settle and resolve the Litigation as among the Class Representatives, the Classes, and Ally under the terms and provisions of this Agreement; and

WHEREAS, the Class Representatives and Class Counsel have concluded that the settlement with Ally reflected in this Agreement is fair, just, equitable, reasonable, adequate, and in the best interests of the Classes based upon their comprehensive investigation, study, negotiations, and discovery taken, and considering the contested issues, the legal and factual assertions and defenses of Ally, the expense and time to prosecute the Litigation against Ally through trial, the delays and the risks and costs of further prosecution against Ally, the uncertainties of this complex and protracted litigation, and the benefits to be received by the Classes under this Agreement; and

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

WHEREAS, while maintaining the positions referenced earlier, the Parties have agreed to enter into this Agreement to avoid the further burden, expense, and uncertainty of protracted litigation and to fully put to rest all controversies as set forth in the Released Claims;

NOW THEREFORE, intending to be legally bound and acknowledging the sufficiency and adequacy of the consideration in this Agreement, the Parties and Class Counsel agree, subject to final approval of this Agreement by the Court, that the Litigation and the Released Claims against the Released Persons are fully, finally, and forever compromised and settled and will be dismissed with prejudice as against the Released Persons as set forth in this Agreement.

## 1.      Denial of Liability; No Admissions

1.1      As further described in the recitals, the Parties are entering into this Agreement to resolve vigorously disputed claims and allegations that have arisen among them and to avoid the further burden, expense, uncertainty, and risk of protracted litigation.

1.2      None of the following are admissible under Mo. Rev. Stat. § 435.014.2, Missouri Supreme Court Rule 17, or any similar rule of evidence or procedure in any applicable jurisdiction or are an admission of liability or wrongdoing by the Parties, any Released Person, or any other Person: (a) this Agreement, any prior drafts of it, or any related correspondence or other communications, (b) the Memorandum of Understanding re: Class Action Settlement dated December 31, 2020, any prior drafts of it, or any related correspondence or other communications ("Memorandum of Understanding"), (c) any term or provision of this Agreement or the Memorandum of Understanding, (d) any conduct, statement, or document relating to this Agreement or the Memorandum of Understanding, (e) any conduct, statement, or document relating to settlement negotiations about the Litigation or any claim or allegation relating to the Litigation (whether or not in any mediation session), and (f) any conduct,

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

statement, or document relating to the submission of this Agreement to the Court or requests for its consideration and approval.

1.3     Ally denies each and all of the claims and allegations of liability or wrongdoing made by the Class Representatives in the Litigation, the propriety of the certification of the Classes for purposes of litigation and trial, the exercise of jurisdiction by the Court to adjudicate without the express written consent of Ally the claims and allegations of members of the Nationwide Class who are not residents of or have no other relevant connection to Missouri, and all other claims and allegations of liability or wrongdoing arising out of, relating to, or connected with any of the conduct, statements, acts, or omissions that have been or could be alleged by the Classes against Ally.

1.4     Class Members have disputed and continue to dispute the original amount and enforceability of the deficiency balances that Ally's records reflect as remaining under their Covered Contracts after disposition of the related Collateral.

1.5     Subject to the terms and provisions of this Agreement, the Parties reserve the right to maintain their positions and all of their other rights, remedies, objections, arguments, defenses, and positions.

## 2.     Definitions

The following definitions, in addition to those set forth in other Paragraphs, apply in this Agreement:

2.1     **Ally**. "Ally" means Ally Bank, Ally Financial Inc., their subsidiaries, and all of the direct and indirect successors and predecessors of any of them (whether by merger, consolidation, reorganization, or otherwise).

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

2.2    **Ally's Counsel**. "Ally's Counsel" means Todd W. Ruskamp and the law firm of Shook, Hardy & Bacon L.L.P., 2555 Grand Blvd., Kansas City, Missouri 64108.

2.3    **Business Day**. "Business Day" means any day other than a Saturday, a Sunday, or a day on which banks in New York, New York, Charlotte, North Carolina, or St. Louis, Missouri are authorized or obligated by law or executive order to be closed.

2.4    **Cash Fund.** "Cash Fund" is defined in Paragraph 4.1.1.

2.5    **Certification Notice.** "Certification Notice" is defined in Paragraph 3.3.

2.6    **Class Counsel**. "Class Counsel" means James G. Onder, Martin L. Daesch, Jesse B. Rochman, and the law firm OnderLaw, LLC, 110 E. Lockwood Avenue, St. Louis, Missouri 63119.

2.7    **Class Mail Notice**. "Class Mail Notice" means the documents in a form substantially the same as those attached as **Exhibit A**.

2.8    **Class Member Payment**. "Class Member Payment" is defined in Paragraph 15.7.

2.9    **Class Members**. "Class Members" means all Persons, including the Class Representatives, who are members of either of the Classes and who have not timely and validly excluded themselves in compliance with procedures established by the Court and set forth in Paragraphs 8.1 and 8.2.

2.10    **Class Period**. "Class Period" is defined in Paragraph 3.4.

2.11    **Class Representatives**. "Class Representatives" is defined in the first paragraph of this Agreement.

2.12    **Classes**. "Classes" mean the Nationwide Class and the Missouri Class. This term includes the Class Representatives.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

2.13    **Collateral**. "Collateral" means personal property in which Ally holds or held a security interest under a Covered Contract.

2.14    **Court**. "Court" is defined in the first paragraph of this Agreement.

2.15    **Covered Account**. "Covered Account" is defined in Paragraph 4.2.1.

2.16    **Covered Contract**. "Covered Contract" means any loan, promissory note, financing agreement, or installment sale contract that is or was with, assigned to, or owned by Ally.

2.17    **Covered Tradeline**. "Covered Tradeline" is defined in Paragraph 4.3.1.

2.18    **CRA**. "CRA" is defined in Paragraph 4.3.1.

2.19    **Deficiency Reduction Percentage**. "Deficiency Reduction Percentage" is defined in Paragraph 4.2.2.

2.20    **Effective Date**. "Effective Date" is defined in Paragraph 12.

2.21    **Execution Date**.  "Execution Date" is defined in the first paragraph of this Agreement.

2.22    **Final Approval Order**. "Final Approval Order" means a final order of the Court consistent with Paragraph 10.1.

2.23    **Final  Hearing**. "Final Hearing" means the hearing to be held by the Court to determine whether this Agreement receives final approval under Missouri Supreme Court Rule 52.08.

2.24    **Final Hearing Date**. "Final Hearing Date" means the date of the Final Hearing.

2.25    **Final Judgment**. "Final Judgment" means a final judgment of the Court consistent with Paragraph 10.1.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

2.26    **First Deficiency Waiver Amount**. "First Deficiency Waiver Amount" is defined in Paragraph 4.2.2.

2.27    **Gross Deficiency Waiver Amount**. "Gross Deficiency Waiver Amount" is defined in Paragraph 4.2.1.

2.28    **Gross Settlement Fund**. "Gross Settlement Fund" is the sum of the Cash Fund and the Gross Deficiency Waiver Amount.

