UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                        )
GRACIE WHITE f/k/a                      )
GRACIE DORNEUS, individually and        )
on behalf of a class of persons similarly )
situated,                               )          C.A. No. 3:18-CV-30143-MGM
                                        )
        Plaintiff,                      )
                                        )
v.                                      )
                                        )
ALLY FINANCIAL INC.,                    )
                                        )
        Defendant.                      )
_____)
```

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT IN PARALLEL STATE ACTION**

Defendant Ally Financial Inc. ("Ally") is a counterclaim defendant in a Missouri state court case (the "Haskins Litigation") wherein the counterclaim plaintiffs (the "Haskins Plaintiffs") are asserting and attempting to resolve nationwide claims that do not mirror those asserted in this action. Plaintiff Gracie White has filed an emergency motion to intervene in that action seeking to exclude herself and other Massachusetts borrowers from the settlement class definition given that, amongst other reasons, the proposed settlement impermissibly seeks to resolve Massachusetts claims the Haskins Plaintiffs do not have and did not adequately protect while leaving Massachusetts borrowers vulnerable to future lawsuits over deficiencies Ally cannot collect under Massachusetts law.

In the meantime, Ally seeks extraordinary relief in this case: it contends that, given the Haskins Plaintiffs' proposed settlement, this Court should stay this matter for an unknown period of time. However, stays are rarely granted and Ally bears a heavy burden to demonstrate that one is warranted. As set forth below, given that the two pending cases involve different parties and

different factual and legal claims, and that the Missouri forum will not adequately protect Massachusetts consumers, this Court should deny Ally's motion in its entirety.

## I.   **BACKGROUND**

*The White Litigation*

This putative class action was filed in state court in July 2018 by James Randall on behalf of a class of Massachusetts borrowers. Plaintiff Gracie White, now the lead plaintiff, brings this action against Ally for unlawful debt collection practices and seeks relief under the Massachusetts Uniform Commercial Code, M.G.L. c. 106, § 9 *et seq*. (the "UCC") and the Massachusetts Retail Installment Action, M.G.L. c. 255B, §§ 20A, 20B (the "RISA"). After a default on a secured loan, the UCC permits a lender to repossess the collateral, sell it, and recover any loan deficiency from the borrower. UCC, § 9-610, §9-615. Under the UCC, after the repossession of collateral but before its sale, a lender must send the consumer a written notice containing critical information regarding the process, including a "description of any liability for a deficiency of the person to which the notification is sent." UCC § 9-614(1). The UCC calculates deficiencies using the proceeds of a "commercially reasonable" sale. UCC § 9-615.

However, where a motor vehicle serves as collateral for a transaction, the RISA applies a higher standard: instead of the sales proceeds, the RISA requires application of the fair market value of the vehicle to the borrower's loan balance. RISA § 20B(e)(1). Consequently, when notifying a borrower of a potential deficiency, the lender must inform the consumer that any loan deficiency will be calculated based on the fair market value of the vehicle, not just the sale proceeds. Indeed, "the notice that is required by the Uniform Commercial Code is ***never sufficient*** where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." *Williams v.*

*American Honda Finance Corporation*, 479 Mass. 656, 668 (Mass. 2018) (emphasis added). A secured creditor that sends an unlawful post-repossession notice is liable for statutory damages under UCC, § 9-625 and is barred from collecting any deficiency under RISA, § 20B.

Here, Ms. White contends that Ally violated the UCC and the RISA by sending form post-repossession notices that did not describe the borrower's potential liability for a deficiency by using the "fair market value" formula. Consequently, Ms. White seeks statutory damages under the UCC and a declaration that Ally is barred from collecting the alleged deficiencies owed by White and other class members pursuant to the RISA.

