*EXHIBIT 1*

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE ("Agreement"), made on June 24, 2021 ("Execution Date"), subject to final approval by the United States District Court for the District of Massachusetts ("Court"), is between (a) Gracie White f/k/a Gracie Dorneus ("Class Representative"), individually and as the representative of the Class, and (b) Ally Financial Inc. The Class Representative, Ally Financial Inc., and the Class are sometimes individually called a "Party" and collectively called the "Parties." Other capitalized terms are defined in Paragraph 2 or elsewhere in this Agreement.

WHEREAS, the Class Representative is the named plaintiff in the civil action pending before the Court, styled *White v. Ally Financial Inc.*, Case No. 3:18-CV-30143-MGM (the "Litigation"); and

WHEREAS, the Class Representative is asserting claims and seeking relief against Ally for alleged violations of the Uniform Commercial Code as enacted in Massachusetts, and the Massachusetts Motor Vehicle Installment Sales Act, for herself and a class of Persons who had or have Covered Contracts; and

WHEREAS, the Court certified a class in the Litigation by its Order entered April 29, 2021; and

WHEREAS, Class Counsel and Ally's Counsel have investigated the facts relating to the claims alleged and the events and transactions underlying the Litigation, through formal and informal discovery, and have made a thorough study of the legal principles applicable to the claims being asserted against Ally; and

- 1 -

DocuSign Envelope ID: 4BEA8326-6463-4088-AB71-BD2F031182E9

WHEREAS, Ally denies each and all of the claims and allegations of liability or wrongdoing made by the Class Representative in the Litigation, matters involving the certification of the Class, and all other claims and allegations of liability or wrongdoing arising out of, relating to, or connected with any of the conduct, statements, acts, or omissions that have been or could be alleged by the Class against Ally; and

WHEREAS, the Parties and their respective counsel have engaged in substantial arm's-length negotiations, including mediation, about the settlement of the Litigation; and

WHEREAS, the Parties have agreed, subject to final approval by the Court, to fully, finally, and forever settle and resolve the Litigation as among the Class Representative, the Class, and Ally under the terms and provisions of this Agreement; and

WHEREAS, the Class Representative and Class Counsel have concluded that the settlement with Ally reflected in this Agreement is fair, just, equitable, reasonable, adequate, and in the best interests of the Class based upon their comprehensive investigation, study, negotiations, and discovery taken, and considering the contested issues, the legal and factual assertions and defenses of Ally, the expense and time to prosecute the Litigation against Ally through trial, the delays and the risks and costs of further prosecution against Ally, the uncertainties of this complex and protracted litigation, and the benefits to be received by the Class under this Agreement; and

WHEREAS, while maintaining the positions referenced earlier, the Parties have agreed to enter into this Agreement to avoid the further burden, expense, and uncertainty

of protracted litigation and to fully put to rest all controversies as set forth in the Released Claims and the Class Representative Additional Released Claims;

NOW THEREFORE, intending to be legally bound and acknowledging the sufficiency and adequacy of the consideration in this Agreement, the Parties and Class Counsel agree, subject to final approval of this Agreement by the Court, that the Litigation, the Released Claims, and the Class Representative Additional Released Claims against the Released Persons are fully, finally, and forever compromised and settled and will be dismissed with prejudice as against the Released Persons as set forth in this Agreement.

## 1.    Denial of Liability; No Admissions

1.1    As further described in the recitals, the Parties are entering into this Agreement to resolve vigorously disputed claims and allegations that have arisen among them and to avoid the further burden, expense, uncertainty, and risk of protracted litigation.

1.2    None of the following are admissible under Federal Rule of Evidence 408 or any similar rule of evidence or procedure in any applicable jurisdiction or are an admission of liability or wrongdoing by the Parties, any Released Person, or any other Person: (a) this Agreement, any prior drafts of it, or any related correspondence or other communications, (b) the Term Sheet dated May 21, 2021, any prior drafts of it, or any related correspondence or other communications ("Term Sheet"), (c) any term or provision of this Agreement or the Term Sheet, (d) any conduct, statement, or document relating to this Agreement or the Term Sheet, (e) any conduct, statement, or document

relating to settlement negotiations about the Litigation or any claim or allegation relating to the Litigation (whether or not in any mediation session), and (f) any conduct, statement, or document relating to the submission of this Agreement to the Court or requests for its consideration and approval.

1.3     Ally denies each and all of the claims and allegations of liability or wrongdoing made by the Class Representative in the Litigation, the propriety of the certification of the Class for purposes of litigation and trial, and all other claims and allegations of liability or wrongdoing arising out of, relating to, or connected with any of the conduct, statements, acts, or omissions that have been or could be alleged by the Class against Ally.

1.4     Subject to the terms and provisions of this Agreement, the Parties reserve the right to maintain their positions and all of their other rights, remedies, objections, arguments, defenses, and positions.

## 2.     Definitions

The following definitions, in addition to those set forth in other Paragraphs, apply in this Agreement:

2.1     **Ally**. "Ally" means Ally Financial Inc., its direct and indirect subsidiaries, and all of its direct and indirect successors and predecessors (whether by merger, consolidation, reorganization, or otherwise).

2.2     **Ally's Counsel**. "Ally's Counsel" means Nellie E. Hestin, Jared M. DeBona, and the law firm of McGuireWoods LLP, 260 Forbes Avenue, #1800, Pittsburgh, Pennsylvania 15222.

- 4 -

2.3    **Business Day**. "Business Day" means any day other than a Saturday, a Sunday, or a day on which banks in New York, New York, Charlotte, North Carolina, or Boston, Massachusetts are authorized or obligated by law or executive order to be closed.

2.4    **Cash Fund.** "Cash Fund" is defined in Paragraph 4.1.1.

2.5    **Class**. "Class" is defined in Paragraph 3.1 and includes the Class Representative.

2.6    **Class Counsel**. "Class Counsel" means Nicholas F. Ortiz, Raven Moeslinger, and the Law Office of Nicholas F. Ortiz, 50 Congress Street, Suite 540, Boston, Massachusetts 02109 as well as Elizabeth A. Ryan, John J. Roddy, and the law firm of Bailey & Glasser LLP, 176 Federal Street, 5th Floor, Boston, Massachusetts 02110.

2.7    **Class Member Payment**. "Class Member Payment" is defined in Paragraph 15.7.

2.8    **Class Members**. "Class Members" means all Persons, including the Class Representative, who are members of the Class and who have not timely and validly excluded themselves in compliance with procedures established by the Court and set forth in Paragraphs 8.1 and 8.2. If determined as of June 18, 2021, the Class size would be estimated to be approximately 7,220 Class Members on approximately 5,750 Covered Contracts, but as contemplated by Paragraphs 3 and 8, the Class size will not be finally determined until after the Court enters the Preliminary Approval Order and a final order on Opt-Outs.

2.9    **Class Notice**. "Class Notice" means the document in a form substantially the same as that attached as **Exhibit A**.

2.10   **Class Period**. "Class Period" is defined in Paragraph 3.3.

2.11   **Class Representative**. "Class Representative" is defined in the first paragraph of this Agreement.

2.12   **Class Representative Additional Released Claims**. "Class Representative Additional Released Claims" is defined in Paragraph 5.5.

2.13   **Collateral**. "Collateral" means a motor vehicle as defined in M.G.L. c. 255B, § 1, and collateral incidental thereto in which Ally holds or held a security interest under a Covered Contract.

2.14   **Court**. "Court" is defined in the first paragraph of this Agreement.

2.15   **Covered Account**. "Covered Account" is defined in Paragraph 4.2.1.

2.16   **Covered Contract**. "Covered Contract" means any loan, promissory note, financing agreement, or installment sale contract that is or was with, assigned to, or owned by Ally.

2.17   **Covered Tradeline**. "Covered Tradeline" is defined in Paragraph 4.3.1.

2.18   **CRA**. "CRA" is defined in Paragraph 4.3.1.

2.19   **Effective Date**. "Effective Date" is defined in Paragraph 12.

2.20   **Execution Date**. "Execution Date" is defined in the first paragraph of this Agreement.

2.21   **Final Approval Order**. "Final Approval Order" means a final order of the Court consistent with Paragraph 10.1.

DocuSign Envelope ID: 4BEA8326-64C3-4088-AB71-BD2E9311825C

2.22    **Final Hearing**. "Final Hearing" means the hearing to be held by the Court to determine whether this Agreement receives final approval under Federal Rule of Civil Procedure 23(e).

2.23    **Final Hearing Date**. "Final Hearing Date" means the date of the Final Hearing.

2.24    **Final Judgment**. "Final Judgment" means a final judgment of the Court consistent with Paragraph 10.1.

2.25    **Gross Deficiency Waiver Amount**. "Gross Deficiency Waiver Amount" is defined in Paragraph 4.2.1.

2.26    **Gross Settlement Fund**. "Gross Settlement Fund" is the sum of the Cash Fund and the Gross Deficiency Waiver Amount.

2.27    *Haskins* **Settlement**. "*Haskins* Settlement" is defined in Paragraph 4.4.1.

2.28    **Litigation**. "Litigation" is defined in the recitals of this Agreement.

2.29    **Massachusetts Consumer**. "Massachusetts Consumer" is defined in Paragraph 3.1.

2.30    **Net Distributable Settlement Fund**. "Net Distributable Settlement Fund" means the Cash Fund, *plus* any interest earned on the Cash Fund while in the QSF Account, *minus* the sum of any costs of notice and settlement administration, Incentive Award, Fee Award and other deduction from the Cash Fund approved by the Court.

