UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                     )

GRACIE WHITE f/k/a              )
GRACIE DORNEUS,             )
  Individually and on behalf of a class   )           C.A. No. 3:18-CV-30143-MGM
  of persons similarly situated,       )
                                     )
        Plaintiff,            )
                                     )
v.                                )
                                     )
ALLY FINANCIAL INC.,         )
                                     )
        Defendant.          )
_____)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ASSENTED-TO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

**Page**

I.  Introduction ............................................................................................................. 1

II.  Statement Of The Case ............................................................................................ 2

III.  The Terms of the Settlement .................................................................................... 5

IV.  The Agreement Should Be Preliminarily Approved As Fair, Reasonable, And
Adequate. .................................................................................................................. 7

A.  Standard And Process For Approval .............................................................. 7

B.  The Settlement Should Be Preliminarily Approved ....................................... 9

1.  The Class Representative and Class Counsel Have Adequately
Represented The Class ....................................................................... 9

2.  The Proposal Was Negotiated at Arm's Length .............................. 10

3.  The Relief Provided For The Class Is Adequate ............................. 11

4.  The Proposal Treats Settlement Class Members Equitably Relative To
Each Other ........................................................................................ 15

5.  The Proposed Notice To Settlement Class Members Is Adequate ........... 15

6.  The Factual Record Was Well Developed Through Independent
Investigation And Discovery ........................................................... 16

V.  The Class Should Be Certified For Settlement Purposes ...................................... 17

A.  Rule 23(b)(3) ............................................................................................... 17

1.  Numerosity ....................................................................................... 17

2.  Commonality .................................................................................... 18

3.  Typicality ......................................................................................... 18

4.  Adequacy Of Representation ........................................................... 19

B.  Rule 23(b)(3) ............................................................................................... 19

1.  Predominance ................................................................................... 19

2.  Superiority ........................................................................................ 20

VI.  Conclusion ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products v. Windsor*,
521 U.S. 591 (1997)......................................................................................9, 20

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass.) .......................................................................10

*In re Credit Suisse–AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008).......................................................................18

*Dellorusso v. PNC Bank, N.A.*,
No. 1877-cv-01475 (Mass. Super. Ct. May 3, 2019).......................................4

*Dellorusso v. PNC Bank, N.A.*,
No. 2019-P1327 (Mass. App. Ct. Sept. 9, 2019) ..............................................3

*Duhaime v. John Hancock Mutual Life Ins. Co.*,
177 F.R.D. 54 (D. Mass. 1997)...................................................................9, 19

*Gorsey v. I.M. Simon & Co.*,
121 F.R.D. 135 (D. Mass. 1988).....................................................................17

*Grace v. Perception Technology, Inc.*,
128 F.R.D. 165 (D. Mass. 1989).....................................................................20

*Gradie v. C.R. England, Inc.*,
No. 2:16-cv-00768-DN, 2020 WL 6827783 (D. Utah 2020) ....................13, 14

*Hall v. Capital One Auto Fin., Inc.*,
Case No. 08-1181 (N.D. Ohio 2010) ..............................................................13

*Hays v. Eaton Grp. Attorneys*,
LLC, No. CV 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019).................8, 16

*Hochstadt v. Bos. Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) .................................................................7

*Lazar v. Pierce*,
757 F.2d 435 (1st Cir. 1985).............................................................................8

*Little-King v. Hayt Hayt & Landau*,
No. 11–5621 (MAH), 2013 WL 4874349 (D.N.J. Sept. 10, 2013) ................12

*Mitchell v. Prestige Fin. Servs.*,
   CV2010-090395 (Maricopa Cty., Ariz.) ................................................................13

*Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008) ...........................................................................18

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   296 F.R.D. 47 (D. Mass. 2013) ...............................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05MD1720, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) .......................8, 9, 10

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .........................................................................................16, 20

*Purdie v. Ace Cash Express, Inc.*,
   No. Civ. A. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ...........12

*Randle v. SpecTran*,
   129 F.R.D. 386 (D. Mass. 1988) ............................................................................20

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass 2000) .................................................................................14

*Scott v. First American Title Ins. Co.*,
   No. 06–cv–286–J, 2008 WL 2563460 (D.N.H. Jun. 24, 2008) ...............................11

*Tardiff v. Knox Cty.*,
   365 F.3d 1 (1st Cir. 2004) ......................................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...........................................................................................19

*Waste Mgt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ..................................................................................19

