**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **GRACIE WHITE f/k/a GRACIE DORNEUS**, on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**ALLY FINANCIAL, INC.,**<br><br>    Defendant. | Civil Action No. 3:18-CV-30143-MGM |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**AWARD OF ATTORNEYS' FEES COSTS, AND INCENTIVE PAYMENT**

## <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................. 2

    A.   Ms. White And Her Counsel Vigorously Litigated On Behalf Of The Class
        For Three Years ..................................................................................................... 2

III. ARGUMENT ................................................................................................................... 3

    A.   The Requested Fee Is Reasonable Under Either the Percentage Of The Fund
        Or The Lodestar Method......................................................................................... 3

          1.   Class Counsel Achieved An Excellent Result That Will Benefit
              Thousands Of Class Members .................................................................... 5

          2.   Class Counsel Assumed A Significant Risk of Non-Recovery In This
              Case........................................................................................................... 7

          3.   Class Counsel's Skill and the Quality of Their Work Led To The
              Excellent Recovery for the Class ............................................................... 8

          4.   Class Counsel Expended Significant Time And Resources ....................... 9

          5.   There Are Currently No Objections........................................................... 9

          6.   Fee Awards In Similar Cases Support Class Counsel's Request.............. 10

    B.   The Requested Fee Is More Than Reasonable Using The Lodestar Cross-
        Check ................................................................................................................... 11

    C.   The Requested Incentive Award Is Also Reasonable ........................................... 14

IV.  CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Rose*,
   No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ....................................................11

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
   No. 12-cv-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017).......................................3

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass.) ..........................................................................................5, 14

*Branch v. F.D.I.C.*,
   No. Civ. A. 91-CV-13270-RGS, 1998 WL 151249 (D. Mass. Mar. 24, 1998)......................13

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ........................................................................................9

*In re Celexa and Lexapro Mktg. & Sales Pracs. Litig.*,
   No. 09–2067–NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ........................................14

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).....................................................................................................7

*In re Columbia Gas Cases*,
   Civ No. 877CV01343G (Essex Sup. Ct. 2020) .....................................................................13

*Conley v. Sears, Roebuck and Co.*,
   222 B.R. 181 (D. Mass. 1998) ...............................................................................................12

*Cooley v. F.N.B. Corp.*,
   Case No. 10010 of 2003, (Lawrence County, Penn. Crt. of Common Pleas
   Apr. 7, 2010) ..........................................................................................................................10

*In re Crazy Eddie Sec. Litig.*,
   824 F. Supp. 320 (E.D.N.Y. 1993) ..........................................................................................6

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000)........................................................................................4, 11

*Davis v. Footbridge Eng'g Servs., LLC*,
   No. 09CV11133-NG, 2011 WL 3678928 (D. Mass. Aug. 22, 2011).....................................13

*Dellorusso v. PNC Bank, N.A.*,
   No. 1877-cv-01475 (Mass. Super. Ct. May 3, 2019)...........................................................7, 8

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   989 F. Supp. 375 (D. Mass. 1997) ........................................................................5

*In re Fleet/Norstar Sec. Litig.*,
   935 F. Supp. 99 (D. R.I. 1996)...............................................................................5

*Follansbee v. Discover Fin. Servs., Inc.*,
   No. 99 C 3827, 2000 WL 804690 (N.D. Ill. June 21, 2000) .................................11

*In re Gen. Instruments Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) .....................................................................6

*Glover v. Bank of America, N.A.*,
   Case No. 4:13-cv-40042-TSH (D. Mass. May 26, 2015) ......................................13

*Hankins v. Alarm.com Inc.*,
   4:15-cv-06314-YGR (N.D. Cal. 2018) ...................................................................13

*Hartt v. Flagship Credit Corp.*,
   No. 2:10-cv-00822-NS (E.D. Pa. Apr. 15, 2011) ...................................................10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..................................................................................................5

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................5

*Hill v. State St. Corp.*,
   No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ..............10