2.29    **Litigation**. "Litigation" is defined in the recitals of this Agreement.

2.30    **Long-Form Notice**. "Long-Form Notice" means the documents in a form substantially the same as those attached as **Exhibit B**.

2.31    **Memorandum of Understanding**. "Memorandum of Understanding" is defined in Paragraph 1.2.

2.32    **Missouri Class**. "Missouri Class" is defined in Paragraph 3.2.

2.33    **Nationwide Class**. "Nationwide Class" is defined in Paragraph 3.1.

2.34    **Net Distributable Settlement Fund**. "Net Distributable Settlement Fund" means the Cash Fund, *plus* any interest earned on the Cash Fund while in the QSF Account, *minus* the sum of any Incentive Award, Cost Award, and Fee Award and any other deduction from the Cash Fund approved by the Court under Paragraphs 6.1, 6.2, and 6.3.

2.35    **Opt-Out**. "Opt-Out" is defined in Paragraph 8.1.

2.36    **Party**. "Party" is defined in the first paragraph of this Agreement.

2.37    **Person**. "Person" means any person or entity of any nature, including any individual, corporation, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or governmental authority. This term includes such a person's or entity's spouses,

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

heirs, predecessors, successors, executors, administrators, trustees, representatives, beneficiaries, assignees, and any Person claiming by, through, or on behalf of the person or entity.

     2.38    **Preliminary Approval Order**. "Preliminary Approval Order" means an order of the Court consistent with Paragraph 7.

     2.39    **QSF**. "QSF" is defined in Paragraph 15.1.

     2.40    **QSF Account**. "QSF Account" is defined in Paragraph 4.1.1.

     2.41    **Released Claims**. "Released Claims" means—in addition to any and all defenses, objections, rights, remedies, and benefits that may be derived from applicable law in any jurisdiction that may limit the extent or effect of the releases and other actions in this Agreement—any and all claims, demands, actions, suits, causes of action, cross-claims, counter-claims, rights, offsets, setoffs, debts, obligations, judgments, damages, charges, liens, harm, costs, surcharges, losses, attorneys' fees, expenses, and liabilities of any kind whatsoever, whether class or individual, in law or in equity, or otherwise, for or in connection with any consideration, thing of value, remedy, or relief of any kind whatsoever, whether joint or several, in law or in equity, substantive or nominal, or otherwise, including monetary, statutory, general, compensatory, special, liquidated, indirect, incidental, expectation, consequential, aggravated, and punitive damages, injunctive and declaratory relief, rescission, restitution, changes to credit, fees, penalties, fines, attorneys' fees, costs, and expenses, whether known or unknown, alleged or not alleged, suspected or unsuspected, contingent or vested, choate or inchoate, accrued or not accrued, liquidated or unliquidated, matured or not, that any Releasor ever had, now has, or in the future can, shall, or may have, whether individually, representatively, derivatively, or otherwise, from or against any Released Person that concern, relate to, arise out of, or are connected with a factual predicate of the Litigation, including any conduct, statement, act, or

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

omission that has been or could be alleged by any Releasor concerning, arising out of, relating to, or connected with any Covered Contract, including (a) the origination, financing, assignment, and servicing of any Covered Contract, (b) the repossession, surrender to, and control of any Collateral by Ally or any Person on its behalf (regardless of whether the Collateral was subsequently redeemed by, returned to, or otherwise recovered by the owner, co-owner, purchaser, co-purchaser, borrower, co-borrower, obligor, co-obligor, buyer, co-buyer, guarantor, or any other Person), (c) the charging, payment, collection, and attempted collection of amounts relating to any Covered Contract or Covered Account (including deficiencies after the sale or other disposition of any Collateral), (d) any notice or other communication delivered or required to be delivered before, after, or otherwise in connection with the repossession, surrender, control, or sale or other disposition of any Collateral, (e) any sale or other disposition of any Collateral, and (f) the furnishing of information to credit reporting agencies relating to any Covered Contract or Covered Account and any notices related to such furnishing. "Released Claims" also includes any claim or other matter of any kind whatsoever (as more fully set forth in the preceding sentence) that concerns, relates to, arises out of, or is connected with (i) any act, omission, or error of a CRA in connection with Paragraph 4.3 or (ii) any breach, failure to perform, or other act, omission, or error by any Person other than Ally in connection with this Agreement. Excluded from "Released Claims," however, is any claim or other matter whatsoever involving the enforcement of this Agreement against Ally.

2.42 **Released Persons**. "Released Persons" means Ally, and any or all of Ally's direct and indirect and past, present, and future affiliates, divisions, parents, subsidiaries, and related Persons, and any or all of Ally's and their past, present, and future officers, directors, managers, members, partners, shareholders, agents, attorneys, employees, representatives, trustees, heirs,

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

executors, administrators, predecessors, successors, assignees, contractors, vendors, and insurers, and any Person acting or purporting to act on behalf of any of them.

2.43   **Releasors**. "Releasors" means, individually and collectively, the Class Members, for and on behalf of themselves, and any or all of their past, present, and future affiliates, divisions, parents, subsidiaries, and related Persons, and any or all of their past, present, and future officers, directors, managers, members, partners, shareholders, agents, attorneys, employees, representatives, trustees, heirs, executors, administrators, predecessors, successors, assignees, contractors, vendors, and insurers, and any Person acting or purporting to act or claim by, through, or on behalf of any of them, in each case whether they object to this Agreement, the Preliminary Approval Order, the Final Approval Order, or the Final Judgment, whether they receive actual notices or other communications in connection with any of the foregoing, or whether they receive, realize, or derive any funds, property, benefit, or thing of value from any of the foregoing or the Cash Fund, the Gross Deficiency Waiver Amount, or any other consideration described in this Agreement. Excluded from "Releasors," however, are any Persons who timely and validly exclude themselves in compliance with procedures established by the Court and Paragraphs 8.1 and 8.2.

2.44   **Remaining Covered Account**. "Remaining Covered Account" is defined in Paragraph 4.2.2.

2.45   **Second Deficiency Waiver Amount**. "Second Deficiency Waiver Amount" is defined in Paragraph 4.2.2.

2.46   **Settlement Administrator**.  "Settlement Administrator" means, subject to Court approval, First Class, Inc.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

2.47    **Settlement Website.**  "Settlement Website" means the website that the Settlement Administrator and Class Counsel will establish no later than thirty (30) days after entry of the Preliminary Approval Order as a means for the Class Members to obtain notice of and information about the settlement reflected in this Agreement, through and including hyperlinked access to the operative petition and answer in the Litigation, this Agreement, the Class Mail Notice, the Long-Form Notice, the Preliminary Approval Order, any applications for an Incentive Award, Cost Award, or Fee Award, and other documents that Class Counsel and Ally's Counsel agree to post or that the Court orders posted on the website. These documents must remain on the Settlement Website at least until the Effective Date. The URL of the Settlement Website will be www.allynoticeclass.com or such other URL as Class Counsel and Ally's Counsel may subsequently agree upon in writing. Ownership of the Settlement Website URL will be fully assigned, by operation of this Agreement without further action, and transferred to Ally within ten (10) Business Days after the date on which operation of the Settlement Website ceases consistent with this Agreement, which must be mutually agreed by the Parties or ordered by the Court.