### *The Haskins Litigation*

The Haskins Litigation stems from a suit brought by Ally against Alberta Haskins and David Duncan for recovery of a vehicle loan deficiency. Haskins and Duncan (the "Haskins Plaintiffs") asserted counterclaims on behalf of a nationwide class of borrowers on the grounds that Ally sent them both pre-sale and post-sale repossession notices that violated the Uniform Commercial Code. The Haskins Plaintiffs alleged that the post-repossession notices were: (i) "misleading because they state the redemption amount must be paid by certified funds, cashier's check, Western Union or MoneyGram, but neither the contract nor the law requires redemption to be paid only through these methods"; (ii) "misleading because the debt had not been properly accelerated, so a consumer wishing to redeem need only pay the delinquent payments plus the creditor's expenses"; and (iii) "misleading because they indicate to the recipient no one else owes money on the agreement"; and that (iv) "[t]he information contained in the presale notices was inaccurate because the debt had not been properly accelerated." (ECF 105-2, 7). The Haskins Plaintiffs claim various damages, including, amongst other things, statutory damages,

loss from the inability to obtain, or increased costs of, alternative financing, and damages for defamation, slander, and libel. (ECF 105-2, 17).

The Haskins Plaintiffs recently reached a settlement with Ally on behalf of a nationwide class. The total number of class members is not disclosed, other than to state that it "exceeds 500,000." (ECF 105-3 at 7) The settlement includes a total payment of $87,500,000 in cash (which represents an average per class member payment of less than $175 before deductions for attorneys' fees and other costs) and $700M in debt relief (an average of less than $1,400 per class member), while leaving borrowers stuck with any remaining deficiency and waiving any of their defenses against future collection.   On March 19, 2021, a Missouri state judge preliminarily approved the settlement. (ECF 105-4) On April 6, 2021, Plaintiff Gracie White filed an Emergency Motion to Intervene and to Modify Class Definition and Supporting Memorandum, seeking to modify the class definition to exclude Plaintiff and other Massachusetts putative class members given the material differences between Massachusetts law (particularly, the fair market value provisions in the RISA) and the law of the other 49 states (which does not contain such protections) that are part of the class. *See* Exh. 1, Emergency Motion to Intervene and to Modify Class Definition and Supporting Memorandum.

Ally now seeks to stay these proceedings for an unknown period of time. Yet, it fails to meet its heavy burden to demonstrate that these are extraordinary circumstances necessitating a stay of these proceedings.

## II.   ARGUMENT

### A.  Stays Are Rarely Granted And Ally Bears A Heavy Burden In Demonstrating That One Is Warranted Here

It is well-settled that courts have the inherent power to stay a proceeding in order to control the disposition of the cases on their docket, including situations in which one suit may

affect the resolution of another. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*. at 255.

Following *Landis,* the First Circuit has made clear that "stays cannot be cavalierly dispensed." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992). Instead, the party seeking a stay bears a "heavy burden" to demonstrate that one is needed. *Taunton Gardens Co. v. Hills,* 557 F.2d 877, 879 (1st Cir. 1977). Even if the moving party demonstrates irreparable harm may flow from the lack of a stay, that is not enough. *Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009) ("A stay is not a matter of right, even if irreparable injury might otherwise result") (citation omitted).

Given the strict dictates of granting a stay, district courts in this Circuit have routinely denied requests for stays, even where two cases address similar and/or related issues. *See e.g., Cardelli v. DAE Aviation Enters, Corp*., No. 2:11–cv–217–NT, 2012 WL 983584 (D. Me. Mar. 28, 2012) (denying stay pending resolution of declaratory judgment in another court dealing with related issues); *Steele v. Ricigliano*, 789 F.Supp. 2d 245, 247-248 (D. Mass. 2011) (denying stay pending disposition of appeal in related case); *Solis-Alarcon v. Abreu-Lara,* 722 F. Supp. 2d 157, 161 (D.P.R. 2010) (denying stay pending disposition of appeal in prior case); *Diomed, Inc. v. Total Vein Solutions,* 498 F.Supp. 2d 385, 387 (D. Mass. 2007) (denying stay even though federal circuit could "issue relevant and significant decision on a related appeal" in light of limitations set forth in *Landis*); *Dow Chemical Co. v. Composite Container Corp.,* 1984 U.S. Dist. LEXIS 17752 (D. Mass. Apr. 10, 1984) (denying stay pending final resolution of related actions and finding that expenses of litigation do not amount to hardship justifying a stay); *Manchester Bank v. Connecticut Bank and Trust Company,* 497 F. Supp. 1304 (D. N.H

1980) (denying stay pending the outcome of related criminal proceedings and finding that movant had not met its burden).