2.31    **Opt-Out**. "Opt-Out" is defined in Paragraph 8.1.

2.32    **Party**. "Party" is defined in the first paragraph of this Agreement.

2.33    **Person**. "Person" means any person or entity of any nature, including any individual, corporation, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or governmental authority. This term includes such a person's or entity's spouses, heirs, predecessors, successors, executors, administrators, trustees, representatives, beneficiaries, assignees, and any Person claiming by, through, or on behalf of the person or entity.

2.34    **Post-Repossession Notice**. "Post-Repossession Notice" is defined in Paragraph 3.1.

2.35    **Preliminary Approval Order**. "Preliminary Approval Order" means an order of the Court consistent with Paragraph 7.

2.36    **QSF**. "QSF" is defined in Paragraph 15.1.

2.37    **QSF Account**. "QSF Account" is defined in Paragraph 4.1.1.

2.38    **Released Claims**. "Released Claims" includes—in addition to any and all defenses, objections, rights, remedies, and benefits that may be derived from applicable law in any jurisdiction that may limit the extent or effect of the releases and other actions in this Agreement—any and all claims, demands, actions, suits, causes of action, cross-claims, counter-claims, rights, offsets, setoffs, debts, obligations, judgments, damages, charges, liens, harm, costs, surcharges, losses, attorneys' fees, expenses, and liabilities of any kind whatsoever, whether class or individual, in law or in equity, or otherwise, for or in connection with any consideration, thing of value, remedy, or relief of any kind whatsoever, whether joint or several, in law or in equity, substantive or nominal, or

DocuSign Envelope ID: 4BEA8326-6463-4088-A874-BD3793182E0

otherwise, including monetary, statutory, general, compensatory, special, liquidated, indirect, incidental, expectation, consequential, aggravated, and punitive damages, injunctive and declaratory relief, rescission, restitution, changes to credit, fees, penalties, fines, attorneys' fees, costs, and expenses, whether known or unknown, alleged or not alleged, suspected or unsuspected, contingent or vested, choate or inchoate, accrued or not accrued, liquidated or unliquidated, matured or not, that any Releasor ever had, now has, or in the future can, shall, or may have, whether individually, representatively, derivatively, or otherwise, from or against any Released Person as of the date of the Preliminary Approval Order that concern, relate to, arise out of, or are connected with the identical factual predicate of any individual or class claims in the Litigation, including any conduct, statement, act, or omission that has been or could be alleged concerning, arising out of, relating to, or connected with any Covered Contract, involving (i) the repossession, surrender to, and control of any Collateral by Ally or any Person on its behalf (regardless of whether the Collateral was subsequently redeemed, returned, or otherwise recovered), (ii) the charging, payment, collection, and attempted collection of amounts relating to any Covered Contract or related account after the repossession by or surrender to Ally of the Collateral (including deficiencies after the sale or other disposition of any Collateral), (iii) any notice or other communication delivered or required to be delivered before, after, or otherwise in connection with the repossession, surrender, control, or sale or other disposition of any Collateral, (iv) any sale or other disposition of any Collateral after the repossession by or surrender to Ally of such Collateral, and (v) the furnishing of information to credit reporting agencies relating to

any Covered Contract or related account and any notices related to such furnishing after the repossession by or surrender to Ally of Collateral. "Released Claims" also includes any claim or other matter of any kind whatsoever (as more fully set forth in the preceding sentence) that concerns, relates to, arises out of, or is connected with (I) any act, omission, or error of a CRA in connection with Paragraph 4.3 or (II) any breach, failure to perform, or other act, omission, or error by any Person other than a Released Person in connection with this Agreement. Excluded from "Released Claims," however, is any claim or other matter whatsoever involving the enforcement of this Agreement against Ally.

2.39   **Released Persons**. "Released Persons" means Ally, and any or all of Ally's direct and indirect and past, present, and future affiliates, divisions, parents, subsidiaries, and related Persons, and any or all of Ally's and their past, present, and future officers, directors, managers, members, partners, shareholders, agents, attorneys, employees, representatives, trustees, heirs, executors, administrators, predecessors, successors, assignees, contractors, vendors, and insurers, and any Person acting or purporting to act on behalf of any of them.

2.40   **Releasors**. "Releasors" means, individually and collectively, the Class Members, for and on behalf of themselves, and any or all of their past, present, and future affiliates, divisions, parents, subsidiaries, and related Persons, and any or all of their past, present, and future officers, directors, managers, members, partners, shareholders, agents, attorneys, employees, representatives, trustees, heirs, executors, administrators, predecessors, successors, assignees, contractors, vendors, and insurers, and any Person acting or purporting to act or claim by, through, or on behalf of any of them, in each case

- 10 -

whether they object to this Agreement, the Preliminary Approval Order, the Final Approval Order, or the Final Judgment, whether they receive actual notices or other communications in connection with any of the foregoing, or whether they receive, realize, or derive any funds, property, benefit, or thing of value from any of the foregoing or the Cash Fund, the Gross Deficiency Waiver Amount, or any other consideration described in this Agreement. Excluded from "Releasors," however, are any Persons who timely and validly exclude themselves in compliance with procedures established by the Court and Paragraphs 8.1 and 8.2.

2.41 **Settlement Administrator**. "Settlement Administrator" means, subject to Court approval, First Class, Inc., which was engaged by the Class Representative and Class Counsel in consultation with Ally.

2.42 **Settlement Website.** "Settlement Website" means the website that the Settlement Administrator will establish no later than thirty (30) days after entry of the Preliminary Approval Order as a means for the Class Members to obtain notice of and information about the settlement reflected in this Agreement, through and including the operative complaint in the Litigation, this Agreement, the Class Notice, the Preliminary Approval Order, any applications for an Incentive Award or Fee Award, and other documents that Class Counsel and Ally's Counsel agree to post or that the Court orders posted on the website. These documents must remain on the Settlement Website until sixty (60) days after the Effective Date. The URL of the Settlement Website will be www.allymassclass.com or such other URL as Class Counsel and Ally's Counsel may subsequently agree upon in writing. Ownership of the Settlement Website URL will be

fully assigned, by operation of this Agreement without further action, and transferred to Ally ninety (90) days after the Effective Date.

2.43    **Term Sheet**. "Term Sheet" is defined in Paragraph 1.2.

**3.    The Class**

3.1    **Definitions.** The "Class" means and is composed of every Massachusetts Consumer to whom, during the Class Period, Ally sent a notice substantially similar to the kind of notice attached as Exhibit A to the Second Amended Complaint (i.e., a notice that did not use the term "fair market value") after the voluntary or involuntary repossession of Collateral (the "Post-Repossession Notice"). "Massachusetts Consumer" means any Person who was named as a borrower, co-borrower, obligor, co-obligor, buyer, co-buyer, purchaser, co-purchaser, guarantor, owner, or co-owner in a Covered Contract that was entered into in Massachusetts.

3.2    **Exclusions.** Excluded from the Class is any Person (a) whose Covered Contract contained a choice-of-law provision selecting the law of a state or jurisdiction other than Massachusetts, (b) who filed a Chapter 7 bankruptcy petition after Ally sent a Post-Repossession Notice to the Person and whose bankruptcy case ended in a discharge during the Class Period, (c) who filed a Chapter 13 bankruptcy petition after Ally sent a Post-Repossession Notice to the Person and whose bankruptcy case is still pending as of the date of the Preliminary Approval Order or ended in a discharge during the Class Period, or (d) against whom Ally obtained a deficiency judgment during the Class Period.

3.3    **Class Period.** The "Class Period" is the period from and after July 16, 2014, to and including the date of the Preliminary Approval Order.

4.     **Settlement Consideration from Ally.**  In consideration of the settlement reflected in this Agreement (including Paragraph 5), Ally will provide the following:

4.1     **Cash Fund**.

4.1.1   Ally will pay a total of five million U.S. dollars ($5,000,000) (the "Cash Fund") as follows. Within ten (10) Business Days after the later of (a) entry of the Preliminary Approval Order and (b) receipt by Ally's Counsel of written confirmation of the establishment of the QSF Account, written wiring instructions for the QSF Account, and a completed W-9 Tax Form from Class Counsel and the Settlement Administrator, Ally will deliver fifty thousand U.S. dollars ($50,000) by wire transfer to a qualified settlement fund account (within the meaning of 468B-1 of the Treasury Regulations (26 C.F.R. § 1.468B-1)) established by Class Counsel and the Settlement Administrator in accordance with Paragraph 15 (the "QSF Account"), to be used by the Settlement Administrator solely to pay costs of notice as described in Paragraph 7.4. Within ten (10) Business Days after the Effective Date, Ally will deliver the remaining four million, nine-hundred-and-fifty thousand U.S. dollars ($4,950,000) of the Cash Fund by wire transfer to the QSF Account.

4.1.2   Under no circumstances will Ally be required to pay any amount in addition to the Cash Fund under the terms and provisions of this Agreement.

4.2     **Deficiency Waiver**.