*Whitaker v. Navy Federal Credit Union*,
   No. RDB 09–cv–2288, 2010 WL 3928616 (D. Md. Oct. 4, 2010) ..........................12

*Williams v. Am. Honda Fin. Corp.*,
   98 N.E.3d 169 (Mass. 2018) ..............................................................................3, 4

## Statutes

M.G.L. c. 106, § 9-614 .....................................................................................2, 12, 18

M.G.L. c. 255B, § 20B(e)(1) .....................................................................................2, 18

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................7

Fed. R. Civ. P. 23(a) ...................................................................................................9, 17, 18

Fed. R. Civ. P. 23(a)(2) ........................................................................................................18

Fed. R. Civ. P. 23(b)(3) ..............................................................................................17, 19, 20

Fed. R. Civ. P. 23(e) ..........................................................................................................7, 16

Fed. R. Civ. P. 23(e)(1) .....................................................................................................15, 17

Fed. R. Civ. P. 23(e)(2) ..................................................................................................8, 9, 15

Fed. R. Civ. P. 23(e)(2)(A) ...............................................................................................9, 10

Fed. R. Civ. P. 23(e)(2)(B) .............................................................................................10, 11

Fed. R. Civ. P. 23(e)(2)(C) .............................................................................................11, 15

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...............................................................................................15

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................................15

Fed. R. Civ. P. 23(e)(3) ....................................................................................................8, 11

Fed. R. Civ. P. 30(b)(6) ...........................................................................................................4

Fed. R. Civ. P. (a)(4) .............................................................................................................19

Fed. R. Civ. P. (c)(2) .............................................................................................................16

**Other Authorities**

Manual for Complex Litigation (Fourth) .......................................................................7, 15, 16

## I.        Introduction

The Parties have reached a settlement Agreement that will fully resolve this class action litigation. Plaintiff Gracie White now seeks preliminary approval of the Agreement, an order directing that notice issue to the settlement Class, and an order scheduling a final approval hearing. The Agreement is attached as Exhibit 1 to the Motion.[1] Ally assents to this motion.

The Agreement provides substantial benefits to the class of Massachusetts borrowers whose cars were repossessed by Ally Financial Inc. ("Ally") and who were sent allegedly unlawful post-repossession notices. Under the Agreement, Class Members' alleged outstanding deficiency debts to Ally, which are estimated to total approximately $11.1 million as of June 18, 2021, will be waived. Ally will also establish a Cash Fund of $5,000,000 to compensate class members. Ally will also request that the credit reporting agencies remove negative credit reporting related to Class Members' accounts for which Ally is waiving the deficiency balance. Class Members are not required to submit claim forms to obtain the benefits of the Agreement. Any residue will not revert to Ally with such to be paid over to a *cy pres* recipient agreed upon by the Parties and approved by the Court.[2]

The Agreement was negotiated at arm's length, after conducting substantial discovery and litigating multiple motions and briefs, including a motion to remand, a motion to dismiss, a motion to certify an interlocutory appeal, a motion to compel discovery, a motion to amend the answer to add a counterclaim, a motion for class certification, and a mediation. Both Parties

---

[1] Exhibit 4 to the Motion is a proposed Order providing for conditional certification of a settlement class, preliminary approval of the Agreement, issuance of notice to settlement Class Members, as well as scheduling of deadlines and a date for a hearing on final approval. Exhibit A to the Agreement is the proposed Class Notice.

[2] In the absence of an agreement between the Parties, the Parties will each select a *cy pres* recipient to receive fifty percent (50%) of the residue consistent with the standards for approval of *cy pres* recipients in federal courts. Agreement, ¶ 15.10.

entered negotiations with more than sufficient knowledge as to the strengths and weaknesses of their claims. The Agreement is fair, adequate, and reasonable, and should be preliminarily approved. Ally does not oppose this motion.

## II.      Statement Of The Case

### *Factual Background*

This class action challenges the notices Ally sent to Massachusetts borrowers after it repossessed their cars, and its calculation of deficiency balances. Specifically, the Second Amended Complaint (ECF ## 28-1, 33) ("Complaint") alleged that Ally's form notices are defective because they tell consumers that their deficiency liability will be calculated and collected using the automobile's *sale price* obtained at auction, while Massachusetts law requires that the borrower be given credit for the car's *fair market value.* Massachusetts Retail Installment Sales Act ("MVRISA"), G.L. c. 255B, § 20B(e)(1). Ms. White's Complaint alleged that Ally's notices violated the Massachusetts UCC, M.G.L. c. 106, § 9-614 (which requires an accurate explanation of the deficiency) and the MVRISA. As a result, the Complaint alleged that Ms. White and the class were entitled to statutory damages, and were not liable for their alleged deficiency balances.