*Krakauer v. Dish Network, L.L.C.*,
   1:14-cv-00333-CCF-JEP (M.D.N.C. 2018)............................................................13

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
   No. 17-cv-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017) ....................14

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 CIV. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............11

*In re Lupron Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005)..............................................................................14

*In re Lupron Mktg. & Sales Practices Litig.*,
   No. 01-cv-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005)................3, 4

*Malacky v. Huntington Nat'l Bank*,
   Case No. CV 03 491420 (Cuyahoga County Ct., Ohio Sept. 1, 2005)...................10

*Mazola v. May Dept. Stores Co.*,
    No. 97-cv-10872-NG, 1999 WL 1261312 (D. Mass. Jan. 27, 1999)..................................3, 11

*Mooney v. Domino's Pizza, Inc.*,
    No. 1:14-cv-13723-IT, 2018 WL 10232918 (D. Mass. Jan. 23, 2018) ...............................12

*In re Neurontin Mktg. and Sales Practices Litig.*,
    58 F. Supp. 3d 167 (D. Mass. 2014) ...............................................................................3

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ..................................12

*Nickel v. Bank of America*,
    Case No. C 94-2716 (N.D. Cal. Apr. 30, 2009)....................................................11

*Powers v. Santander Consumer USA, Inc.*,
    Case No. 4:12-cv-11932-TSH (D. Mass. Dec. 17, 2014)................................10, 13

*In re Puerto Rican Cabotage Antitrust Litig.*
    815 F. Supp. 2d 448 (D.P.R. 2011)..................................................................5, 11

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)..................................................................4, 8, 12

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)..................................................................................12

*Roberts v. TJX Companies, Inc.*,
    No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...................4

*Scovil v. Fedex Ground Package Sys., Inc.*,
    No 10-cv-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014).........................14

*Smith v. CRST Van Expedited, Inc.*,
    No. 10–CV–1116–IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013).........4

*Spence v. Cavalry Portfolio*,
    No. 1:14-cv-12655-PBS (D. Mass. May 2, 2016) .................................................13

*The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.*,
    642 F. Supp. 2d 58 (D. Mass. 2009) .....................................................................13

*In re Thirteen Appeals*,
    56 F.3d 295 (1st Cir. 1995)......................................................................................3

*Tuli v. Brigham & Women's Hosp., Inc.*
    No. 07CV12338-NG, 2009 WL 10693567 (D. Mass. June 8, 2009) .....................12

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................4, 5, 11, 12

*Walters v. Target Corp.*,
No. 3:16-cv-1678-L-MDD, 2020 WL 6277436 (S.D. Cal. Oct. 26, 2020) .............................10

## I.    INTRODUCTION

This class action began more than three years ago, and has followed a lengthy and circuitous path to this juncture. The litigation included removal to this Court, a motion to remand, a motion to dismiss, request for interlocutory review of the denial of that motion, multiple discovery motions, a motion for class certification, certification of the Massachusetts-only class and a full day mediation. This case was almost eviscerated by a proposed nationwide settlement in Missouri state court that threatened to wipe out the valuable Massachusetts-based claims raised here. That proposed settlement generated Ally's motion to stay this case pending the Missouri settlement, ultimately defeated, and Class Counsel's emergency motion to intervene in the Missouri case. To say the litigation was hard fought and contentious is an understatement. By the time the case settled, the parties were fully aware of the strengths and weaknesses of the claims and defenses. The Settlement was reached after extended arm's length negotiations.

The proposed Settlement provides substantial benefits to Settlement Class Members. Ally will eliminate nearly $11 million in Deficiency Balances for all Settlement Class Members and will establish a $5 million Cash Settlement Fund to make payments to Settlement Class Members, and to pay attorneys' fees and expenses and an incentive payment, subject to Court approval, and costs of administration. No claim forms are required, if the Settlement is approved all Settlement Class Members will automatically receive these benefits.