3.    **The Classes**

3.1    **Nationwide Class**.  The "Nationwide Class" means and is composed of each Person (a) who was named as a borrower, co-borrower, obligor, co-obligor, buyer, co-buyer, purchaser, co-purchaser, guarantor, owner, or co-owner in a Covered Contract, (b) whose Covered Contract was secured by Collateral, (c) whose Collateral was repossessed, voluntarily or involuntarily, and (d) whose Collateral was disposed of during the Class Period.

3.2    **Missouri Class**.  The "Missouri Class" means and is composed of each Person (a) who obtained a Missouri Certificate of Title for a motor vehicle identifying Ally as the

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

lienholder as a result of entering into a Covered Contract, or who was named as a borrower, co-borrower, obligor, co-obligor, buyer, co-buyer, purchaser, co-purchaser, guarantor, owner, or co-owner with a Missouri address in a Covered Contract, (b) whose Covered Contract was secured by Collateral, (c) whose Collateral was repossessed, voluntarily or involuntarily, and (d) whose Collateral was disposed of during the Class Period.

3.3    **Exclusions.**  Excluded from the Classes is any Person (a) against whom Ally obtained a final judgment during the Class Period for the deficiency remaining under a Covered Contract after disposition of the related Collateral, (b) who filed a Chapter 7 bankruptcy petition after the date of the Person's pre-sale notice covering Collateral under a Covered Contract and whose Chapter 7 bankruptcy case ended in a discharge, not a dismissal, during the Class Period, (c) who filed a Chapter 13 bankruptcy petition after the date of the Person's pre-sale notice covering Collateral under a Covered Contract and whose Chapter 13 bankruptcy case is still pending as of the date on which the Court enters the Preliminary Approval Order or ended in a discharge, not a dismissal, during the Class Period, or (d) who timely and validly excluded themselves in compliance with procedures set forth in the Notice of Pending Class Action dated July 17, 2020 sent to the Classes (the "Certification Notice") or in compliance with procedures established by the Court and set forth in Paragraphs 8.1 and 8.2 of this Agreement.

3.4    **Class Period.**  The "Class Period" is the period from and after (a) the date shown on Exhibit A to the Court's Order on Disputed Statutes of Limitation entered on November 25, 2019, for the state of the applicable Class Member's address as stated on the related Covered Contract, to and including (b) the entry date of the Preliminary Approval Order.  The specific start and end dates for the Class Period by state will be stated in the Long-Form Notice.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

**4.**     **Settlement Consideration from Ally**.  In consideration of the settlement reflected in this Agreement (including Paragraph 5), Ally will provide the following:

4.1     **Cash Fund**.

4.1.1     At its own expense, Ally will deliver eighty-seven million five hundred thousand U.S. dollars ($87,500,000) in immediately available funds (the "Cash Fund") by wire transfer to a qualified settlement fund account (within the meaning of 468B-1 of the Treasury Regulations (26 C.F.R. § 1.468B-1)) established by Class Counsel and the Settlement Administrator in accordance with Paragraph 15 (the "QSF Account"). Ally will make the wire transfer within ten (10) Business Days after the later of (a) the Effective Date and (b) receipt by Ally's Counsel of written confirmation of the establishment of the QSF Account, written wiring instructions for the QSF Account, and a completed W-9 Tax Form from Class Counsel and the Settlement Administrator.

4.1.2     Under no circumstances will Ally be required to pay any amount in addition to the Cash Fund under the terms and provisions of this Agreement.

4.2     **Deficiency Waiver**.

4.2.1     Ally will waive and forgive, in the aggregate, seven hundred million U.S. dollars ($700,000,000) (the "Gross Deficiency Waiver Amount") in deficiency balances that Ally's records reflect as outstanding as of the Effective Date on the accounts of Class Members associated with the Covered Contracts described in Paragraphs 3.1 and 3.2 (each a "Covered Account" and collectively, the "Covered Accounts").

4.2.2     Within ninety (90) days after the Effective Date, Ally will apply the Gross Deficiency Waiver Amount to the Covered Accounts associated with one or more Class Members in the following manner and order:

- 13 -

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

(a)     First, for each Covered Account having an outstanding balance greater than zero as of the Effective Date according to Ally's records, Ally will apply the Gross Deficiency Waiver Amount to reduce the outstanding balance of each of these Covered Accounts by the lesser of one thousand three hundred U.S. dollars ($1,300) or the remaining balance of the Covered Account (in the aggregate for all Covered Accounts, the "First Deficiency Waiver Amount"). Each Covered Account, regardless of the number of Class Members associated with it, will be credited with its applicable share of the First Deficiency Waiver Amount only once. The Parties expect that the First Deficiency Waiver Amount will be less than the Gross Deficiency Waiver Amount. If this turns out not to be the case, Ally will calculate the greatest amount (in whole dollars) less than one thousand three hundred U.S. dollars ($1,300) that would not cause the Gross Deficiency Waiver Amount to be less than zero after its application in the first sentence of this subparagraph (a), and that amount will be substituted in place of one thousand three hundred U.S. dollars ($1,300) in the first sentence of this subparagraph (a) and applied to reduce the outstanding balance of each of these Covered Accounts accordingly.

(b)     Second, Ally will calculate an amount (the "Second Deficiency Waiver Amount") equal to the Gross Deficiency Waiver Amount *minus* the First Deficiency Waiver Amount.

(c)     Third, for each Covered Account still having an outstanding balance greater than zero according to Ally's records after application of the First Deficiency Waiver Amount (each a "Remaining Covered Account" and

- 14 -

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

collectively, the "Remaining Covered Accounts"), Ally will calculate the percentage (the "Deficiency Reduction Percentage"), rounded down to the nearest tenth of a percent, equal to the quotient of (i) the Second Deficiency Waiver Amount divided by (ii) the aggregate deficiency balances that Ally's records reflect as outstanding in all of these Remaining Covered Accounts after application of the First Deficiency Waiver Amount.  Ally will then credit each of these Remaining Covered Accounts with an amount equal to the product of (i) the deficiency balance that Ally's records reflect as outstanding in the Remaining Covered Account after application of the First Deficiency Waiver Amount *multiplied by* (ii) the Deficiency Reduction Percentage.  Each Remaining Covered Account, regardless of the number of Class Members associated with it, will be credited with its applicable share of the Second Deficiency Waiver Amount only once.

4.2.3   The deficiency balances that Ally's records reflect as outstanding on the Covered Accounts on the Effective Date will not be increased by the addition of further finance charges or late charges.

4.2.4   Ally reserves all claims, rights, and remedies relating to the amount, enforceability, and collection of any outstanding deficiency balances remaining on the Covered Accounts after the application of Paragraphs 4.2.2 and 4.2.3.

4.3   **Credit Reporting**.