Here, as set forth below, Ally has not lifted its heavy burden to justify the extraordinary relief it seeks under either the prior-pending-action or *Colorado River* abstention doctrines.

## B. Ally Has Not Met Its Heavy Burden To Demonstrate That This Is An Extraordinary Situation Justifying A Stay Under The Prior-Pending-Action Doctrine

Under the prior-pending-action doctrine, "the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good ground for abatement of the later suit." *O'Reilly v. Curtis Pub. Co.*, 31 F. Supp. 364, 364-65 (D. Mass. 1940). A later-filed action can be stayed if: "(1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action." *Wang Yan v. Rewalk Robotics Ltd.*, No. 17-10169-FDS, 2017 WL 11488625, at *4 (D. Mass. Oct. 23, 2017), citing 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1360 (3d ed. 2004).

Here, each of the factors militates against staying this matter pursuant to the prior-pending-action doctrine. First, the parties differ – the only party common to both actions is Ally. Second, the parties' claims in both actions are predicated on different loan transactions. Third, the parties in both actions do not seek identical relief. *Compare* Second Amended Complaint (ECF 28-1,7) with Counterclaim (ECF 105-2, 20-21). Fourth, the key issues in this case – whether Ally violated the Massachusetts UCC and RISA by failing to include the fair market value formula in its presale notices which bars it from collecting a deficiency from Ms. White and other Massachusetts borrowers – were not asserted in the Haskins Litigation. Therefore, for

these reasons and those detailed below, Ally has not demonstrated that a stay is justified under

the prior-pending-action doctrine.

### C.   Ally Has Not Demonstrated That Exceptional Circumstances Justify *Colorado River* Abstention In This Matter

Under the *Colorado River* abstention doctrine, "a federal court may ordinarily abstain

under exceptional circumstances." *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 320 (1st

Cir.1992). But, "[t]he general rule is that the pendency of an action in the state court is no bar to

proceedings concerning the same matter in the Federal court because of the

virtually unflagging obligation of the federal courts to exercise the jurisdiction given

them." *Puzey v. BJ's Wholesale Club, Inc.*, No. 11–11339–MLW, 2012 WL 1114164, at *2

(D.Mass. Mar. 31, 2012), *citing Colorado River Water Conservation District v. United States*,

424 U.S. 800, 817 (1976) (internal quotations and additional citations omitted).

In applying the doctrine, a district court must first determine whether a federal and state

action are "parallel." *In re Brooks Automation, Inc. Derivative Litig.*, No. 06–10943–RWZ, 2006

WL 8209202, at *1 (D. Mass. Dec. 22, 2006), citing *Dittmer v. County of Suffolk*, 146 F.3d 113,

118 (2d Cir. 1988). "Suits are parallel when substantially the same parties are

contemporaneously litigating substantially the same issue in another forum." *Day v. Union Mines*

*Inc.*, 862 F.2d 652, 655 (7th Cir. 1988) (internal quotations omitted).  But, "the presence of

parallel litigation in state court will not in and of itself merit abstention in federal court." *Jimenez*

*v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (citing *McClellan v. Carland*, 217 U.S. 268,

282 (1910)). "Instead, the court must also find that exceptional circumstances must exist." *Wang-*

*Yan, supra,* at *4, citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 14

(1983).

"A non-exhaustive list of factors for courts to consider includes: (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction." *Id.*, citing *Rio Grande Cmty. Health Ctr. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005). Ultimately, "the decision whether to dismiss [or stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16.

First, the two actions are not parallel. The parties differ. And, as set forth above, the issues the respective parties are litigating – Ms. White challenging Ally's pre-sale notices under the Massachusetts UCC and RISA for omitting the fair market value formula, and the Haskins Plaintiffs challenging Ally's pre-sale and post-sale notices for being misleading with respect to debt acceleration – differ. The certified class in the Haskins Litigation (a nationwide class and Missouri subclass of borrowers) and the proposed class in this case (only Massachusetts borrowers) also differ.  *In re Celexa and Lexapro Marketing and Sales Practices Litigation*, MDL No. 09–02067–NMG, 2014 WL 108197, at *4 (D.Mass. Jan. 10, 2014) (finding defendant could not demonstrate that two pending class cases were sufficiently parallel because "the class certified by the Missouri court include[d] only purchasers of Celexa while the proposed federal class would include purchasers of both Celexa and Lexapro"). Accordingly, the two actions are not parallel.