4.2.1   Within forty-five (45) days after the Effective Date, Ally will waive and forgive all alleged deficiency balances that Ally's records reflect as

outstanding as of the Effective Date (the "Gross Deficiency Waiver Amount") on the accounts of all Class Members whose vehicles were voluntarily or involuntarily repossessed and disposed of on or before the date of the Preliminary Approval Order (collectively, the "Covered Accounts"). If determined as of June 18, 2021, that amount would be estimated to be approximately eleven million, one hundred thousand U.S. dollars ($11,100,000), but as contemplated by the first sentence of this Paragraph 4.2.1, the Gross Deficiency Waiver Amount will not be finally determined until after the Effective Date. Ally will not seek to collect from Class Members any of the deficiency balances in Covered Accounts described in the first sentence of this Paragraph 4.2.1 during the 45-day period after the Effective Date. This Paragraph 4.2.1 will not apply to Class Members described in Paragraph 16.18.

4.2.2   The Class Representative contends that any alleged deficiency balances of Class Members whose vehicles were voluntarily or involuntarily repossessed and disposed of never arose due to the alleged failure of Ally to comply with applicable Massachusetts law. Ally disagrees with the Class Representative's contention. The agreement reflected in Paragraph 4.2.1 is a settlement of a contested liability.

4.3   **Credit Reporting**.

4.3.1   Within forty-five (45) days after the Effective Date, Ally will request that each of the three national consumer credit reporting agencies to whom Ally furnishes information (Experian, Equifax, and TransUnion, each a "CRA") delete

DocuSign Envelope ID: 4BEA8326-6463-4088-AB74-BB37931482F0

any trade line reported to the CRA with respect to a Covered Account (each a "Covered Tradeline"). Except as described in Paragraph 4.3.2, Ally will cease furnishing information on the Covered Tradelines to the CRAs on and after the date of transmittal of the deletion requests to the CRAs as described in this Paragraph 4.3.1. This Paragraph 4.3.1 will not apply to Class Members described in Paragraph 16.18.

  4.3.2 The Parties acknowledge that no CRA is affiliated with or otherwise under the control of Ally, that Ally cannot, and does not, guarantee, warrant, or otherwise take responsibility for any CRA acting on the deletion requests described in Paragraph 4.3.1 or deleting any Covered Tradeline as so requested, and that a significant amount of time may pass before any CRA may act on the deletion requests described in Paragraph 4.3.1. If a Class Member notifies Ally in writing after the date that is ninety (90) days after the deletion requests described in Paragraph 4.3.1 were transmitted that a CRA did not delete the Class Member's Covered Tradeline as so requested, Ally will submit, one time, a "Universal Data Form" or similar request to the CRA to delete the Class Member's Covered Tradeline. Such a notice from a Class Member to Ally may be sent to Ally by email to: WhiteCreditBureauInquiry@ally.com or by U.S. Mail to: Executive Customer Relations, c/o White Class Action Settlement, 500 Woodward Avenue, Tenth Floor, Detroit Michigan 48226. No act, omission, or error by any CRA will constitute a breach of this Agreement by Ally.

4.4 *Haskins* **Settlement**.

- 15 -

4.4.1   A class settlement is currently pending in *Ally Financial Inc. v.*
*Haskins*, Case No. 16JE-AC01713-01, Jefferson County Circuit Court (the "*Haskins*
Settlement"). If the settlement reflected in this Agreement becomes effective as
described in Paragraph 12, Ally will not enforce the release in the *Haskins*
Settlement (if the *Haskins* Settlement is finally approved and effective) against
Class Members. As a result, if both the settlement reflected in this Agreement and
the *Haskins* Settlement become finally approved and effective, any Class Member
who participates in the *Haskins* Settlement may still participate fully in, and receive
the benefits and obligations of, the settlement reflected in this Agreement
(including the releases in this Agreement), but will not be subject to the *Haskins*
Settlement release. If the settlement reflected in this Agreement does not become
effective as described in Paragraph 12, however, and the *Haskins* Settlement does,
Ally reserves its right to claim that the *Haskins* Settlement release should be
enforced against members of the class certified in this Litigation. Further, in the
event that the settlement reflected in this Agreement does not receive final
approval as described in Paragraph 10.1 due to a Class Member objection or a
Court concern about particular terms or provisions of the settlement reflected in
this Agreement, the Parties agree to negotiate in good faith, including engaging a
mediator if needed, to revise only such terms or provisions as are necessary to
address the objection or concern that led to disapproval, leaving the remainder of
the terms and provisions as they are, and to then resubmit the Agreement, as
amended, for Court approval.

DocuSign Envelope ID: 4BEA8326-6463-4088-A874-BD37931482E0

4.5     **No Other Consideration Given**.  This Paragraph 4 describes all of the consideration that Ally will provide for the settlement reflected in this Agreement (including Paragraph 5).

5.     **Releases**

5.1     On the Effective Date and in consideration of the settlement reflected in this Agreement (including Paragraph 4), by operation of this Agreement, the Final Approval Order, and the Final Judgment and without further action by the Court or any other Person, each of the Releasors (a) fully, finally, and forever waives, releases, relinquishes, and discharges the Released Persons of all Released Claims; (b) consents to the dismissal with prejudice of the Litigation and all Released Claims against the Released Persons; (c) consents to be permanently enjoined and barred from initiating or prosecuting any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim; and (d) agrees and covenants not to sue or otherwise initiate or prosecute any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim.

5.2     The Parties acknowledge that the Final Approval Order and the Final Judgment will incorporate the injunctions, covenants not to sue, and related provisions of this Paragraph 5 and that a Released Person may apply to a court for remedies against any Releasor who violates the Final Approval Order or the Final Judgment, including

further equitable relief, monetary damages and other relief (such as attorneys' fees and expenses), and a remedial order of contempt.

5.3    After the Effective Date, a Releasor may discover material or immaterial legal or factual matters other than or different from those that the Releasor understood or believed as of the Effective Date, but regardless of the reason for the discovery or the legal or factual matter so discovered, the scope, effect, operative finality, and enforceability of all of this Paragraph 5 will not be limited or otherwise affected in any manner whatsoever.

5.4    On the Effective Date, by operation of this Agreement, the Final Approval Order, and the Final Judgment and without further action by the Court or any other Person, each of the Releasors waives, releases, relinquishes, and discharges, to the fullest extent permitted by law, the rights, remedies, and benefits of California Civil Code section 1542 and all similar state, local, or federal statutes and other laws. California Civil Code section 1542 provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

5.5    On the Effective Date and in consideration of the settlement reflected in this Agreement (including Paragraph 4), by operation of this Agreement, the Final Approval Order, and the Final Judgment and without further action by the Court or any other Person, the Class Representative further (a) fully, finally, and forever waives, releases,

DocuSign Envelope ID: 4BEA8326-6463-4088-A871-BB37931482F0

relinquishes, and discharges the Released Persons of—in addition to any and all defenses, objections, rights, remedies, and benefits that may be derived from applicable law in any jurisdiction that may limit the extent or effect of the releases and other actions in this Agreement—any and all claims, demands, actions, suits, causes of action, cross-claims, counter-claims, rights, offsets, setoffs, debts, obligations, judgments, damages, charges, liens, harm, costs, surcharges, losses, attorneys' fees, expenses, and liabilities of any kind whatsoever, whether class or individual, in law or in equity, or otherwise, for or in connection with any consideration, thing of value, remedy, or relief of any kind whatsoever, whether joint or several, in law or in equity, substantive or nominal, or otherwise, including monetary, statutory, general, compensatory, special, liquidated, indirect, incidental, expectation, consequential, aggravated, and punitive damages, injunctive and declaratory relief, rescission, restitution, changes to credit, fees, penalties, fines, attorneys' fees, costs, and expenses, whether known or unknown, alleged or not alleged, suspected or unsuspected, contingent or vested, choate or inchoate, accrued or not accrued, liquidated or unliquidated, matured or not, that the Class Representative ever had or now has, whether individually, representatively, derivatively, or otherwise, from or against any Released Person (the "Class Representative Additional Released Claims"); (b) consents to the dismissal with prejudice of the Litigation and all Class Representative Additional Released Claims against the Released Persons; (c) consents to be permanently enjoined and barred from initiating or prosecuting any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Class

- 19 -

Representative Additional Released Claim; and (d) agrees and covenants not to sue or otherwise initiate or prosecute any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Class Representative Additional Released Claim.

5.6     As to the Class Representative only, on the Effective Date, Ally releases the Class Representative individually and forever discharges her from any and all claims, liens, demands, causes of action, obligations, damages, and liabilities, known or unknown, that Ally may have had in the past, or now has.

## 6.     Incentive Awards, Attorney Fees, and Expenses

6.1     The Class Representative may petition the Court for an incentive award in recognition of services rendered to benefit the Class throughout the Litigation ("Incentive Award"). Any Incentive Award will be payable solely from the Cash Fund, will be deducted from the Cash Fund in calculating the Net Distributable Settlement Fund available to Class Members, and will be distributed by the Settlement Administrator to the Class Representative with her Class Member Payment as described in Paragraph 15. Ally will not object to the Class Representative's petition for or receipt of an Incentive Award in an amount not to exceed seven thousand five hundred U.S. dollars ($7,500). Any application for an Incentive Award must be filed with the Court and posted to the Settlement Website no later than forty-five (45) days after the Class Notice is sent and at least fifteen (15) days prior to the deadline to object to the Agreement.