The facts of Ms. White's repossession are representative. In October 2018, Ally repossessed Ms. White's car. Following the repossession, Ally sent Ms. White a post-repossession notice advising her of its intent to sell the car. The notice also described her deficiency liability as follows: "The money that [Ally] get[s] from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you may still owe us the difference." Ally then sold Ms. White's car on December 3, 2018.

*Procedural Background*

This case was filed by James Randall on July 14, 2018 in Suffolk Superior Court. ECF # 1. Ally then removed the action to this Court and Mr. Randall moved to remand, which this Court denied. ECF # 12. Ally subsequently filed a motion to dismiss the original complaint on grounds that, among other things, Vermont law applied to Mr. Randall's claim and that the Massachusetts Supreme Judicial Court's decision in *Williams v. Am. Honda Fin. Corp.*, 98 N.E.3d 169, 179-80 (Mass. 2018), which was issued on June 5, 2018, created new law and should not apply retroactively. ECF # 16. Mr. Randall opposed the motion. ECF # 18.

However, while the motion was pending, Plaintiff moved to amend the complaint to add Gracie White as a named plaintiff, which the Court allowed. ECF # 31. Ally then filed a partial motion to dismiss and to strike class allegations, again arguing, among other things, that Randall's claim should be dismissed due to application of Vermont law and that the class claims that arose prior to the Supreme Judicial Court's ruling in *Williams* should be stricken. ECF # 35. On April 13, 2020, the Court entered an order allowing Ally's motion as to Randall, finding that Vermont law applied to his claim, but otherwise denied Ally's motion. ECF # 46. The Parties subsequently agreed to attempt to resolve this matter through an August 2020 mediation. Although the Parties made some progress at the mediation, it did not immediately yield an agreement.

Ally then moved to certify an interlocutory appeal of the Court's order on its motion to dismiss on grounds that *Williams* did not apply retroactively or to stay the case pending the Massachusetts Appeals Court's decision in *Dellorusso v. PNC Bank, N.A.*, No. 2019-P1327

3

(Mass. App. Ct. filed Sept. 9, 2019).[3] Plaintiff opposed the motion, and the Court later denied it. ECF # 49.

Shortly after Ally filed its motion, Ms. White moved to certify the Class. ECF # 52. Ally also moved to amend its answer to assert a counterclaim against Ms. White for her alleged loan deficiency, which Plaintiff opposed and the Court denied. ECF # 114. Plaintiff filed a motion to compel discovery and Ally filed a motion for a protective order with respect to certain Rule 30(b)(6) topics – the Court allowed these motions in part. ECF # 113.

The Parties engaged in extensive discovery. Plaintiff served a first set of written discovery requests consisting of interrogatories, document requests and requests for admission, and a second set of document requests. Ally served a first set of interrogatories and document requests on Ms. White, and then a set of requests for admission. The Parties responded to all written discovery requests. Ally also took the deposition of Gracie White. And Ms. White, through counsel, took a Rule 30(b)(6) deposition of Ally, though it was suspended for personal reasons that arose during the deposition.

In the meantime, Ally reached a nationwide class settlement in a Missouri state court case (the "Haskins Litigation"). Plaintiff sought to intervene in the Haskins Litigation on an emergency basis, requesting that the Missouri state court permit this class to intervene. That motion was withdrawn without prejudice upon the execution of the Agreement, and that withdrawal will be with prejudice if preliminary approval is granted here.

On April 29, 2021, the Court allowed Ms. White's motion for certification, thereby certifying a class comprised of "all Massachusetts consumers to whom Ally sent a notice,

---

[3] In *Dellorusso v. PNC Bank, N.A.*, No. 1877-cv-01475 (Mass. Super. Ct. May 3, 2019) (Dkt No. 35-1), the Superior Court ruled that the *Williams* decision only applied prospectively.

substantially similar to a notice received by the named Plaintiff, after the repossession of their vehicles on or after July 16, 2014, except for individuals whose vehicle sales contracts contained choice-of-law provisions selecting the law of a state other than Massachusetts." ECF # 112.