To compensate them for their efforts, Class Counsel request fees and expenses of $2,500,000, representing approximately 15.6% of the total Settlement Value of $15,977,704.68. The amount requested is reasonable in light of the benefits obtained and the risks incurred. Class Counsel also request an incentive payment of $7,500 to Ms. White for her efforts on behalf of the Settlement Class. Without her sustained commitment to this long-running case, including responding to discovery and attending a deposition, the Class would not receive the benefits of

this Settlement.

## II.     BACKGROUND

### A.     Ms. White And Her Counsel Vigorously Litigated On Behalf Of The Class For Three Years

Throughout the years this litigation has been pending, Class Counsel worked diligently, and creatively, to effectively advance the positions of the Class. These efforts included the following:

- Factual investigation, legal research and preparation of state court complaint and amended complaint (ECF # 1, 31);

- Briefing, research and preparation of:

    o     motion to remand (ECF # 12);

    o     opposition to motion to dismiss, and a hearing on that motion (ECF # 18);

    o     opposition to motion to certify interlocutory appeal (ECF # 49);

    o     motion for class certification (ECF # 52);

    o     motion to compel written discovery responses (ECF # 93);

    o     opposition to motion to strike deposition topics (ECF # 100);

    o     opposition to motion to stay pending approval of nationwide settlement in related case in Missouri (ECF # 106); and

    o     an emergency motion to intervene in the Haskins Litigation.

- written discovery of Ally's practices, including preparation of requests for production, interrogatories, requests for admission;

- review and analysis of Ally's document production and discovery responses;

- preparation for and participation in mediation; extended negotiations after the mediation; preparing settlement documents, and motion for preliminary approval (ECF # 118);

- preparation for and taking of the deposition of Ally's 30(b)(6) deponent;

- preparation of Ms. White and attendance at her deposition; and

- responding to discovery, including interrogatories, requests for production, and requests for admission, and collecting and producing documents.

## III.    ARGUMENT

**A.    The Requested Fee Is Reasonable Under Either the Percentage Of The Fund Or The Lodestar Method**

The First Circuit has recognized the "distinct advantages" of the percentage of fund approach in determining a reasonable fee award in a common fund case. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995); *see also In re Lupron Mktg. & Sales Practices Litig.*, No. 01-cv-10861-RGS, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005); *Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. 12-cv-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017). In common fund cases, the percentage of fund approach "is less burdensome to administer, it reduces the possibility of collateral disputes, it enhances efficiency throughout the litigation, it is less taxing on judicial resources, and it better approximates the workings of the marketplace." *In re Lupron*, 2005 WL 2006833, at *3 (citing *In Re Thirteen Appeals*, 56 F. 3d at 307).

Here, the benefit to the Class is easily quantified. Class Counsel's efforts resulted in a Settlement with a value of approximately $16 million, of which $5 million is cash which will be distributed to Settlement Class Members after Court approved fees and costs, an incentive payment, and costs of notice and administration are deducted.

The First Circuit has not established a benchmark percentage for common fund awards, but other courts in this Circuit have approved percentage-based fees that range from twenty to thirty-five percent. *See Mazola v. May Dept. Stores Co*., No. 97-cv-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions"); *In re Neurontin Mktg. and Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (nearly two-thirds of percentage based class action fees were between 25% and 35%

of the common fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (awarding fee of one-third of fund).

When considering both the cash component and debt relief, *see, e.g., Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (including cash and student loan debt forgiveness in valuing settlement for purposes of determining reasonable attorney's fees, awarding fees of one-third of settlement value); *Smith v. CRST Van Expedited, Inc.*, No. 10–CV–1116–IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) (in applying percentage of the fund method, taking into account "total financial benefit" to the class, which included cash payments and "reimbursement[s]/debt relief"), the requested fee is well below awards made in other class actions.