4.3.1   Within one hundred twenty (120) days after the Effective Date, Ally will request that each of the three national consumer credit reporting agencies to whom Ally furnishes information (Experian, Equifax, and TransUnion, each a "CRA") delete any

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

trade line reported to the CRA with respect to a Covered Account  (each a "Covered Tradeline"). Except as described in Paragraph 4.3.2, Ally will cease furnishing information on the Covered Tradelines to the CRAs on and after the date of transmittal of the deletion requests to the CRAs as described in this Paragraph 4.3.1.

4.3.2    The Parties acknowledge that no CRA is affiliated with or otherwise under the control of Ally, that Ally cannot, and does not, guarantee, warrant, or otherwise take responsibility for any CRA acting on the deletion requests described in Paragraph 4.3.1 or deleting any Covered Tradeline as so requested, and that a significant amount of time may pass before any CRA may act on the deletion requests described in Paragraph 4.3.1. If a Class Member notifies Ally in writing after the date that is ninety (90) days after the deletion requests described in Paragraph 4.3.1 were transmitted that a CRA did not delete the Class Member's Covered Tradeline as so requested, Ally will submit, one time, a "Universal Data Form" or similar request to the CRA to delete the Class Member's Covered Tradeline. Such a notice from a Class Member to Ally may be sent to Ally by email to: HaskinsCreditBureauInquiry@ally.com or by U.S. Mail to: Executive Customer Relations, c/o Haskins Class Action Settlement, 500 Woodward Avenue, Tenth Floor, Detroit Michigan 48226.  No act, omission, or error by any CRA will constitute a breach of this Agreement by Ally.

4.4    **No Other Consideration Given**.  This Paragraph 4 describes all of the consideration that Ally will provide for the settlement reflected in this Agreement (including Paragraph 5).

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

5.      **Releases**

5.1      On the Effective Date and in consideration of the settlement reflected in this Agreement (including Paragraph 4), by operation of this Agreement, the Final Approval Order, and the Final Judgment and without further action by the Court or any other Person, each of the Releasors (a) fully, finally, and forever waives, releases, relinquishes, and discharges the Released Persons of all Released Claims; (b) consents to the dismissal with prejudice of the Litigation and all Released Claims against the Released Persons; (c) consents to be permanently enjoined and barred from initiating or prosecuting any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim; and (d) agrees and covenants not to sue or otherwise initiate or prosecute any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim.

5.2      The Parties acknowledge that the Released Persons will suffer irreparable harm if any Releasor takes action or does anything else inconsistent with Paragraph 5.1. In such a case, each Released Person may seek an injunction and other relief at law or in equity without further showing of irreparable harm.

5.3      After the Effective Date, a Releasor may discover material or immaterial legal or factual matters other than or different from those that the Releasor understood or believed as of the Effective Date, but regardless of the reason for the discovery or the legal or factual matter so discovered, the scope, effect, operative finality, and enforceability of all of this Paragraph 5 will not be limited or otherwise affected in any manner whatsoever.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

5.4     On the Effective Date, by operation of this Agreement, the Final Approval Order, and the Final Judgment and without further action by the Court or any other Person, each of the Releasors waives, releases, relinquishes, and discharges, to the fullest extent permitted by law, the rights, remedies, and benefits of California Civil Code section 1542 and all similar state, local, or federal statutes and other laws. California Civil Code section 1542 provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

## 6.     Incentive Awards, Attorney Fees, and Costs

6.1     Each of the Class Representatives may petition the Court for an incentive award in recognition of services rendered to benefit the Classes throughout the Litigation ("Incentive Award"). Any Incentive Award will be payable solely from the Cash Fund, will be deducted from the Cash Fund in calculating the Net Distributable Settlement Fund available to Class Members, and will be distributed by the Settlement Administrator to the Class Representatives with their Class Member Payments as described in Paragraph 15.  Ally will not object to each Class Representative's petition for or receipt of an Incentive Award in an amount not to exceed twenty thousand U.S. dollars ($20,000).  Any application for an Incentive Award must be filed with the Court and posted to the Settlement Website no later than forty-five (45) days after the Class Mail Notice is sent and at least fifteen (15) days prior to the deadline to object to the Agreement.

6.2     Class Counsel and the Class Representatives may petition the Court for an award of litigation expenses, fees and expenses for the Settlement Administrator, and court costs ("Cost Award"). Any Cost Award will be payable solely from the Cash Fund, will be deducted from the

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

Cash Fund in calculating the Net Distributable Settlement Fund available to Class Members, and will be distributed by the Settlement Administrator to Class Counsel as described in Paragraph 15.  Ally will not object to a petition by Class Counsel and the Class Representatives for or their receipt of a Cost Award in an amount not to exceed one million two hundred thousand U.S. dollars ($1,200,000).  Any application for a Cost Award must be filed with the Court and posted to the Settlement Website no later than forty-five (45) days after the Class Mail Notice is sent and at least fifteen (15) days prior to the deadline to object to the Agreement. Any settlement-administration fees and expenses of any kind in excess of the Cost Award will be paid by Class Counsel and, if and to the extent approved by the Court, reimbursed from the Cash Fund.

6.3     Class Counsel and the Class Representatives may petition the Court for an award of attorneys' fees ("Fee Award"). Any Fee Award will be payable solely from the Cash Fund, will be deducted from the Cash Fund in calculating the Net Distributable Settlement Fund available to Class Members, and will be distributed by the Settlement Administrator to Class Counsel as described in Paragraph 15. Ally will not object to a petition by Class Counsel and the Class Representatives for or Class Counsel's receipt of a Fee Award in an amount not to exceed 11% of the Gross Settlement Fund.  Any application for a Fee Award must be filed with the Court and posted to the Settlement Website no later than forty-five (45) days after the Class Mail Notice is sent and at least fifteen (15) days prior to the deadline to object to the Agreement.

6.4     Except as provided in this Paragraph 6, each Party will bear its own attorneys' fees, costs, and expenses in the prosecution, defense, and settlement of the Litigation.

6.5     Paragraphs 6.1, 6.2, and 6.3 are severable from the remainder of this Agreement. This Agreement will be fully effective even if the Court denies any Incentive Award, Cost

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

Award, or Fee Award or approves such awards in amounts less than Class Counsel or the Class Representatives request.