Nor has Ally demonstrated that, using the eight factors identified by the First Circuit, there are exceptional circumstances warranting a stay.  By failing to address them, Ally concedes that the first, second, fifth, and seventh factors are neutral and/or do not weigh in favor of abstention. Consequently, half of the factors weigh in favor of this Court retaining jurisdiction. *See, e.g., Harnage v. Dzurenda*, 176 F.Supp.3d 40, 49 (D.Conn. 2016) ("[w]here a factor is neutral, the factor weighs in favor of the retention of jurisdiction by the federal court").

Ally only contends that the third, fourth, and sixth factors weigh in favor of and require abstention. Ally is wrong. With respect to the third factor, given that the factual and legal issues in both cases differ, particularly as to the RISA's fair market value protections, there is minimal risk of piecemeal litigation. *See, e.g., LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir.1989) ("Piecemeal litigation occurs when different tribunals consider *the same issue*, thereby duplicating efforts and possibly reaching different results") (emphasis added); *Harnage, supra*, at 49 (concluding that defendant had "not demonstrated exceptional circumstances that would warrant declining jurisdiction" even where "avoidance of piecemeal litigation may weigh lightly against retaining jurisdiction because allowing the federal action to proceed may result in the same facts and issues being litigated in state and federal court" and "discern[ing] no reason why the state court cannot adequately protect [the plaintiff's] rights").

As to the fourth factor, while the Missouri court in the Haskins Litigation first gained jurisdiction, this factor turns on "how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. And here, both actions have been pending for multiple years, and this Court has expended significant resources addressing Plaintiff's complaint and various motions filed by the parties, including Ally's motion to dismiss. Moreover, post-certification, this action could be resolved quickly on a motion for summary judgment, as the Court need only determine

the legality of the form post-repossession notices sent to all class members. The fourth factor, then, "does not clearly weigh in either direction." *Harnage*, *supra*, at 49 (even where state action seeking injunctive relief was filed first and state court had denied motion for summary judgment, noting that later-filed federal action had "expended substantial time and resources on the initial review of the complaint and deciding th[e] [present] motion," concluding that "the order of filing and relative progress of the cases does not clearly weigh in either direction").

The sixth factor is, at best, neutral. While Missouri state law provides an opt-out right, it is of little value to Massachusetts borrowers who will not receive complete information about their rights and this case. Massachusetts is one of a few states in the union that require the use of the fair market value formula in calculating post-sale vehicle loan deficiencies. The proposed class notice does not inform Massachusetts borrowers of the Massachusetts-specific rights the settlement purports to release, it does not explain how the cash payments (an average of $175 before attorneys' fees and costs) will be calculated, and it does not even inform Massachusetts residents of this pending action. *See* Exh. 2, Proposed Class Notice. Moreover, the Haskins settlement only waives a *portion* of Massachusetts borrowers' deficiencies and extinguishes their defenses to any future deficiency action brought by Ally – the notice does nothing to warn the recipients of this issue. Accordingly, while an opt-out right exists, the lack of information in the proposed notice means that the Missouri forum does not adequately protect putative class members' rights.

In sum, Ally fails to meet its heavy burden to demonstrate exceptional circumstances necessitating a stay of this matter.

Respectfully submitted,

GRACIE WHITE,
By her attorneys,

*/s/ Raven Moeslinger*
Raven Moeslinger (BBO# 687956)
Nicholas F. Ortiz (BBO# 655135)
Law Office of Nicholas F. Ortiz, P.C.
50 Congress Street, Suite 540
Boston, MA 02109
(617) 338-9400
rm@mass-legal.com
nfo@mass-legal.com

Elizabeth Ryan (BBO No. 549632)
John Roddy (BBO No. 424240)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
eryan@baileyglasser.com
jroddy@baileyglasser.com

Dated:   April 12, 2021

## CERTIFICATE OF SERVICE

I, Raven Moeslinger, hereby certify that today I caused to be served the within on counsel for the defendant via ECF service.

*/s/ Raven Moeslinger*
Raven Moeslinger