6.2     Class Counsel and the Class Representative may petition the Court for an award of reasonable attorneys' fees and expenses ("Fee Award"). Any Fee Award will be

payable solely from the Cash Fund, will be deducted from the Cash Fund in calculating the Net Distributable Settlement Fund available to Class Members, and will be distributed by the Settlement Administrator to Class Counsel as described in Paragraph 15. Ally will not object to a petition by Class Counsel and the Class Representative for or Class Counsel's receipt of a Fee Award in an amount up to two million, five hundred thousand U.S. dollars ($2,500,000). That amount as a percentage of the Gross Settlement Fund, if the Gross Settlement Fund were determined as of June 18, 2021, would be estimated to be approximately 15.5%, but as contemplated by Paragraph 4, the Gross Settlement Fund will not be finally determined until after the Effective Date. Any application for a Fee Award must be filed with the Court and posted to the Settlement Website no later than forty-five (45) days after the Class Notice is sent and at least fifteen (15) days prior to the deadline to object to the Agreement.

6.3    Except as provided in this Paragraph 6, each Party will bear its own attorneys' fees, costs, and expenses in the prosecution, defense, and settlement of the Litigation.

6.4    Paragraphs 6.1 and 6.2 are severable from the remainder of this Agreement. This Agreement will be fully effective even if the Court denies any Incentive Award or Fee Award or approves such awards in amounts less than Class Counsel or the Class Representative request.

## 7.    Preliminary Approval Order

Within five (5) days after the Execution Date, after consulting with and providing a reasonable opportunity for comment by Ally's Counsel, the Class Representative and

Class Counsel will prepare and file a motion with the Court for a Preliminary Approval Order that is in a form agreed on by Class Counsel and Ally's Counsel and that:

7.1     Preliminarily approves this Agreement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e), subject to a final determination by the Court;

7.2     Approves the Class Notice to be sent to Class Members and to be posted on the Settlement Website;

7.3     Approves the appointment of the Settlement Administrator;

7.4     Directs the Settlement Administrator to (a) mail the Class Notice by first class mail within thirty (30) days after Ally provides the information described in the first sentence of Paragraph 14.1, and (b) post the Class Notice and other documents, including the Settlement Agreement and Preliminary Approval Order on the Settlement Website within thirty (30) days after the Court enters the Preliminary Approval Order;

7.5     Establishes a procedure consistent with Paragraph 8 of this Agreement for Class Members to request to be excluded from the Class, and sets a specific deadline after the date when Class Notices are mailed, after which no Class Member may request to be excluded from the Class;

7.6     Establishes a procedure consistent with Paragraph 9 of this Agreement for Class Members to appear and object to the settlement reflected in this Agreement, and sets a specific deadline after the later of (a) the date when the Class Notices are mailed or (b) the date when Class Counsel and the Class Representative file their motions for approval of any Incentive Award and Fee Award as provided in Paragraphs 6.1 and 6.2, or such other date as the Court directs, after which no Class Member may object;

7.7     Sets the Final Hearing Date at least fifteen (15) days after the deadline for Opt-Out requests and at least fifteen (15) days after the deadline for objections;

7.8     Authorizes the establishment of the QSF and the QSF Account;

7.9     Stays all other proceedings in the Litigation;

7.10     Preliminarily enjoins Class Members after the deadline for Opt-Out requests from initiating or prosecuting any other action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim, pending the entry of the Final Approval Order and the Final Judgment or a final order denying approval of this Agreement; and

7.11     Preliminarily enjoins the Class Representative from initiating or prosecuting any other action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Released Claim or Class Representative Additional Released Claim, pending the entry of the Final Approval Order and the Final Judgment or a final order denying approval of this Agreement.

## 8.     Opt-Outs

8.1     The Preliminary Approval Order will set a deadline for Class Members to request to be excluded from the Class ("Opt-Out"). Any Opt-Out request from a Class Member must (a) be in writing, (b) signed by the Class Member and all other Class Members on the applicable Covered Contract, (c) state the name, address, telephone number, account number, and last four digits of the Social Security Number of the Class

Member and all other Class Members on the applicable Covered Contract, (d) include a statement that the Class Member and all other Class Members on the applicable Covered Contract request to Opt-Out of the Class, and (e) include a reference to "*White v. Ally Financial Inc.*, Case No. 3:18-CV-30143-MGM." No Opt-Out request from a Class Member may be submitted or signed by an actual or purported agent or attorney acting on behalf of the Class Member, except in the case of a deceased Class Member, the Opt-Out request may be submitted and signed by an executor or similar administrator for the Class Member's estate if accompanied by a death certificate and proof of appointment. No Opt-Out request may be submitted on behalf of a group of Class Members, except that a single Opt-Out request may be submitted and signed by all Class Members on a single Covered Contract. Class Counsel will cause the Settlement Administrator to send each Opt-Out request to Class Counsel and Ally's Counsel via email within two (2) Business Days after receiving the request.

8.2 To be timely and effective, any Opt-Out request from a Class Member must comply with Paragraph 8.1, be mailed to the Settlement Administrator at the address designated in the Class Notice, and be postmarked on or before the deadline set forth in the Preliminary Approval Order. Each Class Member who does not submit an Opt-Out request that complies with this Paragraph 8 will be fully, finally, and forever a Class Member included in the Class and bound by the settlement reflected in this Agreement if approved by the Court. Class Counsel and Ally's Counsel will provide to the Court, on or before the Final Hearing Date, a list of all Persons, by reference to a unique identifier

and last four digits of the Person's Social Security Number, who have timely submitted a

valid Opt-Out request.

8.3     If Opt-Out requests result in the exclusion of 5% or more of the Class from

the settlement reflected in this Agreement, Ally, in its sole and absolute discretion, may

elect to rescind this Agreement, with effects as further described in Paragraph 13.

8.4     Ally may elect to exercise the unilateral rescission right described in

Paragraph 8.3 by delivering written notice to Class Counsel on or before the date that is

ten (10) Business Days after Ally's receipt of written notice of all timely and valid Opt-

Out requests following the deadline for Opt-Out requests set forth in the Preliminary

Approval Order.

## 9.     Objections to Settlement or Incentive or Fee Awards

9.1     Any Class Member who has not timely and validly Opted Out of the Class

under Paragraph 8 may object, at the Class Member's own expense, to Court approval of

this Agreement or any requested Incentive Award or Fee Award. Such an objection must

(a) be in writing, (b) be filed with the Court and served on Class Counsel and Ally's

Counsel at the addresses set forth in Paragraph 2 on or before the deadline set forth in

the Preliminary Approval Order, and (c) include (i) the objecting Class Member's name,

address, telephone number, account number, email address (if available), and last four

digits of the Class Member's Social Security Number, (ii) if the objecting Class Member is

represented by counsel, the name, address, telephone number, and email address (if

available) of the counsel, (iii) a specific statement of each objection asserted, (iv) a

description of any facts or legal authorities on which each objection is based, (v) all

- 25 -

documents and other evidence on which the objecting Class Member intends to rely, including any expert's opinions and the factual and substantive bases for those opinions, (vi) the name, address, telephone number, and email address (if available) of each expert and each witness on whose testimony the objecting Class Member intends to rely, (vii) a statement whether the objecting Class Member intends to appear at the Final Hearing in person or through the designated counsel, (viii) for Class Members represented by counsel, the name, court, and docket number associated with any other class-action settlement where the objecting Class Member has objected or provided legal assistance with respect to an objection, or the Class Member's counsel has appeared as an objector's attorney or provided legal assistance with respect to an objection; (ix) state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and (x) a reference to "*White v. Ally Financial Inc.*, Case No. 3:18-CV-30143-MGM."

9.2     An objecting Class Member need not attend the Final Hearing for the Class Member's objection to be considered. However, any Class Member who fails to comply with Paragraph 9.1 will have waived any objection and will forever be barred from making any objection, unless otherwise excused by the Court for good cause shown.

**10.     Final Approval Order, Final Judgment, and Final Accounting**

10.1    If the Preliminary Approval Order is entered by the Court and Ally does not exercise its unilateral rescission right under Paragraph 8.3, the Class Representative and Class Counsel—appropriately in advance of the Final Hearing Date and after consulting with and providing a reasonable opportunity for comment by Ally's Counsel—will prepare and file a motion with the Court requesting entry of a Final

DocuSign Envelope ID: 4BEA8326-6463-4088-A871-BD37931482E0

Approval Order and a Final Judgment that are in forms agreed on by Class Counsel and

Ally's Counsel and that, in each case as applicable:

(a)     Confirms the certification of the Class and the appointment of the

Class Representative as representative of the Class for purposes of the settlement

reflected in this Agreement;

(b)     Approves this Agreement as fair, reasonable, and adequate and in

the best interest of the Class;

(c)     Finds that the Class Notice and the procedures involving notice to

Class Members constituted due, adequate, and sufficient notice of the settlement

reflected in this Agreement and meet all of the requirements of due process and

the Federal Rules of Civil Procedure;

(d)     Finds that the notice required by the Class Action Fairness Act (28

U.S.C. § 1715) was served by Ally;

(e)     Declares that all Releasors are bound by Paragraph 5, and orders the

Parties, Class Counsel, and the Settlement Administrator to carry out this

Agreement's terms and provisions;

(f)     Fully dismisses the Litigation with prejudice;

(g)     Orders that the Releasors are permanently enjoined and barred from

initiating or prosecuting any action, suit, or proceeding in any forum or before any

governmental authority, either individually or as part of or on behalf of a class or

in any other capacity, based on or alleging any Released Claim;

- 27 -

(h)     Orders that the Class Representative is further permanently enjoined and barred from initiating or prosecuting any action, suit, or proceeding in any forum or before any governmental authority, either individually or as part of or on behalf of a class or in any other capacity, based on or alleging any Class Representative Additional Released Claim;

(i)     Reserves continuing and exclusive jurisdiction over this Agreement, the settlement reflected in this Agreement, the QSF, and the QSF Account, including their administration, enforcement, and consummation; and

(j)     Incorporates Paragraph 13 of this Agreement and contains such other terms and provisions consistent with this Agreement as the Court may deem advisable.