After these developments, the Parties agreed to attempt to resolve this action and renewed settlement discussions. The Parties' negotiations resulted in the Agreement presently before the Court. Based on their review and analysis of the relevant facts and legal principles, Ms. White and her counsel believe that the terms and conditions of the Agreement are fair, reasonable, and adequate, and in the best interests of the Plaintiff and the proposed settlement Class. Exhibit 2; Affidavit of Elizabeth Ryan, ¶ 14; Exhibit 3, Declaration of Nicholas F. Ortiz, ¶ 7. Ally denies all liability, but has agreed to the settlement to avoid continued costs and the risks of litigation.

### III.   The Terms of the Settlement

The material terms of the settlement include the following:

1.   *Settlement Class:* The settlement Class is composed of all Massachusetts Consumers to whom, during the Class Period,[4] Ally sent a notice substantially similar to the kind of notice attached as Exhibit A to the Second Amended Complaint (i.e., a notice that did not use the term "fair market value") after the voluntary or involuntary repossession of Collateral.[5]

---

[4] The "Class Period" is the period from and after July 16, 2014, to and including the date of the Preliminary Approval Order. Agreement, ¶ 3.3.

[5] Excluded from the Class is any Person (a) whose Covered Contract contained a choice-of-law provision selecting the law of a state or jurisdiction other than Massachusetts, (b) who filed a Chapter 7 bankruptcy petition after Ally sent a Post-Repossession Notice to the Person and whose bankruptcy case ended in a discharge during the Class Period, (c) who filed a Chapter 13 bankruptcy petition after Ally sent a Post-Repossession Notice to the Person and whose bankruptcy case is still pending as of the date of the Preliminary Approval Order or ended in a discharge during the Class Period, or (d) against whom Ally obtained a deficiency judgment during the Class Period.

2.    *Relief for Settlement Class Members*:

   (i)    Ally will pay a total of $5 million (the "Cash Fund") to be used to make payments to Class Members, pay costs of notice and administration, pay any court approved attorneys' fees and expenses, and service award to the Plaintiff. Ally will pay $50,000 of the total within 10 business days of preliminary approval, to be used for costs of class notice. The balance of $4,950,000 will be paid following the Effective Date.

   (ii)   Payments to Class Members will calculated as follows. The balance of the Cash Fund after the payment of costs of notice and administration, service award, and attorneys' fees and expenses (the "Net Distributable Settlement Fund") shall be used to first pay refunds to Class Members who made payments towards the alleged deficiency debts, now agreed to be waived and forgiven. The remaining balance will be divided equally among all Class Members for damages;

   (iii)  All alleged deficiency balances for all settlement Class Members whose vehicles were voluntarily or involuntarily repossessed and disposed of on or before the date of the Preliminary Approval Order shall be waived and forgiven, a sum that is estimated to total approximately $11.1 million as of June 18, 2021; and

   (iv)   Ally will request that the credit reporting agencies Experian, Equifax, and TransUnion delete the reporting of settlement Class Members' Ally accounts that are the subject of the deficiency balance waivers, by deleting the trade line for those accounts.

3.    *Notice and Administration*: Upon preliminary approval, the Settlement Administrator shall send notice to settlement Class Members by first class mail in accordance with the Agreement and the schedule contained in the Preliminary Approval Order. Further information will be available on a dedicated website. A proposed Class Notice is attached to the Agreement as Exhibit A.

4.    *Attorneys' Fees and Expenses*: The Agreement provides that Class Counsel may petition the Court for an award of reasonable attorneys' fees and expenses consisting of up to $2.5 million, which if the Gross Settlement Fund were determined as of June 18,

2021, would be estimated to be approximately 15.5% of the Gross Settlement Fund.[6]

Agreement, ¶ 6.2. Ally has agreed not to object to this petition.

5.      *Incentive Award*: The Agreement provides that Ally will not oppose payment of

an incentive award of $7,500 to Ms. White, to be paid from the Cash Fund and subject to

Court approval.

6.      *Release*: Settlement Class Members will release all claims based on the identical

factual predicate as that asserted in the Action, as further detailed in the Agreement.

## IV.      The Agreement Should Be Preliminarily Approved As Fair, Reasonable, And Adequate.

### A.      Standard And Process For Approval

Rule 23(e) requires court approval of a class action settlement. Approval typically

involves a "two-stage procedure. First, the judge reviews the proposal preliminarily to determine

whether it is sufficient to warrant public notice and a hearing. If so, the final decision on

approval is made after the hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106–07

(D. Mass. 2010). "[B]efore making a final decision on the 'approval' of a settlement, a court

must first make a 'preliminary determination on the fairness, reasonableness, and adequacy of

the settlement terms.'" *Id.* (citing *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters

Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009), *and* Manual for Complex Litigation

(Fourth) § 13.14).