Factors considered by district courts in this Circuit when determining the reasonableness of a fee award include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms or attorneys' fees; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; and (8) public policy considerations. *Roberts v. TJX Companies, Inc.,* No. 13-cv-13142-ADB, 2016 WL 8677312, at *10 (D. Mass. Sept. 30, 2016); *Relafen*, 231 F.R.D. at 79; *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 266 (D.N.H. 2007); *In re Lupron*, 2005 WL 2006833, at *3. Courts in this district also have discretion to use the lodestar as a "cross check" to gauge the reasonableness of a percentage-based fee. *In re Lupron*, 2005 WL 2006833, at *6.

Courts have emphasized that the most significant factor in setting fees is the

results obtained. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (fee should be relative to value obtained for the class); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 109 (D. R.I. 1996) ("[u]ltimately, the issue is whether the settlement is beneficial to the class members"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011) (results achieved by counsel is often the most influential factor in assessing the reasonableness of the fee), citing, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained").

Each of the relevant factors supports the requested fee here.

### 1.    Class Counsel Achieved An Excellent Result That Will Benefit Thousands Of Class Members

The Settlement Agreement will, if approved, eliminate 100% of Class Members' Deficiency Balances, representing $10,977,705, and also provide for a $5 million cash fund, which will be used to provide full refunds of payments made towards deficiencies, plus standardized payments to those who made no such payments.

On top of that, the Settlement provides significant non-monetary benefits in the form of credit reporting relief. A recovery in this range is in line with and in fact superior to many class actions. *See, e.g., Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 345 (D. Mass. 2015) (settlement that provided reimbursement of 9% of purchase price reasonable; worst case scenario was no recovery, best case was 100% of purchase price); *In re Tyco*, 535 F. Supp. 2d at 261 (settlement that provides approximately 27% of the alleged damages to the class is "outstanding" result); *see also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (awarding fee of one-third where plaintiffs recovered 36% of the class's total net loss, a result described by court as exceptional) (citing *In re Med. X–Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *7–*8 (E.D.N.Y. Aug. 7, 1998)

(approving settlement and 1/3 fee where counsel recovered 17% of damages); *In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (fee of 33.8% where counsel recovered 10% of damages); *In re Gen. Instruments Sec. Litig.,* 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (awarding 1/3 fee from $48M settlement fund that was 11% of the plaintiffs' estimated damages).

The result Class Counsel achieved is especially good given the potential impact of the *Haskins* Litigation. *See* ECF # 105, Memorandum in Support of Motion to Stay Pending Approval of Haskins Settlement. The settlement reached in *Haskins* included all of the Class Members in this case and purported to release all of the claims asserted herein. *Id.* at 13 – 14. In turn, the *Haskins* settlement provides substantially fewer benefits than those Class Members will receive here. ECF # 106 at 4, and 106-1. For example, the *Haskins* settlement provides for an average of $1,400 in debt relief, leaving many borrowers with an outstanding deficiency balance whereas, as a result of this Settlement, the entirety of borrowers' purported debts will be eliminated. In addition, unlike in *Haskins*, Class Members here will receive full refunds of the amounts they paid towards deficiencies, and those who made no payments will still receive a check in a set amount.

Moreover, to accomplish this Settlement, Class Counsel negotiated a non-enforcement agreement precluding Ally from enforcing the *Haskins* release of claims against Class Members. *See* ECF # 118-1, ¶ 4.4.1. This is a significant benefit to Class Members, as Class Counsel contends that the *Haskins* release broadly encompasses claims outside those asserted in *Haskins* and would leave Class Members with far fewer rights and protections if it were enforced against them.

After Ally reached a nationwide settlement in *Haskins* and moved to stay this case

pending final approval of that settlement because of the purportedly overlapping claims, Class Counsel did not waver in pursuing a better result for Massachusetts borrowers. Class Counsel vigorously opposed the motion to stay (which was denied) and sought to intervene, on an emergency basis, in a Missouri state court to attempt to exclude Massachusetts borrowers from the *Haskins* settlement, including by engaging a Missouri-based law firm to act as local counsel. It was Class Counsel's aggressive efforts to protect Class Members and subsequent negotiations with Ally that led to this substantially better Settlement.