**7.     Preliminary Approval Order**

Within ten (10) days after the Execution Date, after consulting with and providing a reasonable opportunity for comment by Ally's Counsel, the Class Representatives and Class Counsel will prepare and file a motion with the Court for a Preliminary Approval Order that is in a form agreed on by Class Counsel and Ally's Counsel and that:

7.1     Preliminarily approves this Agreement as fair, reasonable, and adequate under Missouri Supreme Court Rule 52.08, subject to a final determination by the Court;

7.2     Approves the Class Mail Notice to be sent to Class Members;

7.3     Approves the Long-Form Notice to be provided to Class Members on request and to be posted on the Settlement Website;

7.4     Approves the appointment of the Settlement Administrator;

7.5     Directs the Settlement Administrator to (a) mail the Class Mail Notice within thirty (30) Business Days after Ally provides the information described in Paragraph 14.1, (b) post the Long-Form Notice on the Settlement Website within twenty (20) Business Days after the Court enters the Preliminary Approval Order, and (c) mail the Long-Form Notice, promptly after receipt of a request from any Class Member, to the Class Member by first-class mail to the address specified by the Class Member;

7.6     Establishes a procedure consistent with Paragraph 8 of this Agreement for Class Members to request to be excluded from the Classes, and sets a specific deadline after the date when Class Mail Notices are mailed, after which no Class Member may request to be excluded from the Classes;

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

7.7     Establishes a procedure consistent with Paragraph 9 of this Agreement for Class Members to appear and object to the settlement reflected in this Agreement, and sets a specific deadline after the later of (a) the date when the Class Mail Notices are mailed or (b) the date when Class Counsel and the Class Representatives file their motions for approval of any Incentive Award, Cost Award, and Fee Award as provided in Paragraphs 6.1, 6.2, and 6.3, or such other date as the Court directs, after which no Class Member may object;

7.8     Sets the Final Hearing Date at least fifteen (15) days after the deadline for Opt-Out requests and at least fifteen (15) days after the deadline for objections;

7.9     Authorizes the establishment of the QSF and the QSF Account; and

7.10     Stays all other proceedings in the Litigation and preliminarily enjoins Class Members after the deadline for Opt-Out requests from initiating or prosecuting any other action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim, pending the entry of the Final Approval Order and the Final Judgment or a final order denying approval of this Agreement.

## 8.     Opt-Outs

8.1     The Preliminary Approval Order will set a deadline for Class Members to request to be excluded from the Classes ("Opt-Out").  Any Opt-Out request from a Class Member must (a) be in writing, (b) signed by the Class Member and all other Class Members on the applicable Covered Contract, (c) state the name, address, telephone number, account number, and last four digits of the Social Security Number of the Class Member and all other Class Members on the applicable Covered Contract, (d) include a statement that the Class Member and all other Class Members on the applicable Covered Contract request to Opt Out of the Classes, and (e) include a

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

reference to "*Ally Financial Inc. v. Haskins*, Case No. 16JE-AC01713-01." No Opt-Out request from a Class Member may be submitted or signed by an actual or purported agent or attorney acting on behalf of the Class Member, except in the case of a deceased Class Member, the Opt-Out request may be submitted and signed by an executor or similar administrator for the Class Member's estate if accompanied by a death certificate and proof of appointment. No Opt-Out request may be submitted on behalf of a group of Class Members, except that a single Opt-Out request may be submitted and signed by all Class Members on a single Covered Contract. Class Counsel will cause the Settlement Administrator to send each Opt-Out request to Class Counsel and Ally's Counsel via email within two (2) Business Days after receiving the request.

8.2     To be timely and effective, any Opt-Out request from a Class Member must comply with Paragraph 8.1, be mailed to the Settlement Administrator at the address designated in the Class Mail Notice, and be postmarked on or before the deadline set forth in the Preliminary Approval Order.  Each Class Member who does not submit an Opt-Out request that complies with this Paragraph 8 will be fully, finally, and forever a Class Member included in the applicable Classes and bound by the settlement reflected in this Agreement if approved by the Court. Class Counsel and Ally's Counsel will provide to the Court, on or before the Final Hearing Date, a list of all Persons, by reference to a unique identifier and last four digits of the Person's Social Security Number, who have timely mailed a valid Opt-Out request.

8.3     If Opt-Out requests result in the exclusion of 1,000 or more Persons in the Classes from the settlement reflected in this Agreement, Ally, in its sole and absolute discretion, may elect to rescind this Agreement, with effects as further described in Paragraph 13.

8.4     Ally may elect to exercise the unilateral rescission right described in Paragraph 8.3 by delivering written notice to Class Counsel on or before the date that is ten (10) Business

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

Days after the deadline for Opt-Out requests set forth in the Preliminary Approval Order. Notwithstanding anything to the contrary in this Agreement, if Ally elects to rescind this Agreement under this Paragraph 8, Ally will reimburse Class Counsel, in an amount not to exceed six hundred thousand U.S. dollars ($600,000), for the reasonably documented expenses and costs actually incurred by the Settlement Administrator and paid by Class Counsel in providing Class Mail Notices to Class Members prior to Ally exercising its unilateral rescission right.

9. **Objections to Settlement or Incentive, Cost, or Fee Awards**

9.1    Any Class Member who has not timely and validly Opted Out of the Classes under Paragraph 8 may object, at the Class Member's own expense, to Court approval of this Agreement or any requested Incentive Award, Cost Award, or Fee Award. Such an objection must (a) be in writing, (b) be filed with the Court and served on Class Counsel and Ally's Counsel at the addresses set forth in Paragraph 2 on or before the deadline set forth in the Preliminary Approval Order, and (c) include (i) the objecting Class Member's name, address, telephone number, account number, email address (if available), and last four digits of the Class Member's Social Security Number, (ii) if the objecting Class Member is represented by counsel, the name, address, telephone number, and email address (if available) of the counsel, (iii) a specific statement of each objection asserted, (iv) a description of any facts or legal authorities on which each objection is based, (v) all documents and other evidence on which the objecting Class Member intends to rely, including each of the expert's opinions and the factual and substantive bases for that opinion, (vi) the name, address, telephone number, and email address (if available) of each expert and each witness on whose testimony the objecting Class Member intends to rely, (vii) a statement whether the objecting Class Member intends to appear at the Final Hearing in person or through the designated counsel, (viii) the name, court, and docket

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

number associated with any other class-action settlement where the objecting Class Member has objected (whether through a formal appearance or otherwise) or provided legal assistance with respect to an objection; (ix) the name, court, and docket number associated with any other class-action settlement where the objecting Class Member's counsel has appeared as an objector's attorney or provided legal assistance with respect to an objection; and (x) a reference to "*Ally Financial Inc. v. Haskins*, Case No. 16JE-AC01713-01."

9.2    An objecting Class Member need not attend the Final Hearing for the Class Member's objection to be considered. However, any Class Member who fails to comply with Paragraph 9.1 will have waived any objection and will forever be barred from making any objection, unless otherwise excused by the Court for good cause shown.

## 10.    Final Approval Order, Final Judgment, and Final Accounting

10.1    If the Preliminary Approval Order is entered by the Court and Ally does not exercise its unilateral rescission right under Paragraph 8.3, the Class Representatives and Class Counsel—appropriately in advance of the Final Hearing Date and after consulting with and providing a reasonable opportunity for comment by Ally's Counsel—will prepare and file a motion with the Court requesting entry of a Final Approval Order and a Final Judgment that are in forms agreed on by Class Counsel and Ally's Counsel and that, in each case as applicable:

(a)    Confirms the certification of the Classes and the appointment of the Class Representatives as representatives of the Classes for purposes of the settlement reflected in this Agreement;

(b)    Approves this Agreement as fair, reasonable, and adequate and in the best interest of the Classes;

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

(c)      Finds that the Class Mail Notice, the Long-Form Notice, and the procedures involving notice to Class Members constituted due, adequate, and sufficient notice of the settlement reflected in this Agreement and meets all of the requirements of due process and Missouri rules of procedure;

(d)      Declares that all Releasors are bound by Paragraph 5, and orders the Parties, Class Counsel, and the Settlement Administrator to carry out this Agreement's terms and provisions;

(e)      Fully dismisses the Litigation with prejudice;

(f)      Orders that the Releasors are permanently enjoined and barred from initiating or prosecuting any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim;

(g)      Reserves continuing and exclusive jurisdiction over this Agreement, the settlement reflected in this Agreement, the QSF, and the QSF Account, including their administration, enforcement, and consummation; and

(h)      Incorporates Paragraph 13 of this Agreement and contains such other terms and provisions consistent with this Agreement as the Court may deem advisable.