10.2    The Settlement Administrator and Class Counsel will file a final accounting with the Court within three hundred fifty (350) days after the Effective Date. The final accounting will include a summary of all distributions of the Cash Fund.

**11.    Certifications to the Court**

11.1    On or before the Final Hearing Date, Class Counsel will file with the Court an affidavit from the Settlement Administrator verifying that, as ordered by the Court, (a) the Court-approved Class Notices have been duly sent by first-class mail to the Class Members, and (b) the Class Notice and other settlement documents have been duly posted on the Settlement Website and have been accessible to the Class Members.

- 28 -

11.2    On or before the Final Hearing Date, Class Counsel will file with the Court an affidavit from the Settlement Administrator verifying that the procedures for returned Class Notices in Paragraph 14.3 have been fully performed.

**12.    Effectiveness of this Agreement.**

The "Effective Date" of this Agreement will be the date on which all of the following conditions have occurred without Ally having exercised its right of rescission under Paragraph 8.3:

12.1    This Agreement has been executed and delivered by the Class Representative, Class Counsel, and Ally Financial Inc.; and

12.2    The Preliminary Approval Order has been entered by the Court as required by Paragraph 7; and

12.3    The Court-approved Class Notices have been duly mailed to Class Members as ordered by the Court; and

12.4    The Final Approval Order and the Final Judgment have been entered by the Court as required by Paragraph 10.1 without material change (excluding changes affecting any Incentive Award or Fee Award or any matter for which Ally is not liable under Paragraph 15.14); and

12.5    The Final Approval Order and the Final Judgment required by this Agreement have become final (whether after original entry or after any remand and subsequent entry) because (a) no appeal has been filed and the time for commencing any appeal has expired, or (b) an appeal has been filed and either (i) the appeal has not been accepted or has been dismissed, and any time for commencing any further appeal has

DocuSign Envelope ID: 4BEA8326-6463-4088-AB74-BD37931182E0

expired, or (ii) the Final Approval Order and the Final Judgment have been affirmed in their entirety in all respects material to the Parties (including the settlement consideration from Ally in Paragraph 4 and the releases in Paragraph 5 but excluding any Incentive Award or Fee Award), and any time for commencing any further appeal has expired. An appeal of any Incentive Award or Fee Award or an appeal relating to any obligation, responsibility, interest, or liability for which Ally has no obligation, responsibility, interest, or liability under Paragraph 15.14, however, will not prevent or otherwise affect the Final Approval Order and the Final Judgment from being final and the Effective Date from occurring under this Agreement. For purposes of this Paragraph, an appeal includes a motion to reconsider, an appeal as of right, a discretionary appeal, an interlocutory appeal, a proceeding involving a writ (including a writ of certiorari, mandamus, or prohibition), and any other proceeding of a similar kind.

13.    **Failure of Condition**

If a condition described in Paragraph 12 is not and cannot reasonably be satisfied, this Agreement, the Term Sheet, and all of the orders and judgments entered or to be entered under this Agreement or the Term Sheet will be void *ab initio* and totally vacated, abrogated, and annulled so as to return the Parties to their positions before the execution of this Agreement and the Term Sheet as if neither had been executed, with all the pre-settlement rights, remedies, objections, arguments, defenses, and positions of each Party fully restored. In addition, in such a case, this Agreement, the Term Sheet, and all matters arising out of, relating to, or connected with any of them (including the matters described in Paragraph 1.2) will be without prejudice to the Parties, matters described in Paragraph

DocuSign Envelope ID: 4BEA8326-8463-4088-AB74-BD3793148250

1.2 will not be admissible, an admission of, or used against any Party, and no doctrine of waiver, estoppel, or preclusion will be asserted in the Litigation or any other action, suit, or proceeding of any kind.

**14.     Class Notice**

14.1     Within ten (10) Business Days after the Court enters the Preliminary Approval Order, Ally will provide the Settlement Administrator with an electronic list of Class Members and their last known addresses. Within thirty (30) days after the Court enters the Preliminary Approval Order, Ally will provide the Settlement Administrator with an electronic list showing for each Class Member's Covered Contract: the name of the borrower(s), last known mailing address(es), the amount of any deficiency payments made as of the date of entry of the Preliminary Approval Order, any deficiency balance as reflected in Ally's records as of the date of entry of the Preliminary Approval Order, and the amount of the finance charge and amount financed as stated on the Covered Contract. Also within thirty (30) days after the Court enters the Preliminary Approval Order, Ally will produce to the Settlement Administrator and Class Counsel, as to the Class as a whole: the total number of Class Members, the total number of Covered Contracts, the aggregate amount of finance charges, the aggregate amounts financed, the aggregate amount of deficiency balances as reflected in Ally's records as of the date of entry of the Preliminary Approval Order, and the aggregate amount of deficiency payments as of the date of entry of the Preliminary Approval Order on the Covered Contracts for the Class.   Ally will promptly respond to reasonable questions the

Settlement Administrator may have concerning the information provided under this Paragraph 14.1.

14.2    Within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator will post the Court-approved Class Notice on the Settlement Website. Within thirty (30) days after Ally provides the Class Member information to the Settlement Administrator as described in the first sentence of Paragraph 14.1, the Settlement Administrator will mail the Court-approved Class Notice to each Class Member by first-class mail. The envelopes for mailing the Class Notice will be marked "address correction requested."

14.3    If any Class Notice is returned by the United States Postal Service, the Settlement Administrator will re-mail the Class Notice by first-class mail to any new address of the Class Member disclosed by the United States Postal Service. If a Class Notice is returned without a new address, Ally will provide the Settlement Administrator with the Class Member's social security number for the purposes of performing a skip trace, and the Settlement Administrator will re-mail the Class Notice to the Class Member by first-class mail to the new address identified through the skip trace. The Settlement Administrator will have no obligation to take any further action to mail a Class Notice to a Class Member if the skip trace does not identify a new address for the Class Member or if any Class Notice mailed after the skip trace is returned by the United States Postal Service without a new address.

14.4    Subject to entry of the Final Approval Order and the Final Judgment (including a finding in substance similar to the one described in Paragraph 10.1(c)), none

of the following will prevent or delay a Class Member under Paragraph 8.2 from being fully, finally, and forever a Class Member included in the Class and bound by the settlement reflected in this Agreement (including Paragraph 5): actual receipt of a Class Notice, or actual notice or knowledge of the Litigation, this Agreement, the Preliminary Approval Order, the Final Approval Order, or the Final Judgment.

## 15.   Character and Distribution of the Cash Fund

15.1    The Cash Fund delivered by Ally under Paragraph 4.1.1 will be maintained as a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended. The Settlement Administrator will be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

15.2    Upon establishment of the QSF, the Settlement Administrator will apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

15.3    If requested by either Ally or the Settlement Administrator, the Settlement Administrator and Ally will cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

15.4    Class Counsel's engagement of the Settlement Administrator will require the Settlement Administrator to file, on behalf of the QSF, all required federal, state, and local tax returns, information returns, and tax withholdings statements under Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(1)(2)(ii).

15.5    Subject to any needed supervision and direction by the Court, the Settlement Administrator will be responsible for and will administer and oversee the distribution of the Cash Fund under the terms and provisions of this Agreement.

15.6    Payments to Class Members will be made from the Net Distributable Settlement Fund and calculated as follows: (a) Class Members who made payments toward their deficiency balances on Covered Accounts after disposition of their Collateral will be refunded those payments from the Net Distributable Settlement Fund, and (b) any balance of the Net Distributable Settlement Fund remaining after the application of clause (a) will be divided equally among all Covered Contracts and paid to the corresponding Class Members from the Net Distributable Settlement Fund.

15.7    Within five (5) Business Days after receipt of the complete Cash Fund in the QSF Account, the Settlement Administrator will distribute any Incentive Award, any Fee Award, and the Net Distributable Settlement Fund consistent with the Final Approval Order and the Final Judgment. Such distributions to the Class Members from the Net Distributable Settlement Fund are referred to as the "Class Member Payments."

15.8    The Settlement Administrator will distribute the Class Member Payments by checks mailed to the Class Members. Class Members need not submit claims in order to receive Class Members Payments. If any check is returned by the United States Postal Service, the Settlement Administrator will re-mail the check to any new address of the Class Member disclosed by the United States Postal Service.

15.9    Following the expiration of one hundred and twenty (120) days after the date of first mailing, all initially issued checks that have not been cashed will be deemed

void.  The Settlement Administrator will cause the checks to be issued with the check voiding time period on the face of the checks.

15.10   The Settlement Administrator will, promptly after stopping payment on all uncashed checks under Paragraph 15.9, make a secondary distribution of the remaining balance of the Net Distributable Settlement Fund, after deduction of any administrative costs, stop payment fees on uncashed checks, and other charges incurred in reissuing checks, only if that remaining balance exceeds one hundred thousand U.S. dollars ($100,000). This secondary distribution, if made, will be allocated and made by sending checks, in equal amounts, to all Class Members who cashed previously issued checks. If the remaining balance of the Net Distributable Settlement Fund, after deduction of any administrative costs, stop payment fees on uncashed checks, and other charges incurred in reissuing checks, would not exceed one hundred thousand U.S. dollars ($100,000), the remaining balance of the Net Distributable Settlement Fund, after deduction of any administrative costs and stop payment fees on uncashed checks, will be allocated to a *cy pres* recipient to be agreed upon by the Parties and approved by the Court. In the absence of agreement, the Parties will each select a *cy pres* recipient to receive fifty percent (50%) of the residue consistent with the standards for approval of *cy pres* recipients in the federal courts.