The 2018 Amendments to Rule 23, effective December 1, 2018, provide additional

guidance to federal courts considering whether to grant preliminary approval of a class action

---

[6] "Gross Settlement Fund" is the sum of the Cash Fund and the Gross Deficiency Waiver Amount. Agreement, ¶ 2.26. "Gross Deficiency Waiver Amount," in turn, refers to Ally's waiver of alleged deficiency balances that Ally's records reflect as outstanding as of the Effective Date. Agreement, ¶ 4.2.1.

settlement. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors under Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court"—those factors being as follows:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys*, LLC, No. CV 17-88, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019).

Finally, the First Circuit has long recognized a strong public interest in favor of settling class actions. *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir. 1985) ("…we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved …").

8

**B.      The Settlement Should Be Preliminarily Approved**

Here, consideration of all relevant factors demonstrates that the settlement is likely to be finally approved under Rule 23(e)(2). It should therefore be preliminarily approved and notice should be issued.

**1.      The Class Representative and Class Counsel Have Adequately Represented The Class**

The adequacy determination under Rule 23(e)(2)(A) looks to whether the representative parties will "fairly and adequately protect the interests of the class" and whether class counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 53 (D. Mass. 2013); *accord In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *15 (considering adequacy requirement of newly amended Rule 23(e)(2) by looking to the interpretation of adequacy under Rule 23(a)); *see Amchem Products v. Windsor*, 521 U.S. 591 (1997) (courts look at whether representatives' interest are antagonistic to those of the class members). Where, as here, the injuries allegedly suffered by the named plaintiff are the same as those the class allegedly suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997).

Here, Ms. White has loyally and competently represented the Class for the more than two years of hard-fought litigation. If Ms. White was not ready and willing to serve as a class representative, there would be no settlement benefits at all for the class. She has participated in the discovery process, including by providing written discovery responses and sitting for a deposition. She has no interests that are antagonistic to or in conflict with the settlement Class.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery, litigated multiple motions, and are prepared

to continue to devote sufficient resources to representing the Class. Class Counsel are seasoned class action practitioners whose lengthy experience in consumer law and class action litigation is demonstrated by the declarations attached to this memorandum. *See* Exhibits 2 and 3, Declarations of Class Counsel.

The "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

### 2.    The Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *19; *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").

The Parties mediated their dispute in an August 2020 mediation. That mediation did not yield an immediate deal, but rather convinced the Parties that more litigation was necessary. After more than nine months of additional litigation which featured various contested motions and written discovery and depositions, the Parties renewed their attempts to settle this case. After obtaining sufficient information to meaningfully discuss resolution of the case, the Parties, through counsel, engaged in arm's length negotiations. The negotiations were productive and substantive, including discussions about the merits of Plaintiff's claims, and the repossession notices and damages at issue, and they ultimately resulted in the settlement before this Court.

The parties' adversarial position throughout the course of this litigation confirms that the settlement was the result of an arms-length negotiation conducted by experienced counsel and

therefore should be found presumptively reasonable. *See*, *e.g.*, *Scott v. First American Title Ins. Co.*, No. 06–cv–286–J, 2008 WL 2563460, at *2-3 (D.N.H. Jun. 24, 2008) (preliminarily approving class settlement, reasoning that filing and opposing two motions to dismiss and a motion to remand before reaching settlement reflected that the parties were "adversaries from [the litigation's] inception" and therefore that the agreement was reached through arms-length negotiation).

The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of preliminary approval.

### 3.    The Relief Provided For The Class Is Adequate

The proposed relief to the settlement Class is also adequate. Rule 23(e)(2)(C) provides factors to guide what constitutes adequate relief:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C). The proposed settlement here provides significant, meaningful and immediate benefits to the settlement Class, while avoiding potentially years of delays and the risks inherent in all class action litigation if the case were to go to trial.

### a)    The Agreement provides significant benefits to the settlement Class

The Agreement will, if approved, reduce to zero what is estimated as of June 18, 2021 to be approximately $11.1 million in alleged deficiency debts. This provides a real and substantial benefit to Class Members. Ally repossessed and disposed of each of these Class Members' vehicles. Deficiency debts arising out of repossessions are burdensome, as already-cash-strapped debtors struggle to negotiate collection efforts arising out of often large alleged deficiencies

11

without a vehicle often needed for income production. *See*, *e.g.*, *Purdie v. Ace Cash Express, Inc.*, No. Civ. A. 301CV1754L, 2003 WL 22976611, at *2 (N.D. Tex. Dec. 11, 2003) (debt relief was particularly significant benefit because "continued collection efforts for unpaid loans [were] an enormous source of strain and stress" on class members).