### 2. Class Counsel Assumed A Significant Risk of Non-Recovery In This Case

Ms. White was confident in her claims, but litigation, especially class litigation, is inherently risky, expensive and time consuming, appeals even more so. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001). That is particularly true here. When counsel filed this case in July of 2018 there was no assurance that any fees or expenses would ever be recovered.

Prior to Class Counsel filing this case, the Supreme Judicial Court decided *Williams v. Am. Honda Fin. Corp.*, holding that repossession notices must refer to the car's fair market value, and the failure to do so would give rise to statutory damages. But no court had yet addressed whether the decision applied retroactively. A ruling that the decision only applied prospectively would have all but doomed this litigation with respect to all pre-*Williams* notices sent by Ally. And in May 2019, that risk became manifest when a Massachusetts Superior Court judge ruled that *Williams* did not apply retroactively. *Dellorusso v. PNC Bank, N.A.*, No. 1877-cv-01475 (Mass. Super. Ct. May 3, 2019). While the Appeals Court later clarified, in July 2020, that the *Williams* decision did in fact apply retroactively, the uncertain state of the law highlights the risks that Class Counsel took of recovering little or nothing in this case. In addition, Ally raised substantial defenses to class certification, filed a counterclaim against Ms. White, and

threatened to file counterclaims against all Class Members whose deficiency balance exceeded their statutory damages. Finally, Ally asserted a defense not present in *Williams*, which is that for a majority of Class Members, it actually used the fair market value in calculating the deficiency, even though its repossession notice stated that it would use the sale price. These issues, plus *Haskins,* made the outcome of this litigation uncertain.

Class Counsel nonetheless represented Ms. White and the Class in this case entirely on a contingent basis, taking on the risk that they would receive no compensation at all. Had Class Counsel not done so, the Class would likely have received nothing but the far lesser remedies of *Haskins*.

### 3. Class Counsel's Skill and the Quality of Their Work Led To The Excellent Recovery for the Class

Class Counsel were able to litigate and resolve this case successfully because of their years of experience litigating consumer class actions, particularly involving auto repossession and UCC notice requirements. Declaration of Elizabeth Ryan ("Ryan Decl."), ¶ 4; Declaration of Nicholas F. Ortiz ("Ortiz Decl."), ¶ 4, submitted herewith. Class Counsel have litigated class actions involving faulty repossession notices in multiple courts. Ryan Decl. ¶ 5; Ortiz Decl. ¶ 5. The depth of their experience with the UCC and retail installment sales acts allowed them to successfully oppose a motion to dismiss, achieve class certification, prevent a stay of this case pending approval of the *Haskins* settlement (which could have eliminated this case entirely), and negotiate a better settlement on behalf of Class Members. The combination of skill and experience Class Counsel brought to this litigation was critical to the outcome achieved.

And it is of note that Bailey & Glasser prevailed at the SJC and the First Circuit in *Williams*, and the Law Office of Nicholas F. Ortiz prevailed in *Dellorusso*, results which underscore the applicability of items three, four, five, and eight of the *Relafen* factors.

### 4.      Class Counsel Expended Significant Time And Resources

The summaries of hours and rates contained in the attached declaration of counsel show that to date, Class Counsel have spent over 865 hours litigating this case since 2018. *See* Ryan Decl. ¶ 14; Ortiz Decl. ¶ 9.

The time spent was necessary because of the duration and complexity of the litigation, as summarized above. As discussed above, during the past three years Class Counsel, amongst other things, opposed motions to dismiss, to certify an interlocutory appeal, to amend the answer to add a counterclaim, for a protective order against deposition topics, and to stay proceedings pending a settlement which would eliminate the Classes' claims, and filed motions to compel and for class certification. Ryan Decl. ¶ 6. Discovery included interrogatories, document requests, requests for admissions, a 30(b)(6) deposition, and a deposition of Ms. White. *Id.* ¶ 8. Class Counsel prepared for and attended a full day private mediation, *id.* ¶ 9, and engaged in extended negotiations post-mediation. In addition to their time in the case, Class Counsel has advanced amounts for mediation fees, deposition transcripts, and other expenses, totaling $4,357.62. Ryan Decl. ¶ 23; Ortiz Decl. ¶ 14.