10.2    The Settlement Administrator and Class Counsel will file a final accounting with the Court within five hundred (500) days after the Effective Date. The final accounting will include a summary of all distributions of the Cash Fund, and Class Counsel will request Court approval of the final accounting.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

**11.      Certifications to the Court**

11.1     On or before the Final Hearing Date, Class Counsel will file with the Court an affidavit verifying that, as ordered by the Court, (a) the Court-approved Class Mail Notices have been duly sent by first-class mail to the Class Members, (b) the Court-approved Long-Form Notice and other settlement documents have been duly posted on the Settlement Website and have been accessible to the Class Members, and (c) the Court-approved Long-Form Notice has been duly sent by first-class mail to any Class Member promptly after receipt of a request from the Class Member.

11.2     On or before the Final Hearing Date, Class Counsel will file with the Court an affidavit verifying that the procedures for returned Class Mail Notices in Paragraph 14.4 have been fully performed.

**12.      Effectiveness of this Agreement**.

The "Effective Date" of this Agreement will be the date on which all of the following conditions have occurred without Ally having exercised its right of rescission under Paragraph 8.3:

12.1     This Agreement has been executed and delivered by the Class Representatives, Class Counsel, Ally Financial Inc., Ally Bank, and Ally's Counsel; and

12.2     The Preliminary Approval Order has been entered by the Court as required by Paragraph 7; and

12.3     The Court-approved Class Mail Notices have been duly mailed to Class Members as ordered by the Court; and

12.4     The Court-approved Long-Form Notice has been posted on the Settlement Website as ordered by the Court; and

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

12.5    The Final Approval Order and the Final Judgment have been entered by the Court as required by Paragraph 10.1 without material change (excluding changes affecting any Incentive Award, Cost Award, or Fee Award or any matter for which Ally is not liable under Paragraph 15.15); and

12.6    The Final Approval Order and the Final Judgment required by this Agreement have become final (whether after original entry or after any remand and subsequent entry) because (a) no appeal has been filed and the time for commencing any appeal has expired, or (b) an appeal has been filed and either (i) the appeal has not been accepted or has been dismissed, and any time for commencing any further appeal has expired, or (ii) the Final Approval Order and the Final Judgment have been affirmed in their entirety in all respects material to the Parties (including the settlement consideration from Ally in Paragraph 4 and the releases in Paragraph 5 but excluding any Incentive Award, Cost Award, or Fee Award), and any time for commencing any further appeal has expired. An appeal of any Incentive Award, Cost Award, or Fee Award or an appeal relating to any obligation, responsibility, interest, or liability for which Ally has no obligation, responsibility, interest, or liability under Paragraph 15.15, however, will not prevent or otherwise affect the Final Approval Order and the Final Judgment from being final and the Effective Date from occurring under this Agreement. For purposes of this Paragraph, an appeal includes a motion to reconsider, an appeal as of right, a discretionary appeal, an interlocutory appeal, a proceeding involving a writ (including a writ of certiorari, mandamus, or prohibition), and any other proceeding of a similar kind.

## 13.    Failure of Condition

If a condition described in Paragraph 12 is not and cannot reasonably be satisfied, this Agreement, the Memorandum of Understanding, and all of the orders and judgments entered or

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

to be entered under this Agreement or the Memorandum of Understanding will be void *ab initio*

and totally vacated, abrogated, and annulled so as to return the Parties to their positions before

the execution of this Agreement and the Memorandum of Understanding as if neither had been

executed, with all the pre-settlement rights, remedies, objections, arguments, defenses, and

positions of each Party fully restored. In addition, in such a case, this Agreement, the

Memorandum of Understanding, and all matters arising out of, relating to, or connected with any

of them (including the matters described in Paragraph 1.2) will be without prejudice to the

Parties, matters described in Paragraph 1.2 will not be admissible, an admission of, or used

against any Party, and no doctrine of waiver, estoppel, or preclusion will be asserted in the

Litigation or any other action, suit, or proceeding of any kind. Notwithstanding anything to the

contrary in this Agreement, if a failure of a condition as described in this Paragraph 13 occurs,

Ally will reimburse Class Counsel, in an amount not to exceed three hundred thousand U.S.

dollars ($300,000), for one-half of the reasonably documented expenses and costs actually

incurred by the Settlement Administrator and paid by Class Counsel in providing Class Mail

Notices to Class Members prior to the failure of the condition.

**14.     Class Notice**

14.1     Within ten (10) Business Days after the Court enters the Preliminary Approval

Order, Ally will supplement its previously produced summaries of Class Member information

for Class Counsel, in the same Excel format provided to Class Counsel on or about March 10,

2020, which must include names, last known addresses, and outstanding deficiency balances on

the Covered Accounts of Class Members as reflected in Ally's records as of the entry date of the

Preliminary Approval Order, and any other information mutually agreed by the Parties or

ordered by the Court. Within twenty (20) Business Days after receipt of the Cash Fund in the

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

QSF Account, Ally will supplement the Class Member information further to include the Social Security Numbers for all Class Members on a Covered Account where the related Class Member Payment equals or exceeds six hundred U.S. dollars ($600).

14.2     The Settlement Administrator will update the addresses provided under Paragraph 14.1 using the United States Postal Service's National Change of Address database or another equivalent address database service (e.g., Accurint or Intelius) and use the addresses as so updated in mailing the Class Mail Notices under Paragraph 14.3.

14.3     Within twenty-five (25) Business Days after the Court enters the Preliminary Approval Order, the Settlement Administrator will post the Court-approved Long-Form Notice on the Settlement Website.  Within thirty (30) Business Days after Ally provides the supplemental Class Member information to Class Counsel as described in the first sentence of Paragraph 14.1, the Settlement Administrator will mail the Court-approved Class Mail Notice to each Class Member by first-class mail. Notwithstanding anything to the contrary in this Agreement, if the Certification Notice was returned by the United States Postal Service as undeliverable and no different address was provided by Ally under Paragraph 14.1 or located by the Settlement Administrator for the applicable Class Member, the Settlement Administrator need not mail the Class Mail Notice to the Class Member.