15.11   Following the expiration of one hundred and twenty (120) days after the date of any secondary distribution under Paragraph 15.10, all secondary-distribution checks that have not been cashed will be deemed void.  The Settlement Administrator

will cause the checks to be issued with the check voiding time period on the face of the checks.

15.12   The Settlement Administrator will, promptly after stopping payment on all uncashed checks under Paragraph 15.11, make a final distribution of the remaining balance of the Net Distributable Settlement Fund, after deduction of any administrative costs, stop payment fees on uncashed checks, and other charges incurred in reissuing checks. This final distribution will be allocated and made by sending one or more checks to the *cy pres* recipient(s) identified in Paragraph 15.10.

15.13   Any Class Member who receives a Class Member Payment in connection with a Covered Contract will be solely responsible for notifying all Class Members on the Covered Contract of receipt of the Class Member Payment and distributing and allocating the Class Member Payment among them, regardless of whether the associated check has been made payable to all or only some of the Class Members on the Covered Contract. Each Class Member, by accepting a Class Member Payment, represents and warrants that the Class Member is entitled to receive the Class Member Payment and has not assigned, by operation of law or otherwise, the right to the Class Member Payment. If such an assignment has been made, the Class Member will not accept the Class Member Payment and instead will, promptly after receipt, remit the Class Member Payment to the assignee.

15.14   Except as expressly set forth in this Agreement, Ally will have no obligation or responsibility for, interest in, or liability in connection with the administration of the settlement reflected in this Agreement, including (a) the location, notification, and solicitation of Class Members, (b) the preparation and distribution of the Class Notice, (c)

the establishment and maintenance of the QSF and the QSF Account, (d) the investment, allocation, and distribution of the Cash Fund, (e) the filing, receipt, and processing of release and other forms, (f) the determination, administration, calculation, and delivery of the Class Member Payments and any Incentive Award, Fee Award, or other distribution from the Cash Fund, (f) the payment or withholding of taxes, (g) any losses in connection with the Gross Settlement Fund or the implementation of this Agreement, and (h) communications and resolutions with Class Members, any taxing or other governmental authority, or any other Person.

15.15  If a Class Member has filed for bankruptcy, the Class Member will be solely responsible for providing any required notice to the bankruptcy trustee and the bankruptcy court of this Agreement and the Class Member Payment.

**16.  General Provisions**

16.1  The Parties agree to hold in abeyance, pending the Final Hearing, all proceedings (including discovery) in the Litigation, except proceedings that are necessary to implement this Agreement and consummate the settlement reflected in this Agreement.

16.2  Class Counsel and Ally's Counsel will act in good faith and use their best efforts to cause the Court to enter the Preliminary Approval Order, the Final Approval Order, and the Final Judgment as promptly as practicable consistent with the terms and provisions of this Agreement. Before filing any motion in the Court raising a dispute relating to this Agreement, the Parties will meet and confer with each other and certify to the Court that they have consulted.

DocuSign Envelope ID: 4BEA8326-6463-4088-A874-B3A7931482E0

16.3    The Parties will execute all documents and perform all other acts necessary and appropriate to effect this Agreement.

16.4    Upon execution of this Agreement, the Class Representative and Class Counsel will withdraw without prejudice their Emergency Motion to Intervene and to Modify Class Definition in *Ally Financial Inc. v. Haskins*, Case No. 16JE-AC01713-01, Jefferson County Circuit Court. Upon entry of the Preliminary Approval Order, this withdrawal will be with prejudice, and the Class Representative and Class Counsel will not refile a motion to intervene in *Ally Financial Inc. v. Haskins*, Case No. 16JE-AC01713-01, Jefferson County Circuit Court, and will not object to the *Haskins* Settlement.

16.5    This Agreement constitutes the full, complete, and entire understanding, agreement, and arrangement of and among the Parties and Class Counsel in connection with the subject matter of this Agreement, including the compromise and settlement of the Litigation, the Released Claims, and the Class Representative Additional Released Claims. This Agreement supersedes all prior oral or written understandings, agreements, and arrangements among the Parties and Class Counsel of any kind in connection with the subject matter of this Agreement, including the Term Sheet.  Except for those set forth expressly in this Agreement, there are no agreements, covenants, promises, representations, or arrangements among the Parties and Class Counsel of any kind in connection with the subject matter of this Agreement.

16.6    This Agreement may be amended, modified, or waived, in whole or in part, only in a writing signed by all Parties. This Agreement may not be orally amended, modified, or waived, in whole or in part. Unless otherwise ordered by the Court,

nonmaterial changes to the Class Notice will be permitted without amending this Agreement or any order issued by the Court pursuant to this Agreement.

16.7    The Class Representative, Ally Financial Inc., and Class Counsel will sign this Agreement in any number of counterparts, and all of these copies and counterparts will constitute an original and together will constitute one agreement.

16.8    Each of the Parties and Class Counsel represents and warrants that the Person is acting upon the Person's independent judgment and upon the advice of the Person's own counsel and not in reliance upon any representation or warranty, express or implied, of any kind by any other Person, other than the express representations and warranties made in this Agreement.

16.9    This Agreement will be governed by and interpreted, construed, enforced, and administered under the laws of the Commonwealth of Massachusetts, without regard to principles of conflict of laws. This Agreement will be enforced in the Court. Ally, the Class Representative, and the Class Members waive any objection that each such party may now have or hereafter have to the Court being the exclusive venue for such an enforcement proceeding and irrevocably consent to the exclusive jurisdiction of the Court over such an enforcement proceeding.

16.10   Consistent with Paragraph 10.1(i), the Parties consent to the Court's reservation of continuing and exclusive jurisdiction over this Agreement, the settlement reflected in this Agreement, the QSF, and the QSF Account, including their administration, enforcement, and consummation.

DocuSign Envelope ID: 4BEA8326-6463-4088-A874-BD37931482E0

16.11   This Agreement will bind and will inure to the benefit of the Parties and Class Counsel as well as their respective successors, assigns, executors, administrators, heirs, and legal representatives.

16.12   This Agreement will not be construed more strictly against one Person than another, it being recognized that because of the arm's-length negotiations, all Parties and Class Counsel have contributed equally to preparing this Agreement.

16.13   The term "include" introduces a non-exhaustive list. A reference to any law is to that law as amended or supplemented to the applicable time. All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neutral gender, will include all other genders, and the singular will include the plural and vice versa, in each case, unless the context requires otherwise.

16.14   Neither the Class Representative, Class Counsel, or any Person on their behalf or with their permission or influence will issue any press release or similar communication relating to this Agreement or the settlement reflected in this Agreement, or disparage or comment on Ally in any way. Nothing in this Paragraph 16.14 limits Class Counsel's obligations and duties to communicate in good faith with Class Members or the Court, including as required by applicable rules of professional responsibility or by Federal Rule of Civil Procedure 23.

16.15   Each of the Parties and Class Counsel represents, warrants, and covenants that (a) the Person has full power and authority to enter into and consummate all transactions contemplated by this Agreement and has duly authorized the execution, delivery, and performance of this Agreement, (b) the person executing this Agreement

- 40 -

DocuSign Envelope ID: 4BEA8326-6463-4088-A874-BD27931482E0

on behalf of the Person has the full right, power, and authority to enter into this Agreement and all related documents on behalf of the Person, and (c) this Agreement is enforceable against the Person according to its terms (except as enforceability may be limited by principles of equity or insolvency).

16.16   The exhibits attached to the Agreement are incorporated as though set forth in this Agreement.

16.17   Notwithstanding anything in this Agreement to the contrary, except for the Gross Deficiency Waiver Amount as applied in Paragraph 4, nothing in this Agreement is intended to or does waive or release any claims, rights, and remedies that Ally may have on any Covered Contract or Covered Account or against any Class Member, insurance company, or broker. All such claims, rights, and remedies are expressly preserved.

16.18   Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement is intended to or does impact the validity, binding effect, enforceability, and terms of Covered Contracts and related accounts of Class Members whose vehicles were not voluntarily or involuntarily repossessed and disposed of on or before the date of the Preliminary Approval Order. Ally reserves all claims, rights, and remedies relating to the amount, enforceability, and collection of any balances and other obligations under these Covered Contracts and related accounts, which will not be adjusted or otherwise affected under Paragraph 4.2.1. Likewise, such Class Members reserve their rights to raise any defenses and bring any claims they may have against Ally that are not Released Claims. Ally will provide Class Counsel with the number of Covered Contracts that fit

the description in the first sentence of this Paragraph 16.18 within 30 days after the Preliminary Approval Order, and will respond to reasonable requests from Class Counsel for information necessary to respond to questions from Class Members on such Covered Contracts related to the settlement reflected in this Agreement, which arise in the course of administration of the settlement reflected in this Agreement.

16.19   This Agreement references data and other information that Ally has utilized and produced in connection with the Litigation and describes data and other information that Ally may or must utilize and produce in connection with the implementation of this Agreement. All of this data and other information, including in connection with the Covered Contracts, has been and will be based on Ally's electronic records as reasonably available at the time of utilization or production as applicable.