Ally has also agreed to request that the credit reporting agencies to which it reports delete the tradelines associated with Class Members' accounts on which Ally is waiving the deficiency balance, which will erase the negative information reported therein (such as late payments and the repossession of their vehicles) and thus improve Class Members' credit history. *See, e.g., Whitaker v. Navy Federal Credit Union*, No. RDB 09–cv–2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010) (approving UCC class settlement, noting settlement benefits included creditor "releas[ing] its counterclaims for the deficiency balances remaining on the class members' accounts" and "contact[ing] the credit-reporting agencies and request[ing] that they rehabilitate the class members' credit report by deleting the information related to the loans at issue in this case" even though no cash payments were made to class members).

Finally, Ally will establish a Cash Fund of $5,000,000 to be used to make payments to settlement Class Members. These funds will pay back Class Members who made payments on the alleged deficiencies, and then any Net Distributable Settlement Fund balance remaining after those refunds will be divided equally among all Class Members. The Cash Fund is non-reversionary, ensuring that none of the money will be returned to Ally.

Ally also changed its post-repossession notices after this litigation commenced such that they now reference the "fair market value" language (the absence of which language forms the basis of this litigation), a factor that weighs in favor of approving the settlement. *Little-King v. Hayt Hayt & Landau*, No. 11–5621 (MAH), 2013 WL 4874349, at *10-11 (D.N.J. Sept. 10,

2013) (noting that defendant ceased using allegedly unlawful debt collection letter as factor militating in favor of approving settlement).

The relief offered by the settlement is more than adequate, particularly taking into account other similar settlements,[7] as well as the costs, risks, and delay that could result from a trial and appeals. *See, e.g., Gradie v. C.R. England, Inc.*, No. 2:16-cv-00768-DN, 2020 WL 6827783, at *10 (D. Utah 2020) (in approving class settlement that provided "exceptional value to the Class," considering both debt relief and cash payments when calculating class members' average recovery).

      **b)**      **The effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims**

Here, no claims forms are required. Instead, all settlement Class Members will automatically have their alleged deficiency balances (if any, as of the date of the Preliminary Approval Order) eliminated and checks will be automatically mailed to them. ¶¶ 15.6, 15.8. Payments to Class Members will be calculated as follows: (a) Class Members who made payments towards their deficiency balances after repossession will be entitled to a refund of those payments; and (b) any balance remaining after those refunds will be divided equally among all Class Members. Agreement, ¶ 15.6. In addition, the Settlement Administrator will distribute the Class Members' payments by mailing checks to their last known addresses, which will be provided by Ally. Agreement, ¶ 14.2. And for any check returned by the United States Postal

---

[7] *See, e.g., Hall v. Capital One Auto Fin., Inc.*, Case No. 08-1181 (N.D. Ohio 2010) (settlement approved on behalf of Ohio consumers sent defective repossession notices of $36 million in deficiency waivers and $1.5 million cash; average cash payment to class member after deduction for attorneys' fees of $285); *Mitchell v. Prestige Fin. Servs.*, CV2010-090395 (Maricopa Cty., Ariz.) (settlement approved for state-wide class of borrowers sent defective repossession notices; settlement involved waiver of deficiency balances and cash payments to class members averaging $350).

Service without a new address, Ally will provide the Settlement Administrator with the Class Member's social security number for purposes of performing a skip trace which will identify the Class Member's new address. Agreement, ¶ 14.3.

This method of distributing relief is effective and efficient and weighs in favor of granting settlement approval.

> **c)** **The terms of any proposed award of attorney's fees, including timing of payment**

Here, Class Counsel will apply for court approval of an award of attorneys' fees and expenses at the time of the Final Hearing in a separate motion. Agreement, ¶ 6.2. Class Counsel intends to apply for an award of attorneys' fees and expenses representing less than an estimated 16% of the Gross Settlement Fund. *Id.*

> **d)** **The costs, risks, and delay of trial and appeal**

Another factor in evaluating the adequacy of class relief is the costs, risks, and delay of trial and appeal. Rule 23(e)(2)(C)(i). There are multiple tangible risks here.