### 5.      There Are Currently No Objections

The Class was advised in the Notice, on page 3, that Class Counsel would seek approval of attorneys' fees and expenses of $2.5 million, as well as an incentive payment of $7,500 for Ms. White. They were also advised of the opportunity to object to the Settlement, including the fees and expenses, and the process and deadline by which they could do so. No Class Member has as of this date objected to these requests, or to any aspect of the Settlement.[1] Ryan Decl. ¶ 30. A lack of objections supports approval. *See Bussie v. Allmerica Fin. Corp.,* 50 F. Supp. 2d

---

[1] Class Members' deadline to object is September 27, 2021. If any objections are received before that deadline, Class Counsel will respond accordingly.

59, 77 (D. Mass. 1999); *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at

*18 (D. Mass. Jan. 8, 2015), *appeal dismissed*, 794 F.3d 227 (1st Cir. 2015).

### 6.    Fee Awards In Similar Cases Support Class Counsel's Request

While there are no reported federal class cases involving the exact claim raised here —

the failure to use the fair market value in a repossession notice —the fee request is in line with

awards in other class actions involving different repossession notice defects. For example, in

*Powers v. Santander Consumer USA, Inc.*, Case No. 4:12-cv-11932-TSH, Final Order

Approving Class Action Settlement, ECF # 97, ¶ 13 (D. Mass. Dec. 17, 2014), Judge Hillman

approved a fee of $500,000 in a defective notice repossession case settlement involving a cash

payment of $750,000 and waiver of deficiencies of approximately $23 million. *See also Malacky

v. Huntington Nat'l Bank*, Case No. CV 03 491420, Final Approval Order for Class Action

Settlement, ¶ 9 (Cuyahoga County Ct., Ohio Sept. 1, 2005), where Judge Donnelly approved a

fee of $900,000 in a defective notice case settlement involving a cash payment of $1.8 million

and waiver of deficiencies of approximately $25 million; *Cooley v. F.N.B. Corp.*, Case No.

10010 of 2003, Final Order Approving Class Action Settlement, ¶ 10 (Lawrence County, Penn.

Crt. of Common Pleas Apr. 7, 2010), where Judge Motto approved a fee of $1.2 million in a

defective notice case settlement involving a cash payment of $1.7 million and a waiver of

deficiencies of more than $13 million; *Hartt v. Flagship Credit Corp.*, No. 2:10-cv-00822-NS,

Order for Final Judgment and Dismissal, ECF # 46, ¶ 3 (E.D. Pa. Apr. 15, 2011), where Judge

Shapiro approved a fee of $925,000 and expenses of $17,077 in a defective notice case

settlement involving a cash payment of $2.5 million and waiver of deficiencies of $11,285,934.

The fee request also comports with awards in other federal class cases that resulted in

settlements consisting of both cash payments and debt relief. *See, e.g., Walters v. Target Corp.*,

No. 3:16-cv-1678-L-MDD, 2020 WL 6277436, at *8 (S.D. Cal. Oct. 26, 2020) (awarding attorneys' fees consisting of 25% of total settlement value, inclusive of both cash and debt relief); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (attorney fee award of one-third of total settlement value, calculated by including both cash and debt relief).

As discussed above, in this Circuit, fees based on a percentage of the recovery obtained for the Class range from 20% to 35% of the recovery. *Mazola v. May Dep't Stores Co.*, WL 1261312, at *4. In valuing the recovery obtained under a settlement, courts consider the waiver of debt in addition to cash. *See Cullen*, 197 F.R.D. at 147 (including cash and student loan debt forgiveness in valuing settlement for purposes of determining reasonable attorney's fees); *Follansbee v. Discover Fin. Servs., Inc.*, No. 99 C 3827, 2000 WL 804690, at *2 (N.D. Ill. June 21, 2000) (valuing settlement to include debt forgiveness and account credits, and evaluating fee against that value). *See also In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV. 1262 RWS, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) *aff'd sub nom.*; *Adams v. Rose,* No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003). When the debt waiver is taken into account here, the fee requested is well below the range awarded in other cases.