14.4     If any Class Mail Notice is returned by the United States Postal Service, the Settlement Administrator will re-mail the Class Mail Notice to any new address of the Class Member disclosed by the United States Postal Service. If a Class Mail Notice is returned a second time, the Settlement Administrator will undertake reasonable efforts to locate a then current address for the Class Member.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

14.5     The Settlement Administrator will mail a Long-Form Notice, promptly after receipt of a request from any Class Member, to the Class Member by first-class mail to the address specified by the Class Member.

14.6     Subject to entry of the Final Approval Order and the Final Judgment (including a finding in substance similar to the one described in Paragraph 10.1(c)), none of actual receipt of a Class Mail Notice, actual knowledge of the Long-Form Notice, or actual notice or knowledge of the Litigation, this Agreement, the Preliminary Approval Order, the Final Approval Order, or the Final Judgment will prevent or delay a Class Member under Paragraph 8.2 from being fully, finally, and forever a Class Member included in the applicable Class and bound by the settlement reflected in this Agreement (including Paragraph 5).

## 15.     Character and Distribution of the Cash Fund

15.1     The Cash Fund delivered by Ally under Paragraph 4.1.1 will be maintained as a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended. The Settlement Administrator will be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

15.2     Upon establishment of the QSF, the Settlement Administrator will apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

15.3     If requested by either Ally or the Settlement Administrator, the Settlement Administrator and Ally will cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

15.4    Class Counsel will cause the Settlement Administrator to file, on behalf of the QSF, all required federal, state, and local tax returns, information returns, and tax withholdings statements under Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(1)(2)(ii).

15.5    Subject to any needed supervision and direction by the Court, the Settlement Administrator will be responsible for and will administer and oversee the distribution of the Cash Fund under the terms and provisions of this Agreement.

15.6    Class Counsel will prepare calculations of the Net Distributable Settlement Fund and the amount to be distributed to each Class Member from the Net Distributable Settlement Fund and will deliver the calculations and appropriate disbursement instructions in writing to the Settlement Administrator. The minimum, average, and maximum amount of the Net Distributable Settlement Fund to be distributed to each Class Member and the Gross Deficiency Waiver Amount allocated to each Covered Account will be stated in the Long-Form Notice.

15.7    Within sixty (60) days after receipt of the Cash Fund in the QSF Account, the Settlement Administrator will distribute any Incentive Award, any Cost Award, any Fee Award, and the Net Distributable Settlement Fund consistent with the calculations and instructions provided by Class Counsel, or as the Court may otherwise provide in the Final Approval Order and Final Judgment.  Such distributions to the Class Members from the Net Distributable Settlement Fund are referred to as the "Class Member Payments."

15.8    The Settlement Administrator will distribute the Class Member Payments by checks mailed to the Class Members. Class Members need not submit claims in order to receive Class Members Payments. If any check is returned by the United States Postal Service, the Settlement Administrator will re-mail the check to any new address of the Class Member

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

disclosed by the United States Postal Service. If a check is returned a second time, the Class

Counsel and the Settlement Administrator will undertake reasonable efforts to locate a then

current address for the Class Member.

15.9    If any Class Member refuses to accept a Class Member Payment or does not cash

the associated check within sixty (60) days of mailing, Class Counsel and the Settlement

Administrator will undertake reasonable efforts to locate and contact the Class Member about

receiving, accepting, and cashing the check.

15.10   Following the expiration of one hundred and twenty (120) days after the date of

first mailing, all initially issued checks that have not been cashed will be deemed void, and the

Settlement Administrator must open a new account with the same EIN as the first account to stop

payment on all uncashed checks.  Following the expiration of two hundred and ten (210) days

after the date of first mailing, all reissued checks that have not been cashed will be deemed void,

and the Settlement Administrator must open a new account with the same EIN as the first

account to stop payment on all uncashed checks.

15.11   The Settlement Administrator will, promptly after stopping payment on all

uncashed checks under Paragraph 15.10, make a secondary distribution of the remaining balance

of the Net Distributable Settlement Fund, after deduction of any administrative costs, stop

payment fees on uncashed checks, and other charges incurred in reissuing checks, only if that

remaining balance exceeds seven hundred fifty thousand U.S. dollars ($750,000). This secondary

distribution, if made, will be allocated and made by sending checks, in equal amounts, to all

Class Members who cashed previously issued checks. If the remaining balance of the Net

Distributable Settlement Fund, after deduction of any administrative costs, stop payment fees on

uncashed checks, and other charges incurred in reissuing checks, would not exceed seven

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

hundred fifty thousand U.S. dollars ($750,000), the remaining balance of the Net Distributable Settlement Fund, after deduction of any administrative costs and stop payment fees on uncashed checks, will be allocated and made by sending one or more checks to Legal Services of Eastern Missouri or any other organizations approved by the Court.

15.12   Following the expiration of one hundred and twenty (120) days after the date of any secondary distribution under Paragraph 15.11, all secondary-distribution checks that have not been cashed will be deemed void, and the Settlement Administrator will request closure of the account to stop payment on all uncashed checks within ten (10) Business Days thereafter.

15.13   The Settlement Administrator will, promptly after stopping payment on all uncashed checks under Paragraph 15.12, make a final distribution of the remaining balance of the Net Distributable Settlement Fund, after deduction of any administrative costs, stop payment fees on uncashed checks, and other charges incurred in reissuing checks. This final distribution will be allocated and made by sending one or more checks to Legal Services of Eastern Missouri or any other organization approved by the Court.

15.14   Any Class Member who receives a Class Member Payment in connection with a Covered Account will be solely responsible for notifying all Class Members on the Covered Account of receipt of the Class Member Payment and distributing and allocating the Class Member Payment among them, regardless of whether the associated check has been made payable to all or only some of the Class Members on the Covered Account. Each Class Member, by accepting a Class Member Payment, represents and warrants that the Class Member is entitled to receive the Class Member Payment and has not assigned, by operation of law or otherwise, the right to the Class Member Payment. If such an assignment has been made, the Class Member

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

will not accept the Class Member Payment and instead will, promptly after receipt, remit the Class Member Payment to the assignee.

15.15   Except as expressly set forth in this Agreement, Ally will have no obligation or responsibility for, interest in, or liability in connection with the administration of the settlement reflected in this Agreement, including (a) the location, notification, and solicitation of Class Members, (b) the preparation and distribution of the Class Mail Notice, (c) the preparation, posting, and provision of the Long-Form Notice, (c) the establishment and maintenance of the QSF and the QSF Account, (d) the investment, allocation, and distribution of the Cash Fund, (e) the filing, receipt, and processing of release and other forms, (f) the determination, administration, calculation, and delivery of the Class Member Payments and any Incentive Award, Cost Award, Fee Award, or other distribution from the Cash Fund, (f) the payment or withholding of taxes, (g) any losses in connection with the Gross Settlement Fund or the implementation of this Agreement, and (h) communications and resolutions with Class Members, any taxing or other governmental authority, or any other Person.

15.16   If a Class Member has filed for bankruptcy, the Class Member will be solely responsible for providing any required notice to the bankruptcy trustee and the bankruptcy court of this Agreement and the Class Member Payment.