In witness whereof, the undersigned, being duly authorized, have signed this Agreement on the dates beside their signatures.

/

/

/

/

/

DATED:  June____, 2021
                                        24

                                        _____
                                        Gracie White, individually
                                        and on behalf of Class Members

DATED:  June ____, 2021                 ALLY FINANCIAL INC.


                                        By: _____
                                                David Shevsky
                                            Chief Operating Officer – Auto Finance



DATED:  June ____, 2021                 BAILEY & GLASSER LLP
                                        As to Paragraph 16



                                        By: _____
                                                Elizabeth Ryan
                                                Class Counsel

DATED: June____, 2021

_____
Gracie White, individually
and on behalf of Class Members

DATED: June ____, 2021          ALLY FINANCIAL INC.


By: _____
David Shevsky
Chief Operating Officer – Auto Finance


DATED: June 24, 2021            BAILEY & GLASSER LLP
As to Paragraph 16


By: _____
Elizabeth Ryan
Class Counsel

- 43 -

DATED:  June___, 2021


            Gracie White, individually
            and on behalf of Class Members

DATED:  June___, 2021      ALLY FINANCIAL INC.


By: _____
        David Shevsky
      Chief Operating Officer – Auto Finance


DATED:  June ___, 2021     BAILEY & GLASSER LLP
                     As to Paragraph 16


By: _____
        Elizabeth Ryan
        Class Counsel

# EXHIBIT A

DocuSign Envelope ID: 4BEA8326-6463-4088-A874-BD37931482F0

# If you owned a motor vehicle repossessed by Ally Financial Inc., you could get valuable benefits from a class-action settlement.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- You may be eligible to participate in a settlement with benefits, including money, the elimination of certain debts, and the deletion of certain negative credit information from credit reports if you obtained a loan or financing agreement held by Ally Financial Inc. (including its subsidiaries, successors, and predecessors) ("Ally") under which a motor vehicle was pledged as collateral and repossessed.

- The settlement resolves a lawsuit over whether Ally sent proper notices to you in connection with repossessing and selling your motor vehicle.  This settlement avoids costs and risks to you from the lawsuit; provides benefits to borrowers like you; and releases Ally from liability.

- The two sides disagree on whether the borrowers could've won and on how much money they would've been entitled to had they won.  Ally has denied liability and continues to do so.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

- You may have also received a notice about the *Haskins* settlement from Missouri state court. This settlement provides benefits in addition to those in *Haskins* (see question 8, below).

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | By doing nothing, you will receive the benefits that come from the settlement, including money. But you give up rights to separately sue Ally concerning your financing transaction that resulted in a repossession. |
| **EXCLUDE YOURSELF** | Get no money or benefits. This is the only option that allows you to ever be part of any other lawsuit against Ally about the legal claims. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court must still decide whether to approve the settlement. Money and benefits will be provided if the Court approves the settlement and after any appeals are resolved. Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** .................................................................**PAGE 3**
   1.   Why did I get this notice package?
   2.   What is this lawsuit about?
   3.   What is a class action and who is involved?
   4.   Why is there a settlement?

**WHO IS IN THE SETTLEMENT**................................................**PAGE 4**
   5.   How do I know if I am part of the settlement?
   6.   Are there exceptions to being included?
   7.   I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** .................................**PAGE 4**
   8.   What does the settlement provide?
   9.   What can I get from the settlement?

**HOW YOU GET SETTLEMENT BENEFITS** ................................**PAGE 5**
   10.   How can I get my settlement benefits?
   11.   When would I get my settlement benefits?
   12.   What am I giving up to get settlement benefits?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .................................**PAGE 6**
   13.   How do I get out of the settlement?
   14.   If I don't exclude myself, can I sue Ally for the same thing later?
   15.   If I exclude myself, can I get benefits from this settlement?

**THE LAWYERS REPRESENTING YOU**.......................................**PAGE 7**
   16.   Do I have a lawyer in this case?
   17.   How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................**PAGE 7**
   18.   How do I tell the Court that I don't like the settlement?
   19.   What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................................**PAGE 8**
   20.   When and where will the Court decide whether to approve the settlement?
   21.   Do I have to come to the hearing?
   22.   May I speak at the hearing?

**GETTING MORE INFORMATION** ................................................**PAGE 9**
   23.   Are there more details about the settlement?
   24.   How do I get more information?

# BASIC INFORMATION

## 1. Why did I get a notice?

Ally's records show you might have had a loan or financing agreement directly with or that was assigned to Ally and Ally repossessed the motor vehicle securing the loan. The Court has directed that you be provided with this notice of a proposed settlement of a class action lawsuit in which you may be a Class Member, and about all your options, before the Court decides whether to approve the settlement. If the Court approves it, and after objections and appeals are resolved, Ally will eliminate certain debts and request that certain credit reporting agencies delete deficiency balance information from your credit reports related to the repossessed motor vehicle. Class Members will also receive payments, as described more fully in this notice.

This notice explains in greater detail about the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

Judge Mark G. Mastroianni of the United States District Court for the District of Massachusetts is overseeing this class action. The lawsuit is known as *White v. Ally Financial Inc.*, Case No. 3:18-CV-30143-MGM.

## 2. What is this lawsuit about?

The claims against Ally allege that notices the borrowers received from Ally after their vehicle was repossessed failed to comply with the requirements of the Uniform Commercial Code adopted by Massachusetts and the Massachusetts Motor Vehicle Installment Sales Act. Ally contends that it may assert claims for unpaid amounts due, if any, on the loans extended to Class Members (including you) for the purchase of the vehicles which were repossessed. The Class Representative contends Ally cannot assert claims against Class Members, that you and other Class Members owe no money to Ally, and that Class Members are entitled to money damages. The Court hasn't decided who is correct on any contentions of the parties. You can read the claims against Ally in more detail at: www.allymassclass.com.

## 3. What is a class action and who is involved?

In a class action, one or more people called Class Representatives (in this case, Plaintiff Gracie White) sue for other people who have similar claims. The people together are a "Class" or "Class Members."

## 4. Why is there a settlement?

The parties disagree over who would have won and what the Class Representative or the Class would've recovered if they had won. The Class Representative believed she could recover 10% of the principal amount of her loan, the interest charge, and other relief. Ally believed the Class Representative and the Class were entitled to nothing. To resolve the dispute, they agreed to a settlement. That way, they avoid the cost of continued litigation, the risk of losing, and the people affected will get money and other benefits. The Class Representative and her attorneys believe the settlement is fair and equitable for all Class Members.

# WHO IS IN THE SETTLEMENT

## 5.  How do I know if I am part of the settlement?

The Court decided everyone who fits this description is a Class Member:

> Every Massachusetts Consumer to whom, during the Class Period, Ally sent a notice substantially similar to the kind of notice attached as Exhibit A to the Second Amended Complaint (i.e., a notice that did not use the term "fair market value") after the voluntary or involuntary repossession of Collateral (the "Post-Repossession Notice"). "Massachusetts Consumer" means any Person who was named as a borrower, co-borrower, obligor, co-obligor, buyer, co-buyer, purchaser, co-purchaser, guarantor, owner, or co-owner in a Covered Contract that was entered into in Massachusetts.

The Class Period runs from July 16, 2014 to and including [insert the date of the Preliminary Approval Order]. The meaning of capitalized terms not explained in this notice are available in the settlement agreement posted at www.allymassclass.com. As of [date of Preliminary Approval Order], there are approximately [_____] Class Members on [_____] Covered Contracts.

## 6.  Are there exceptions to being included?

You are not a Class Member if (a) your Covered Contract contained a choice-of-law provision selecting the law of a state or jurisdiction other than Massachusetts, (b) you filed a Chapter 7 bankruptcy petition after Ally sent you a Post-Repossession Notice and your bankruptcy case ended in a discharge during the Class Period, (c) you filed a Chapter 13 bankruptcy petition after Ally sent you a Post-Repossession Notice and your bankruptcy case is still pending as of the date of the Preliminary Approval Order or ended in a discharge during the Class Period, (d) Ally obtained a deficiency judgment against you during the Class Period, or (e) you timely and validly exclude yourself in compliance with procedures established by the Court and set forth below.

## 7.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-XXX-XXX-XXXX or visit www.allymassclass.com for more information.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 8.  What does the settlement provide?

Ally has agreed to provide Class Members with the following settlement benefits if the settlement is approved:

**MONEY**

DocuSign Envelope ID: 4BEA8326-6463-4088-AB74-BD3793148250

Ally will pay $5,000,000 to pay Class Members, attorneys' fees and costs to Class Counsel, the costs of notice and settlement administration, and an incentive award to the Class Representative, subject to court approval. This amount is called the Cash Fund.

**DEFICIENCY WAIVER**

Ally will waive (reduce to zero) any deficiency balance Ally's records reflect as outstanding as of the Effective Date of the settlement on the accounts of all Class Members whose vehicles were voluntarily or involuntarily repossessed and disposed of on or before [insert the date of the Preliminary Approval Order]. As of [date of Preliminary Approval Order], the amount of deficiency balances to be waived total approximately $[_____] million. The agreement that these deficiency balances will be waived and forgiven is a settlement of a contested liability. The Class Representative contends that any alleged deficiency balances of Class Members whose vehicles were voluntarily or involuntarily repossessed and disposed of never arose due to the alleged failure of Ally to comply with applicable Massachusetts law. Ally disagrees with the Class Representative's contention.