First, this case is potentially impacted by the nationwide settlement in the Haskins Litigation. If this settlement is not approved, Ally will take the position that the Haskins Litigation encompasses the claims of nearly all of the Class Members in this case. Plaintiff disagrees. However, if Ally prevails, Class Members may only receive the benefits of the *Haskins* settlement rather than the additional benefits available here. This weighs heavily favor of approving this Settlement.

Moreover, if the Courts rejects this Settlement and Plaintiff is successful on the merits, a subsequent appeal by Ally will result in lengthy delays before Class Members receive benefits, if any. Instead, if approved by this Court, settlement Class Members will receive substantial benefits now, without the burden and risks of further litigation. *See, e.g., Rolland v. Cellucci*, 191

F.R.D. 3, 10 (D. Mass 2000) (the certainty of recovery through settlement in contrast to the expense, length and uncertainty of litigation, is a strong argument in favor of settlement)

The "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of preliminary approval.

### 4. The Proposal Treats Settlement Class Members Equitably Relative To Each Other

The final Rule 23(e)(2) consideration asks courts whether the proposed settlement treats "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Here, the proposed settlement treats all settlement Class Members equally and fairly, and the process for receiving settlement funds is simple. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). Every identified settlement Class Member will be sent notice and an opportunity to opt out. Agreement, ¶¶ 8.1, 15.8. All identified settlement Class Members who do not opt out will have their alleged Deficiency Balances (if any, as of the date of the Preliminary Approval Order) eliminated, and those who made payments will receive refunds, and any remaining sums will be paid equally to Class Members, all without the need to submit a claim form. *Id.* ¶ 15.8. If, after checks have been distributed, the amount remaining in the Settlement Fund (due to uncashed checks) exceeds $100,000, a second distribution will be made, distributing the remaining funds equally to Class Members who negotiated their initial checks. *Id.* ¶ 15.10. Any remaining sums thereafter will be distributed to an agreed-upon and Court-approved *cy pres* recipient. *Id.* Accordingly, this factor supports granting preliminary approval.

### 5. The Proposed Notice To Settlement Class Members Is Adequate

Settlement Class Members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. *Manual for Complex Litig. (Fourth),* § 21.31. Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be

15

bound by the proposal."

Here, the proposed method of notification is patently adequate. The proposed Class Notice, attached as Exhibit A to the Agreement, is clear and straightforward, providing settlement Class Members with enough information to evaluate whether to participate in the settlement, as well as directions to the settlement website which will include further information. Agreement ¶¶ 2.42, 14.1. The Settlement Administrator shall provide Class Notice to the settlement Class within 30 days after Ally provides the necessary information to compile an address list for the settlement Class Members; and (b) the Class Notice shall then be sent by first class United States mail to the current addresses. *Id.* at ¶ ¶ 7.4, 14.1, 14.2. The Class Notice will advise settlement Class Members of their rights to object and opt out and the requirements for doing so—consistent with the 2018 Amendments to Rule 23(e).

The proposed method of providing notice—direct first-class mail plus a settlement website—is more than adequate under Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).

### 6. The Factual Record Was Well Developed Through Independent Investigation And Discovery

Ultimately, to make a preliminary determination on the fairness of a proposed settlement agreement, there must be sufficient information to evaluate it. *Manual for Complex Litig. (Fourth)*, § 22.921; *Hays*, 2019 WL 427331, at *10–11 (evaluating proposed settlement under newly amended federal rules).

Here, this litigation has been ongoing for almost three years, and the Parties have strongly tested the merits through discovery and multiple motions and briefs, including a motion to remand, motions to dismiss, a motion to certify an interlocutory appeal to the First Circuit, and a

motion to certify the class action. As recited above, substantial discovery has been conducted, including exchanging requests for production, interrogatories, requests to admit, and depositions. Ally's counsel has provided supplemental information in the course of discussions leading up to the settlement negotiations, including information about the size of the class and class-wide damages, and Class Counsel has reviewed this data. In short, this settlement is the result of a well-developed factual record.

**V.      The Class Should Be Certified For Settlement Purposes**

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). While the Court has already certified a class in this case, for purposes of settlement, the Parties propose a settlement Class comprised of every Massachusetts Consumer to whom, during the Class Period (i.e., the period from and after July 16, 2014, to and including the date of the Preliminary Approval Order), Ally sent a notice substantially similar to the kind of notice attached as Exhibit A to the Second Amended Complaint (i.e., a notice that did not use the term "fair market value") after the voluntary or involuntary repossession of Collateral, with limited exclusions. The settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

**A.      Rule 23(b)(3)**

**1.      Numerosity**

The settlement Class easily meets Rule 23(a)'s numerosity requirement. Ally has represented that as of June 18, 2021, the Class size is estimated to be approximately 7,220 Class Members on approximately 5,750 Covered Contracts. Joinder of all Class Members would not be practicable. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 - 900 member class made joinder impracticable).