**B.    The Requested Fee Is More Than Reasonable Using The Lodestar Cross-Check**

The First Circuit does not require that district courts engage in calculating the lodestar when awarding fees based upon the percentage of the fund method. *In re Puerto Rican Cabotage Antitrust Litig.*815 F. Supp. 2d 448, 464 (D.P.R. 2011) (citing *In re Thirteen Appeals,* 56 F.3d at 307). Nevertheless, many courts engage in a lodestar "cross-check" to ensure that the fees are reasonable in light of the actual amount of work performed in light of the results obtained. *Id.*; *In re Tyco,* 535 F. Supp. 2d at 265 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee

award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco*, 535 F. Supp. 2d at 270, *citing Thirteen Appeals,* 56 F.3d at 307.

For outstanding results, courts using the lodestar method often award a lodestar multiplier, with a range of 4.5 to 8.5 being "unquestionably reasonable." *See, e.g., New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) (Saris, J.) (approving multiplier of 8.3 and citing *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) for proposition that multipliers in the range of 4.5 to 8.5 are "unquestionably reasonable")*; Conley v. Sears, Roebuck and Co*., 222 B.R. 181 (D. Mass. 1998) (awarding multiplier of 8.9); *Mooney v. Domino's Pizza, Inc.*, No. 1:14-cv-13723-IT, 2018 WL 10232918, at *1 (D. Mass. Jan. 23, 2018) (fee award reflecting a multiplier of 4.77 "within the bounds of reasonableness of a class action"); *Relafen*, 231 F.R.D. at 82 (generally, multipliers range from 1.6 to as high as 19.6) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298–99, 303–04 (3d Cir. 2005)) (no abuse of discretion where district court approved attorney's fees with lodestar multiplier of 4.07).

Here, the fee requested is reasonable using the lodestar cross-check, as it represents a multiplier of 4.42. Summaries of counsel's time are contained in the attached declarations. Ryan Decl. ¶ 14; Ortiz Decl. ¶ 9. *See In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294 (3d Cir. 2005) (in performing lodestar cross check, courts may rely on summaries submitted by the attorneys).

The rates used by Class Counsel are reasonable given their experience and expertise, and are comparable to rates charged by attorneys with similar experience. Ryan Decl. ¶ 16; Ortiz Decl., ¶ 11. *See, e.g., Tuli v. Brigham & Women's Hosp., Inc.* No. 07CV12338-NG, 2009 WL 10693567, at *2-4 (D. Mass. June 8, 2009), *aff'd sub nom. Tuli v. Brigham & Women's Hosp*., 656 F.3d 33 (1st Cir. 2011) (approving rates for Boston partners in the range of $600 to $700 per

hour ten years ago); *The Real Estate Bar Assn's for Mass., Inc. v. Nat'l Real Estate Info. Servs.*, 642 F. Supp. 2d 58, 67 (D. Mass. 2009), *vacated on other grounds,* 608 F.3d 110 (1st Cir. 2010) (approving hourly rates in a range up to $700 eleven years ago; for example, up to $625 for a 1987 law graduate); *Davis v. Footbridge Eng'g Servs., LLC*, No. 09CV11133-NG, 2011 WL 3678928, 4-5 (D. Mass. Aug. 22, 2011) ($650 per hour for an attorney who had been practicing over ten years).