## 16.    General Provisions

16.1    The Parties agree to hold in abeyance, pending the Final Hearing, all proceedings (including discovery) in the Litigation, except proceedings that are necessary to implement this Agreement and consummate the settlement reflected in this Agreement.

16.2    Class Counsel and Ally's Counsel will act in good faith and use their best efforts to cause the Court to enter the Preliminary Approval Order, the Final Approval Order, and the

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

Final Judgment as promptly as practicable consistent with the terms and provisions of this Agreement. Before filing any motion in the Court raising a dispute relating to this Agreement, the Parties will meet and confer with each other and certify to the Court that they have consulted.

16.3    The Parties will execute all documents and perform all other acts necessary and appropriate to effect this Agreement.

16.4    This Agreement constitutes the full, complete, and entire understanding, agreement, and arrangement of and among the Parties and Class Counsel in connection with the subject matter of this Agreement, including the compromise and settlement of the Litigation and the Released Claims.  This Agreement supersedes all prior oral or written understandings, agreements, and arrangements among the Parties and Class Counsel of any kind in connection with the subject matter of this Agreement, including the Memorandum of Understanding. Except for those set forth expressly in this Agreement, there are no agreements, covenants, promises, representations, or arrangements among the Parties and Class Counsel of any kind in connection with the subject matter of this Agreement.

16.5    This Agreement may be amended, modified, or waived, in whole or in part, only in a writing signed by all Parties. This Agreement may not be orally amended, modified, or waived, in whole or in part. Unless otherwise ordered by the Court, nonmaterial changes to the Class Mail Notice and the Long-Form Notice will be permitted without amending this Agreement or any order issued by the Court pursuant to this Agreement.

16.6    The Class Representatives, Ally Bank, Ally Financial Inc., Class Counsel, and Ally's Counsel will sign two copies of this Agreement in any number of counterparts, and all of these copies and counterparts will constitute an original and together will constitute one agreement.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

16.7    Each of the Parties and Class Counsel represents and warrants that the Person is acting upon the Person's independent judgment and upon the advice of the Person's own counsel and not in reliance upon any representation or warranty, express or implied, of any kind by any other Person, other than the express representations and warranties made in this Agreement.

16.8    This Agreement will be governed by and interpreted, construed, enforced, and administered under the laws of the State of Missouri, without regard to principles of conflict of laws. This Agreement will be enforced in the Court. Ally, the Class Representatives, and the Class Members waive any objection that each such party may now have or hereafter have to the Court being the exclusive venue for such an enforcement proceeding and irrevocably consent to the exclusive jurisdiction of the Court over such an enforcement proceeding.

16.9    Consistent with Paragraph 10.1(g), the Parties consent to the Court's reservation of continuing and exclusive jurisdiction over this Agreement, the settlement reflected in this Agreement, the QSF, and the QSF Account, including their administration, enforcement, and consummation.

16.10   This Agreement will bind and will inure to the benefit of the Parties and Class Counsel as well as their respective successors, assigns, executors, administrators, heirs, and legal representatives.

16.11   This Agreement will not be construed more strictly against one Person than another, it being recognized that because of the arm's-length negotiations, all Parties and Class Counsel have contributed equally to preparing this Agreement.

16.12   The term "include" introduces a non-exhaustive list.  A reference to any law is to that law as amended or supplemented to the applicable time. All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neutral gender, will include all other

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

genders, and the singular will include the plural and vice versa, in each case, unless the context requires otherwise.

16.13    None of the Class Representatives, Class Counsel, or any Person on their behalf or with their permission or influence will issue or cause to be issued any press release or similar communication relating to this Agreement or the settlement reflected in this Agreement, make or cause to be made any public statement (including through news media or social media) relating to this Agreement or the settlement reflected in this Agreement, or disparage or comment on Ally in any way.  Nothing in this Paragraph 16.14 limits Class Counsel's obligations and duties to communicate in good faith with Class Members or the Court, including as required by applicable rules of professional responsibility or by Missouri Supreme Court Rule 52.08.

16.14    Each of the Parties and Class Counsel represents, warrants, and covenants that (a) the Person has full power and authority to enter into and consummate all transactions contemplated by this Agreement and has duly authorized the execution, delivery, and performance of this Agreement, (b) the person executing this Agreement on behalf of the Person has the full right, power, and authority to enter into this Agreement and all related documents on behalf of the Person, and (c) this Agreement is enforceable against the Person according to its terms (except as enforceability may be limited by principles of equity or insolvency).

16.15    The exhibits attached to the Agreement are incorporated as though set forth in this Agreement.

16.16    Notwithstanding anything in this Agreement to the contrary, except for the Gross Deficiency Waiver Amount as applied in Paragraph 4, nothing in this Agreement is intended to or does waive or release any claims, rights, and remedies that Ally may have on any Covered

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

Contract or Covered Account or against any Class Member, insurance company, or broker. All such claims, rights, and remedies are expressly preserved.

    16.17   This Agreement references data and other information that Ally has utilized and produced in connection with the Litigation and describes data and other information that Ally may or must utilize and produce in connection with the implementation of this Agreement.  All of this data and other information, including in connection with the Covered Contracts, has been and will be based on Ally's electronic records as reasonably available at the time of utilization or production as applicable.

    16.18   Within ten (10) Business Days after the Effective Date, Ally will file a motion to dismiss its petition for a writ of certiorari regarding the Litigation (*Ally Financial Inc. v. Haskins et al.*, No. 20-177) under United States Supreme Court Rule 46.

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

In witness whereof, the undersigned, being duly authorized, have signed this Agreement on the dates beside their signatures.

DATED:  March 17, 2021

_Alberta Haskins_
Alberta Haskins, individually
and on behalf of Class Members

DATED:  March 17, 2021

David Duncan, individually
and on behalf of Class Members

DATED:  March ___, 2021          ALLY FINANCIAL INC.


By: _____
David Shevsky
Chief Operating Officer – Auto Finance

DATED:  March ___, 2021          ALLY BANK


By: _____
David Shevsky
Chief Operating Officer – Auto Finance

DATED:  March _18_, 2021          ONDERLAW, LLC


By: _____
Martin L. Daesch
Class Counsel

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM

In witness whereof, the undersigned, being duly authorized, have signed this Agreement on the dates beside their signatures.

DATED: March___, 2021

_____
Alberta Haskins, individually
and on behalf of Class Members

DATED: March ___, 2021

_____
David Duncan, individually
and on behalf of Class Members

DATED: March 17, 2021        ALLY FINANCIAL INC.

By: _____
David Shevsky
Chief Operating Officer – Auto Finance

DATED: March 17, 2021        ALLY BANK

By: _____
David Shevsky
Chief Operating Officer – Auto Finance

DATED: March ___, 2021        ONDERLAW, LLC

By: _____
Martin L. Daesch
Class Counsel

DATED:  March _17_, 2021          SHOOK, HARDY & BACON L.L.P.

By: _Todd W. Ruskamp_

Todd W. Ruskamp
Ally's Counsel

- 40 -

Electronically Filed - Jefferson - March 18, 2021 - 02:46 PM