You should consult your tax adviser about the tax issues associated with this settlement. Certain relief provided under this settlement may be subject to the payment of taxes.

**CREDIT BUREAU REPORTING**

Ally will request that the three nationwide consumer reporting companies—Equifax, Experian, and TransUnion—delete tradeline information related to the Ally accounts on the credit reports of Class Members whose deficiency balances are waived, as described above.

**NON-ENFORCEMENT OF *HASKINS* SETTLEMENT RELEASE**

A different class settlement is currently pending in *Ally Financial Inc. v. Haskins*, Case No. 16JE-AC01713-01, Jefferson County Circuit Court (the "*Haskins* Settlement"). You may also have received a notice about the *Haskins* Settlement. As part of the settlement relief in this lawsuit, Ally will not enforce the release in the *Haskins* Settlement against Class Members. As a result, any Class Member who participates in the *Haskins* Settlement may still participate fully in, and receive the benefits and obligations of, the settlement in this lawsuit (including the releases), but will not be subject to the *Haskins* Settlement release.

## 9.   What can I get from the settlement?

Every Class Member will automatically get the applicable benefits that come from the settlement. The amount of the cash payments to Class Members will vary, depending on whether you made payments toward the deficiency balance on your account after your vehicle was repossessed and sold. You do not need to make a claim to get these benefits.

# HOW YOU GET SETTLEMENT BENEFITS

## 10.   How can I get my settlement benefits?

By doing nothing, you will receive the benefits that come from the settlement, including money.

## 11.   When would I get my settlement benefits?

The Court will hold a hearing on _____, **2021**, to decide whether to approve the settlement. Even if the Court approves the settlement, there may be appeals. It's always uncertain how an appeal will be resolved and how long it will take. Some appeals take more than a year. Please be patient. You'll receive your payment if the settlement is approved and after that approval becomes a "final judgment" (i.e. after any appeals are resolved or the time for appealing has passed).

## 12.    What am I giving up to get settlement benefits or stay in the Class?

Unless you exclude yourself by following the procedure below, you are a Class Member and will be included in the Class, and that means you can't sue, continue to sue, or be part of any other lawsuit against Ally about the legal issues in this case, apart from your participation in the *Haskins* Settlement discussed in question 8 of this Notice.  For example, you won't be able to make any independent claim against Ally arising from the written notices Ally sent to you concerning the property covered by your Covered Contract or any other claims this lawsuit is about. Staying in the Class also means all the Court's orders in this lawsuit will apply to you and legally bind you. To see exactly the legal claims and defenses you give up if you get settlement benefits, please view the settlement agreement at www.allymassclass.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want benefits from this settlement, but you want to keep the right to sue or continue to sue Ally on your own about the legal issues in this case, then you must take steps to get out of the settlement. This is called "excluding" yourself—or is sometimes called "opting out" of the Class.

## 13.   How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying you want to be excluded from *White v. Ally Financial Inc.*, Case No. 3:18-CV-30143-MGM. Include your name, address, telephone number, account number, last four digits of your Social Security Number, and the same information for any other person on your agreement with Ally, along with your signature. The exclusion request must be signed by you and by any co-borrower on your agreement, unless the co-borrower is deceased, in which case you must include a death certificate and proof of appointment with your request. You cannot exclude yourself by having someone else sign the letter for you. You must mail your exclusion request postmarked no later than _____, **2021**, to:

[Settlement Admin Address]

If you timely request to be excluded, you'll get no settlement benefits, and you cannot object to the settlement. You won't be legally bound by the settlement if it is approved.

## 14.   If I don't exclude myself, can I sue Ally for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Ally for any claims you may have against Ally concerning your transaction that resulted in a repossession, apart from your participation in the *Haskins* Settlement discussed in question 8 of this Notice. If you have a pending lawsuit against Ally,

speak to your lawyer in that case immediately. You must exclude yourself from this Class to continue with that lawsuit. Remember, the exclusion deadline is _____, **2021**. Exclusion requests postmarked later than this date will be rejected.

## 15.  If I exclude myself, can I get benefits from this settlement?

No. But you may sue, continue to sue, or be part of a different lawsuit against Ally about the same claims that were made in this case.

# THE LAWYERS REPRESENTING YOU

## 16.  Do I have a lawyer in this case?

The Court appointed Nicholas F. Ortiz, Raven Moeslinger, and the Law Office of Nicholas F. Ortiz as well as Elizabeth A. Ryan, John J. Roddy, and the law firm of Bailey & Glasser LLP to represent you and other Class Members. These lawyers are called Class Counsel. You won't be charged any amounts for these lawyers' services. They are experienced in handling similar class actions. You needn't hire your own lawyer because Class Counsel is working for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17.  How will the lawyers be paid?

Class Counsel will ask the Court to approve payment up to $2.5 million, which represents approximately 16% of the settlement benefits, to them for attorneys' fees and expenses, and payment of $7,500 to the Class Representative for her services to the Class Members. The fees and expenses would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court you don't agree with some or all parts of the settlement.

## 18.  How do I tell the Court I don't like the settlement?

If you're a Class Member, you can object to the settlement if you don't like it. You can explain why you think the Court shouldn't approve it. The Court will consider your views. To object, you must send a letter saying you object to the class settlement in *White v. Ally Financial Inc.,* Case No. 3:18-CV-30143-MGM. Your letter must include your name, address, telephone number, email address (if available), account number, last four digits of your Social Security Number, a specific statement of your objections, the reasons and facts you contend support your objections, and a statement whether your objection applies only to you, to a specific subset of Class Members, or to all Class Members. Your objection must include any documents (including loan documents) you rely upon to support your objection and identify any witnesses you plan to use at the Final Hearing (described below). If there is other evidence (e.g., documents) that you rely upon for your objection, you must attach copies to your objection. If you plan to use expert witnesses to support your objection, you must provide—with your objection—an expert report for each expert

outlining the expert's opinions and the facts and reasons for the expert's opinions as well as the expert's name, address, telephone number, and email address (if available). You must also state whether you intend to appear at the Final Hearing and provide copies of any evidence you intend to use at the hearing.

You must mail the objection to the Court, to Class Counsel, and to Ally's Counsel at the separate addresses below. Your objection must be postmarked no later than _____, 2021:

| COURT | CLASS COUNSEL | ALLY'S COUNSEL |
|---|---|---|
| Clerk of Court | Elizabeth A. Ryan | Nellie E. Hestin |
| United States District Court | Bailey & Glasser LLP | McGuireWoods LLP |
| District of Massachusetts | 176 Federal St., 5th Floor | 260 Forbes Ave., Suite 1800 |
| 300 State Street | Boston, MA 02110 | Pittsburgh, PA 15222 |
| Springfield, MA 01105 | | |

If an attorney is submitting the objection for you, besides information and materials discussed above, the objection must also include the name, address, telephone number, and email address (if available) of your attorney and a detailed description of the legal authorities supporting each objection. Your attorney submitting the objection must also provide the name, court, and docket number associated with any other class action settlement where the objecting Class Member has objected or provided legal assistance with respect to an objection, or where the objecting Class Member's counsel has appeared as an objector's attorney or provided legal assistance with respect to an objection.

## 19.   What's the difference between objecting and excluding?

Objecting is telling the Court you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FINAL HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 20.   When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Hearing at _____ a.m./p.m. on _____, _____, 2021 in Courtroom ___ at the United States District Court for the District of Massachusetts, 300 State Street, Springfield, Massachusetts 01105. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing. The Court will also decide how much to pay to Class Counsel and the Class Representative. The date of the hearing may be changed without further notice to the Class, so you should check the settlement website for any changes to the hearing date.  After the hearing, the Court will decide whether to approve the settlement. We don't know how long these decisions will take.

## 21.   Do I have to come to the hearing?

No. Class Counsel will answer questions that the Court may have. But you are welcome to come at your own expense. If you submit an objection, you don't have to come to Court to talk about it. If you mailed your written objection on time with all the required information, the Court will consider it. You may also pay your own lawyer to attend, but that is unnecessary.

## 22.   May I speak at the hearing?

You may ask the Court for permission to speak at the Final Hearing. You may speak either for or against the settlement. To speak for the settlement, you must send a letter saying it is your "Notice of Intention to Appear in *White v. Ally Financial Inc.*, Case No. 3:18-CV-30143-MGM." Include your name, address, telephone number, last four digits of your Social Security Number, and your signature. Your "Notice of Intention to Appear" must be postmarked no later than _____, 2021, and be sent to the Court Clerk's Office, Class Counsel, and Ally's Counsel, at the three addresses provided in question 18.

If you plan to speak at the Final Hearing to tell the Court you don't like something about the settlement, you must submit a written objection as detailed in question 18 and include with that objection a statement you intend to appear at the Final Hearing. The identity of any witnesses or experts you plan to present at the Final Hearing, with evidence you intend to present at the Final Hearing, must also be included with your objection.

You cannot speak at the Final Hearing if you excluded yourself or if you don't send in a request with the required information and documents.

# GETTING MORE INFORMATION

## 23.   Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in the settlement agreement.  This notice does not change or supersede the settlement agreement in any way. You can get a copy of the settlement agreement by writing to Settlement Administrator at [Address], or by visiting www.allymassclass.com.

## 24.   How do I get more information?

You can call 1-XXX-XXX-XXXX toll free; write to Settlement Administrator at [Address]; or visit the website www.allymassclass.com, where you will find information about this lawsuit and to help you determine whether you are a Class Member.

DATE: _____, 2021