17

### 2.      Commonality

Rule 23(a) requires that the proposed class share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality demands only the existence of a "single issue common to all members of the class." *Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008).

Here, the questions of law and fact in this litigation are not only common, they are substantially identical among settlement Class Members. Common legal issues include whether Ally's repossession and deficiency notices violate Massachusetts's UCC and the MVRISA. And all material facts are the same. All settlement Class Members entered into a motor vehicle retail installment sales contract that was held by Ally and was subject to Massachusetts law. Agreement, ¶¶ 3.1, 3.2. All settlement Class Members had their motor vehicles repossessed by or on behalf of Ally and were sent a substantially-similar post-repossession notice. *Id.* Commonality is met.

### 3.      Typicality

Typicality requires that the class representative's "injuries arise from the same events or course of conduct as do the injuries of the class." *In re Credit Suisse–AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). For virtually the same reasons discussed in the preceding section, this element is also met.

Ms. White has argued like all Class Members, she entered into a motor vehicle retail installment sales contract held by Ally; her vehicle was repossessed by or on behalf of Ally, and she was sent essentially the same repossession notice. Rule 23(a)'s typicality requirement is plainly met.

### 4.      Adequacy Of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." For the same reasons described in Section IV(B)(1) above, Ms. White and Class Counsel have and will continue to adequately represent the Class.

### B.      Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient resolution of the controversy."

### 1.  Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The inquiry boils down to "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Id.* (quoting W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)).

Courts have routinely found common questions predominate where the claims relate to a common course of conduct. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. at 64 (requirement is "readily met" in consumer fraud cases where claim alleges single course of conduct).

The predominance prong has been met here because the claims of the Class Representative and the settlement Class Members, and the circumstances under which these claims arise, are virtually identical. The questions of law and fact are the same. There are no

significant individual issues.

### 2. Superiority

In certifying a class for purposes of settlement, the court need not consider whether a class action is a superior method of resolving the matter because ultimately the case will never go to trial. 2 McLaughlin on Class Actions § 6:3 (12th ed.) (the "fact that a settlement class – not a litigation class – is proposed remains relevant because the court does not need to evaluate as part of its certification analysis whether a class action is superior to other available methods of adjudication").

However, even were it necessary, superiority would be met here. In determining whether a class action is superior to individual litigation, Rule 23(b)(3) lists four factors: whether individuals have a strong interest in controlling potentially separate actions; a class action's effect on competing litigation involving members of the class; whether resolution of the case in a single forum is desirable; and the potential difficulties that management of a class action presents. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiff "to pool claims which would be uneconomical to litigate individually." *See Phillips Petroleum Co.*, 472 U.S. at 809. Here, each settlement Class Member's claim is relatively small, making it uneconomic for individuals to pursue these claims on their own. *See Grace v. Perception Technology, Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988); *Tardiff v. Knox Cty.*, 365 F.3d 1, 7

(1st Cir. 2004) (superiority met where class action is only "feasible" means for most of class recovery).

## VI.     Conclusion

The proposed Agreement is fair, reasonable, and adequate. Ms. White requests that this Court approve the Agreement on a preliminary basis, schedule appropriate deadlines for various settlement requirements as reflected in the accompanying motion, and schedule a hearing to consider final approval of the settlement.

Dated:  June 28, 2021

Respectfully submitted,

GRACIE WHITE f/k/a GRACIE DORNEUS,

By her attorneys,

*/s/ Elizabeth Ryan*
Elizabeth Ryan (BBO No. 549632)
John Roddy (BBO No. 424240)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
eryan@baileyglasser.com
jroddy@baileyglasser.com

Raven Moeslinger (BBO # 687956)
Nicholas F. Ortiz (BBO # 655135)
Law Office of Nicholas F. Ortiz, P.C.
50 Congress Street, Suite 540
Boston, MA 02109
(617) 338-9400
rm@mass-legal.com

## <u>CERTIFICATE OF SERVICE</u>

I, Raven Moeslinger, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on June 28, 2021.

<i>/s/ Elizabeth Ryan</i>

Elizabeth Ryan