The historical rates of Bailey & Glasser have been approved by other courts considering petitions for fee awards in which the firms have respectively served as class counsel. *See, e.g.*, *In re Columbia Gas Cases*, Civ No. 877CV01343G (Essex Sup. Ct. 2020) (approving 2018 rate of $760 for John Roddy and Elizabeth Ryan); *Hankins v. Alarm.com Inc.*, 4:15-cv-06314-YGR (N.D. Cal. 2018) (approving $760 rate for Elizabeth Ryan); *Krakauer v. Dish Network, L.L.C.*, 1:14-cv-00333-CCF-JEP (M.D.N.C. 2018) (approving $760 rate for John Roddy, Elizabeth Ryan). *See* additional cases cited in Ryan Decl. ¶ 19.[2]

The requested fees and costs are reasonable in light of all of the relevant considerations. Ultimately, the question at the heart of all attorneys' fee determinations is whether the proposed fee fairly and reasonably compensates counsel for what they have accomplished, and in light of the contingency related risks, not which method, percentage, or multiplier to apply. *See Branch v. F.D.I.C.*, No. Civ. A. 91-CV-13270-RGS, 1998 WL 151249, at *4 (D. Mass. Mar. 24, 1998). In view of the results obtained for the Settlement Class, the undersigned respectfully submit that

---

[2] This court approved Bailey & Glasser's application for attorneys' fees in the full amount requested from a common fund, which was supported by declarations attesting to rates of $650 per hour in 2014 in *Spence v. Cavalry Portfolio,* No. 1:14-cv-12655-PBS, Final Order and Judgment, ECF # 90, ¶ 13 (D. Mass. May 2, 2016); and in *Glover, et al. v. Bank of America, N.A.*, *et al.*, Case No. 4:13-cv-40042-TSH, Final Order Approving Settlement, ECF # 68, ¶ 10 (D. Mass. May 26, 2015) (attesting to rates of $625 - 700); and in *Powers v. Santander Consumer USA, Inc.*, Case No. 4:12-cv-11932-TSH, Final Order Approving Class Action Settlement, ECF # 97, ¶ 13 (D. Mass. Dec. 17, 2014) (attesting to rates of $650 per hour).

the Court should approve their request.

**C.     The Requested Incentive Award Is Also Reasonable**

Finally, Plaintiff seeks approval of an incentive award of $7,500. "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017). "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, Ms. White spent time over the three years this case has been litigated participating in interviews with counsel, providing documents, reviewing pleadings, conferring on settlement discussions, answering interrogatories and requests for admission, and attending a deposition. If she had not been willing to bring this case and stay with it during the litigation in this Court, the Class would have received none of the benefits of this Settlement.

Comparisons to incentive awards in other class action settlements demonstrate that this amount is reasonable and fair. *See, e.g., Lauture*, *supra*, at *2 (incentive awards of $15,000 to each class representative)*; In re Lupron Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 98 (D. Mass. 2005) (approving incentive payments of up to $25,000); *In re Celexa and Lexapro Mktg. & Sales Pracs. Litig.,* No. 09–2067–NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) (incentive payments of $10,000 to each class representative); *Scovil v. Fedex Ground Package Sys., Inc.*, No 10-cv-515-DBH, 2014 WL 1057079, at *7-8 (D. Me. Mar. 14, 2014) (awards from $15,000 to $20,000 to named plaintiffs).

Therefore, the requested incentive payment should be approved.

## IV.     CONCLUSION

For the reasons described above, Class Counsel respectfully requests that the Court approve the fees, costs and incentive payment described above.

Date: September 14, 2021

Respectfully submitted,

GRACIE WHITE f/k/a GRACIE DORNEUS,

By her attorneys,

*/s/ Elizabeth Ryan*
Elizabeth Ryan (BBO No. 549632)
John Roddy (BBO No. 424240)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)
eryan@baileyglasser.com
jroddy@baileyglasser.com

Raven Moeslinger (BBO No. 687956)
Nicholas F. Ortiz (BBO No. 655135)
Law Office of Nicholas F. Ortiz, P.C.
50 Congress Street, Suite 540
Boston, MA 02109
(617) 338-9400
rm@mass-legal.com

## CERTIFICATE OF SERVICE

I, Elizabeth Ryan, hereby certify that today I caused to be served the within on counsel for the defendant via ECF service.

*/s/ Elizabeth Ryan*
Elizabeth Ryan